# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) Case No. 23-90116 (CML) |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |
|  | ) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR THE ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY CLAIMS OF (A) CRITICAL VENDORS, (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CERTAIN OTHER SPECIFIED TRADE CLAIMANTS, AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 2:30 p.m. (prevailing Central Time) on March 16, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on March 16, 2023 at 2:30 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez." Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "submit" to complete your appearance.**

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:[2]

### Relief Requested

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto, (a) authorizing, but not directing, the Debtors to pay claims of critical vendors, foreign vendors, section 503(b)(9) claimants, and certain other specified trade claimants, and (b) granting related relief. In addition, the Debtors request that the Court (as defined herein) schedule a final hearing with respect to the relief requested herein approximately 25 days from the Petition Date (as defined herein).

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

---

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to these chapter 11 cases and supporting this motion, is set forth in the *Declaration of David F. DeVoe, Jr. in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference. Capitalized terms used but not otherwise defined in this motion have the meanings ascribed to them in the First Day Declaration.

3. The bases for the relief requested herein are sections 105(a), 363, and 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

## Background

4. The Debtors own and/or operate the Bally Sports Regional Sports Networks (the "RSNs"), making them the nation's leading provider of local sports programming. The Debtors' 19 Bally Sports RSNs serve as the home for 42 MLB, NBA, and NHL teams. The Debtors also hold joint venture interests in Marquee, the home of the Chicago Cubs, and the YES Network, the local destination for the New York Yankees and Brooklyn Nets. The RSNs produce approximately 4,500 live local professional telecasts each year in addition to a wide variety of locally produced sports events and programs.

5. On March 14 and March 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have contemporaneously filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## The Debtors' Trade Claimants

6. The Debtors require specialized equipment and services to reliably produce and broadcast their regional sports network programming (the "Programming") and to support their other business lines, such as advertising and direct-to-consumer productions (together with the

Programming, the "Productions"). The Debtors procure the requisite equipment, supplies, and services to maintain their operations from a variety of vendors. As discussed further below, the Debtors' vendors are integral to the Debtors' ability to operate.

7. The Debtors have vendors located around the world. Even minor disruptions in the provision of goods or services could have adverse consequences for the Debtors and their customers. The following table summarizes the types of claims that the Debtors request authority to pay pursuant to this motion on an interim and final basis:

| Vendor Category | Interim Amount | Final Amount |
| --- | --- | --- |
| Critical Vendors | $530,000 | $2,140,000 |
| Foreign Vendors | $0 | $140,000 |
| 503(b)(9) Claimants | $120,000 | $170,000 |
| **Total** | **$650,000** | **$2,450,000** |

I. **Critical Vendors**

8. In the ordinary course of business, the Debtors incur certain obligations (the "Critical Vendor Claims") to suppliers of goods and services that enable the Debtors to produce, broadcast, and market their Productions (the "Critical Vendors"). The Debtors have identified the following categories of Critical Vendors:

a. *Programming*. The Debtors require various goods and services from vendors to produce their telecasts. In particular, the Debtors purchase or rent on a short-term basis audio/video and production equipment from vendors, and purchase services in support of that equipment.

b. *Broadcasting*. The Debtors incur costs of producing and distributing content for their brands including live games, pre-game and post-game shows, and backdrop programming.

c. *Marketing*. The Debtors utilize various providers of services to market their Productions. For instance, the Debtors engage third-party agencies to produce and distribute advertising for the Debtors' Productions.

d. *Media selling, general, and administrative expenses*. The Debtors incur various costs relating to, for example, digital sales expenses.

9. It is imperative that the Debtors be allowed to pay Critical Vendors in the ordinary course to maintain positive relationships with the suppliers of the goods and services essential to their operations and avoid potential disruption to their business throughout the course of these chapter 11 cases. Additionally, given the time-sensitive nature of the Debtors' business, any substitution of Critical Vendors involved in production, programming, or transmission poses a significant risk to the Debtors' successful operation of their business.

10. As of the Petition Date, the Debtors estimate that they owe approximately $2,140,000 to Critical Vendors and that approximately $530,000 of that amount will come due during the interim period before entry of the final order.

**II.     Foreign Vendor Claims**

11. In the ordinary course of business, the Debtors incur obligations to certain foreign vendors that are essential to the Debtors' operations ("Foreign Vendors"). Foreign vendors often have skeptical reactions to the United States bankruptcy process because many of them are unfamiliar with chapter 11 cases and the implications for the Debtors' ongoing ability to do business and pay for goods and services. Accordingly, nonpayment of prepetition claims may cause foreign vendors to take precipitous actions, including delaying shipments until more certainty develops with respect to the Debtors' reorganization.

12. Additionally, if prepetition claims held by Foreign Vendors (the "Foreign Vendor Claims") are not paid, they may take action against the Debtors based upon an erroneous belief that foreign vendors are not subject to the automatic stay provisions of section 362(a) of the Bankruptcy Code. Although the automatic stay applies to protect the Debtors' assets wherever they are located in the world, attempting to enforce the Bankruptcy Code in foreign countries is often a costly exercise with uncertain results. In the absence of enforcement of the automatic stay,

Foreign Vendors could, among other things, initiate a lawsuit in a foreign court and obtain a judgment against the Debtors to collect prepetition amounts owed to them.

13. In light of these consequences, the Debtors believe that payment of Foreign Vendor Claims on the terms set forth herein is necessary to avoid disruption of the Debtors' operations during these chapter 11 cases. The Debtors' estimate of the Foreign Vendor Claims pales in comparison to the potential damage to the Debtors' business if the Debtors were to experience significant interruptions or delays in obtaining goods and services from Foreign Vendors. Therefore, the Debtors, their estates, and their stakeholders would all benefit from the payment of the Foreign Vendor Claims.

14. As of the Petition Date, the Debtors estimate that they owe approximately $140,000 to Foreign Vendor and none of that amount will come due during the interim period before entry of a final order.

### III.    503(b)(9) Claimants

15. In the ordinary course of their business, the Debtors received certain goods or materials from various vendors (the "503(b)(9) Claimants") within 20 days before the Petition Date. The 503(b)(9) Claimants may not be Critical Vendors or Foreign Vendors, but the Debtors believe that their claims likely are entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Claims"). Moreover, most of the Debtors' relationships with the 503(b)(9) Claimants are not governed by long-term contracts. Rather, the Debtors obtain supplies on an order-by-order basis. As a result, a 503(b)(9) Claimant may refuse to supply new orders without payment of its prepetition claim, especially claims that would be entitled to administrative expense claim treatment. The Debtors also believe that certain 503(b)(9) Claimants could reduce the Debtors' existing trade credit or demand payment in cash on delivery, with a negative impact on the Debtors' liquidity.

16. As of the Petition Date, the Debtors estimate that approximately $170,000 in 503(b)(9) Claims are outstanding and that approximately $120,000 of that amount will come due during the interim period before entry of a final order.

### IV. Identification and Payment of Specified Trade Claimants

17. The Debtors considered several factors when identifying whether a particular vendor was a Critical Vendor, Foreign Vendor, or 503(b)(9) Claimant (collectively, the "Specified Trade Claimants," and their claims, the "Specified Trade Claims"). These include:

- whether the vendor is a sole-source provider;

- whether the Debtors receive advantageous pricing or other terms from a vendor such that replacing the vendor post-effective would result in significantly higher costs to the Debtors;

- whether quality requirements or other specifications prevent the Debtors from obtaining a vendor's products or services from alternative sources within a reasonable time frame;

- whether the Debtors possess sufficient in-house materials or resources to continue operations while a replacement vendor is found and put in place;

- whether a vendor is otherwise contractually obligated to continue to provide goods or services to the Debtors; and

- whether the vendor is likely to refuse to ship products or provide services to the Debtors postpetition if its prepetition balances are not paid.

18. The Debtors propose to pay the Specified Trade Claims of a Specified Trade Claimant only if such Specified Trade Claimant agrees to continue to supply goods or services to the Debtors on terms no less favorable to the Debtors than those in effect prior to the Petition Date, or on such other terms as the Debtors may approve. Moreover, as a condition to receiving payment, the Debtors may require, by written agreement, such parties to: (a) continue supplying goods and services to the Debtors on trade terms that are at least as favorable to the Debtors as those in effect prior to the Petition Date; and (b) agree that they shall not be permitted to cancel their agreements

(if any) (the "Agreed Terms").  A form of letter incorporating the Agreed Terms is attached as **Exhibit 1** to the proposed final order.  The Debtors reserve the right to require more favorable trade terms from any Specified Trade Claimant as a condition to payment of any prepetition claim.

19. If any Specified Trade Claimant accepts payment for a prepetition obligation of the Debtors premised on compliance with the above conditions, and thereafter fails to comply with the Agreed Terms, or such other terms agreed to by the Debtors, the Debtors request that such payment be deemed an avoidable postpetition transfer under section 549 of the Bankruptcy Code, and that the Specified Trade Claimant be required to immediately repay to the Debtors any payment made to it on account of its asserted claim to the extent the aggregate amount of such payments exceeds the postpetition obligations then outstanding, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or otherwise.

## Basis for Relief

I. **The Bankruptcy Code Permits the Court to Authorize the Debtors to Pay the Specified Trade Claims Where Such Payments Are Necessary to Protect and Preserve the Estate**

20. Courts in this District and others have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Scotia Dev., LLC*, 2007 WL 2788840, at *2 (Bankr. S.D. Tex. Sept. 21, 2007) (outlining the factors for when a critical vendor payment is necessary); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").  In doing so, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

21. Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the pre-plan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. at 499.

22. Section 105(a) of the Bankruptcy Code and the "doctrine of necessity" permit the bankruptcy court to exercise its broad grant of equitable powers to authorize the payment of prepetition obligations when such payment is essential to the continued operation of the debtor's business. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. at 497 (finding that section 105 of the Bankruptcy Code provides the authority for a debtor in possession to pay prepetition claims); *In re CEI Roofing, Inc.*, 315 B.R. 50, 56 (Bankr. N.D. Tex. 2004); *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2004).

23. The above-referenced sections of the Bankruptcy Code empower the Court to authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the pre-petition claim in aid of preservation or enhancement of the estate.").

24. Here, the Debtors' payment of Specified Trade Claims is necessary to their continued and uninterrupted operations during these chapter 11 cases. Specifically, the goods and services provided by the Specified Trade Claimants are essential to the continued production, broadcasting, and marketing of the Debtors' Productions. Failure to pay the Specified Trade

9

Claims, and any resulting inability to purchase essential goods and services provided by the Specified Trade Claimants, could potentially destroy value that otherwise would inure to the benefit of the Debtors' estates.

25. The Debtors submit that the circumstances of these chapter 11 cases warrant granting the requested relief, and that doing so is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, and therefore should be granted. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to pay the Specified Trade Claims.

II. **The Court Should Authorize the Payment of Claims Entitled to Priority Pursuant to Section 503(b)(9) of the Bankruptcy Code**

26. Section 503(b)(9) of the Bankruptcy Code provides administrative priority for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). These claims must be paid in full for the Debtors to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A). Consequently, payment of such claims at the outset of these chapter 11 cases only provides such parties that which they would have been entitled to receive under a chapter 11 plan. Additionally, all creditors will benefit from the seamless transition of the Debtors' operations into bankruptcy.

27. Moreover, the Bankruptcy Code does not prohibit a debtor from paying such claims prior to confirmation. As these claims are administrative claims incurred in the ordinary course of business, the Debtors believe they may pay such claims in accordance with their business judgment pursuant to section 363(c)(1) of the Bankruptcy Code. *See, e.g.*, *In re Dura Auto. Sys. Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Oct. 31, 2006) Hr'g Tr. 49:21-23 ("I think arguably the debtor could pay its 503(b)(9) claimants without court approval."). The timing of such payments also

lies squarely within the Court's discretion. *See In re Global Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court").

28. The Debtors' ongoing ability to obtain goods as provided herein is key to their survival and necessary to preserve the value of their estates. Absent payment of the Section 503(b)(9) Claims at the outset of these chapter 11 cases—which merely accelerates the timing of payment and not the ultimate treatment of such claims—the Debtors could be denied access to the equipment and goods necessary to maintain their business operations. Failure to honor these claims in the ordinary course of business may also cause the Debtors' vendor base to withhold support for the Debtors during the chapter 11 process. Such vendors could accelerate or eliminate favorable trade terms. Such costs and distractions could impair the Debtors' ability to stabilize their operations at this critical juncture to the detriment of all stakeholders.

### Processing of Checks and Electronic Funds Transfers Should Be Authorized

29. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that there is minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently made. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

**Emergency Consideration**

30. Pursuant to Local Rule 9013-1, the Debtors respectfully request emergency consideration of this motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Failure to obtain the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring efforts. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this motion on an emergency basis.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

31. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

32. Nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order

granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

## Notice

33. The Debtors will provide notice of this motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agents under the Debtors' prepetition credit facilities and counsel thereto; (d) the indenture trustees under the Debtors' prepetition indentures and counsel thereto; (e) counsel to the Ad Hoc First Lien Group; (f) counsel to the Ad Hoc Secured Group; (g) counsel to the Ad Hoc Crossholder Group; (h) Sinclair and its counsel; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the state attorneys general for states in which the Debtors conduct business; (l) the Securities and Exchange Commission; and (m) any party that has requested notice pursuant

to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

**Conclusion**

WHEREFORE, the Debtors respectfully request that the Court enter the proposed orders, substantially in the forms attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

March 15, 2023

Respectfully submitted,

By: */s/ John F. Higgins*
**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
Bryan L. Rochelle (TX Bar No. 24107979)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile:  (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
brochelle@porterhedges.com

- and -

| **WILMER CUTLER PICKERING HALE AND DORR LLP** | **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |
|---|---|
| Andrew N. Goldman (*pro hac vice* pending) | Brian S. Hermann (*pro hac vice* pending) |
| Benjamin W. Loveland (*pro hac vice* pending) | Andrew M. Parlen (*pro hac vice* pending) |
| Lauren R. Lifland (*pro hac vice* pending) | Joseph M. Graham (*pro hac vice* pending) |
| 250 Greenwich Street | Alice Nofzinger (*pro hac vice* pending) |
| New York, New York 10007 | 1285 Avenue of the Americas |
| Telephone: (212) 230-8800 | New York, New York 10019 |
| Facsimile: (212) 230-8888 | Telephone: (212) 373-3000 |
| andrew.goldman@wilmerhale.com | Facsimile: (212) 757-3990 |
| benjamin.loveland@wilmerhale.com | bhermann@paulweiss.com |
| lauren.lifland@wilmerhale.com | aparlen@paulweiss.com |
| | jgraham@paulweiss.com |
| | anofzinger@paulweiss.com |
| *Proposed Section 327(e) Counsel to the Debtors and Debtors in Possession* | *Proposed Section 327(a) Counsel to the Debtors and Debtors in Possession* |

**Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief. This statement is made pursuant to Local Rule 9013-1(i).

*/s/ John F. Higgins*
John F. Higgins

**Certificate of Service**

I certify that on March 15, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins