IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>DIAMOND SPORTS GROUP, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-90116 (CML)<br><br>(Jointly Administered) |

**THE AD HOC SECURED GROUP'S (I) LIMITED JOINDER TO THE DEBTORS'
OBJECTION TO MOTIONS TO COMPEL AND (II) RESERVATION OF RIGHTS**

The ad hoc group of secured creditors represented by Gibson, Dunn & Crutcher LLP (as constituted from time to time, the "**Ad Hoc Secured Group**"), by and through its undersigned counsel, hereby submits this (i) limited joinder (this "**Joinder**") to the *Debtors' Omnibus Objection to (I) Emergency Joint Motion of Major League Baseball and Certain Major League Baseball Clubs to Compel Performance Under Telecast Rights Agreements, or, in the Alternative, to Compel Assumption or Rejection of Telecast Rights Agreements and for Relief from the Automatic Stay; (II) Emergency Motion of AZPB Limited Partnership to Compel Debtors to Perform Under the Telecast Rights Agreement, or, in the Alternative, to Compel Assumption or Rejection of the Telecast Rights Agreement and Relief from the Automatic Stay; and (III) Rangers Baseball Express LLC's Joinder to Major League Baseball and Certain Major League Baseball Clubs' Limited Objection to the Debtors' Emergency Motion to Use Cash Collateral and Motion to Compel Performance* [Docket No. 409] (the "**Debtors' Objection**")[2] and (ii) reservation of rights (this

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Debtors' Objection.

1

4859-5815-3056v.1

"***Reservation of Rights***"). In support of this Joinder and Reservation of Rights, the Ad Hoc Secured Group respectfully represents as follows:

## LIMITED JOINDER

1. The Ad Hoc Secured Group respectfully joins in the Debtors' request that the Motions be denied. The Movants seek to compel a premature election to assume or reject the Telecast Rights Agreements less than two months into these large and complex chapter 11 cases, as well as relief from the automatic stay to issue notices of default and to exercise any other rights and remedies under the Telecast Rights Agreements. Such relief is neither warranted nor justified under the circumstances. The Ad Hoc Secured Group agrees with the Debtors that the relief requested in the Motions, if granted, would deprive the Debtors of the "breathing spell" that the automatic stay is meant to provide and their fundamental right to make critical decisions concerning their executory contracts within a "reasonable time," as intended by section 365(d)(2) of the Bankruptcy Code.

2. Under section 365(d)(2) of the Bankruptcy Code, the Debtors are not required to assume or reject their executory contracts prior to plan confirmation. Although this statutory period may be shortened upon request by a contract counterparty, courts still require that debtors be afforded a "reasonable time" to evaluate their contracts.[3] And because the purpose of chapter 11 is "to permit successful rehabilitation of debtors" and "to prevent a debtor from going into liquidation,"[4] the most important factor courts consider in determining whether to compel

---

[3] *See In re Panaco, Inc.*, No. 02-37811-H3-11, 2002 WL 31990368, at *4-*5 (Bankr. S.D. Tex. Dec. 10, 2002); *Theatre Holding Corp.* v. *Mauro*, 681 F.2d 102, 105 (2d Cir. 1982); *In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 429 (Bankr. S.D.N.Y. 2012); *In re Dana Corp.*, 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006).

[4] *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984); *see also Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1216 (7th Cir. 1984) ("To interpret the [Bankruptcy] Code so as to minimize flexibility and rush the debtor into what may be an improvident decision does not further the purposes of the reorganization provisions."); *In re McLean Indus., Inc.*, 96 B.R. 440, 449 (Bankr. S.D.N.Y. 1989) ("Early assumption is often not in the best interests of the estate since it can force premature decisions which could later jeopardize a successful reorganization process.").

assumption or rejection is whether such relief would prevent a successful rehabilitation of debtors.[5] The purpose and objectives behind section 365 of the Bankruptcy Code are further buttressed by section 362 and the automatic stay, which is intended to provide the Debtors with a "breathing spell" from creditors' collection efforts and to ensure equitable distribution among similarly situated creditors.[6]

3.   With 30 Debtors, approximately $8.845 billion in aggregate principal amount of outstanding funded debt obligations, and thousands of claims, assets, and contracts, all of which the Debtors are seeking to address through a plan of reorganization, the Debtors' chapter 11 cases are undoubtedly complex. Given these complexities and the fact that the Debtors are actively engaged in negotiations with various stakeholders (including MLB and the Teams), forcing the Debtors to assume or reject the Telecast Rights Agreements or lifting the automatic stay to allow the Movants to exercise any rights and remedies thereunder at this early stage would be premature and detrimental to the Debtors, their estates, and all stakeholders.

4.   Moreover, the Movants' demand for an immediate assumption or rejection of the Telecast Rights Agreements is neither fair nor appropriate vis-à-vis the multitude of other executory contracts and contract counterparties (or any of the Debtors' other creditors, for that matter). Importantly, the Movants premised their request on the Debtors' non-payment of certain amounts under the Telecast Rights Agreement.  Given the Court's ruling requiring the Debtors to partially pay the Teams for telecast rights and escrow the remaining payments amounts, there is no prejudice to the Movants from any delay in assumption or rejection of such agreements. In

---

[5] *See, e.g., In re Adelphia Commc'ns Corp.,* 291 B.R. 283, 293 (Bankr. S.D.N.Y. 2003); *In re G-I Holdings, Inc.*, 308 B.R. 196, 212–13 (Bankr. D.N.J. 2004).

[6] *In re Halo Wireless, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012); *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 (5th Cir. 1987); *In re Commonwealth Oil Refining Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986).

contrast, granting the Motions now could very well open up the floodgates to similar requests by countless other contract counterparties at a time when the Debtors should be focused on mission-critical matters, including the formulation of a viable business plan and a value-maximizing path forward in these chapter 11 cases for the benefit of all stakeholders.

5.      Given the size and complexities of the Debtors' chapter 11 cases and the importance of the Telecast Rights Agreements to the Debtors' business and ability to formulate a viable plan of reorganization, granting the Motions at this juncture would contravene the core rehabilitative purpose of chapter 11 and risk jeopardizing the Debtors' restructuring. Accordingly, the Ad Hoc Secured Group joins the Debtors in opposing the relief sought in the Motions. The Motions should be denied.

## **RESERVATION OF RIGHTS**

6.      The Ad Hoc Secured Group reserves all rights in connection with this Joinder, the Debtors' Objection, and the Motions and the matters raised therein, including, without limitation, the right to: (a) amend, modify, or supplement this Joinder; (b) raise further and other objections to the Motions; (c) submit briefing and/or introduce evidence, as applicable and appropriate; (d) respond to any additional arguments raised in any other responses to the Motions or at any hearing on the Motions and any other hearing concerning issues raised in connection with the Motions that may impact the Ad Hoc Secured Group's rights or remedies; (e) be heard before the Court and otherwise participate at such hearings; and (f) otherwise take any additional or further action with respect to the Motions, the hearing on the Motions, or the matters addressed therein. Nothing contained herein shall constitute a waiver of any of the Ad Hoc Secured Group's rights or remedies, each of which is expressly reserved.

Dated: May 1, 2023  
Houston, Texas

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ John D. Cornwell*
John D. Cornwell, Esq. (TX Bar No. 24050450)
Brenda L. Funk, Esq. (TX Bar No. 24012664)
700 Milam St, Ste 800
Houston, TX 77002
Telephone: (214) 855 7500
Facsimile: (214) 978 4375
Email: jcornwell@munsch.com
    bfunk@munsch.com

- and –

Scott J. Greenberg (admitted *pro hac vice*)
Jason Zachary Goldstein (admitted *pro hac vice*)
Matthew J. Williams (admitted *pro hac vice*)
C. Lee Wilson (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email: sgreenberg@gibsondunn.com
    jgoldstein@gibsondunn.com
    mjwilliams@gibsondunn.com
    clwilson@gibsondunn.com

*Attorneys for the Ad Hoc Secured Group*

5

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of May, 2023, a true and correct copy of the foregoing was served electronically through the Court's ECF transmission facilities on all parties registered to receive ECF notice in the above-captioned case.

>   */s/ John D. Cornwell*
>   John D. Cornwell
>   Texas Bar No. 24050450

4859-5815-3056v.1