IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | Case No. 23-90116 |
| Debtors. | (Jointly Administered) |
| DIAMOND SPORTS NET ARIZONA, LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. _____ |
| SUNS LEGACY PARTNERS, L.L.C., GRAY TELEVISION INC., and KISWE MOBILE INC., | |
| Defendants. | |

**COMPLAINT FOR BREACH OF CONTRACT, TORTIOUS INTERFERENCE, AND DECLARATORY JUDGMENT**

Debtor Diamond Sports Net Arizona, LLC (f/k/a Fox Sports Net Arizona, LLC) ("Diamond Arizona"), hereby files this Complaint for Breach of Contract, Tortious Interference, and Declaratory Judgment against Suns Legacy Partners, L.L.C. (the "Suns"), Gray Television Inc. ("Gray"), and Kiswe Mobile Inc. ("Kiswe"), and each of their respective affiliates, and alleges as follows:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

## INTRODUCTION

1. Through this adversary proceeding, Diamond Arizona seeks to enforce the plain and unambiguous terms of the telecast rights agreement between Diamond Arizona and the Suns (the "Agreement" or "Agmt."). Diamond Arizona further seeks to hold Gray and Kiswe accountable for their tortious interference with the Agreement.

2. The relief requested in this Complaint is essential to preventing Defendants' interference with a key asset of Diamond Arizona's estate, namely its ability to exercise its contractually bargained-for rights, and goes directly to the fundamental protections afforded under the Bankruptcy Code.

3. Under the Agreement, which remains in effect, Diamond Arizona is the "sole and exclusive holder" of the Suns' television distribution rights. Diamond Arizona has been engaged in discussions with the Suns regarding negotiating a new rights agreement. The Suns recently made a final written offer to Diamond Arizona on October 14, 2022. While declining that offer, Diamond Arizona made clear its desire to continue negotiating an extension of the deal.

4. Despite that—and with full knowledge not only of the Agreement with Diamond Arizona, but also of Diamond Arizona's bankruptcy and the automatic stay—Gray and Kiswe approached the Suns with an offer for the Suns' television distribution rights (the "Replacement Offer"). The Suns, Gray, and Kiswe then intentionally finalized and announced a partnership without consultation with Diamond Arizona (the "Replacement Agreement"). In so doing, the Suns breached the Agreement, and Gray and Kiswe interfered with Diamond Arizona's important backend rights under the Agreement, including Diamond Arizona's right of first refusal. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Agmt. § 21(a) and (b). Diamond Arizona's right of first refusal would apply to the

deal proposed by Gray and Kiswe and accepted by the Suns. Yet Diamond Arizona was given barely any notice at all, let alone an opportunity to evaluate or accept Gray and Kiswe's Replacement Offer as required, before the Suns, Gray, and Kiswe announced the Replacement Agreement with the Suns, in clear disregard of the Agreement.

5.  In short, the Suns failed to comply with the terms of the Agreement, and Gray and Kiswe intentionally and tortiously interfered with the Agreement. Despite Defendants' knowledge of Diamond Arizona's chapter 11 case and its rights under the Agreement, Defendants seek to take advantage of Diamond Arizona's precarious financial situation and usurp both Diamond Arizona's rights under the Agreement and the protections afforded by the Bankruptcy Court's automatic stay.

6.  Accordingly, the Suns should be held accountable for breaching the Agreement, and Gray and Kiswe should be held accountable for their intentional interference with the Agreement. Defendants should be prevented from further damaging Diamond Arizona and its bankruptcy estate.

7.  In furtherance of this Complaint, Diamond Arizona is separately filing an emergency motion to compel the Suns to perform under the Agreement.

## PARTIES

8.  Plaintiff Diamond Arizona is a broadcaster of local sports for its local region, including Arizona. Diamond Arizona also allows subscribers to stream sports through a direct-to-consumer ("DTC") product, the Bally Sports+ app.

9.  Defendant the Suns is the owner of the Phoenix Suns, a professional basketball team based in Phoenix, Arizona.

10. Defendant Gray is a television broadcasting company based in Atlanta, Georgia, which owns "over the air" television stations. Gray is a competitor of Diamond Arizona.

11. Defendant Kiswe is an interactive video company based in New Providence, New Jersey, which has built a DTC product to allow subscribers to stream sports. Kiswe is a competitor of Diamond Arizona.

## JURISDICTION AND VENUE

12. In this adversary proceeding, Diamond Arizona seeks: (a) damages in connection with the Suns' breach of the Agreement; (b) damages, including punitive damages, and injunctive relief in connection with Gray and Kiswe's tortious interference with the Agreement; (c) a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that the Suns have breached the Agreement and that any attempt by the Gray and Kiswe to enter into an agreement with the Suns would constitute tortious interference with the Agreement; and (d) an order granting such other further relief as the Court may deem just and proper.

13. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure and Rule 7008-1 of the Bankruptcy Local Rules for the Southern District of Texas, Diamond Arizona consents to the entry of final orders or judgment by the Court in connection with this adversary proceeding if it is determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

14. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

I. **Diamond Arizona and the Suns Enter Into the Agreement**

15. On January 21, 2011, Diamond Arizona entered into the Agreement with the Suns, a copy of which is attached to the *Declaration of Gregory F. Laufer* (the "Laufer Declaration" or "Laufer Decl."), filed contemporaneously herewith, as **Exhibit A**. The term of the Agreement is

12 years inclusive of the 2022–2023 NBA season, which is ongoing. Under the Agreement, Diamond Arizona is the "sole and exclusive holder" of the Suns' Standard Television and Non-Standard Distribution rights during the term of the Agreement. Agmt. § 6. The Agreement remains in effect. Diamond Arizona has made all rights fee payments required under the Agreement. *See* Agmt. § 8.

16. The Agreement includes a comprehensive set of backend rights in favor of Diamond Arizona, including a right of first refusal. The right of first refusal provides as follows:

a. ██████████████████████████████████ (the "Negotiation Period"). Agmt. § 21(a).

b. ██████████████████████████████████ (the "Team Final Offer"). Agmt. § 21(b)(i).

c. ██████████████████████████████████ (the "Non-Cash Consideration"), ██████████ (the "Cash Equivalent") Agmt. § 21(b)(ii).

d. ██████████████████████ a "Less Favorable Offer"), ██████████████████████ Agmt. § 21(b)(ii).

5



                                Agmt. § 21(b)(iii).

        e. [redacted] Agmt. § 21(b)(iii).

17. The right of first refusal and the other covenants granted by Section 21 of the Agreement are material, as they are critical and highly valuable contractual rights for which Diamond Arizona bargained when it entered into the Agreement.

18. The Suns and Diamond Arizona have for months been engaged in discussions regarding the renewal of the Agreement. To that end, the Suns delivered their Team Final Offer to Diamond Arizona on October 14, 2022. Diamond Arizona decided not to accept the Team Final Offer, but has nevertheless expressly told the Suns that it would like to continue negotiating with them to find a pathway to continue the 12-year partnership.[2]

II. **Diamond Arizona Files for Bankruptcy**

19. On March 14, 2023, Diamond Arizona filed for Chapter 11 bankruptcy, pursuant to which an automatic stay went into place.

20. Diamond Arizona's filing was widely reported, as its indirect parent, Diamond Sports Group, LLC, is the largest owner of regional sports networks ("RSNs") in the country.[3]

---

[2] *See* Email correspondence from Diamond Arizona to the Suns dated October 24, 2022, attached to the Laufer Declaration as **Exhibit B** ("It is [Diamond Arizona's] true desire to find a pathway that leads to a continuation of our great partnership. We look forward to continuing our discussions.").

[3] *See, e.g.*, ESPN news article published on March 14, 2023 (https://www.espn.com/mlb/story/_/id/35860875/diamond-owner-rsns-40-plus-teams-files-bankruptcy), attached to the Laufer Declaration as **Exhibit C**.

21. Under these circumstances, the Suns, Gray, and Kiswe were undoubtedly aware of the filing, the automatic stay, and the implications that their actions would have on Diamond Arizona's precarious financial circumstances.

### III. The Suns Breach the Agreement by Entering Into a New Partnership With Gray and Kiswe

22. On April 19, 2023, the Suns sent Diamond Arizona a letter, attached to the Laufer Declaration as **Exhibit D**, which informed Diamond Arizona of the Suns' receipt of the Replacement Offer for the Suns' telecast rights from Gray and/or one or more of its affiliates and Kiswe and/or one or more of its affiliates. In that letter, the Suns expressed their intention to accept the Replacement Offer and explicitly stated that ███████████████████████████████████████████████████████████████████████████████████████████████████████

23. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

24. On April 25, 2023, Diamond Arizona timely responded to the Suns within five business days of the receipt of the Replacement Offer. Diamond Arizona's response letter, attached to the Laufer Declaration as **Exhibit E**, confirmed Diamond Arizona's position that ███████████████████████████████████████████████████████████████████

7

██████████████████████████████████████████████████████████

██████████████████████████████████████

25. Without engaging in any discussion with Diamond Arizona regarding ███████ ██████████████████████ for the Replacement Offer, on April 27, 2023, the Suns notified Diamond Arizona that it planned to announce their new partnership with Gray and Kiswe the next day (April 28, 2023).

IV. **Diamond Arizona Attempts Reconciliation But Is Refused**

26. On the same day, Diamond Arizona, through its counsel, promptly sent letters to the Suns and Gray, attached to the Laufer Declaration as **Exhibit F** and **Exhibit G**, respectively, demanding (a) that the Suns and Gray immediately cease and desist from entering into and announcing a new deal and (b) that the Suns comply with their obligations under the Agreement. Diamond Arizona made it clear in both letters that it viewed the actions of the Suns and Gray as a willful violation of the automatic stay and, in Gray's case, also a tortious interference with Diamond Arizona's Agreement with the Suns. Diamond Arizona also made clear that it would be prepared to enforce the automatic stay against both the Suns and Gray if they refused to comply with Diamond Arizona's requests.

27. Despite Diamond Arizona's attempt to resolve this matter consensually, the Suns and Gray ignored Diamond Arizona's requests and made an announcement of their new partnership (along with Kiswe) on April 28, 2023.[4] In their press release, the Suns tacitly admitted that they had potential obligations to Diamond Arizona, noting that the Replacement Agreement is "subject to any required resolution with the incumbent regional sports partner" (*i.e.*, Diamond

---

[4] *See* Press release issued by the Suns regarding the Replacement Agreement, attached to the Laufer Declaration as **Exhibit H**.

Arizona). In response to the Debtors' assertions about their contractual rights, however, the Suns' CEO Josh Bartelstein made crystal-clear that the Suns were moving forward with the Replacement Offer, notwithstanding their prior caveats about Diamond Arizona's rights.[5] The Suns' actions willfully disregarded the automatic stay and Diamond Arizona's contractual rights.

28. Also on April 28, 2023, Gray, through its counsel, sent a letter to Diamond Arizona, attached to the Laufer Declaration as **Exhibit J**, summarily denying any liability for the stay violation and tortious interference by referring to the supposed effectiveness condition precedent for the Replacement Agreement that requires "resolution with [Diamond Arizona]." Gray, however, failed to provide any substantive description that explains how such conditionality works or to disclose the relevant provisions in the Replacement Agreement supposedly reflecting that conditionality. In response, counsel for Diamond Arizona sent an email to counsel for Gray on April 29, 2023, attached to the Laufer Declaration as **Exhibit K**, requesting that Gray share with Diamond Arizona the agreement that reflects the referenced conditionality. As of May 2, 2023, Gray has not provided any response to Diamond Arizona's request. Gray has thus failed to justify its continued willful disregard of the automatic stay.

V. **Gray and Kiswe Intentionally and Improperly Violated Diamond Arizona's Rights**

29. The Suns, Gray, and Kiswe knew of Diamond Arizona's Chapter 11 filing and of the existence of the Agreement. By entering into and announcing the Replacement Agreement, without permitting Diamond Arizona the right of first refusal, the Suns, Gray, and Kiswe seek to

---

[5] *See Arizona Republic* article quoting both Diamond Arizona's statement regarding the Replacement Agreement and Mr. Bartelstein's response (https://www.azcentral.com/story/sports/nba/suns/2023/04/28/suns-say-diamond-sports-group-totally-inaccurate-on-breach-of-contract-claims/70162949007), attached to the Laufer Declaration as **Exhibit I**.

9

improperly and intentionally take advantage of Diamond Arizona's weakened financial state and subvert its rights pursuant to the Agreement.

30. Gray and Kiswe were founded in 1946 and 2013, respectively, and are both intimately involved in the sports broadcasting space. The Suns, Gray, and Kiswe were aware of at least the following facts, which evidences their intent and improper conduct.

31. First, since 2011, Diamond Arizona has been broadcasting the games of the Phoenix Suns. The Suns games averaged 32,692 households per game in the Phoenix area, which was eighth-highest among Diamond Sports Group's RSNs.[6]

32. Second, Diamond Arizona's financial health was in a precarious state, as evidenced by its widely publicized filing for Chapter 11 bankruptcy and the automatic stay that issued pursuant to that filing. The automatic stay was meant to protect Diamond Arizona's property rights, including its rights under the Agreement, and its rights from predatory competitors, like Gray and Kiswe, that might try to improperly take advantage of Diamond Arizona.

33. Third, the Suns, Gray, and Kiswe knew of the Agreement and the contractual obligations imposed. In fact, the Suns' press release explicitly stated that the Replacement Agreement with Gray and Kiswe was supposedly "subject to any required resolutions with the incumbent regional sports partner" (*i.e.*, Diamond Arizona). Gray and Kiswe were therefore aware that there are "required resolutions," namely Diamond Arizona's right of first refusal, and still entered into the Replacement Agreement.

34. Fourth, the Suns, Gray, and Kiswe, aware of the Suns' duties to comply with the Agreement and the Bankruptcy Court's automatic stay, nevertheless decided to enter into the

---

[6] *See Sportico* article published on April 28, 2023 (https://www.sportico.com/business/media/2023/phoenix-suns-local-media-deals-1234720912), attached to the Laufer Declaration as **Exhibit L**.

10

Replacement Agreement and announce it without first coming to this Court to seek relief from the automatic stay.

35. Fifth, despite the Suns, Gray, and Kiswe's awareness of the Agreement and the automatic stay, they failed to inform Diamond Arizona of their engagement or negotiations, instead preferring to blindside Diamond Arizona through a letter sent by the Suns a few days prior to the public announcement of the Replacement Agreement.

36. Sixth, Gray reached out to at least one of the Debtors' major distribution partners shortly after the announcement of the Replacement Agreement and claimed that Gray was now "the new owner of the Suns' rights." These actions demonstrate that Gray is knowingly acting to exercise control over property of Diamond Arizona's bankruptcy estate.

### VI. Public Reaction to the Suns, Gray, and Kiswe's Announcement Confirms the Harm Done to Diamond Arizona

37. Shortly after the Suns, Gray, and Kiswe's announcement, various news outlets quickly recognized the damage that the Replacement Agreement would do to Diamond Arizona in their reporting on the implications of the deal.

38. For example, both *The Washington Post* and *Broadcasting & Cable* observed that the Suns, Gray, and Kiswe's announcement came amidst Diamond Arizona's bankruptcy filing and at a time when Diamond Arizona and other RSNs had already been losing subscribers on cable and satellite, including due to cord-cutting.[7]

39. Despite Diamond Arizona's multiple attempts to re-engage with the Suns and inform them, Gray, and Kiswe of the implications of their action, the Suns CEO Josh Bartelstein

---

[7] *See Washington Post* news article (https://www.washingtonpost.com/sports/2023/04/28/suns-mercury-tv-deal/), attached to the Laufer Declaration as **Exhibit M**; *Broadcasting and Cable* news article (https://www.nexttv.com/news/phoenix-suns-fastbreak-to-broadcast-with-gray-from-bankrupt-bally-rsn), attached to the Laufer Declaration as **Exhibit N**.

issued a statement committing to leaving Diamond Arizona behind and stating, "We are moving forward with this deal and could not be more excited about what it means for our fans and our future."[8]

## RELIEF REQUESTED

### Count I: Breach of Contract as to the Suns

40. Diamond Arizona incorporates the preceding paragraphs as if fully set forth herein.

41. The Agreement constitutes a valid, prepetition executory telecast rights contact under which the Suns are obligated to continue performing.

42. Diamond Arizona has made all required rights fee payments and has otherwise performed its obligations under the Agreement.

43. The Suns materially and willfully breached the Agreement by accepting and announcing the Replacement Offer. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Entering into the Replacement Agreement with Gray and Kiswe without permitting Diamond Arizona to exercise its right of first refusal and other backend rights as provided by the Agreement therefore constitutes a material breach of the Agreement and an Event of Default under Section 29(b) of the Agreement.

44. This breach has damaged Diamond Arizona and the bankruptcy estate by, at a minimum, preventing Diamond Arizona the opportunity to consider the Replacement Offer, a contractual right bargained for when Diamond Arizona entered into the Agreement.

---

[8] *See* Laufer Decl. Ex. I.

**Count II: Tortious Interference With Contract as to Gray and Kiswe**

45. Diamond Arizona incorporates the preceding paragraphs as if fully set forth herein.

46. The Agreement constitutes a valid, prepetition executory telecast rights contract under which the Suns are obligated to continue performing.

47. Gray and Kiswe were unequivocally on notice of the Agreement and the parties' rights and obligations thereunder, as well as on notice of the automatic stay. Both are competitors of Diamond Arizona in what is a relatively concentrated industry, and obviously know who the other major players are.

48. Further, the press release by the Suns acknowledged that the new media rights agreement between the Suns, Gray, and Kiswe "is subject to any required resolutions with the incumbent regional sports partner" (*i.e.*, Diamond Arizona), thereby confirming the parties' awareness of Diamond Arizona's rights under the Agreement.

49. Even before April 28, 2023, Gray and Kiswe were on notice of Diamond Arizona's rights, including because Diamond Arizona had broadcast the Suns' games and because Diamond Arizona has filed pleadings in these highly publicized chapter 11 cases noting that they have agreements with, among others, the Suns.

50. To the extent that such public notice was insufficient, Gray and Kiswe were certainly put on notice no later than April 27, 2023, when Diamond Arizona sent Gray and the Suns separate letters demanding that they stand down and refrain from entering into a new deal with one another. *See* Laufer Decl. Ex. G. The April 27, 2023, letter also specifically reminded the Suns and Gray that Diamond Arizona was a Debtor under these Chapter 11 cases and was subject to the protection of the automatic stay.

51. Despite Gray and Kiswe's knowledge of this Agreement, including their knowledge that the Agreement provides Diamond Arizona with a right of first refusal as to the

13

Replacement Offer, Gray and Kiswe decided to intentionally induce the Suns to enter into a separate agreement in violation of the Agreement.

52. Gray and Kiswe's interference with the Agreement and their decision to continue to enter into the Replacement Agreement with the Suns, notwithstanding their knowledge, directly caused the Suns to breach the Agreement and constitutes intentional interference with the Agreement.

53. Gray and Kiswe's actions threaten both Diamond Arizona's estate and its reorganization prospects. For these reasons, enforcement of the automatic stay or, alternatively, separate injunctive relief is appropriate in this case, and both Gray and Kiswe should be enjoined from taking any action to interfere with the obligations set forth in the Agreement.

54. By entering into a new partnership with the Suns and causing the Suns to breach the Agreement, Gray and Kiswe are acting improperly. In particular, Gray and Kiswe are attempting to benefit at the expense of Diamond Arizona, knowing that Diamond Arizona is in a precarious financial situation, and also knowing of the existence of the Agreement between Diamond Arizona and the Suns and of the Suns' obligations under the Agreement.

55. Diamond Arizona respectfully requests that the Court award damages in an amount to be determined as well as any appropriate equitable relief the Court deems necessary.

### Count III: Declaratory Relief

56. Diamond Arizona incorporates the preceding paragraphs as if fully set forth herein.

57. Diamond Arizona brings this cause of action to obtain a declaration that the Suns' acceptance and announcement of the Replacement Offer constitute a breach of the Agreement, and that any attempt by the Gray and Kiswe to enter into an agreement with the Suns pursuant to the Replacement Offer without permitting Diamond Arizona a right of first refusal and abiding by

Diamond Arizona's other rights under the Agreement would constitute tortious interference with the Agreement.

58. An actual, justiciable controversy exists between Diamond Arizona and Gray and Kiswe as to whether Gray and Kiswe are obligated to abide by the terms of the Agreement and permit Diamond Arizona a right of first refusal as to the Replacement Offer. Accordingly, this Court has the power to adjudicate the rights of the parties with respect to this controversy and should grant declaratory relief under 28 U.S.C. § 2201.

WHEREFORE Diamond Arizona respectfully requests that this Court: (a) award damages in connection with the Suns' breach of the Agreement; (b) award damages and injunctive relief in connection with the Gray and Kiswe's tortious interference with the Agreement; (c) declare that any attempt by Gray and Kiswe to enter into an agreement with the Suns without permitting Diamond Arizona the right of first refusal and its other rights under the Agreement would constitute tortious interference with the Agreement; and (d) grant such other further relief as the Court may deem just and proper.

May 3, 2023                                              Respectfully submitted,

                                              By: */s/ John F. Higgins*
**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
Bryan L. Rochelle (TX Bar No. 24107979)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
brochelle@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Brian S. Hermann (admitted *pro hac vice*)
Andrew M. Parlen (admitted *pro hac vice*)
Gregory F. Laufer (admitted *pro hac vice*)
William A. Clareman (admitted *pro hac vice*)
Randy Luskey (admitted *pro hac vice*)
Joseph M. Graham (admitted *pro hac vice*)
Alice Nofzinger (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
bhermann@paulweiss.com
aparlen@paulweiss.com
glaufer@paulweiss.com
wclareman@paulweiss.com
rluskey@paulweiss.com
jgraham@paulweiss.com
anofzinger@paulweiss.com

*Proposed Counsel to Plaintiff Diamond Sports Net Arizona, LLC*