**UNITED STATES BANKRUPTCY COURT**

**Southern District of Texas**

| | |
|---|---|
| <u>In re</u> ) | Chapter 11 |
| ) | |
| Diamond Sports Group, LLC, et al., ) | Case No 23-90116 (CML) |
| Debtors. ) | (Jointly Administered) |
| ) | |

**STATEMENT OF FINANCIAL AFFAIRS FOR**

**Diamond West Holdings, LLC**

**Case No: 23-90133 (CML)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) Case No. 23-90116 (CML) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**GLOBAL NOTES AND STATEMENTS OF LIMITATIONS,
METHODOLOGY, AND DISCLAIMERS REGARDING DEBTORS' SCHEDULES
OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

### Introduction

The Schedules of Assets and Liabilities (collectively, the "Schedules") and Statements of Financial Affairs (collectively, the "Statements" and, together with the Schedules, the "Schedules and Statements") filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"), were prepared in accordance with section 521 of title 11 of the United States Code (the "Bankruptcy Code"), rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 1007-1 of the Bankruptcy Local Rules for the Southern District of Texas by the Debtors' management, with the assistance of the Debtors' professional advisors, and the Schedules and Statements are unaudited.

The Schedules and Statements have been signed by David F. DeVoe, Jr., Chief Financial Officer of the Debtors and Chief Operating Officer of Diamond Sports Group, LLC ("DSG"). Mr. DeVoe has not (nor could he have) personally verified the accuracy of each such statement and representation, including, for example, with respect to amounts owed to creditors, classification of such amounts, and their addresses. In addition, Mr. DeVoe has not (nor could he have) personally verified the completeness of the Schedules and Statements, nor the accuracy of any information contained therein. In reviewing and signing the Schedules and Statements, Mr. DeVoe necessarily relied upon various personnel of the Debtors and the Debtors' professional advisors and their experience, efforts, statements, and representations in connection therewith. Although management has made reasonable efforts to ensure that the Schedules and Statements are accurate and complete based upon information that was available to them at the time of preparation, inadvertent errors or omissions may exist. Discovery thereof may result in material changes to the Schedules and Statements.

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

These Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules and Statements (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of <u>all</u> of the Schedules and Statements. The Global Notes should be referred to and reviewed in connection with any review of the Schedules and Statements. The Global Notes supplement all specific notes contained in any Debtor's Schedules or Statements. Disclosure of information in one Schedule, Statement, exhibit, or continuation sheet, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, Statement, exhibit, or continuation sheet.

**The Schedules, Statements, and Global Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors.**

<u>**Global Notes and Overview of Methodology**</u>

1. **General Reservation of Rights**. Although the Debtors' management has made every reasonable effort to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances and based on information that was available to it at the time of preparation, inadvertent errors or omissions may have occurred, some of which may be material. Subsequent information or discovery may result in material changes to the Schedules and Statements. Because the Schedules and Statements contain unaudited information, which remains subject to further review, verification, and potential adjustment, there can be no assurance that the Schedules and Statements do not contain errors or are complete. The Debtors reserve all rights to amend the Schedules and Statements from time to time in any and all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected in the Schedules and Statements as to amount, liability, or classification, or to otherwise subsequently designate any claim ("Claim") as "disputed," "contingent," or "unliquidated." Furthermore, nothing contained in the Schedules, Statements, and Global Notes shall constitute an admission of any claims or a waiver of any of the Debtors' rights with respect to these chapter 11 cases, including issues involving substantive consolidation, recharacterization, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws to recover assets or avoid transfers. The Debtors and their agents, attorneys, and advisors expressly do not undertake any obligation to update, modify, revise, or recategorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or recategorized, except as required by applicable law or order of the Court. No specific reservation of rights contained elsewhere in the Global Notes shall limit in any respect the general reservation of rights contained in this paragraph.

2. **Description of Cases and "As of" Information Date**. On March 14 and 15, 2023 (as applicable to each Debtor, the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Court. The Debtors' chapter 11 cases are jointly administered for procedural purposes only pursuant to an order entered by the Court on March 15, 2023 [Docket No. 28]. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  Unless otherwise stated herein, liabilities are reported as of the Petition Date.

3.    **Basis of Presentation**.  The Schedules and Statements are intended to reflect the assets and liabilities of separate Debtors and have been derived from the Debtors' books and records.  The Debtors, along with their wholly owned non-debtor subsidiaries, prepare financial statements for financial reporting purposes, which are audited annually, on a consolidated basis.  The Schedules and Statements, however, have not been audited.  The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles nor are they intended to be fully reconcilable to audited financial statements.  The Debtors reserve all rights relating to the legal ownership of assets and liabilities among the Debtors and nothing in the Schedules or Statements shall constitute a waiver or relinquishment of such rights.

4.    **Payments**.  The Debtors' business and financial affairs are complex.  Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses (the "Cash Management System"), as described in the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts and (B) Continue to Perform Intercompany Transactions, and (II) Granting Related Relief* [Docket No. 14] (the "Cash Management Motion").  Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, as is necessary or appropriate.  Payments made are listed by the legal entity making such payment notwithstanding that such payments may have been made on behalf of another legal entity.

5.    **Totals**.  All totals that are included in the Schedules and Statements represent totals of all known amounts included in the Debtors' books and records.  To the extent there are unknown or undetermined amounts, the actual totals may be different than the listed total, and the difference may be material.  In addition, the amounts shown for total liabilities exclude items identified as "unknown," "disputed," "contingent," "unliquidated," or "undetermined," and, thus, ultimate liability amounts may be materially larger than as stated in the Schedules and Statements.  To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in the Schedules are inclusive of each Debtor's guarantor obligations.

6.    **Excluded Assets and Liabilities**.  The Debtors have excluded certain categories of assets (including goodwill, intangibles, certain prepaid and other current assets considered to have no market value, and certain contingent assets such as insurance recoveries) and liabilities (including certain accrued liabilities, such as accrued employee compensation and benefits, certain customer accruals, tax accruals, accrued accounts payable, accrued contract termination damages, deferred income accruals, litigation accruals, and certain deposits) from the Schedules and Statements.  The Debtors have also excluded potential Claims arising on account of the potential rejection of executory contracts and unexpired

leases, to the extent such Claims exist. Further, certain immaterial assets and liabilities may have been excluded.

7.  **References**.  References to applicable loan agreements, indentures, and related documents are necessary for a complete description of the collateral and the nature, extent, and priority of liens and/or claims.  Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of any such agreement.

8.  **Fiscal Year**.  Each Debtor's fiscal year ends on December 31.

9.  **Currency**.  All amounts are reflected in U.S. dollars.

10. **Book Value**.  Unless otherwise indicated, the Debtors' assets are shown on the basis of their net book values as of February 28, 2023, and the Debtors' liabilities are shown on the basis of their net book values as of the Petition Date.  Thus, unless otherwise noted, the Schedules and Statements reflect the carrying value of the assets and liabilities as recorded on the Debtors' books.  Net book values may vary, sometimes materially, from market values.  The Debtors do not intend to amend the Schedules and Statements to reflect market values.  The book values of certain assets may materially differ from their fair market values and/or values used in any liquidation analysis prepared in connection with the Debtors' chapter 11 cases.

11. **Paid Claims**.  The Court authorized the Debtors to pay certain outstanding prepetition Claims—including, but not limited to, payments to employees, customers, taxing authorities, cash management banks, and certain vendors—pursuant to various "first day" orders entered by the Court.  Accordingly, certain outstanding liabilities as of the Petition Date have been reduced by postpetition payments made on account of prepetition liabilities.  Where the Schedules list creditors and set forth the Debtors' scheduled amount of such Claims, such scheduled amounts reflect amounts owed as of the Petition Date, adjusted for any postpetition payments made pursuant to the authority granted to the Debtors by the Court.  To the extent the Debtors later pay any of the Claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or take other action, such as filing Claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities.

12. **Recharacterization**.  Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize, or designate certain Claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized, or designated certain items.  The Debtors reserve all rights to recharacterize, reclassify, recategorize, or re-designate items reported in the Schedules and Statements at a later time as they determine to be necessary and appropriate.

13. **Claims of Third-Party Entities**.  Although the Debtors have made reasonable efforts to classify properly each Claim listed in the Schedules as being either disputed or

undisputed, liquidated or unliquidated, and/or contingent or non-contingent, the Debtors have not been able to fully reconcile all payments made to certain third-party entities on account of the Debtors' obligations to both such entity and its affiliates. Therefore, to the extent that the Debtors have classified their estimate of Claims of a creditor as disputed, for example, all Claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered disputed, whether or not they are individually designated as such.

14.    **Interests in Subsidiaries and Affiliates**. DSG is the sole and direct owner of each of Diamond Sports Net, LLC ("<u>DSN</u>"), Sports Network II, LLC, Sports Network, LLC, Diamond Digital Group, LLC, and Diamond Gaming Services, LLC, all of which are Debtors. DSN directly or indirectly owns all of the equity interests in the remaining Debtors. Interests in subsidiaries include stock ownership interests, membership interests, and partnership interests. Each Debtor's Schedule A/B 15 or Statement 25 reflects its ownership interests, if any, in subsidiaries and affiliates. Assets such as investments in subsidiaries are listed with undetermined amounts as of the Petition Date because the book values may materially differ from fair market values.

15.    **Allocation of Liabilities Between Periods**. The Debtors allocated liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and postpetition periods may change. The Debtors reserve the right to, but are not required to, amend the Schedules and Statements as they deem appropriate to reflect this.

16.    **Potential 503(b)(9) Claims**. The liabilities listed on the Schedules and Statements do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's Claim.

17.    **Guarantees and Other Secondary Liability Claims**. Where guarantees or similar secondary liability claims have been identified, they have been included in the relevant liability Schedule for the Debtor or Debtors affected by such obligation. The Debtors have also listed such obligations related to funded debt or debt for borrowed money on the applicable Schedule H. It is possible that certain such obligations embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted. The Debtors reserve their rights (but expressly do not undertake any obligation) to amend the Schedules to the extent that additional guarantees or similar obligations are identified or such guarantees are discovered to have expired or be unenforceable.

18.    **Intercompany Claims**. Receivables and payables among and between the Debtors and (a) other Debtors or (b) their non-debtor affiliates, are reported on Schedule A/B and Schedule E/F, respectively, per the Debtors' unaudited books and records. As described

more fully in the Cash Management Motion, the Debtors engage in a range of intercompany transactions in the ordinary course of business. Pursuant to the *Final Order (I) Authorizing the Debtors to (A Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts and (B) Continue to Perform Intercompany Transactions, and (II) Granting Related Relief* [Docket No. 384] (the "Cash Management Order"), the Court has granted the Debtors authority to continue to engage in intercompany transactions in the ordinary course of business subject to certain limitations set forth therein. Intercompany balances as set forth on Schedules A/B and E/F are as of February 28, 2023. The Debtors transitioned to a new accounting software system in February 2020 and, as a result, the intercompany balances reported in the Schedules and Statements generally reflect intercompany activity among the Debtors from February 2020 forward. Certain intercompany activity that occurred prior to that period may also be included.

The listing of any amounts with respect to intercompany receivables and payables is not, and should not be construed as, an admission of the characterization of such balances as debt, equity, or otherwise, or an admission as to the validity of such receivables and payables. For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables, including, but not limited to, with respect to the characterization of intercompany claims, loans, and notes. Without limiting the generality of the foregoing, certain intercompany receivables and payables among and between the Debtors have been consolidated and netted in the Debtors' books and records. Such treatment is not, and should not be construed as, an admission or conclusion of the Debtors regarding the allowance, classification, or characterization of the amount and/or validity or priority of any such intercompany receivables and payables or the validity of any netting or offsets per the Debtors' books and records. The Debtors take no position in these Schedules and Statements as to whether any such amounts would be allowed as a claim or an interest, or not all allowed at all. The listing of these amounts is not necessarily indicative of the ultimate recovery, if any, on any intercompany receivable or the value or claim status of any intercompany liability account. The Debtors reserve all rights to later change the amounts, characterization, classification, categorization, or designation of all intercompany accounts reported in the Schedules and Statements.

19. **Intellectual Property Rights**. Exclusion of certain intellectual property shall not be construed to be an admission that any rights to such intellectual property have been abandoned, terminated or expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property shall not be construed to be an admission that any rights to such intellectual property have not been abandoned, have not been terminated or expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. The Debtors have made significant efforts to attribute intellectual property to the rightful Debtor owner. In some instances, however, intellectual property owned by one Debtor may, in fact, be owned by another. Accordingly, the Debtors reserve all of their rights with respect to the ownership and legal status of any and all such intellectual property rights.

20.    **Executory Contracts and Unexpired Leases**.  The Debtors' executory contracts and unexpired leases have been set forth in Schedule G.  The Debtors have not, however, included executory contracts or unexpired leases as assets in the Schedules and Statements.  For the avoidance of doubt, despite such exclusion, executory contracts and unexpired leases are assets of the applicable Debtor(s) party to such contracts or leases, as applicable.  In addition, while the Debtors have made diligent attempts to properly identify all executory contracts and unexpired leases, inadvertent errors, omissions, or over-inclusion may have occurred.

21.    **Umbrella or Master Agreements**.  Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors.  Where applicable, such agreements may have been listed in the Schedules and Statements of only the Debtor that signed the original umbrella or master agreement.

22.    **Claims Designation**.  Schedules D, E, and F permit each of the Debtors to designate a Claim as "disputed," "contingent," and/or "unliquidated."  Any failure to designate a Claim on a given Debtor's Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent," or "unliquidated" or that such Claim is not subject to objection.  The Debtors reserve all rights to dispute any Claim reflected on their respective Schedules and Statements on any grounds, including, without limitation, liability or classification, or to otherwise subsequently designate such Claims as "disputed," "contingent," or "unliquidated."  In addition, the Debtors reserve their rights to object to any listed Claim on the grounds that, among other things, the Claim has already been satisfied.

23.    **Causes of Action**.  Despite their reasonable efforts, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant non-bankruptcy laws to recover assets.  The Debtors reserve all of their rights for any claims, causes of action, or avoidance actions they may have, and nothing included in either these Global Notes or the Schedules and Statements shall be deemed a waiver of any such potential or actual claims or causes of action or in any way prejudice or impair the assertion thereof.

As set forth in the First Day Declaration [Docket No. 26], the Claims Analysis Subcommittee (as defined in the First Day Declaration) is conducting an independent investigation of potential claims and causes of action the Debtors may have against Sinclair Broadcast Group, Inc. and/or its affiliates (collectively, "Sinclair") and other third parties, which investigation is ongoing.  In connection with such investigation, the Debtors have included in the Schedules and Statements for each of the Debtors a contingent, unliquidated, and disputed claim against Sinclair and other third parties.  The identification of potential claims against Sinclair or any other third party does not constitute any admission, conclusion, or waiver in any respect, and the Debtors reserve all rights with respect to any potential claims and causes of action, including to identify with specificity the plaintiffs and defendants to be named with respect to the subject claims and causes of actions.

24. **Undetermined Claim Amounts**.  Claim amounts that could not readily be quantified by the Debtors are scheduled as "unknown," "TBD," or "undetermined."  The description of an amount as "unknown," "TBD," or "undetermined" is not intended to reflect upon the materiality of such amount.

25. **Unliquidated Claim Amounts**.  Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

26. **Asset Valuation**.  In general, current market valuations of assets are not maintained by or readily available to the Debtors.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations for all of their assets.  Accordingly, unless otherwise indicated, the Schedules and Statements generally reflect net book values.  Exceptions to this include operating cash, cash equivalents, and certain other assets.  Operating cash is presented as bank balances as of the Petition Date.  Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may vary materially from fair market values.  Amounts ultimately realized may vary from net book value (or other value so ascribed) and such variance may be material.  Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the value of each asset set forth herein.

27. **Liens**.  Property and equipment values included in the Schedules and Statements are presented without consideration of any liens that may attach (or have attached) to such property or equipment.

28. **Leases**.  The Debtors have not included in the Schedules and Statements the future obligations under any operating leases.  Additionally, the Debtors have not included in the Schedules any right-of-use operating lease assets or liabilities pursuant to FASB Accounting Standards Update 2016-2 because the Debtors do not possess any ownership interests in the corresponding property and believe that the addition of these items would be cumbersome and unnecessary for understanding the value of the Debtors' estates.  To the extent that there was a lease payment amount outstanding as of the Petition Date, such obligation has been included on Schedule E/F of the Schedules.

29. **Employee Addresses**.  Personal addresses of current and former employees and directors have been excluded from the Schedules and Statements, where applicable, consistent with the relief granted under the *Order (I) Authorizing the Debtors to (A) File a Consolidated List of Creditors, and the 30 Largest Unsecured Creditors, and (B) Redact Certain Personally Identifiable Information; (II) Approving the Form and Manner of Notifying Parties of the Commencement of These Chapter 11 Cases, and (III) Granting Related Relief* [Docket No. 155] (the "<u>Creditor Matrix Order</u>").  *See infra* ¶ 36.

30. **Insiders**.  For purposes of the Schedules and Statements, persons listed as "insiders" have been included for informational purposes only.  The Debtors do not take any position with respect to:  (a) such person's influence over the control of the Debtors; (b) the management responsibilities or functions of such individual; (c) the decision-making or corporate authority of such individual; or (d) whether such individual could

successfully argue that he, she, or it is not an "insider" under applicable law, including the federal securities laws, or with respect to any theories of liability or for any other purpose.  As such, the Debtors reserve all rights to dispute whether someone identified in response to questions in the Schedules and Statements is in fact an "insider" as defined in section 101(31) of the Bankruptcy Code.

31.     **Indemnification**.  The organizational documents of certain of the Debtors, including DSG, include indemnification provisions for the benefit of certain persons.  The Debtors have not made a determination as to whether any potentially indemnified persons are ineligible for indemnification, and all such persons are therefore listed on DSG's Schedule E/F.  To the extent that DSG has entered into separate agreements with current or former directors and officers to indemnify them in certain circumstances, such contracts are listed on DSG's Schedule G, even though the Debtors have not reached a determination as to whether any of the persons who are parties to these contracts are eligible for indemnification.  The Debtors reserve all rights with respect thereto, including the right to assert that such persons are not entitled to indemnification and that such agreements do not constitute executory contracts.

32.     **Estimates**.  In order to timely prepare and file the Schedules, management has made certain estimates and assumptions that affected the reported amounts of these assets and liabilities.  The Debtors reserve all rights to amend the reported amounts of assets and liability to reflect changes in those estimates or assumptions.

33.     **Credits and Adjustments**.  The amounts reflected as due to individual creditors for, among other things, goods, products, services, and taxes may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors.  The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

34.     **Setoffs**.  Certain of the Debtors' receivables are subject to certain setoffs and other similar adjustments during the ordinary course of business for various reasons, including, without limitation, intercompany transactions, pricing discrepancies, rebates and/or refunds to customers, and negotiations and/or disputes between the Debtors and their vendors and customers.  As described in more detail in the *Debtor's Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Maintain and Administer Their Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto and (II) Granting Related Relief* [Docket No. 11] (the "Customer Program Motion"), certain of the Debtors' agreements with distributors contain, among other things, reduction, rebate, and/or refund provisions triggered by certain events, such as the applicable Debtor failing to meet minimum thresholds for professional event telecasts throughout the year.  Additionally, certain commissions owed to third-party advertising agencies are subject to satisfaction via set-off against advertising sales revenue that has been collected by the third-party advertising agency in the ordinary course.  These offsets and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately.  Therefore, although such offsets and other similar rights may have been accounted for when certain amounts were included in the

Schedules, offsets are not independently accounted for, and as such, are excluded from the Schedules.

35.   **Global Notes Control**.  In the event that information in the Schedules and Statements is inconsistent with information in these Global Notes, the Global Notes shall control.

36.   **Confidentiality**.  There may be instances in the Schedules and Statements where the Debtors have deemed it necessary and appropriate to omit or redact from the public record certain information, such as names, addresses, contractual terms, or amounts.  The Debtors have generally done so because of an agreement between the Debtors and a third party, concerns of confidentiality or commercial sensitivity, or concerns for the privacy of, or otherwise preserving the confidentiality of, personally identifiable information (consistent with the relief granted under the Creditor Matrix Order).  The omissions and redactions are limited to only what is necessary to comply with applicable confidentiality obligations or to protect the Debtors or third parties.

## General Disclosures Applicable to Schedules

37.   **Classifications**.  Listing a Claim (a) on Schedule D as "secured," (b) on Schedule E/F as "priority," or (c) on Schedule E/F as "unsecured," or a contract on Schedule G as "executory" or "unexpired," does not in each case constitute an admission by the Debtors of the legal rights of the claimant, or a waiver of the Debtors' right to recharacterize or reclassify such Claim or contract.

38.   Schedule A/B – Real and Personal Property.

    a)   **Schedule A/B, Part 1 – Cash and Cash Equivalents**.  Details with respect to the Debtors' Cash Management System and bank accounts are provided in the Cash Management Motion and Cash Management Order.  The Debtors' cash balances are listed as of Petition Date and reflect bank balances.

    **Schedule A/B, Part 2 – Deposits and Prepayments**.  The Court, pursuant to the *Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures for Resolving Additional Adequate Assurance Requests, and (IV) Granting Related Relief* [Docket No. 153], authorized the Debtors to provide adequate assurance of payment for future utility services.  In addition, certain retainers or deposits for payments to professionals made by a certain Debtor entity may be subject to applicable allocation amongst the Debtors.

    Certain reported prepaid or amortized assets are listed in accordance with the Debtors' books and records.  The amounts listed in Part 2 do not necessarily reflect assets the Debtors will be able to monetize.  The amounts listed in Part 2 include, among other things, prepaid sports rights, leases, media operations costs licenses, temporary worker expenses, and other prepaid expenses.

b) **Schedule A/B, Part 3 – Accounts Receivable**.  The Debtors are unable to determine with certainty what amounts will actually be collected, and thus the Debtors' reported accounts receivable may include amounts that may be uncollectible.  Notwithstanding the foregoing, the Debtors have used reasonable efforts to exclude doubtful or uncollectible accounts.

c) **Schedule A/B, Part 4 – Investments**. Ownership interests in subsidiaries, partnerships, and joint ventures have been listed in Schedule A/B, Part 4 with undetermined amounts because the fair market value of such ownership is dependent on numerous variables and factors and may differ significantly from their net book value.  Sports Holding, LLC ("Sports Holding") holds 100 percent of the general partnership interests in ARC Holding, Ltd. ("ARC"), and DSN holds 100 percent of the limited partnership interests in ARC.  This ownership split has been reflected in Schedule A/B, Part 4 as a 99 percent overall ownership interest in ARC held by Sports Holding, LLC and a one percent overall ownership interest in ARC held by DSN.

d) **Schedule A/B, Part 7 – Office Furniture, Fixtures, and Equipment; and Collectibles**.  Dollar amounts are presented net of accumulated depreciation and other adjustments.

e) **Schedule A/B, Part 8 – Machinery, Equipment, and Vehicles**.  Amounts reflected are net of accumulated depreciation and other adjustments.

f) **Schedule A/B, Part 9 – Real Property**.  The Debtors do not own any real property.  Real property leases and leasehold interests are reflected at cost net of depreciation (as appropriate) on a straight-line basis over the estimated useful lives of the assets.

g) **Schedule A/B, Part 10 – Intangibles and Intellectual Property**.  The Debtors review goodwill and other intangible assets having indefinite lives for impairment annually or when events or changes in circumstances indicate the carrying value of these assets might exceed their current fair values.  For purposes of the Schedules, the Debtors have included intellectual property assets at net book value whenever applicable.  The Debtors have included goodwill and customer lists only at entities for which these assets are recorded on their books.  The exclusion of listing similar assets at additional Debtors should not be construed as an admission that other Debtors do not possess similar assets.

h) **Schedule A/B, Part 11 – All Other Assets**.  Dollar amounts are presented net of impairments and other adjustments.

    a. ***Items 74 and 75 – Causes of action against third parties (whether or not a lawsuit has been filed) and other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtors and rights to set off claims***.  The Debtors' failure to list any cause of action, claim, or right of any nature is not an admission that such cause

of action, claim, or right does not exist, and should not be construed as a waiver of such cause of action, claim, or right. Potential preference actions and/or fraudulent transfer actions were generally not listed because the Debtors have not completed their analysis of such potential claims. The potential estate claims and causes of action listed in Item 74 include (without limitation) potential claims against Sinclair and/or Steve Rosenberg related to a $343,979 payment made by Debtor DSN on July 29, 2022, to Mr. Rosenberg. Such payment was made on account of a reimbursement agreement between Sinclair and Mr. Rosenberg to which the Debtors are not a party.

b. ***Items 71 and 77 – Notes receivable; Other property of any kind not already listed***. The Debtors have included an intercompany loan owed by non-debtor affiliate RSNCO, LLC to Debtor DSN in Item 71. The Debtors have otherwise listed intercompany receivables in Item 77.

The Debtors have also included in Item 77 the unamortized value of current and long-term assets related to certain contracts for which the Debtors prepaid at the signing of the contract.

Certain of the Debtors hold season tickets with respect to certain sports teams. The associated assets are recorded as part of the "prepaid rights" asset in Part 2 "Deposits and Prepayments."

39. **Schedule D – Creditors Who Have Claims Secured by Property**. The Claims listed on Schedule D arose or were incurred on various dates; a determination of the date upon which each Claim arose or was incurred would be unduly burdensome and cost prohibitive. Accordingly, not all such dates are included for each Claim. All Claims listed on Schedule D, however, appear to have arisen or have been incurred before the Petition Date. Operating leases are listed on Schedule G.

Except as otherwise agreed pursuant to a stipulation or order entered by the Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset of a secured creditor listed on Schedule D of any Debtor. Moreover, although the Debtors have scheduled Claims of various creditors as secured Claims, the Debtors reserve all of their rights to dispute or challenge the secured nature of any such creditor's Claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's Claim. Further, while the Debtors have included the results of Uniform Commercial Code searches, the listing of such results is not, nor shall it be deemed, an admission as to the validity of any such lien. The descriptions provided in Schedule D are solely intended to be a summary and not an admission of liability. The Debtors made reasonable, good-faith efforts to include all known liens on Schedule D but may have inadvertently omitted an existing lien because of, among other things, the possibility that a lien may have been imposed after the Uniform Commercial Code searches were performed.

Although multiple parties hold portions of the Debtors' prepetition funded debt, only the applicable administrative agent or indenture trustee has been listed in Schedule D.

Except as specifically stated on Schedule D, real property lessors, utility companies, and other parties that may hold security deposits have not been listed on Schedule D.  The Debtors reserve their rights to amend Schedule D to the extent that the Debtors determine that any Claims associated with such agreements should be reported on Schedule D.

Moreover, the Debtors have not included on Schedule D parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights.

40.   **Schedule E/F - Creditors Who Have Unsecured Claims**.  The Debtors have not listed on Schedule E any wage or wage-related obligations which the Debtors have been granted authority to pay pursuant to the *Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages and Other Workforce Obligations and (B) Continue Workforce Benefits Programs and Pay Related Obligations, and (II) Granting Related Relief* [Docket No. 149].  The Debtors believe that all such Claims have been or will be satisfied in the ordinary course during these chapter 11 cases pursuant to the authority granted in such order.  Additionally, the Debtors do not believe that there are any wage or wage-related obligations owing to employees in excess of the priority cap under section 507(a)(4) of the Bankruptcy Code.

The Debtors have not listed on Schedule E any tax-related obligations which the Debtors have been granted authority to pay pursuant to the *Order (I) Authorizing the Payment of Certain Prepetition Taxes and Fees and (II) Granting Related Relief* [Docket No. 150].  The Debtors believe that all such Claims have been or will be satisfied in the ordinary course during these chapter 11 cases pursuant to the authority granted in such order.

The Debtors have used reasonable efforts to report all general unsecured Claims against the Debtors on Schedule E/F based upon the Debtors' books and records as of the Petition Date; however, inadvertent errors or omissions may have occurred.  The Claims listed on Schedule E/F arose or were incurred on various dates.  In certain instances, the date on which a Claim arose is an open issue of fact.  In addition, the Claims of individual creditors for, among other things, goods or services are listed as either the lower of the amounts invoiced by such creditor or the amounts entered on the Debtors' books and records and may not reflect credits, rebates, or allowances due from such creditors to the applicable Debtors.  The Claims and amounts listed in respect of certain trade payables may reflect payments by the Debtors pursuant to applicable "first day" and "second day" orders.  Certain Debtors may pay additional Claims listed on Schedule E/F during these chapter 11 cases pursuant to these and other orders of the Court and reserve all of their rights to update Schedule E/F to reflect such payments.  In addition, certain Claims listed on Schedule E/F may be entitled to priority under section 503(b)(9) of the Bankruptcy Code.

Schedule E/F also contains information regarding pending litigation involving the Debtors.  The dollar amount of potential Claims associated with any such pending litigation is listed as "undetermined" and marked as contingent, unliquidated, and

disputed in the Schedules and Statements.   Some of the litigation Claims listed on Schedule E/F may be subject to subordination pursuant to section 510 of the Bankruptcy Code.   Schedule E/F also includes potential or threatened legal disputes that are not formally recognized by an administrative, judicial, or other adjudicative forum due to certain procedural conditions that counterparties have yet to satisfy.

41.     **Schedule G – Executory Contracts and Unexpired Leases**.   While every effort has been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred.   Each lease and contract listed in Schedule G may include one or more ancillary documents, including any underlying assignment and assumption agreements, amendments, supplements, full and partial assignments, renewals, and partial releases. Certain of the leases and contracts listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal, and other miscellaneous rights.   Such rights, powers, duties, and obligations are not set forth on Schedule G.   In addition, the Debtors may have entered into various other types of agreements in the ordinary course of business, such as financing agreements, subordination, non-disturbance agreements, supplemental agreements, amendments/letter agreements, title agreements, and confidentiality agreements.   Such documents may not be set forth on Schedule G.   Certain of the contracts, agreements, and leases listed on Schedule G may have been entered into by more than one of the Debtors.   Further, the specific Debtor obligor to certain of the executory contracts could not be specifically ascertained in every circumstance.   In some cases, the same counterparty appears multiple times in Schedule G.   This multiple listing is to reflect distinct agreements between the applicable Debtor and such counterparty.   In such cases, the Debtors made their best efforts to determine the correct Debtor's schedule on which to list such executory contracts or unexpired leases.   Contracts, indentures, credit and financing agreements, and other debt documents related to the Debtors' funded debt or debt for borrowed money are not listed in Schedule G.   Certain of the executory contracts may not have been memorialized in writing and could be subject to dispute.   Certain contractual terms and other information with respect to certain of the Debtors' material contracts, including sports rights agreements and agreements with distributors, have been excluded from the Schedules and Statements, where applicable. *See supra* ¶ 36.

The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents.   Further, unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall include all final exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any executed agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed thereon.

The Debtors reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement

such Schedule as necessary.  Inclusion or exclusion of any agreement on Schedule G does not constitute an admission that such agreement is or is not an executory contract or unexpired lease, and the Debtors reserve all rights in that regard, including, that any agreement is not executory, has expired pursuant to its terms, or was terminated prepetition.

42.     **Schedule H – Codebtors**.  Although the Debtors have made every effort to ensure the accuracy of Schedule H, inadvertent errors, omissions, or inclusions may have occurred. The Debtors hereby reserve all rights to dispute the validity, status, and enforceability of any obligations set forth on Schedule H and to further amend or supplement such Schedule as necessary.  Due to the voluminous nature of debts listed in the Schedules, and to avoid unnecessary duplication, the Debtors have not listed debts that more than one Debtor may be liable for if such debt is also listed on Schedules E/F or G for the respective co-Debtor liable for such debt (apart from the guarantees of unsecured funded debt obligations, as described in paragraph 13 above).

The Debtors further reserve all rights, claims, and causes of action with respect to the obligations listed on Schedule H, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument related to a creditor's claim.  The listing of a contract, guarantee, or other obligation on Schedule H shall not be deemed an admission that such obligation is binding, valid, or enforceable.

In the ordinary course of their business, the Debtors may be involved in pending or threatened litigation and claims arising out of the conduct of their business.  These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counterclaims against other parties.  Because such litigation is listed elsewhere in the Statements and Schedules, they have not been set forth individually on Schedule H.

Schedule H also reflects guarantees or similar secondary liability obligations by various Debtors.  The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, debt instruments, and other agreements.  Further, the Debtors believe that certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable.  Thus, the Debtors reserve their right, but shall not be required, to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or are unenforceable.

## General Disclosures Applicable to Statements

43.     **Part 1, Question 1**.  As described in the Cash Management Motion, the Debtors and their majority-owned non-debtor affiliates (collectively, "<u>Diamond</u>") utilize an integrated, centralized Cash Management System to collect funds generated by their operations.  As part of this integrated Cash Management System, and in the ordinary course of business, the majority of the Diamond's revenues are deposited by third parties directly into bank accounts held by Debtor DSN and are then allocated internally among the applicable entities within Diamond's financial accounting system in accordance with historical

practice.  The revenues listed in Part 1, Question 1 reflect the results of such internal allocation notwithstanding that the contracts on account of which such revenue is derived may be with one or more of the other Debtors or majority-owned non-debtor affiliates. Such presentation is not a legal determination with respect to such legal entities' respective entitlements to such revenues, and the Debtors take no position in these Schedules and Statements as to each Debtor's respective entitlement with respect to such revenues.  Each Debtor reserves all rights with respect to its legal entitlement, including any contractual rights, to such revenue.

44.     **Part 2, Questions 3 and 4**.  As described in the Cash Management Motion, the Debtors utilize an integrated, centralized Cash Management System to collect, concentrate, and disburse funds generated by their operations.   The obligations of the Debtors are primarily paid by and through one of two Debtor entities, DSG and DSN, notwithstanding that certain obligations may be obligations of one or more of the other Debtors.  The payments listed in Part 2, Questions 3 and 4 reflect the Debtor entity from which the cash was disbursed (either DSG or DSN) and do not reflect the Debtor entities on behalf of which such payments were made.  The Debtors routinely conduct various business transactions among themselves and with their non-debtor affiliates (the "Intercompany Transactions"), including the movement of cash within the Cash Management System between different Debtors and to and from non-debtor affiliates, in the ordinary course of business to satisfy these obligations.  The Debtors are able to track and account for each Intercompany Transaction and the resulting intercompany claims ("Intercompany Claims").  All Intercompany Transactions and Intercompany Claims related to the Cash Management System are appropriately recorded in each applicable Debtor's books and records.  The Debtors have excluded ordinary course Intercompany Transactions for Debtor-to-Debtor transfers from their response to Question 4.

The payments disclosed in Part 2, Questions 3 and 4 are based on payments made by the Debtors with payment dates from December 14, 2022, through March 14, 2023, and March 14, 2022, through March 14, 2023, respectively.  The Debtors' accounts payable system includes some, but not all, corresponding payment clear dates.  Compiling this data where not readily available would have required a significant manual review of individual bank statements.  The cash transactions in Part 2, Questions 3 and 4 reflect the dates the cash cleared the Debtors' bank accounts to the extent available.  Where clearing dates were not available, payments reflect the payment date as recorded in the Debtors' accounts payable system.   It is expected, however, that many payments included in Part 2, Questions 3 and 4 have payment clear dates that are the same as payment dates (e.g., wires and other forms of electronic payments).  The response to Part 2, Question 3 excludes disbursements and transfers listed in Part 2, Question 4.  Amounts still owed to creditors appear on the Schedules for the applicable Debtor.

All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed in Part 6, Question 11 and are not listed in Part 2, Question 3.

The Debtors maintain multiple addresses for certain creditors. Efforts have been made to attribute the correct address. In certain instances, however, alternate addresses may be applicable for a party listed in response to Part 2, Question 3.

45.   **Part 2, Question 6**. The Debtors have not listed any ordinary course set off transactions in which they engage with their customers, as described in the Customer Programs Motion.

46.   **Part 3, Question 7**. The Debtors reserve all of their rights and defenses with respect to any and all listed lawsuits and administrative proceedings. The listing of any such suits and proceedings shall not constitute an admission by the Debtors of any liabilities or that the actions or proceedings were correctly filed against the Debtors or any affiliates of the Debtors. The Debtors also reserve their rights to assert that a Debtor is not an appropriate party to such actions or proceedings.

47.   **Part 5, Question 10**. The Debtors have made best efforts to collect applicable and responsive information. Certain *de minimis* losses, however, which are not tracked separately, may have been omitted.

48.   **Part 6, Question 11**. All payments for services of any entities that provided consultation concerning restructuring services to the Debtors, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on DSN's SOFA 11 (as described in note 42 above). Certain payments were made by DSG, but are reported on DSN's SOFA 11. Although these payments are included on DSN's SOFA 11, payments to professionals may be subject to applicable allocation amongst the Debtors. Additional information regarding the Debtors' retention of professional service firms is included in individual retention applications and related orders.

In addition, the Debtors have listed payments made to professionals retained by the Debtors but not payments made to advisors of lenders or other parties on account of any applicable fee arrangements.

49.   **Part 6, Question 13**. While the Debtors have made reasonable efforts to respond comprehensively to Question 13, certain *de minimis* asset sales and transfers may be omitted unintentionally.

50.   **Part 9, Question 16**. Diamond Digital Group, LLC has access to the following customer data: (a) email address; (b) name; and (c) zip codes. The emails and names are stored in a secured platform contracted by Sinclair, which DSG is able to access. DSG has third-party vendors that manage the billing process and payments from customers and who may have additional personally identifiable information ("PII"), but DSG does not have access to PII held by those third parties.

51.   **Part 9, Question 17**. All benefit plans for the Debtors' employees participate, including 401(k) plans, are administered by Sinclair Broadcast Group, Inc., as described in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages and Other Workforce Obligations and (B) Continue Workforce*

*Benefits Programs and Pay Related Obligations, and (II) Granting Related Relief* [Docket No. 12] (the "<u>Wages Motion</u>").  Accordingly, the Debtors have not listed such benefit plans.

52.     **Part 13, Question 25**.  The Debtors have used their reasonable efforts to identify the beginning and ending dates of all businesses in which the Debtors were an owner, partner, member, or otherwise a person in control within the six years immediately preceding the Petition Date.  In certain instances, however, the dissolution dates of certain entities that are no longer in existence were not readily available and, therefore, are not included in Part 13, Question 25.  As noted in note 37(c) above, Sports Holding holds 100 percent of the general partnership interests in ARC, and DSN holds 100 percent of the limited partnership interests in ARC.  This ownership split has been reflected in the organizational chart attached to Part 13, Question 25 as a 99 percent overall ownership interest in ARC held by Sports Holding, LLC and a one percent overall ownership interest in ARC held by DSN.

53.     **Part 13, Question 26**.  The Debtors routinely provide financial statements to banks, customers, suppliers, tax authorities, landlords, factors, potential investors, and other financial institutions in the ordinary course, as well as in association with its restructuring efforts.

54.     **Part 13, Question 30**.  Any and all known disbursements to insiders of the Debtors have been listed in response to Part 2, Question 4.

55.     **Part 13, Question 32**.  While the Debtors are not responsible for administering any pension plans for the Debtors' employees, as described in the Wages Motion, the Debtors currently make payments directly to the Motion Picture Industry pension plan and the IATSE Benefit Fund (which includes pension, annuity, health, and vacation benefits) on behalf of certain temporary workers retained through XLT Management Services, Inc.

**Diamond West Holdings, LLC**                                    **Case Number:   23-90133 (CML)**

| Part 1: | Income |
|---|---|

## 1. Gross Revenue from business

☑ None

| Identify the Beginning and Ending Dates of the Debtor's Fiscal Year, which may be a Calendar Year | Sources of Revenue (Check all that apply) | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|
| From _____ to _____<br>MM/DD/YYYY   MM/DD/YYYY | ☐ Operating a business<br>☐ Other _____ | _____ |

**Diamond West Holdings, LLC**                                    **Case Number:  23-90133 (CML)**

| Part 1: | Income |
|---------|--------|

## 2. Non-business revenue

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

| | | Description of Sources of Revenue | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|---|
| From _____ to _____ MM/DD/YYYY     MM/DD/YYYY | | _____ | _____ |

**Diamond West Holdings, LLC**                                      Case Number:  23-90133 (CML)

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

### 3. Certain payments or transfers to creditors within 90 days before filing this case

List payments or transfers-including expense reimbursements-to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575 (this amount may be adjusted on 04/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment).

☑ None

| Creditor's Name and Address | Dates | Total Amount or Value | Reasons for Payment or Transfer |
|---|---|---|---|
| 3.1   NONE | | | ☐ Secured debt |
| | | | ☐ Unsecured loan repayment |
| | | | ☐ Suppliers or vendors |
| | **TOTAL** | $0 | ☐ Services |
| | | | ☐ Other _____ |

| | | | |
|---|---|---|---|
| | **TOTAL** | $0 | |

**Diamond West Holdings, LLC**                                    **Case Number:  23-90133 (CML)**

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

## 4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575 (this amount may be adjusted on 04/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment).  Do not include any payments listed in line 3.  Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☑ None

| Insider's Name and Address and Relationship to Debtor | Dates | Amount | Reason for Payment |
|-------------------------------------------------------|-------|--------|--------------------|
| 4.1    NONE | | | |
| | **TOTAL** | **$0** | |

| | **TOTAL** | **$0** | |

**Diamond West Holdings, LLC**                                    Case Number:   23-90133 (CML)

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
| --- | --- |

### 5. Repossessions, foreclosures, and returns

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller.  Do not include property listed in line 6.

☑ None

| Creditor's Name and Address | Description of the Property | Date Action was Taken | Value of Property |
| --- | --- | --- | --- |
| 5.1    NONE | | | $0 |

|  | TOTAL | $0 |
| --- | --- | --- |

**Diamond West Holdings, LLC**                                    Case Number:  23-90133 (CML)

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

### 6. Setoffs

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's Name and Address | Description of Action Creditor Took | Date Action Taken | Account Number | Amount |
|---|---|---|---|---|
| 6.1   NONE | | | | $0 |

|  |  |
|---|---|
| **TOTAL** | **$0** |

**Diamond West Holdings, LLC**                                    Case Number:   23-90133 (CML)

| Part 3: | Legal Actions or Assignments |
|---|---|

### 7.  Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity - within 1 year before filing this case.

☑ None

| Caption of Suit and Case Number | Nature of Proceeding | Court or Agency and Address | Status of Case |
|---|---|---|---|
| 7.1    NONE | | | |

**Diamond West Holdings, LLC**                                                                              **Case Number:  23-90133 (CML)**

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

**8.  Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's Name and Address | Court Name and Address | Case Title and Number | Date | Description of Property | Value |
|------------------------------|------------------------|-----------------------|------|------------------------|-------|
| 8.1    NONE | | | | | |

**Diamond West Holdings, LLC**                                      **Case Number:   23-90133 (CML)**

| Part 4: | Certain Gifts and Charitable Contributions |
|---------|---------------------------------------------|

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| Recipient's Name and Address | Recipient's Relationship to Debtor | Description of the Gifts or Contributions | Dates Given | Value |
|------------------------------|-----------------------------------|-------------------------------------------|-------------|-------|
| 9.1   NONE | | | | |

**Diamond West Holdings, LLC**                                    Case Number:   23-90133 (CML)

| Part 5: | Certain Losses |
|---------|----------------|

**10.  All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of Property | How Loss Occurred | Amount of Payments Received | Date of Loss | Property Value |
|---|---|---|---|---|
| | | *If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.  List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property).* | | |
| 10.1    NONE | | | | Undetermined |

**TOTAL**     **Undetermined**

**Diamond West Holdings, LLC**                                    **Case Number:  23-90133 (CML)**

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

### 11. Payments related to bankruptcy

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

| Who was Paid or Who Received the Transfer? Address | Email / Website | Who Made the Payment, if not Debtor? | If not Money, Describe any Property Transferred | Dates | Total Amount or Value |
|---|---|---|---|---|---|
| 11.1    NONE | | | | | $0 |

**Diamond West Holdings, LLC**                                    Case Number:  23-90133 (CML)

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years
before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

| Name of Trust or Device | Trustee | Describe any Property Transferred | Dates Transfers were Made | Total Amount / Value |
|-------------------------|---------|-----------------------------------|---------------------------|----------------------|
| 12.1    NONE            |         |                                   |                           | $0 |

**Diamond West Holdings, LLC**                                    **Case Number:  23-90133 (CML)**

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

### 13.  Transfers not already listed on this statement

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.  Include both outright transfers and transfers made as security.  Do not include gifts or transfers previously listed on this statement.

☑ None

| Name and Address of Transferee, Relationship to Debtor | Description of Property | Date Transfer was Made | Total Amount or Value |
|--------------------------------------------------------|------------------------|------------------------|------------------------|
| 13. 1   NONE | | | $0 |

|  | **TOTAL** | **$0** |
|--|-----------|--------|

**Diamond West Holdings, LLC**                                    Case Number:  23-90133 (CML)

| Part 7: | Previous Locations |
|---------|--------------------|

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| Address | Dates of Occupancy |
|---------|--------------------|
| 14.1      NONE | From: _____ To: _____ |

**Diamond West Holdings, LLC**                                        Case Number:  23-90133 (CML)

| Part 8: | Health Care Bankruptcies |
| --- | --- |

### 15. Health Care bankruptcies

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility Name and Address | Nature of the Business Operation, Including Type of Services the Debtor Provides | Location Where Patient Records are Maintained (if Different from Facility Address). If Electronic, Identify any Service Provider. | If Debtor Provides Meals and Housing, Number of Patients in Debtor's Care | How are Records Kept? |
| --- | --- | --- | --- | --- |
| 15.1    NONE | | | | ☐ Electronic<br>☐ Paper |

**Diamond West Holdings, LLC**                                    **Case Number:  23-90133 (CML)**

**Part 9:**        **Personally Identifiable Information**

**16. Does the debtor collect and retain personally identifiable information of customers?**

☑ No.

☐ Yes. State the nature of the information collected and retained. _____

   Does the debtor have a privacy policy about that information?
   ☐ No
   ☐ Yes

**Diamond West Holdings, LLC**                                              **Case Number:  23-90133 (CML)**

| Part 9: | Personally Identifiable Information |
|---|---|

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.

Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.

☐ Yes.  Fill in below:

Describe: _____        EIN: _____

Has the plan been terminated?

☐ No

☐ Yes

**Diamond West Holdings, LLC**                                            **Case Number:   23-90133 (CML)**

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

### 18. Closed financial accounts

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial Institution Name and Address | Last 4 Digits of Acct Number | Type of Account | Date of Closing | Last Balance |
|---|---|---|---|---|
| 18.1   NONE | | | | |

**Diamond West Holdings, LLC**                                    **Case Number:  23-90133 (CML)**

| **Part 10:** | **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units** |

### 19. Safe deposit boxes

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository Institution Name and Address | Names of Anyone with Access to it and Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|
| 19. 1   NONE | | | ☐ No<br>☐ Yes |

**Diamond West Holdings, LLC**                                    **Case Number:   23-90133 (CML)**

| **Part 10:** | **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units** |
|---|---|

### 20. Off-premises storage

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility Name and Address | Names of Anyone with Access to it | Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|---|
| 20. 1    NONE | | | | ☐ No<br>☐ Yes |

**Diamond West Holdings, LLC**                                    Case Number:   23-90133 (CML)

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|---|---|

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Owner's Name and Address | Location of the Property | Description of the Property | Value |
|---|---|---|---|
| 21.1    NONE | | | |

**Diamond West Holdings, LLC**                                    **Case Number:   23-90133 (CML)**

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similary harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22.  Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No

☐ Yes. Provide details below.

| Case Title and Case Number | Court or Agency Name and Address | Nature of Proceeding | Status |
|---|---|---|---|
| 22. 1   NONE | | | |

**Diamond West Holdings, LLC**                                                    **Case Number:   23-90133 (CML)**

---

| **Part 12:** | **Details About Environmental Information** |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**23.  Has any governmental unit otherwise notified the debtor that the debtor may be liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|
| 23. 1   NONE | | | |

**Diamond West Holdings, LLC**                                                   Case Number:   23-90133 (CML)

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similary harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes. Provide details below.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|
| 24.1   NONE | | | |

Page 1 of 1 to Question 24

**Diamond West Holdings, LLC**                                    **Case Number:   23-90133 (CML)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

☐ None

| Business Name and Address | Describe the Nature of the Business | Employer Identification Number | Dates Business Existed |
|---|---|---|---|

# Diamond Sports Group, LLC



**Diamond West Holdings, LLC**                                    Case Number:  23-90133 (CML)

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 26. Books, records, and financial statements

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and Address | Dates of Service | | | |
|---|---|---|---|---|
| 26a.1  BRIANNE MCJIMPSON<br>AVAILABLE UPON REQUEST | From: | 3/14/2021 | To: | 3/14/2023 |
| 26a.2  DAVID BOCHENEK<br>AVAILABLE UPON REQUEST | From: | 3/14/2021 | To: | 3/14/2023 |
| 26a.3  DAVID F. DEVOE, JR.<br>AVAILABLE UPON REQUEST | From: | 2/17/2023 | To: | 3/14/2023 |
| 26a.4  GREGORY PENNELL<br>AVAILABLE UPON REQUEST | From: | 3/14/2021 | To: | 3/10/2023 |
| 26a.5  VERONICA PRADO<br>AVAILABLE UPON REQUEST | From: | 3/14/2021 | To: | 3/14/2023 |

**Diamond West Holdings, LLC**                                      **Case Number:  23-90133 (CML)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|----------|-------------------------------------------------------------------|

### 26. Books, records, and financial statements

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and Address | Dates of Service | | | |
|------------------|------|-----------|-----|-----------|
| 26b. 1  RICHARD GREENWOOD<br>PRICEWATERHOUSECOOPERS LLP<br>300 MADISON AVENUE<br>NEW YORK, NY 10017 | From: | 3/14/2021 | To: | 3/14/2023 |

**Diamond West Holdings, LLC**                                          **Case Number:  23-90133 (CML)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 26. Books, records, and financial statements

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and Address | If any Books of Account and Records are Unavailable, Explain Why |
|---|---|
| 26c.1  DAVID BOCHENEK<br>AVAILABLE UPON REQUEST | |
| 26c.2  DAVID F. DEVOE, JR.<br>AVAILABLE UPON REQUEST | |

**Diamond West Holdings, LLC**                                    **Case Number:   23-90133 (CML)**

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |

### 26. Books, records, and financial statements

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| **Name and Address** |
| --- |

26d. 1    THE DEBTORS HAVE ROUTINELY PROVIDED FINANCIAL INFORMATION TO BANKS, CUSTOMERS, SUPPLIERS, TAX AND GOVERNMENT AUTHORITIES, LESSORS, AND INVESTORS IN THE ORDINARY COURSE OF THEIR BUSINESS AND IN CONNECTION WITH THEIR DEBT RESTRUCTURING EFFORTS. (ALSO REFER TO GLOBAL NOTES).

**Diamond West Holdings, LLC**                                    **Case Number:   23-90133 (CML)**

---

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |

---

### 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|
| 27. 1   NONE | | | | |

**Diamond West Holdings, LLC**                                     Case Number:   23-90133 (CML)

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|----------|-------------------------------------------------------------------|

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name and Address | Positition and Nature of any Interest | Percent of Interest, if any |
|------------------|---------------------------------------|-----------------------------|
| 28. 1   DAVID F. DEVOE, JR.<br>AVAILABLE UPON REQUEST | CHIEF FINANCIAL OFFICER | |
| 28. 2   DAVID PRESCHLACK<br>AVAILABLE UPON REQUEST | CHIEF EXECUTIVE OFFICER, MANAGER | |
| 28. 3   DIAMOND SPORTS NET, LLC<br>AVAILABLE UPON REQUEST | CONTROLLING SHAREHOLDER | 100.00% |
| 28. 4   STEVE ROSENBERG<br>AVAILABLE UPON REQUEST | PRESIDENT, TEAM RELATIONS AND<br>PROGRAMMING DEVELOPMENT | |

**Diamond West Holdings, LLC**                                    Case Number:   23-90133 (CML)

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**29.  Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☑ No
☐ Yes. Identify below.

| Name and Address | Position and Nature of Interest | Period During Which Position Was Held |
|---|---|---|
| 29. 1    NONE | | From: _____  To: _____ |

**Diamond West Holdings, LLC**                                                                    Case Number:   23-90133 (CML)

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 30. Payments, Distributions, or Withdrawals Credited or Given to Insiders

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No
☐ Yes. Identify below.

| Name and Address of Recipient and Relationship to Debtor | Amount | Dates | Reason for Providing the Value |
|---|---|---|---|

30.1     NONE

**Diamond West Holdings, LLC**                                    Case Number:  23-90133 (CML)

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |

**31.  Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No
☑ Yes. Identify below.

| Name of Parent Corporation | Employer Identification Number of the Parent Corporation |
|---|---|
| 31. 1   SINCLAIR BROADCAST GROUP, INC. | EIN:    52-1494660 |

**Diamond West Holdings, LLC**                                    **Case Number:  23-90133 (CML)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**32.  Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

| Name of Pension Fund | Employer Identification Number of the Pension Fund |
|---|---|
| 32.  1     NONE | EIN: |

**Diamond West Holdings, LLC**                                    **Case Number:  23-90133 (CML)**

**Part 14:**     **Signature and Declaration**

Warning -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this Statement of Financial Affairs and any attachments and have a resonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.


**Executed on:** _____May 12, 2023_____


**Signature:** _/s/ David F. DeVoe, Jr._____     David F. DeVoe, Jr., Chief Financial Officer_____
                                                     **Name and Title**




Are additional pages to the Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?

[X] No

[ ] Yes