**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | Case No. 23-90116 (CML) |
| Debtors. | (Jointly Administered) |

**EMERGENCY MOTION OF MAJOR LEAGUE BASEBALL AND CERTAIN
MAJOR LEAGUE BASEBALL CLUBS *IN LIMINE*
TO EXCLUDE THE OPINION OF LEO J. HINDERY, JR.
CONCERNING THE VALUE OF THE CLUBS' TELECAST RIGHTS**

---

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT
LATER THAN 9:00 A.M. (CENTRAL TIME) ON MAY 31, 2023.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT
EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT
THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE
DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH.
OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND
GRANT THE RELIEF REQUESTED.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

Pursuant to Rule 9017 of the Federal Rules of Bankruptcy Procedure and Rule 702 of the Federal Rules of Evidence, the Office of the Commissioner of Baseball d/b/a Major League Baseball, LLC ("**MLB**"), Rangers Baseball Express LLC, the sole member and operator of Rangers Baseball LLC, d.b.a the Texas Rangers (the "**Rangers**"), Cleveland Guardians Baseball Company, LLC (the "**Guardians**"), Minnesota Twins, LLC (the "**Twins**") and AZPB Limited Partnership (the "**Diamondbacks**" and together with the Rangers, Guardians, and Twins, the "**Clubs**"),[2] by and through their undersigned counsel, hereby submit this *Emergency Motion of Major League Baseball and Certain Major League Baseball Clubs* in Limine *to Exclude the Opinion of Leo J. Hindery, Jr. Concerning the Value of the Clubs' Telecast Rights* and respectfully state as follows:

## PRELIMINARY STATEMENT

1.     The Debtors' expert, Leo J. Hindery, Jr. ("**Mr. Hindery**"), has proffered an opinion about the fair value of the Clubs' telecast rights, ██████████████████████████████ ███████. Any calculation of fair market value must be based on the market data, but that is not what Mr. Hindery did. The market data shows that sports rights fees have only increased over time, but Mr. Hindery disregarded this information in favor of a totally flawed methodology that he testified ███████████████████ Specifically, Mr. Hindery ███████████████████ ████████████████████████████████████████████ ████████████████████. Mr. Hindery explained that ████████████████████████ ████████████████████████████████████████████ █████████ and offered the *post hoc* defense of ████████████████████ ██████████████████████████████████████ Regional Sports Network ("**RSN**").

---

[2] MLB and the Clubs shall be referred to collectively herein as the "**Movants**."

2.      Mr. Hindery's "reasonable current value" analysis is neither reasonable nor a measure of value.  His "valuation" should be excluded because he (i) is not qualified to value telecast rights (███████████████████████████████████), (ii) uses a flawed methodology not accepted in the relevant community (███████████████████████████ ████████████████████ and a profit assumption input █████████████████████ that is unsupported and unsupportable, and (iii) calculates his valuation result using projections that he ██████████████████████, which are based on source documents that ████████████████, and which the Debtors have refused to produce to Movants.

## **BACKGROUND**

3.      The Debtors served Mr. Hindery's expert report on May 15, 2023 (the "**Report**" or "**Hindery Rep't**").  Ex. 1.[3]   In his Report, Mr. Hindery noted that ██████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ (Hindery Rep't ¶ 18)  Consequently, according to Mr. Hindery, ████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ █████████████ (Hindery Rep't ¶ 19)  Mr. Hindery then sets out to conduct an analysis of the telecast rights' "reasonable value," which he describes as ███████████████████████

---

[3] Unless otherwise noted, references to exhibits cited herein as "Ex." are to the exhibits to the *Declaration of Camille M. Shepherd In Support Of the Motion of Major League Baseball and Certain Major League Baseball Clubs* in Limine *to Exclude the Opinion of Leo J. Hindery, Jr. Concerning the Value of the Clubs' Telecast Rights.*

AMERICAS 123574433

██████████████████████████████████████████████████████

(Hindery Rep't ¶ 9)

4.      Mr. Hindery purports to estimate ████████████████████████████

████████████████████████████████████████████████ but he did

not use *any* of the necessary market data, such as any market comparables of other telecast deals,

nor data concerning value available from the Clubs' local markets, such as TV ratings, attendance,

or local population.  (Hindery Rep't ¶¶ 41-73)  Instead, Mr. Hindery ████████████████

█████████████████████████████████████.  Specifically, Mr.

Hindery assumed ████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████  (Hindery Rep't ¶ 42); *see also* Ex. 2

(Hindery Dep. Tr.) 179:11-180:21.  Mr. Hindery ████████████████████

██████████████████████.  Ex. 2 (Hindery Dep. Tr.) 112:11 – 114:15.  In his Report, Mr.

Hindery ██████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████.  (Hindery Rep't

¶ 42)  At his deposition, Mr. Hindery elaborated that he ████████████████

██████████████████████████████████████████████████

██████████████████████████  Ex. 2 (Hindery Dep. Tr.) 179:11-180:21, 82:13-18.[4]

When asked for support for his ████████████████████████████████

---

[4] Mr. Hindery also discussed █████████████████████████

██████████████████████████████████████████████████

(Hindery Rep't ¶¶ 43-44) ██████████████████████████████████████

███████████████████████████████████████ *Id.*

AMERICAS 123574433

████████████████████████████████████████████████████

████ Ex. 2 (Hindery Dep. Tr.) 222:18-22.

## ARGUMENT

5.      Rule 702 of the Federal Rules of Evidence ("**Rule 702**"), made applicable to these proceedings by Rule 9017 of the Federal Rules of Bankruptcy Procedure, provides that expert testimony may be given by a qualified witness "if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  The party offering an expert witness bears the burden of proving that the proffered expert testimony satisfies the requirements of Rule 702 and *Daubert*. *See Bourjaily v. U.S.,* 483 U.S. 171, 175-76 (1987).

## I.      MR. HINDERY'S VALUATION IS INADMISSIBLE

### A.      Mr. Hindery's Testimony Concerning The Value Of The Telecast Rights Should Be Excluded Because He Does Not Qualify As A Valuation Expert

6.      Mr. Hindery has never been qualified as an expert on any subject by any court, and
███████████████████████████████████████████████.  *See* Ex. 2 (Hindery Dep. Tr.) 10:24-11:3, 167:12-14.  For expert testimony to be admissible, however, "the proponent . . . [must] demonstrate that [] the expert is qualified."  *Robles v. Eminent Med. Ctr., LLC*, 619 F. Supp. 3d 609, 647 (N.D. Tex. 2022).  "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience or education with the subject matter of the witness's testimony."  *Kozak v. Medtronic, Inc.*, 512 F. Supp. 2d 913, 917-18 (S.D. Tex. 2007) (internal quotation marks and citations omitted).  And while an expert's testimony "can be

based on personal experience, . . . an expert's self-proclaimed accuracy is insufficient." *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

7.      Business experience does not equal valuation expertise.   Mr. Hindery has experience in the cable industry, and Movants do not object to all of his testimony, but he is not qualified to conduct a valuation of telecast rights.  Mr. Hindery testified that ███████ ████████████████████████████████████ Ex. 2 (Hindery Dep. Tr.) 10:24–11:3 ("Q. ███████████████████████████████████████████ ███████████.").  Indeed, when asked whether he had received any formal training about valuing telecast rights, Mr. Hindery testified: ████████████████████████ ██████████ *Id.* at 136:12-17.[5]  Mr. Hindery never ████████████ or published on the subject of valuing telecast rights, and he ██████████████████████████ ██████ *Id.* at 136:20-137:10.   Mr. Hindery further testified that ████████████ ████████████████████████████████████████████████ ██████ *Id.* at 11:4-19, *see also id.* at 179:11-180:21.

8.      Having ██████████████████████████████████████ ██████████████ Mr. Hindery is not qualified to provide a valuation opinion.  *See Hidden Oaks v. City of Austin,* 138 F.3d 1036, 1050 (5th Cir. 1998) (affirming exclusion of opinions by putative valuation expert who often "visited Austin . . . to purchase and sell property for his employer" but "was not a licensed appraiser [or] real estate broker," who had "no formal schooling in the methods of appraisal" and could not answer questions about "standard appraisal theory"); *LifeWise Master*

_____

[5] After discussing his testimony with counsel, Debtors' counsel had Mr. Hindery say ████████ ████ *see* Ex. 2 (Hindery Dep. Tr.) 258:4-259:25, but ██████████ ████████████████████████████████████ Mr. Hindery testified: ████████████████████████████████████████████ *Id.* 259:14-20.

AMERICAS 123574433

*Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (finding that witness was properly excluded as a damages expert where "he took no accounting or finance courses, had no training in damages analysis, had never testified as a damages expert or prepared an expert damages report, had never taught a course or lectured on damages, and has never been published in the field"); *Heller v. Am. Indus. Prop. Reit.*, 156 F. Supp. 2d 645, 649 (W.D. Tex. 2000) (expert unqualified to assess real estate values because he was not a real estate appraiser and "when, in his career, he has been asked to form opinions about the value of real estate, he has relied upon other appraisers"); *see also, e.g., Berlyn, Inc. v. Gazette Newspapers, Inc.*, 214 F. Supp. 2d 530, 538-39 (D. Md. 2002) (finding witness did not satisfy Rule 702's requirement when witness "had no formal training or actual experience" to perform a market analysis in antitrust action and noting that a person "with minimal training an experience in antitrust economics" cannot "become qualified to offer an expert opinion on the complex topic . . . by applying himself to the topic for five or fewer days"); *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989) (finding witness "cannot satisfy even the minimal requirements of [Rule 702]" where "there was no indication . . . [the witness's] general business education included *any* training" and witness testified she "lacked *any* other experience" in the purported area of expertise); *MGMTL, LLC v. Strategic Tech.*, No. 20-2138-WBV-MBN, 2022 WL 485279, at *6 (E.D. La. Feb. 17, 2022) (although expert had extensive experience in the area of government contracts, this "[did] not make him qualified to render opinions regarding the value of, or the market for," computer software used by the Department of Defense, citing the expert's testimony that "he has not conducted any market studies in this case, nor did he conduct a market analysis when he was retained as an expert in a prior, unrelated case"); *Taylor Pipeline Constr. Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 705-06 (E.D. Tex. 2006) (finding unqualified an expert who was asked for the first time

to render an opinion on contractual or common law duties between parties involved in a construction dispute, who had not authored publications or given speeches involving construction law topics, and who did not gain certification or licensure in any area of construction law); *Hi-Tech Pharms. Inc. v. Dynamic Sports Nutrition, LLC*, No. 1:16-cv-949-MLB, 2021 WL 2185699, at *15-16 (N.D. Ga. May 28, 2021) (finding expert unqualified to offer opinions regarding genericness in a trademark infringement action under the Lanham Act because she had never testified in a Lanham Act case before and she had no training, experience, or specialized knowledge in trademark cases).  Moreover, Mr. Hindery's last substantive business contact with cable television in general or any RSN was ████████████████, which ████████████

████████████████████████████ *See* Ex. 2 (Hindery Dep. Tr.) at 145:21-147:14; 174:14-175:19; 178:5-179:2.

> **B.     Mr. Hindery's Valuation Testimony Should Be Excluded Because It Is Unreliable And Methodologically Unsupported**

9.     "The proponent of expert evidence must prove, by a preponderance, that the evidence is reliable.  The reliability inquiry extends to all aspects of an expert's testimony, including the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*.  Expert evidence that is not reliable at each and every step is not admissible." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (citations and quotations omitted); *see also Brickley v. Scattered Corp. (In re H&M Oil & Gas, LLC)*, 511 B.R. 408, 413 (Bankr. N.D. Tex. 2014) ("Expert testimony is admissible only if it is both relevant and reliable.") (quoting *Piptone v. Biomatrix, Inc.*, 2088 F.2d 239, 243-44 (5th Cir. 2002)).  "The reliability prong mandates that expert opinion be grounded in the methods and procedures of science and be more than unsupported speculation or subjective belief." *Johnson v. Arkema Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (cleaned up).

10.     Courts in the Fifth Circuit evaluate the reliability of an expert's opinion based on the following factors: "whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards controlling its operation, and whether it is generally accepted in the relevant scientific community." *Dart v. Kitchens Bros. Mfg. Co.*, 253 F. App'x 395, 397 (5th Cir. 2007). "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). An expert's opinion based on subjective belief or which itself rests on unsupported speculation is inherently unreliable and must be excluded. *See Daubert*, 509 U.S. at 590. The Debtors cannot establish that Mr. Hindery's valuation testimony satisfies the *Daubert* standards.

### 1.     Mr. Hindery's Valuation Testimony Lacks A Reliable Methodology

11.     The Debtors "must demonstrate by a preponderance of the evidence that [Mr. Hindery's] opinion of value and resulting damages are based upon an appropriate methodology and are therefore reliable . . . ." *Brickley v. Scattered Corp. (In re H&M Oil & Gas, LLC)*, 511 B.R. 408, 417 (Bankr. N.D. Tex. 2014). Mr. Hindery's methodology is not appropriate, accepted, or reliable.

12.     Mr. Hindery's valuation opinion purports to establish the "reasonable value" of the teams' linear telecast rights, a concept that he says is ███████████████████████████████ ████████████████████████████████████████████████ (Hindery Rep't ¶ 9) Mr. Hindery's opinion, however, is not based on market data, how parties negotiating for linear telecast rights today would set value, or any notion of fair market value. Rather, Mr. Hindery's opinion merely considers ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

8

███████████████████████████████████████████. Indeed, Mr. Hindery

testified at deposition that he understood his assignment to be ██████████████████

█████████████████████████████████████████. Ex. 2 (Hindery

Dep. Tr.) 179:25-180:16 ("████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████."); *see also id.* at 179:15-

24.

      13.    Mr. Hindery's methodology is not accepted or recognized to calculate value.  Mr.

Hindery testified that, ███████████████████████████████████████

████████.  Ex. 2 (Hindery Dep. Tr.) 11:4-24, 13:11-17.  Mr. Hindery further testified that ██

████████████████████████████████████████████████████████

█████████████████████████████████████████.  *Id.*  Mr. Hindery was also

████████████████████████████████████████████████████████

███████████████████████.  *Id.* at 17:13-18:17.   Mr. Hindery's ██████████████

████████ is untethered to the market and has nothing to do with what RSNs actually pay for telecast

rights in the market, so it is not a reliable method for determining reasonable value.

      14.    Mr. Hindery's own, unsupported belief that his methodology is accepted is

insufficient.[6]  *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005)

---

[6] Ex. 2 (Hindery Dep. Tr.) 17:2-12 ("Q. ███████████████████████████████████████

AMERICAS 123574433

("[Expert] himself all but conceded that he had not applied 'reliable principles and methods'. Asked repeatedly during his deposition what methods he *had* used to generate projections, [Expert] repeatedly answered 'my expertise' or some variant ('my industry expertise,' '[my] awareness,' and 'my curriculum vitae')—which is to say that he either had no method or could not describe one.  He was relying on intuition, which won't do.") (emphasis in original).

15.     Not only is there no authority to support Mr. Hindery's methodology, it also is plainly inconsistent with the principle of fair market value.  Fair market value is an objective test, which cannot be determined by an analysis focused solely on ███████████████████████ ███████████████████████.  *See* Larson, 1 Valuation Handbook § 1.01 (Matthew Bender 2021) (noting that fair market value "is an objective test with hypothetical buyers and sellers; it is not a personalized test that envisions a particular buyer or sellers"); American Institute of Certified Public Accountants' Statement of Standards for Valuation Standards 40-50 (2007) (Fair market value is "[t]he price, expressed in terms of cash equivalents, at which property would change hands between *a hypothetical* willing and able buyer and *a hypothetical* willing and able seller, acting at arms length in an open and unrestricted market, when neither is under compulsion to buy or sell and when both have reasonable knowledge of the relevant facts.") (emphasis added); *Adams v. United States*, 218 F.3d 383, 386 (5th Cir. 2000) (fair market value is the price at which a hypothetical willing buyer and a hypothetical willing seller, neither under compulsion and both with full information, would transact); 26 C.F.R. § 20.2031-1(b) (same).  But Mr. Hindery considered ██████████████████████, not what the market would pay.  *See* Ex. 2 (Hindery Dep. Tr.) 182:19-22 ("Q. ██████████████████████

---

████████████████████████████████████████████████████████████
████████████████████████

████████████████████████████████████████████ 184:4-12 ("Q. ████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████ ").  And fair market value is informed by not

only what the buyer (the RSNs) would pay, but also what the seller (the Clubs) would accept.  *See*

Aᴍᴇʀɪᴄᴀɴ Iɴsᴛɪᴛᴜᴛᴇ ᴏғ Cᴇʀᴛɪғɪᴇᴅ Pᴜʙʟɪᴄ Aᴄᴄᴏᴜɴᴛᴀɴᴛs' Sᴛᴀᴛᴇᴍᴇɴᴛ ᴏғ Sᴛᴀɴᴅᴀʀᴅs ғᴏʀ

Vᴀʟᴜᴀᴛɪᴏɴ Sᴛᴀɴᴅᴀʀᴅs 40-50 (2007); *Adams*, 218 F.3d at 386; 26 C.F.R. § 20.2031-1(b).  But

Mr. Hindery ███████████████████████████████████████████

██████████████████████████.  Ex. 2 (Hindery Dep. Tr.) 15:23-16:5 ("Q. ████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████ ).

      16.    Using Mr. Hindery's methodology, which is ████████████████████

██████████████, confuses the market value of a club's telecast rights with an annuity for the RSN.

Perversely, under Mr. Hindery's methodology, mismanagement of an RSN *decreases* the value of

the rights licensed by that RSN, rather than reducing the poor operator's return.  Where, as here,

an RSN is servicing a ███████████████ leverage burden, paying a ██████████████ in debt

service fees, (Ex. 2 (Hindery Dep. Tr.) 158:5-16), and its revenues are ██████████████████

██████████████ (*see* Ex. 2 (Hindery Dep. Tr.) 220:24-226:11), Mr. Hindery's methodology

would mandate a reduction in telecast rights fees, irrespective of the actual value of the assets.

Thus, this methodology cannot measure the fair value of the telecast rights.  Mr. Hindery, too,

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

11



███████. Ex. 2 (Hindery Dep. Tr.) 67:5-14 ("███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████), 75:24-76:5 ("Q. ██████████████████████████████

███████████████████████████████████████████████████████

███████████████████").  An objective market valuation approach is the only way to assess

the fair value of an asset held hostage by a mismanaged and overleveraged operator.

17.     After Debtors' counsel spoke with him during a lengthy break, and in response to

leading questioning, Mr. Hindery testified that ████████████████████████████

████████████████ Ex. 2 (Hindery Dep. Tr.) 256:3-257:24 (█████████ Mr. Hindery's

███████████████████████████████████████████████████████

███████████████████████████████████.  Hindery Rep't ¶ 42. ████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████ *See* Ex. 3 at 3.  Further,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████ *Id.* at 4.

███████████████████████████████████████████████████████

████████ does not salvage Mr. Hindery's flawed approach.  *See Concord Boat Corp. v. Brunswick*

*Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) ("Even a theory that might meet certain *Daubert*


factors, such as peer review and publication, testing, known or potential error rate, and general acceptance, should not be admitted if it does not apply to the specific facts of the case.").

18.     Moreover, Mr. Hindery ███████████████████████████████. Indeed, as Mr. Hindery's own source makes clear, ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ Ex. 4 at DSG-MLBLIT-00012665 (emphasis added) (cited in n.41 of the Hindery Rep't).   Mr. Hindery ████████ ████████████████████████ and testified that ████████████." Ex. 2 (Hindery Dep. Tr.) 38:4-10 ("Q. ██████████████████████████

████████████████████████████████████████████████

██████████████████████████████."), 138:7-16 ("Q. ████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████"), 181:4-8 (Q. ████████████████████████████████████████████

██████████████████████████████."). Thus, Mr. Hindery's belated reference to an outdated and irrelevant methodology that he did not actually follow does not qualify his opinion as "reliable" under Rule 702.

### 2. Mr. Hindery's Valuation Testimony Is Based On Unsupported And Incorrect Assumptions

19.     In addition to being an unaccepted and flawed methodology, Mr. Hindery's valuation should be excluded because his key assumption is unsupported and contrary to the

AMERICAS 123574433

factual record.   As Mr. Hindery admits, ████████████████████████████████████

████████   Ex. 2 (Hindery Dep. Tr.) 46:19-20.   Here, because one of Mr. Hindery's central

assumptions is incorrect, his outcome is incorrect, and his conclusions should be excluded.

Specifically, Mr. Hindery assumes ████████████████████████████████████████

████████ None of these assumptions is supported by, or consistent with, the factual record.

    20.    Mr. Hindery testified that ████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████.   Ex. 2 (Hindery Dep. Tr.) 82:13-18 ("Q. ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████), 83:16-84:2 ("Q. ██████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████");   *see also id.* 179:11-180:21.   Mr. Hindery's

████████████████████████ are irrelevant to fair market value, so Mr. Hindery's key valuation

assumptions are unsupported and unsupportable.

    21.    The only precedent that Mr. Hindery identified ████████████████████████ is

the ████████████████████████████████████████████████████████████████████████

████████████████████████████████████████.   Hindery Rep't ¶ 42 (citing Ex. 3).

Moreover, ████████████████████████████████████████████████.   Ex. 3 at 8.   "Nothing

in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion

evidence that is connected to existing data only by the *ipse dixit* of the expert," let alone an opinion

based on someone else's *ipse dixit* more than a decade ago.   *Joiner*, 522 U.S. at 146.   And Mr.

14

Hindery acknowledges ███████████████████████████████████████████████

████████████████████████████████ Ex. 2 (Hindery Dep. Tr.) 33:13-15.  Indeed,

according to Mr. Hindery, ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████ *See* Ex. 2 (Hindery Dep. Tr.) 26:23-28:10.

    22.    Mr. Hindery was ████████████████████████████████████████████████

████████████████████████ Ex. 2 (Hindery Dep. Tr.) 11:4-14:2, █████████████

██████████████████████████, *id.* at 19:9-20:10, ████████████████████████████

█████████████████████████. *Id.* at 21:24-22:19.  Mr. Hindery ███████████████

████████████████████████████████████████████████████████████████████████

██████████" Ex. 2 (Hindery Dep. Tr.) 20:10-13.  He later testified that ███████

████████████████████████████ *Id.* at 180:17-21 ("████████████████████████

████████████████████████████████████████████████████████████████████████

██████████. Mr. Hindery cannot explain how this margin assumption relates to the current market,

and thus his valuation relying on these unsupported margin assumptions should be excluded.  *See*

*Grain Processing Corp. v. Virgin Scent, Inc.*, No. 3:21-cv-00019-RGE-SBJ, 2022 WL 14624968,

at *7 (S.D. Iowa July 7, 2022) (excluding expert testimony incorporating historical industry profit

margin assumption where expert "fails to demonstrate" how this assumption "reflects [the subject

company's] economic reality during the period at issue[.]").

    23.    The record shows that the margin assumptions Mr. Hindery used for the market are,

in fact, *inconsistent* with the market.  Mr. Hindery testified that ████████████████████

██████████ (Ex. 2 (Hindery Dep. Tr.) 32:17-18) and margins are ████████████████████

████████████████████████████████ *Id.* at 27:20-23.  Even if Mr. Hindery's "reasonable value"

AMERICAS 123574433

methodology could be reliable in theory, his use of an outdated profit margin renders it unreliable as applied here.  *See In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1002, 1003 (8th Cir. 2019) (affirming district court's exclusion of expert: "Given the court's finding that [plaintiff's expert] failed to incorporate economic realities and that the assumption underlying his model was insufficiently validated, the foundation of [the expert's] opinion was ultimately speculative.").

### 3.    Mr. Hindery's Valuation Testimony Is Unreliable Because It Is Premised On Untested And Inadmissible Inputs

24.    Mr. Hindery's opinion calculates rights fees .  *See* Hindery Rep't ¶ 47.  Mr. Hindery adopted these inputs

*See* Ex. 2 (Hindery Dep. Tr.) 112:11-114:15.  And Debtors have withheld the source information from Movants, so they cannot test this information.

25.    "Although a challenge to the factual basis for a proffered expert opinion often goes to weight rather than to admissibility, the Fifth Circuit has noted that the source of information relied upon can be of such little weight that the jury should not be permitted to receive that opinion."  *Diabetes Ctrs. of Am., Inc. v. Healthpia Am., Inc.*, No. H-06-3457, 2008 WL 375505, at *2 (S.D. Tex. Feb. 11, 2008) (citations and quotations omitted).  And while an expert may rely on otherwise inadmissible information and analyses provided to him by others, such reliance is permissible "on the theory that the expert's validation, expertly performed and subject to cross examination, ought to suffice for judicial purposes."  *ID Sec. Sys. Can., Inc. v. Checkpoint Sys., Inc.*, 249 F. Supp. 2d 622, 695 (E.D. Pa. 2003) (quoting *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993)).  But where an expert's lack of familiarity with the information

16

their opinion adopts "virtually preclude[s] any assessment of the validity of the projections through cross-examination," such information, and the opinion on which it relies, is inadmissible.  *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993); *see also Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l*, 350 F. Supp. 2d 582, 592 (D. Del. 2004) (same); *Assessment Techs. Inst., LLC v. Parkes*, No. 19-2514-JAR-KGG, 2021 WL 2530977, at *5 (D. Kan. June 21, 2021) (same).

26.     Mr. Hindery was not supplied with underlying source information to validate the Debtors' summaries of projections, revenues, expenses, and allocations thereof.   For example, Mr. Hindery ███████████████████████████████████████████████████████ ██████████████████████████████████████████ (Hindery Rep't ¶ 53).  The Debtors have represented that █████████████████████████████████████████████████████ █████████████████████████████████████████████ *See* Ex. 5 (DeVoe Dep. Tr.) 261:24-262:6.  Mr. Hindery d███████████████████████ confirm the accuracy of those representations.  *See* Ex. 2 (Hindery Dep. Tr.) 112:21-113:17.  Similarly, Mr. Hindery ████████ ██████████████████████████████████████████████. (Hindery Rep't ¶ 59).  The ██████████████████████████████████████████████████████████, Mr. Hindery (nor provided to the Movants, despite repeated requests).  *See* Ex. 2 (Hindery Dep. Tr.) 114:16-20 ("Q. ████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ He likewise ██████████████████████████████████ Ex. 2 (Hindery Dep. Tr.) 117:9-18 ("Q. █████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████



██████████████████████████ Mr. Hindery did no work to ███████████████████████████████

██████████████████████████ for his valuation (Hindery Rep't ¶ 49), he ████████████████████

████████████████ *See* Ex. 2 (Hindery Dep. Tr.) 112:21-113:3 ("███████████████████████████

███████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████████

█████), 114:9-15 ("Q. ███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████████

███████████████████████ 115:25-116:6 ("█████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████.").  Nor did Mr. Hindery even speak to

the Debtors to understand or validate these inputs.

27.     Mr. Hindery's valuation of the telecast rights should be excluded for relying on the

Debtors' untested projections.  *See Diabetes Ctrs. of Am., Inc. v. Healthpia Am., Inc.*, No. H-06-

3457, 2008 WL 375505, at *2 (S.D. Tex. Feb. 11, 2008) (excluding expert opinion relying on

untested projections as "speculative and unreliable" and holding that "[t]he Federal Rules of

Evidence and the requirements of *Daubert* are not satisfied where, as here, the expert fails to show

any basis for believing someone else's projections.") (citations and quotations omitted); *see also*

*JRL Enters. v. Procorp Assocs.*, No. 01-2893, 2003 WL 21284020, at *7 (E.D. La. June 3, 2003)

(exclusion of expert appropriate where "the expert performed no market analysis to verify the

reasonableness or accuracy of the projections . . . . this failure established that the expert's

calculations could not be evaluated for accuracy.  Furthermore, the court found that the expert had

failed to establish that the expert's numbers had any basis in reality.  Concluding its analysis, the

court stated that the expert had failed to offer any evidence of general acceptance, or known rate

AMERICAS 123574433

of error for his methods; finally, the court said that the plaintiff had shown no evidence that the expert's calculations were "anything more than an exercise in arithmetic based on inherently unreliable values.") (citing *Otis v. Doctor's Associates, Inc.*, No. 94 C 4227, 1998 WL 673595 (N.D. Ill. Sept. 14, 1998)); *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291-93 (3d Cir. 2012) (affirming order excluding expert who endorsed a business plan without understanding the methodology used to create the business plan or the assumptions on which it was based); *Orthoflex, Inc. v. Thermotek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) ("Although in forming an independent opinion an expert can rely on information provided by a party's attorney, an expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him."); *MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, No. H-05-1634, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16, 2007) (granting motion to exclude expert testimony where expert did not conduct independent analysis and instead relied primarily on what interested party told him); *Brickley v. Scattered Corp. (In re H&M Oil & Gas, LLC)*, 511 B.R. 408, 420 (Bankr. N.D. Tex. 2014) (finding expert opinion not reliable where expert's decision on how to classify wells had no basis other than counsel's instruction). Mr. Hindery's valuation that uncritically incorporates the Debtors' financial projections to reach a predetermined result must be excluded.

28.     The Debtors have also failed to provide underlying source material used to create the projections for this case, so the Movants also cannot do what Mr. Hindery was unable or unwilling to do: confirm or test the accuracy of these figures. *See Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, 562 Fed. Appx. 182, 186 (5th Cir. 2014) (noting that the purpose of producing the primary evidence underlying a summary is so that it "is available to the other side for comparison so that the correctness of the summary may be tested"); *Conoco Inc. v. DOE*, 99 F.3d 387 393 (Fed. Cir. 1996) (the Federal Rules of Evidence "recognize that the preparation of summaries from

other documents carries risks of error and distortion that must be guarded against by giving the opposing party an opportunity to review and object to the underlying documents").  Thus, Mr. Hindery's valuation should also be excluded for relying on untested materials that have not been produced to the Movants.[7]  *See Auto Indus. Supplier ESOP v. SNAPP Sys.*, No. 03-74357, 2008 U.S. Dist. LEXIS 105961, at *15-17, 26 (E.D. Mich. Dec. 23, 2008) (striking defendant's expert opinion as unreliable where expert relied on summary data prepared by others, did not review or analyze the underlying documents, and "[defendant] has not provided [plaintiff] with meaningful access to the documents which [defendant] says underlay the damage calculations, *i.e.* the source documents.") *aff'd*, 435 F. App'x 430 (6th Cir. 2011); *Braun Corp. v. Vantage Mobility Int'l, LLC*, No. 2:06-CV-50-JVB-PRC, 2010 U.S. Dist. LEXIS 134182, at *18-20 (N.D. Ind. June 21, 2010) (recommending exclusion of defendant's expert's opinion that relied on a histogram summarizing survey data where the histogram was created and provided to the expert by defendant, the expert did not review or verify the underlying data, and the underlying surveys were not produced to plaintiff such that plaintiff "cannot test the histogram's reliability without evaluating the underlying surveys.") *report & recommendation adopted,* 2010 U.S. Dist. LEXIS 134175, at *5-6 (N.D. Ind. Dec. 17, 2010).

## CONCLUSION

WHEREFORE, for the reasons stated above, the Movants respectfully request that the Court grant the Motion and (i) exclude the testimony of Mr. Hindery with respect to his estimations

---

[7] The Rangers have made repeated requests for the underlying source material used to create the projections for this case, but the Debtors have refused to provide them.  Accordingly, the Rangers have moved to exclude these materials. *See Rangers Baseball Express LLC's Emergency Motion* In Limine *To Exclude The Debtors' Litigation-Generated Projections Concerning The Rangers' Telecast Rights Fees*, filed contemporaneously herewith by the Rangers.

AMERICAS 123574433

of the reasonable value of the telecast rights of the Clubs, and (ii) strike Mr. Hindery's written opinions on this topic.

[*Remainder of page intentionally left blank.*]

AMERICAS 123574433

Dated: May 27, 2023
        Houston, Texas

Respectfully submitted,

*/s/ Thomas E Lauria*
Thomas E Lauria (Texas Bar No. 11998025)
Laura Femino (admitted *pro hac vice*)
Samuel Kava (admitted *pro hac vice*)
**WHITE & CASE LLP**
200 South Biscayne Blvd., Suite 4900
Miami, Florida
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: tlauria@whitecase.com
        laura.femino@whitecase.com
        sam.kava@whitecase.com

Glenn M. Kurtz (admitted *pro hac vice*)
Harrison Denman (admitted *pro hac vice*)
Camille M. Shepherd (admitted *pro hac vice*)
Elizabeth C. Stainton (admitted *pro hac vice*)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: gkurtz@whitecase.com
        harrison.denman@whitecase.com
        camille.shepherd@whitecase.com
        elizabeth.stainton@whitecase.com

Charles Koster (Texas Bar No. 24128278)
**WHITE & CASE LLP**
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
Email: charles.koster@whitecase.com

*Counsel for Rangers Baseball Express LLC*

– and –

22

William A. (Trey) Wood III (Texas Bar No. 21916050)
**BRACEWELL LLP**
711 Louisiana St., Suite 2300
Houston, Texas 77002
Telephone:  (713) 221-1166
Facsimile:  (713) 221-1212
Email:  trey.wood@bracewell.com

Mark Dendinger (admitted *pro hac vice*)
CityPlace I, 34th Floor, 185 Asylum Street
Hartford, Connecticut 06103
Telephone:  (860) 256-8541
Facsimile:  (860) 404-3970
Email:  mark.dendinger@bracewell.com

James L. Bromley (admitted *pro hac vice*)
John L. Hardiman (admitted *pro hac vice*)
Benjamin R. Walker (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
Email:  bromleyj@sullcrom.com
            hardimanj@sullcrom.com
            walkerb@sullcrom.com
            kranzleya@sullcrom.com

*Counsel for Office of the Commissioner of Baseball and Minnesota Twins, LLC*

– and –

Micheal W. Bishop (Texas Bar No. 02354860)
Amber M. Carson (Texas Bar No. 24075610)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:  mbishop@grayreed.com
            acarson@grayreed.com

23

Dale C. Schian (admitted *pro hac vice*)
Kortney C. Otten (admitted *pro hac vice*)
Kyle T. Geiger (admitted *pro hac vice*)
**GALLAGHER & KENNEDY, P.A.**
2575 E. Camelback Road
Phoenix, AZ 85016
Telephone:  (602) 530-8000
Facsimile:  (602) 530-8500
Email:  dale.schian@gknet.com
        kortney.otten@gknet.com
        kyle.geiger@gknet.com
        bkdocket@gknet.com

*Counsel to AZPB Limited Partnership, dba
Arizona Diamondbacks*

– and –

Oliver S. Zeltner (TX Bar No. 2410400)
Heather Lennox (admitted *pro hac vice*)
Philip M. Oliss (admitted *pro hac vice*)
Brett W. Bell (admitted *pro hac vice*)
Nick Buchta (admitted *pro hac vice*)
Alexander W. Prunka (admitted *pro hac vice*)
**JONES DAY**
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Email:  ozeltner@jonesday.com
        hlennox@jonesday.com
        poliss@jonesday.com
        bbell@jonesday.com
        nbuchta@jonesday.com
        aprunka@jonesday.com

*Attorneys for Cleveland Guardians
Baseball Company, LLC*

AMERICAS 123574433

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 27, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Thomas E Lauria*
Thomas E Lauria

25