IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: <br><br> DIAMOND SPORTS GROUP, LLC, *et al.*,¹ <br><br> Debtors. | Chapter 11 <br><br> Case No. 23-90116 (CML) <br><br> (Jointly Administered) <br><br> Hearing Date: July 17, 2023 at 2:00 p.m. CT <br><br> Re:  D.I. 921 |

**STATEMENT OF MAJOR LEAGUE BASEBALL IN RESPONSE TO
DEBTORS' EMERGENCY MOTION FOR ENTRY
OF AN ORDER (I) AUTHORIZING THE REJECTION OF THE
DIAMONDBACKS' TELECAST RIGHTS AGREEMENT
EFFECTIVE AS OF JUNE 30, 2023 AND (II) GRANTING RELATED RELIEF**

The Office of the Commissioner of Baseball d/b/a Major League Baseball ("MLB"), by and through its undersigned counsel, hereby files this statement in response (this "Statement") to the Motion by the above-captioned debtors and debtors-in-possession (the "Debtors") to authorize the rejection of the Diamondbacks telecast rights agreement (the "Motion to Reject").² MLB respectfully states as follows:

1. MLB does not object to the Debtors' proposed rejection of the Diamondbacks telecast rights agreement. MLB's submits this Statement solely to address ancillary issues that arise out of the rejection and the potential impact on the continued broadcast of Diamondbacks games, and relatedly, the ability of the Diamondbacks to continue monetizing such broadcasts after the rejection of their telecast rights agreement.

---

¹ A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

² *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Rejection of the Diamondbacks Agreement Effective as of June 30, 2023 and (II) Granting Related Relief* [D.I. 921].

4869-5562-5068 v.2

2. MLB's paramount interest is the continued broadcast of all games to its fans. To this end, MLB is focused on the ability of the Diamondbacks to produce, distribute and benefit financially from their games. As was the case with the San Diego Padres, whose games were abruptly dropped by a non-Debtor affiliate of the Debtors, MLB stands ready to broadcast the Diamondbacks' games. However, rejection of telecast rights agreements without additional clarity puts the broadcast of games post-rejection at risk.

3. As the Court is aware, the pathway from the playing of an MLB game to the broadcast of that game to the fans involves multiple parties and multiple governing documents. In the linear space, there are two main documents – the telecast rights agreement and the distribution agreement. A telecast rights agreement is between the club and the broadcaster, here, a Debtor RSN entity, under which the broadcaster pays the club. A distribution agreement is an agreement between the distributor (i.e., traditional and virtual multichannel video programing distributors) and the broadcaster, under which the distributor pays the broadcaster. The distributor then sells the linear broadcast to subscribers, where the subscribers (i.e., the fans) pay the distributor.

4. Distribution agreements, including those governing the broadcast by the Debtors of Diamondback games, are critical to understanding the mechanics of broadcasting baseball games. Here, despite long-standing requests made to the Debtors for access to such agreements, MLB and its clubs, including the Diamondbacks, have been denied access to the distribution agreements between the Debtors and traditional and virtual multichannel video programing distributors. As is self-evident, in those situations where the Debtors reject a telecast rights agreement, MLB, and indeed any other post-rejection broadcaster, must contract with the same distributors to ensure the uninterrupted broadcast of MLB games. The Debtors refusal to

provide access to the underlying distribution agreements unnecessarily puts at risk the broadcast of games that had previously been subject to rejected telecast rights agreements.

5. MLB's understanding, which was confirmed by witnesses in the trial conducted by this Court on May 31, and June 1, 2023, is that in the sports broadcast industry it is typical for distribution agreements to require in the context of an unterminated telecast rights agreement for the distributor to pay a RSN for a period of up to a year even if the club does not provide the minimum contracted games[3], subject to rebate of those fees by the RSN to the distributor at a later date based on the failure to meet the minimum contracted games requirement. Accordingly, any insistence by the Debtors that distributors continue to make payments to the Debtors despite the Debtors no longer delivering the games to those distributors – as a result of the Debtor's voluntary rejection/termination/breach of the related telecast rights agreement – could chill distributors from paying the actual party delivering Diamondbacks game content during the post-rejection period. It is commercially unreasonable to expect a distributor to pay two parties for the same content, particularly because the distributor cannot be assured that it will in fact receive any contractually required rebate payment from the Debtors.

6. To the extent that any distribution agreement arguably contains continuing payment obligations to the Debtors for the Diamondbacks' games or would otherwise prevent the rightsholder of Diamondbacks' broadcast rights from taking all necessary steps to enable the continued distribution of Diamondbacks' games or other content following the Debtors' rejection of their telecast rights agreement, any order granting rejection should make clear that, notwithstanding the terms or conditions of any distribution agreement, broadcasts of any

---

[3] This might occur in the ordinary course in the event of a strike or other unanticipated interruption, such as the COVID-19 pandemic. These terms should not apply where the RSN ceases to be an RSN by rejecting, terminating or otherwise fundamentally breaching the related underlying telecast rights agreement.

Diamondbacks' games or other related content by the relevant distributors will not be prevented and the distributors will not have to make payments to the Debtors post-rejection for Diamondbacks' games or other related content where that content is actually being delivered following rejection by non-Debtor third parties such as MLB.

| | |
|---|---|
| Dated: July 13, 2023<br>Houston, Texas | **BRACEWELL LLP**<br><br>*/s/ William A. (Trey) Wood III*<br>William A. (Trey) Wood III (Texas Bar No. 21916050)<br>711 Louisiana St., Suite 2300<br>Houston, Texas 77002<br>Telephone: (713) 221-1166<br>Facsimile: (713) 221-1212<br>E-mail: trey.wood@bracewell.com<br><br>Mark Dendinger (admitted *pro hac vice*)<br>CityPlace I, 34th Floor, 185 Asylum Street<br>Hartford, Connecticut  06103<br>Telephone: (860) 256-8541<br>Facsimile: (800) 404-3970<br>E-mail:  mark.dendinger@bracewell.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>James L. Bromley (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: bromleyj@sullcrom.com<br>          kranzleya@sullcrom.com<br><br>Counsel for Office of the Commissioner of Baseball |

## **CERTIFICATE OF SERVICE**

I certify that on July 13, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*William A. (Trey) Wood III*
William A. (Trey) Wood III

4869-5562-5068 v.2