IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) Case No. 23-90116 (CML) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) (Emergency Relief Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN AGREED ORDER (I) AUTHORIZING THE REJECTION OF THE COYOTES AGREEMENT *NUNC PRO TUNC* TO OCTOBER 1, 2023 AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 5:00 p.m. (prevailing Central Time) on October 10, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") by and through their undersigned counsel, respectfully state as follows in support of this motion (the "Motion"):

**Relief Requested**

1.  The Debtors seek entry of an order, substantially in the form attached hereto, (a) authorizing the Debtors' rejection of the Coyotes Agreement (as defined below), *nunc pro tunc* to October 1, 2023, and (b) granting related relief.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 6004 and 6006, and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

**Background**

5.      On March 14 and 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On March 15, 2023, the Court entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On March 27, 2023, the Office of the United States Trustee for the Southern District of Texas appointed an official committee of unsecured

creditors. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

6. The Debtors own and/or operate the Bally Sports Regional Sports Networks (the "RSNs"), making them the nation's leading provider of local sports programming. As of the Petition Date, the Debtors' 19 Bally Sports RSNs served as the home for 42 Major League Baseball, National Basketball Association, and National Hockey League ("NHL") teams.

## Coyotes Agreement

7. Debtor Diamond Sports Net Arizona, LLC ("Diamond Arizona"), which owns and operates the Bally Sports Arizona RSN, is party to a Binding Telecast Rights Agreement, dated as of September 30, 2013, with IceArizona Hockey Co, LLC d/b/a Arizona Coyotes (the "Coyotes"), which owns and operates the NHL franchise known as the Arizona Coyotes (such agreement, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Coyotes Agreement").[2] Pursuant to the Coyotes Agreement, Diamond Arizona has the exclusive right to telecast all local Coyotes games (that are not selected for exclusive national telecast) within a specified territory in exchange for annual payments to the Coyotes.

8. The current term of the Coyotes Agreement extends through the conclusion of the Coyotes' 2024-25 NHL season. The rights fee payments under the Coyotes Agreement total tens of millions of dollars annually and increase yearly. Absent rejection effective as of October 1, 2023, the Debtors would owe a substantial payment to the Coyotes, with additional payments

---

[2] The Coyotes Agreement has not been filed with this Motion because it contains confidential, sensitive, or proprietary information and is subject to confidentiality restrictions. The relevant non-debtor counterparties and the Official Committee of Unsecured Creditors (subject to appropriate confidentiality restrictions) are already in possession of the Coyotes Agreement. A complete copy of the Coyotes Agreement will be made available to the Court and/or, the United States Trustee upon request, subject to appropriate confidentiality protections.

due on November 1 and December 1.  Absent rejection, the Debtors would be scheduled to broadcast the first regular season Coyotes game of the 2023 NHL season on October 13, 2023.

9. The Debtors have been conducting an ongoing analysis of their rights agreement portfolio to identify those rights agreements that are burdensome and/or otherwise unnecessary for the Debtors' go-forward business operations.

10. As of the Petition Date, the Bally Sports Arizona RSN broadcasted games of the Arizona Diamondbacks, the Phoenix Suns, and the Coyotes.  The Debtors determined that the Bally Sports Arizona RSN was not profitable to the Debtors.  As a result, the Debtors rejected their telecast rights agreement with the Arizona Diamondbacks [Docket No. 967] and declined to exercise their right to match the deal that the Phoenix Suns reached with Gray Television.  As a result of these developments and the Debtors' ongoing analysis, the Debtors have determined, in their business judgment, that the Coyotes Agreement no longer fits within the Debtors' long-term plans and should be rejected.

11. The Debtors have discussed the relief requested in this Motion with the Coyotes, and the parties have mutually agreed on this course of action.  The Coyotes have consented to the relief requested in this Motion and to entry of the proposed order.

### Basis For Relief

**I.   The Rejection of the Coyotes Agreement Is Appropriate and Provides the Debtors with Significant Cost Savings.**

12. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco*

4

*Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)); *see also In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993) (noting that the purpose of rejection of executory contracts is to permit the debtor in possession to renounce title to and abandon burdensome property).

13.     A debtor's decision to reject an executory contract or unexpired lease is ordinarily governed by the "business judgment" standard. *See Richmond Leasing Co. v. Capital Bankr, N.A.*, 762 F.2d 1303 1309 (5th Cir. 1985) ("It is well established that the 'question whether a lease should be rejected . . . is one of business judgment." (quoting *Grp. of Institutional Inv'rs v. Chicago, M., St. P & P. R. Co.*, 318 U.S. 523, 550 (1943))); *see also In re Texas Sheet Metals, Inc.*, 90 B.R. 260, 264 (Bankr. S.D. Tex. 1988) ("The traditional business judgment standard governs the rejection of ordinary executory contracts.").

14.     Rejection of an executory contract is appropriate where such rejection would benefit the estate. *See In re Pisces Energy*, *LLC*, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment."); *see also In re Orion Pictures Corp.*, 4 F.3d at 1098–99 (stating that section 365 of the Bankruptcy Code permits a debtor in possession, subject to court approval, to decide which executory contracts would be beneficial to reject).  The business judgment standard requires a court to approve a debtor's business decision unless that decision is the product of "bad faith, or whim or caprice." *See Pisces Energy*, 2009 WL 7227880, at *6 ("In the absence of a showing of bad faith . . . the debtor's business judgment will not be altered.").

15.     Rejection of the Coyotes Agreement is well within the Debtors' business judgment and is in the best interest of their estates.  As discussed above, the Debtors determined that the Bally Sports Arizona RSN, which broadcasted the games of the Arizona Diamondbacks,

5

the Phoenix Suns, and the Coyotes is unprofitable and is projected to be increasingly unprofitable in subsequent years. The current costs associated with operating the Bally Sports Arizona RSN outweigh the revenues the Debtors are able to obtain through broadcasting content. As a result, the Debtors previously rejected the Arizona Diamondbacks telecast rights agreement and declined to exercise their right to match the deal that the Phoenix Suns reached with Gray Television, resulting in the Bally Sports Arizona RSN ceasing to broadcast those teams' games. As the final step in exiting the Bally Sports Arizona RSN, the Debtors have concluded that the Coyotes Agreement is not necessary to the Debtors' business and is unlikely to provide a net benefit to the Debtors or their estates.

16.     As noted above, the Coyotes Agreement requires the Debtors to pay significant rights fees annually, increasing year-over-year, through the conclusion of the agreement's term in 2025. Absent rejection, the Coyotes Agreement would impose ongoing obligations on the Debtors and their estates that would unnecessarily drain the Debtors' resources compared to the benefits associated therewith. Indeed, absent rejection effective as of October 1, 2023, a substantial rights fee payment would be due to the Coyotes, with additional payments due on November 1 and December 1. The Debtors have determined in their business judgment that such costs are an unnecessary and unproductive use of estate assets and that rejection of the Coyotes Agreement will provide significant savings to the Debtors' estates moving forward.

17.     The Debtors have discussed this matter with the Coyotes, and the Coyotes have agreed that, under the circumstances, rejection of the Coyotes Agreement is the best course of action for both parties. Accordingly, the Coyotes have agreed to the relief requested in this Motion and to entry of the proposed order.

## II. The Court Should Deem the Coyotes Agreement Rejected Effective as of October 1, 2023.

18. The Debtors respectfully submit that it is appropriate for the Court to deem the Debtors' rejection of the Coyotes Agreement effective *nunc pro tunc* to October 1, 2023. Under sections 365(a) and 105(a) of the Bankruptcy Code, bankruptcy courts may grant retroactive rejection of an executory contract or unexpired leased based on a balancing of the equities of the case. *See, e.g., In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (granting retroactive relief for contract rejection where debtors were "receiving no benefit" from the lease and the contract counterparties "had unequivocal notice of Debtors' intent to reject prior to the filing of the Motions"); *In re O'Neil Theaters, Inc.*, 257 B.R. 806, 808 (Bankr. E.D. La. 2000) (granting retroactive relief noting the circumstances favored granting the relief); *In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (finding that "nothing precludes a bankruptcy court, based on the equities of the case, from approving" retroactive rejection); *In re Joseph C. Spiess Co.*, 145 B.R. 597, 606 (Bankr. N.D. Ill. 1992) ("[A] trustee's rejection of a lease should be retroactive to the date that trustee takes affirmative steps to reject said lease . . . ."); *see also Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)* 67 F.3d 1021, 1028 (1st Cir. 1995) (nothing that "bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation"); *Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1065-71 (9th Cir. 2004) (affirming bankruptcy court's approval of retroactive rejection), *cert. denied,* 546 U.S. 814 (2005).

19. The balance of equities favors the relief requested herein. As an initial matter, the Coyotes have consented to the relief requested in this Motion, including effectiveness of such relief *nunc pro tunc*. Additionally, the Debtors have decided to reject the Coyotes Agreement

7

after thorough review, analyzing its costs and benefits, and determining that the Coyotes Agreement is no longer beneficial to their estates.  Without a retroactive date of rejection, the Debtors may face unnecessary administrative expenses on account of the Coyotes Agreement, including a substantial rights fee payment that would otherwise have been due under the Coyotes Agreement on October 1, 2023.

20. Moreover, the Coyotes will not be unduly prejudiced if the rejection of the Coyotes Agreement is deemed effective as of October 1, 2023.  The Debtors are not scheduled to broadcast a regular season Coyotes game until October 13, 2023.  The Debtors have informed the Coyotes that they intend to seek rejection of the Coyotes Agreement effective as of October 1, 2023, and that the Debtors will not broadcast any regular season Coyotes Games.  The Debtors and Coyotes agree that Diamond Arizona's backend rights described in section 10 of the Coyotes Agreement shall not survive rejection of the Coyotes Agreement.  The Coyotes have consented to this relief, and the Debtors understand that the Coyotes and the NHL have transition plans in place to facilitate the continued distribution of Coyotes games to fans.

21. The Debtors have sought the relief requested at the earliest practicable time in light of events transpiring in these chapter 11 cases.  Specifically, the Debtors have until the filing of this Motion been negotiating with the Coyotes and the NHL, and engaging in mediation with other parties in these chapter 11 cases, to explore potential scenarios in which the Debtors could keep the Coyotes Agreement in place.  It has become clear as of the filing of this Motion, however, that no such scenario is possible with respect to the Coyotes Agreement.

22. Numerous courts have authorized relief similar to the relief requested herein.  *See e.g.*, *In re Heritage Power, LLC*, Case No. 23-90032 (CML) (Bankr. S.D. Tex. Mar. 2, 2023) (ECF No. 141) (authorizing rejection of executory contracts *nunc pro tunc* to date of motion); *In*

8

*re EP Energy Corp.*, Case No. 19-35654 (MI) (Bankr. S.D. Tex. Jan 24, 2020) (ECF No. 722) (same); *In re Westmoreland Coal Co.*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. May 29, 2019) (ECF No. 1892) (same); *In re EXCO Res., Inc.*, Case No. 18-30155 (MI) (Bankr. S.D. Tex. Mar. 7, 2018) (ECF No. 446) (authorizing rejection of executory contracts *nunc pro tunc* to the petition date); *In re Sandridge Energy, Inc.*, Case No. 16-32488 (DRF) Bankr. S.D. Tex. June 30, 2016) (ECF No. 439) (authorizing rejection of executory contracts *nunc pro tunc* to date of motion).

23.     In light of the foregoing, the Debtors respectfully request that the Court approve the rejection of the Coyotes Agreement pursuant to sections 365(a) and 105(a) of the Bankruptcy Code and Rule 6006 of the Bankruptcy Rules in the manner requested herein.

## Emergency Consideration

24.     The Debtors request emergency consideration of the request set forth herein on or before October 10, 2023, pursuant to Bankruptcy Rule 9013 and Local Rule 9013-1. The Coyotes regular season games begin on October 13, 2023. The Debtors and the Coyotes have agreed on the relief requested in this Motion, and having the rejection order entered on or before October 13, 2023 is necessary to give the Coyotes certainty on the termination of their go-forward relationship with the Debtors and to enable the Coyotes to facilitate an appropriate transition to avoid disruption to fans.

## Reservation of Rights

25.     Nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right

9

to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) other than with respect to the Coyotes Agreement, a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law, including the Debtors' right to seek disgorgement or repayment, pursuant to section 502(j) of the Bankruptcy Code or otherwise, of any amounts paid to the Coyotes; (h) a waiver of the obligation of any party in interest to file a proof of claim by the bar date; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

## Notice

26. The Debtors will provide notice of this Motion to (a) the parties on the Master Service List available on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG, (b) the Coyotes, and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the proposed order, substantially in the form attached hereto, granting the relief requested herein and granting such other relief as the Court deems appropriate under the circumstances.

October 4, 2023

Respectfully submitted,

By: */s/John F. Higgins*

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
Bryan L. Rochelle (TX Bar No. 24107979)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile:  (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
brochelle@porterhedges.com

- and -

**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
Andrew Goldman (admitted *pro hac vice*)
Benjamin Loveland (admitted *pro hac vice*)
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
andrew.goldman@wilmerhale.com
ross.firsenbaum@wilmerhale.com
benjamin.loveland@wilmerhale.com

## **Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief. This statement is made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ John F. Higgins*
John F. Higgins

**Certificate of Service**

      I certify that on October 4, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                        */s/ John F. Higgins*
                                        John F. Higgins