**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) |
| | ) Case No. 23-90116 (CML) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |
| | ) (Emergency Relief Requested) |
| | ) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING ENTRY INTO AND PERFORMANCE UNDER THE NBA TERM**
**SHEET; (II) AUTHORIZING ASSUMPTION OF CERTAIN NBA AGREEMENTS; AND**
**(III) GRANTING RELATED RELIEF**

---

**Emergency relief has been requested. Relief is requested not later than 9:00 a.m. (prevailing Central Time) on November 15, 2023.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on November 15, 2023, at 9 a.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez." Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

## Relief Requested

1.      By this motion, the Debtors seek one of a series of orders that will implement a value-maximizing transition of the Debtors' business while preserving the possibility for alternative (more valuable) transactions.   Specifically, the Debtors seek entry of an order, substantially in the form attached hereto, (a) authorizing the Debtors to enter into and perform their obligations under a term sheet with the National Basketball Association (including on behalf of certain NBA teams) (the "NBA"), attached hereto as **Exhibit A** (the "Term Sheet"), that modifies the terms of the Debtors' rights agreements with the NBA and its teams, (b) authorizing the Debtors to assume all rights agreements (as modified by the Term Sheet) to which they are parties with the NBA and NBA teams, which agreements are listed on **Exhibit B** hereto, and (c) granting related relief.

## Preliminary Statement

2.      The Debtors—the leading provider of regional sports network ("RSN") programming in the United States—commenced these chapter 11 cases due in large part to dramatic shifts in the cable industry caused, in large part, by subscriber churn – that is, subscribers "cutting the cord" and migrating away from traditional cable and satellite multichannel video distributors to streaming services.  This unprecedented subscriber loss and concomitant decrease in distribution revenue caused many of the Debtors' existing rights deals with their sports league and team partners to become uneconomical and the Debtors' business to become unsustainable in the form it existed as of the Petition Date.

3. After months of negotiations, and with the help of the Court-appointed judicial mediators (the "Mediators"), the Debtors have made significant progress towards addressing that issue, at least in the short term. From the outset of these cases, the Debtors have had numerous discussions from time to time on a path forward with key parties in interest in these cases, including their funded debt creditors, the official committee of unsecured creditors (the "UCC"), their league and team partners, as well as their content distributors, and each of their respective advisors.

4. Beginning in June 2023, members of each of the Debtors' three ad hoc funded debt creditor groups entered into non-disclosure agreements with the Debtors for the purpose of negotiating a consensual chapter 11 plan. On August 17, 2023, the Court appointed the Mediators, and mediation discussions began in earnest soon after. On September 26 and 27, 2023, the Mediators presided over two days of in-person mediation with the Debtors, the UCC, each of the three funded debt creditor ad hoc groups, the NBA, Major League Baseball, the National Hockey League, and Sinclair.[2]

5. Those mediated negotiations have culminated in an agreement around a framework for an orderly transition of the Debtors' businesses in chapter 11 through the end of the 2023-2024 NBA and National Hockey League seasons and the 2024 Major League Baseball season. This transition framework is embodied in a Cooperation Agreement among the Debtors, the UCC, and the ad hoc group of the Debtors' first lien lenders (the "First Lien Group"), which is the subject of an approval motion filed contemporaneously herewith.[3] The Cooperation Agreement also resolves a host of intercreditor issues, including the allowance and treatment of the first lien lenders' claims

---

[2] MLB, the NBA, and the NHL participated only in the second day of the in-person mediation on September 27, 2023.

[3] *Debtors' Emergency Motion for Entry of an Order (I) Authorizing Entry Into and Performance Under the Cooperation Agreement, (II) Approving the Terms of the Settlements Contained Therein, and (III) Granting Related Relief* (the "Cooperation Agreement Motion")

as well as an allocation of value and administrative expenses among the Debtors' first lien creditors, on the one hand, and their unsecured and undersecured creditors, on the other hand, that will pave the way for the Debtors to propose a chapter 11 plan.

6.       In support of the transition contemplated by the Cooperation Agreement, the NBA has agreed, pursuant to the Term Sheet, to grant the Debtors certain modifications to their rights agreements that, together with other agreements and transactions contemplated as part of the Cooperation Agreement, the Debtors project will allow them to operate profitably through the end of the 2023-2024 NBA and National Hockey League seasons and the end of the 2024 Major League Baseball season, which will allow the Debtors to fund an orderly transition in chapter 11, culminating in a chapter 11 plan.  This plan also leaves the door open to potential transactions that could offer a higher recovery or otherwise better path forward for the Debtors and their estates. The Term Sheet (and the transition plan generally) will also provide clarity to the NBA and its teams, and allow them to transition operations after the 2023-2024 season, while minimizing potential disruption for sports fans.  The NBA is fully supportive of this path forward.  The transition plan will maximize value for the Debtors, their estates, and their creditor constituencies. The Term Sheet, which is a central part of the Debtors' transition plan, reflects a significant achievement in these chapter 11 cases.

7.       For the reasons set forth more fully herein, the Debtors respectfully submit that entry into the Term Sheet is unquestionably a reasonable exercise of their business judgment. Accordingly, the Debtors request that the Court approve the Debtors' entry into the Term Sheet and authorize the Debtors' assumption of the NBA Agreements (as defined below), as modified by the Term Sheet.

**Jurisdiction and Venue**

8.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.      Venue is proper pursuant to 28 U.S.C. §§ 1408.

10.      The bases for the relief requested herein are sections 105(a), 363(b), and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 6004 and 6006, and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

**Background**

**I.      Procedural Background**

11.      On March 14 and 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On March 15, 2023, the Court entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 27, 2023, the Office of the United States Trustee for the

Southern District of Texas appointed an official committee of unsecured creditors.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## II.    The Debtors' Relationship With the NBA

### a.    The NBA Agreements

12.    The Debtors' regional sports networks ("RSNs") broadcast NBA games for 13 NBA teams in the RSNs' regional markets.[4]  The RSNs have previously had both linear and direct-to-consumer ("DTC") rights for these NBA teams.  The RSNs obtain their linear rights through separate telecast rights agreements between each individual NBA team and the respective RSN (the "NBA Telecast Rights Agreements"), with terms that expire between 2024 and 2030.  The RSNs obtain their DTC rights (as well as additional digital and streaming rights) and the ability to distribute games in the teams' extended markets (*i.e.*, a broader geographic footprint than the teams' home territory) through separate agreements between the NBA's media and licensing unit—NBA Media Ventures, LLC ("NBAMV")—and the respective RSN (the "Extended Market Agreements" or "EMAs").

13.    After the conclusion of the 2020-2021 NBA season, when the EMAs were set to expire on their terms, Debtor Diamond Sports Group, LLC ("Diamond") and the applicable RSNs, on the one hand, and NBAMV, on the other hand, negotiated and entered into a Binding Term Sheet that became effective in January 2022 (the "2022 Agreement," and together with the NBA Telecast Rights Agreements and EMAs, the "NBA Agreements").  A list of the NBA Agreements is attached hereto as **Exhibit B**.

---

[4]    Two non-debtor RSNs, Diamond Sports Kansas City, LLC and Diamond Sports Net Florida 2, LLC, which are operated and majority owned by the Debtors, broadcast the games of two NBA additional teams, the Indiana Pacers and the Orlando Magic (the "Non-Debtor NBA RSNs"), resulting in a total of 15 NBA teams presently in the Debtors' RSN portfolio.  As of the Petition Date, the Debtors also broadcasted the games of the Phoenix Suns, but the Debtors' agreements relating to the Phoenix Suns expired on their terms during the course of these chapter 11 cases.

14.     The 2022 Agreement extended the term of the EMAs through the 2021-2022 NBA season with certain modifications.  The 2022 Agreement also required NBAMV to offer Diamond and the RSNs, on an annual basis by June 1 of each year, new EMAs on substantially the same terms through the 2024-2025 NBA season, if Diamond and the RSNs satisfied certain conditions set forth in the 2022 Agreement during the twelve months preceding the new offer period.  In accordance with the terms of the 2022 Agreement, prior to the Petition Date, the NBA offered, and Diamond and the RSNs accepted, new EMAs for the 2022-2023 NBA season.

15.     Because Diamond and the RSNs failed to satisfy certain conditions under the 2022 Agreement in 2023, they were not entitled to new EMA offers for the 2023-2024 NBA season.

### b.  The NBA Term Sheet

16.     Both before and after the Petition Date, the Debtors and the NBA engaged in extensive, constructive negotiations regarding an arrangement that would support the Debtors' continued operation as a going concern.[5]  Once it became clear that the Debtors would need to pivot to the transition plan described above, the Debtors and the NBA began negotiating the terms of an arrangement that would allow the Debtors to maximize value for stakeholders.  Those negotiations culminated in the Term Sheet, which grants modifications that, together with the other elements of the Debtors' transition plan, are expected to enable the Debtors to operate and consummate the transition over the next eleven months, culminating in a fully funded chapter 11

---

[5]     The Debtors' discussions with the NBA took place primarily between the Debtors' and the NBA's principals. Although the judicial mediators, including Judge Jones, did assist the parties during the in-person mediation sessions that occurred in Washington, D.C. on September 26 and 27, 2023, the modifications embodied in the Term Sheet were negotiated outside of the mediation process, directly between the Debtors and the NBA. The law firm Jackson Walker LLP is local counsel to the NBA, however, the NBA is also represented in this matter by its primary counsel, Proskauer Rose LLP. To the Debtors' knowledge, the Law Office of Liz Freeman has not been involved in any matters pertaining to the Debtors and the TNBA.

plan process that will maximize value for distribution to the Debtors' secured and unsecured

creditors.

17.     Key terms of the Term Sheet include:[6]

   a.   Certain rights fee modifications that, together with the other elements of the
        Debtors' transition plan, are projected to allow the Debtors to operate through
        the end of the 2024 MLB season.

   b.   Grants to the Debtors DTC and extended market rights through the 2023-2024
        NBA season.

   c.   Modification of the terms of all NBA Agreements such that each NBA
        Agreement will expire at the end of the 2023-2024 NBA season, thus
        eliminating potential rejection damage claims (or administrative expense
        claims) for fees that would otherwise have been due under such agreements
        beyond the 2023-2024 NBA season.

18.     In exchange for these modifications, the Debtors have agreed to assume all of the

NBA Agreements (as modified by the Term Sheet) and, following approval of the Term Sheet,

pay the amounts due thereunder in accordance with the modifications under the Term Sheet and

in the ordinary course as allowed administrative expenses pursuant to section 503 of the

Bankruptcy Code.  The NBA teams are also entitled to elect to retain certain regular season games

for local over-the-air distribution.  The NBA and its teams have the right to terminate the Term

Sheet, without seeking further relief from the Court, in the event the Debtors breach the Term

Sheet or fail to satisfy certain performance conditions.  Finally, the Debtors, on the one hand, and

the NBA and its teams, on the other, have agreed to grant mutual releases of all potential claims

(other than claims relating to breach of the Term Sheet or the NBA Agreements after approval of

the Term Sheet and assumption of the NBA Agreements).  Critically, the Term Sheet provides the

NBA and its teams with clarity through the 2023-2024 NBA season and allows them to transition

---

[6]   The summary of the Term Sheet in this motion is qualified in its entirety by the provisions of the Term Sheet and
      all exhibits and schedules thereto.  To the extent anything in this motion is inconsistent with the Term Sheet, the
      terms of the Term Sheet shall control.

operations, with the Debtors' cooperation, before the start of the 2024-2025 NBA season, thus minimizing potential disruption to fans.

19.     The parties' obligations under the Term Sheet are conditioned upon entry of an order approving the Term Sheet and the assumption of the NBA Agreements (as modified by the Term Sheet) and the entry and effectiveness of an order approving the Cooperation Agreement (the "Cooperation Agreement Order") upon satisfaction of the conditions set forth therein. Pending approval of the Term Sheet and the entry and effectiveness of the Cooperation Agreement Order, the Debtors, by agreement with the NBA and its teams, are continuing to broadcast NBA content and to pay for such content on a per-game basis at the rates reflected in the Term Sheet.

## Basis for Relief

20.     Entry into the Term Sheet and assumption of the NBA Agreements, as modified by the Term Sheet, should be approved as a reasonable exercise of the Debtors' business judgment.

21.     With respect to the Debtors' entry into the Term Sheet, section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing.  11 U.S.C. § 363(b)(1).  It is well established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so. *See, e.g., ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l. Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986)).

22.    "The business judgment standard in section 363 is flexible and encourages discretion." *In re ASARCO, L.L.C.*, 650 F.3d at 601. "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); *see also In re Idearc, Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009), *aff'd sub nom. Spencer Ad Hoc Equity Comm. v. Idearc, Inc., (In re Idearc, Inc.)*, 662 F.3d 315 (5th Cir. 2011) ("In the absence of a showing of bad faith or an abuse business of discretion, the debtor's business judgment will not be altered."); *Comm. of Asbestos-Related Litigants &/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

23.    With respect to assumption of the NBA Agreements, section 365(a) of the Bankruptcy Code authorizes a debtor in possession to assume or reject its executory contracts and unexpired leases, subject to the approval of the bankruptcy court.  11 U.S.C. § 365(a).  Like transactions entered into pursuant to section 363 of the Bankruptcy Code, the decision to assume or reject an executory contract pursuant to section 365 is a matter within the "business judgment" of the debtor in possession. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Pisces Energy, LLC*, No. 09-36591, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment."). Upon a finding that a debtor exercised its sound business judgment in determining that assumption of an executory contract is in the best interests of its estate, a court should approve the assumption or rejection under section 365(a) of the Bankruptcy Code. *See*

*Richmond Leasing Co.*, 762 F.2d at 1309; *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

24.     Here, there can be no doubt that entry into the Term Sheet and assumption of the NBA Agreements (as modified by the Term Sheet) is a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors, their estates, and all stakeholders.  As described above, the Term Sheet yields material benefits to the Debtors.  The modifications to the NBA Agreements embodied in the Term Sheet, together with the other agreements and transactions contemplated by the Cooperation Agreement, are projected to allow the Debtors to operate and generate sufficient revenue through the 2024 MLB season to implement their transition plan. Indeed, the modified terms and continued access to NBA content provided by the Term Sheet are essential components of the transition plan contemplated by the Cooperation Agreement, which reflects a global resolution of intercreditor issues among the Debtors' first lien creditors on the one hand and the Debtors' unsecured and undersecured creditors on the other hand.  The Term Sheet also reduces the potential for rejection damages claims by the NBA and its teams by reducing the term of the relevant agreements to correspond with the anticipated duration of the Debtors' transition efforts.  The effectiveness of the Term Sheet and assumption of the NBA Agreements is conditioned upon the entry and effectiveness of the Cooperation Agreement Order.

25.     In connection with the benefits obtained through the Term Sheet, the Debtors have agreed to assume the NBA Agreements and to pay the amounts due thereunder as administrative expenses in accordance with the terms of the Term Sheet.  The Debtors and the NBA have also agreed to mutual releases (except for claims relating to the Term Sheet and the NBA Agreements

11

after the date of the Term Sheet and certain prepetition general unsecured claims that have been

agreed to as between the Debtors and the NBA).  Because the Debtors are not aware of any claims

against the NBA or its teams as of the date of this motion and because the Debtors' rights will be

preserved with respect to future breaches of the Term Sheet and the NBA Agreements, which will

govern the go-forward relationship between the parties, the Debtors believe that this is a reasonable

compromise, particularly because the NBA and its teams will also be granting mutual releases in

favor of the Debtors.

26.     For these reasons, the Debtors respectfully request that the Court authorize their

entry into and performance under the Term Sheet and their assumption of the NBA Agreements,

as modified by the Term Sheet, as a reasonable exercise of their business judgment.[7]

## Emergency Consideration

27.     Pursuant to Local Rule 9013-1, the Debtors respectfully request emergency

consideration of this motion.  Any delay in granting the relief requested therein would cause

irreparable harm to the Debtors, and the relief requested in this motion forms a central component

of the transition plan contemplated by the Cooperation Agreement Motion.  Moreover, the Term

Sheet requires the Debtors to seek expedited approval of such Term Sheet and the assumption of

the NBA Agreements given that the NBA's 2023-2024 season is already underway.  Pending

approval of the Term Sheet, the Debtors are continuing to broadcast NBA content and to pay for

such content on a per-game basis at the rates reflected in the Term Sheet, which arrangement is

premised on the Debtors' ability to continue to retain such content through the 2023-2024 NBA

---

[7]     For the avoidance of doubt, the terms of the Term Sheet apply equally to the Non-Debtor NBA RSNs.  Because
they are not debtors in these chapter 11 cases, however, this motion does not request any relief with respect to
those entities.

season pursuant to the Term Sheet.  Accordingly, the Debtors respectfully request that the Court

grant the relief requested in this motion on an emergency basis.

### Waiver of Bankruptcy Rules 6004(a), 6004(h), 6006(e) and 6006(f)

28.     The Debtors request that the Court enter an order providing that notice of the relief

requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to

exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).  The Debtors also

submit that cause exists to waive the requirements of Rules 6006(e) and 6006(f) and to permit the

Debtors to assume the NBA Agreements on an omnibus basis given that the assumption of such

agreements is consensual and required by the Term Sheet, which were heavily negotiated with the

counterparties to such agreements.

### Notice

29.     The Debtors will provide notice of this motion to (a) the parties on the Master

Service List available on the website of the Debtors' claims and noticing agent at

https://cases.ra.kroll.com/DSG, (b) NBAMV, (c) each counterparty to the NBA Agreements, and

(d) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit

that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the proposed order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

November 6, 2023

Respectfully submitted,

By: */s/ John F. Higgins*
**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
Bryan L. Rochelle (TX Bar No. 24107979)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile:  (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
brochelle@porterhedges.com

- and -

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Andrew N. Goldman (admitted *pro hac vice*)
Benjamin W. Loveland (admitted *pro hac vice*)
Lauren R. Lifland (admitted *pro hac vice*)
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile:  (212) 230-8888
andrew.goldman@wilmerhale.com
benjamin.loveland@wilmerhale.com
lauren.lifland@wilmerhale.com

*Section 327(e) Counsel to the Debtors and Debtors in Possession*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Brian S. Hermann (admitted *pro hac vice*)
Andrew M. Parlen (admitted *pro hac vice*)
Joseph M. Graham (admitted *pro hac vice*)
Alice Nofzinger (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990
bhermann@paulweiss.com
aparlen@paulweiss.com
jgraham@paulweiss.com
anofzinger@paulweiss.com

*Section 327(a) Counsel to the Debtors and Debtors in Possession*

**Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.  This statement is made pursuant to Local Rule 9013-1(i).

*/s/ Andrew N. Goldman*
Andrew N. Goldman

**Certificate of Service**

I certify that on November 6, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins