# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) ) | Case No. 23-90116 (CML) |
| Debtors. | ) ) ) ) ) | (Jointly Administered) (Emergency Relief Requested) |

## DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING ENTRY INTO AND PERFORMANCE UNDER THE NHL TERM SHEET; (II) AUTHORIZING ASSUMPTION OF CERTAIN NHL AGREEMENTS; AND (III) GRANTING RELATED RELIEF

> **Emergency relief has been requested. Relief is requested not later than 10:00 a.m. (prevailing Central Time) on January 3, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on January 3, 2024, at 10:00 a.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez." Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

## Relief Requested

1. By this motion, the Debtors seek entry of an order, substantially in the form attached hereto, (a) authorizing the Debtors to enter into and perform their obligations under a term sheet with the National Hockey League (including on behalf of certain NHL clubs) (the "NHL") and certain of its affiliates, attached hereto as **Exhibit A** (the "Term Sheet"), that modifies the terms of the Debtors' rights agreements with the NHL, certain of its affiliates, and certain NHL clubs, (b) authorizing the Debtors to assume the rights agreements (as modified by the Term Sheet) to which they are parties with the NHL, certain of its affiliates and certain NHL clubs, which agreements are listed on **Exhibit B** hereto, and (c) granting related relief.

## Preliminary Statement

2. By this motion, the Debtors seek approval of a Term Sheet with the NHL. The Term Sheet is one of the remaining foundational elements of the value-maximizing transition plan contemplated by the Cooperation Agreement that was approved by the Court on November 15, 2023.[2] The Cooperation Agreement is supported by the Debtors, the official committee of unsecured creditors (the "UCC"), the ad hoc group of the Debtors' first lien lenders (the "First Lien Group"), and certain members of an ad hoc group of primarily second lien lenders.

3. The Debtors project that the transactions contemplated by the Cooperation Agreement will allow them to operate profitably through the end of the 2023-2024 NHL and National Basketball Association ("NBA") seasons and the 2024 Major League Baseball ("MLB")

---

[2] *Order (I) Authorizing Entry Into and Performance Under the Cooperation Agreement, (II) Approving the Terms of the Settlements Contained Therein, and (III) Granting Related Relief* [Docket No. 1383] (the "Cooperation Agreement Order").

2

season. The Cooperation Agreement also resolves a host of intercreditor issues, including the allowance and treatment of the first lien lenders' claims as well as an allocation of value and administrative expenses among the Debtors' first lien creditors, on the one hand, and their unsecured and undersecured creditors, on the other hand. This transition plan also leaves the door open to potential transactions that could offer a higher recovery or otherwise better path forward for the Debtors and their estates and paves the way for the Debtors to propose a chapter 11 plan.

4. The Cooperation Agreement and the Cooperation Agreement Order have a number of conditions that must be satisfied before they become effective, including approval of agreements with the NBA and the NHL modifying the terms of their respective rights agreements as contemplated by the Cooperation Agreement. The first such transaction, the Debtors' agreement with the NBA (the "NBA Term Sheet"), was approved on November 15, 2023.[3]

5. Through this motion, the Debtors seek approval of a similar transaction with the NHL, reflected in the Term Sheet. The NHL has agreed, pursuant to the Term Sheet, to grant the Debtors certain modifications to their rights agreements that, together with the modifications resulting from the NBA Term Sheet, will facilitate the Debtors' consummation of the transition plan contemplated by the Cooperation Agreement. The Term Sheet will also provide clarity to the NHL and certain of its clubs and allow them to transition operations after the 2023-2024 NHL season, while minimizing potential disruption to sports fans. The Term Sheet is a critical part of the Debtors' transition plan and, as noted above, approval of the Term Sheet is a condition to the effectiveness of the Cooperation Agreement and the Cooperation Agreement Order.

6. For the reasons set forth more fully herein, the Debtors respectfully submit that entry into the Term Sheet is unquestionably a reasonable exercise of their business judgment.

---

[3] *Order (I) Authorizing Entry Into and Performance Under NBA Term Sheet; (II) Authorizing Assumption of Certain NBA Agreements; and (III) Granting Related Relief* [Docket No. 1378].

Accordingly, the Debtors request that the Court approve the Debtors' entry into the Term Sheet and authorize the Debtors' assumption of the NHL Agreements (as defined below), as modified by the Term Sheet.

**Jurisdiction and Venue**

7. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8. Venue is proper pursuant to 28 U.S.C. §§ 1408.

9. The bases for the relief requested herein are sections 105(a), 363(b), and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 6004 and 6006, and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

**Background**

I. **Procedural Background**

10. On March 14 and 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On March 15, 2023, the Court entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases

4

pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On March 27, 2023, the Office of the United States Trustee for the Southern District of Texas appointed an official committee of unsecured creditors.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

**II.     The Debtors' Relationship With the NHL**

    **a.  The NHL Agreements**

11.     The Debtors' regional sports networks ("RSNs") broadcast NHL games for 8 NHL clubs in the RSNs' regional markets.[4]  The RSNs presently have both linear and direct-to-consumer ("DTC") rights for these NHL clubs.  The RSNs obtain their linear rights through separate telecast rights agreements between each individual NHL club and the respective RSN (the "NHL Telecast Rights Agreements"), with terms that expire between 2024 and 2030.

12.     The RSNs obtain their DTC rights (as well as additional digital and streaming rights) and the ability to distribute games in the clubs' outer markets (i.e., a broader geographic footprint than the clubs' home territory) through a separate agreement between the NHL and Diamond (the "IMS Agreement," and together with the NHL Telecast Rights Agreements, the "NHL Agreements").  A list of the NHL Agreements is attached hereto as **Exhibit B**.

    **b.  The NHL Term Sheet**

13.     Both before and after the Petition Date, the Debtors and the NHL engaged in extensive, constructive negotiations regarding an arrangement that would support the Debtors'

---

[4] Three non-debtor RSNs, Diamond Sports Net St. Louis, LLC, Diamond Sports Net West, LLC, and Diamond Sports Net Florida 2, LLC, which are operated and majority-owned by the Debtors, broadcast the games of three additional clubs, the St. Louis Blues, the Los Angeles Kings, and the Florida Panthers, resulting in a total of 11 NHL clubs presently in the Debtors' RSN portfolio.  The Debtors previously rejected the telecast rights agreement with the Arizona Coyotes [Docket No. 1242].

continued operation as a going concern.[5] Once it became clear that the Debtors would need to pivot to the transition plan described above, the Debtors and the NHL began negotiating the terms of an arrangement that would allow the Debtors to maximize value for stakeholders. Those negotiations culminated in the Term Sheet, which grants modifications that, together with the other elements of the Debtors' transition plan, including the Debtors agreement with the NBA, are expected to enable the Debtors to operate and consummate the transition over the next eleven months, culminating in a fully funded chapter 11 plan process that will maximize value for distribution to the Debtors' secured and unsecured creditors.

14. Key terms of the Term Sheet include:[6]

   a. Certain rights fee modifications that, together with the other elements of the Debtors' transition plan, are projected to allow the Debtors to operate through the end of the 2024 MLB season.

   b. Modification of the terms of all NHL Agreements such that each NHL Agreement will expire at the end of the 2023-2024 NHL season, thus eliminating potential rejection damage claims (or administrative expense claims) for fees that would otherwise have been due under such agreements beyond the 2023-2024 NHL season.

15. In exchange for these modifications, the Debtors have agreed to assume all of the NHL Agreements (as modified by the Term Sheet) and, following effectiveness of the Term Sheet, pay the amounts due thereunder in accordance with the modifications under the Term Sheet and in the ordinary course as allowed administrative expenses pursuant to section 503 of the Bankruptcy Code. The NHL clubs are also entitled to elect to retain certain regular season games

---

[5] The Debtors' discussions with the NHL took place primarily between the Debtors' and the NHL's principals. Although the judicial mediators, including Judge Jones, did assist the parties during the in-person mediation sessions that occurred in Washington, D.C. on September 26 and 27, 2023, the modifications embodied in the Term Sheet were negotiated outside of the mediation process, directly between the Debtors and the NHL.

[6] The summary of the Term Sheet in this motion is qualified in its entirety by the provisions of the Term Sheet and all exhibits and schedules thereto. To the extent anything in this motion is inconsistent with the Term Sheet, the terms of the Term Sheet shall control.

for local over-the-air distribution.  The NHL and its clubs have the right to terminate the Term Sheet, without seeking further relief from the Court, in the event the Debtors breach the Term Sheet or fail to satisfy certain performance conditions.  Finally, the Debtors, on the one hand, and the NHL and its clubs, on the other, have agreed to grant mutual releases of potential claims relating to the NHL Agreements (other than claims relating to breach of the Term Sheet or the NHL Agreements after approval of the Term Sheet and assumption of the NHL Agreements).  Critically, the Term Sheet provides the NHL and certain clubs with clarity through the 2023-2024 NHL season and allows them to transition operations, with the Debtors' cooperation, before the start of the 2024-2025 NHL season, thus minimizing potential disruption to fans.

16.     The parties' obligations under the Term Sheet are conditioned upon entry of an order approving the Term Sheet and the assumption of the NHL Agreements (as modified by the Term Sheet) and the effectiveness of the Cooperation Agreement Order upon satisfaction of the conditions set forth therein.  Pending approval of the Term Sheet and the effectiveness of the Cooperation Agreement Order, the Debtors, by agreement with the NHL and its teams, are continuing to broadcast NHL content and to pay for such content on a per-game basis.

## Basis for Relief

17.     Entry into the Term Sheet and assumption of the NHL Agreements, as modified by the Term Sheet, should be approved as a reasonable exercise of the Debtors' business judgment.

18.     With respect to the Debtors' entry into the Term Sheet, section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing.  11 U.S.C. § 363(b)(1).  It is well established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so.  *See, e.g.,*

*ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986)).

19. "The business judgment standard in section 363 is flexible and encourages discretion." *In re ASARCO, L.L.C.*, 650 F.3d at 601. "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); *see also In re Idearc, Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009), *aff'd sub nom. Spencer Ad Hoc Equity Comm. v. Idearc, Inc., (In re Idearc, Inc.)*, 662 F.3d 315 (5th Cir. 2011) ("In the absence of a showing of bad faith or an abuse business of discretion, the debtor's business judgment will not be altered."); *Comm. of Asbestos-Related Litigants &/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

20. With respect to assumption of the NHL Agreements, section 365(a) of the Bankruptcy Code authorizes a debtor in possession to assume or reject its executory contracts and unexpired leases, subject to the approval of the bankruptcy court. 11 U.S.C. § 365(a). Like transactions entered into pursuant to section 363 of the Bankruptcy Code, the decision to assume or reject an executory contract pursuant to section 365 is a matter within the "business judgment" of the debtor in possession. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Pisces Energy, LLC*, No. 09-36591, 2009 WL 7227880, at *6 (Bankr. S.D.

Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment."). Upon a finding that a debtor exercised its sound business judgment in determining that assumption of an executory contract is in the best interests of its estate, a court should approve the assumption or rejection under section 365(a) of the Bankruptcy Code. *See Richmond Leasing Co.*, 762 F.2d at 1309; *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

21. Here, there can be no doubt that entry into the Term Sheet and assumption of the NHL Agreements (as modified by the Term Sheet) is a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors, their estates, and all stakeholders. As described above, the Term Sheet yields material benefits to the Debtors. The modifications to the NHL Agreements embodied in the Term Sheet, together with the other agreements and transactions contemplated by the Cooperation Agreement, are projected to allow the Debtors to operate and generate sufficient revenue through the 2024 MLB season to implement their transition plan. The modified terms and continued access to NHL content provided by the Term Sheet are essential components of the transition plan contemplated by the Cooperation Agreement, which reflects a global resolution of intercreditor issues among the Debtors' first lien creditors on the one hand and the Debtors' unsecured and undersecured creditors on the other hand. Indeed, approval of the Term Sheet is a condition to the effectiveness of the Cooperation Agreement and the Cooperation Agreement Order. The Term Sheet also reduces the potential for rejection damages claims by the NHL and its clubs by reducing the term of the relevant agreements to correspond with the

anticipated duration of the Debtors' transition efforts. The effectiveness of the Term Sheet and assumption of the NHL Agreements is conditioned upon the effectiveness of the Cooperation Agreement Order.

22. In connection with the benefits obtained through the Term Sheet, the Debtors have agreed to assume the NHL Agreements and to pay the amounts due thereunder as administrative expenses in accordance with the terms of the Term Sheet. The Debtors and the NHL have also agreed to mutual releases relating to the NHL Agreements (except for claims relating to the Term Sheet and the NHL Agreements after the date of the Term Sheet and certain prepetition general unsecured claims asserted by the NHL, certain of its affiliates and certain clubs). Because the Debtors are not aware of any claims against the NHL, its affiliates or its clubs as of the date of this motion and because the Debtors' rights will be preserved with respect to future breaches of the Term Sheet and the NHL Agreements, which will govern the go-forward relationship between the parties, the Debtors believe that this is a reasonable compromise, particularly because the NHL, certain of its affiliates and certain clubs will also be granting mutual releases in favor of the Debtors.

23. For these reasons, the Debtors respectfully request that the Court authorize their entry into and performance under the Term Sheet and their assumption of the NHL Agreements, as modified by the Term Sheet, as a reasonable exercise of their business judgment.

## Emergency Consideration

24. Pursuant to Local Rule 9013-1, the Debtors respectfully request emergency consideration of this motion. Any delay in granting the relief requested therein would cause irreparable harm to the Debtors, and the relief requested in this motion forms a central component of the transition plan contemplated by the Cooperation Agreement, and the approval of the Term

Sheet is a condition to the effectiveness of the Cooperation Agreement Order. Moreover, the Term Sheet requires the Debtors to seek expedited approval of such Term Sheet and the assumption of the NHL Agreements given that the NHL's 2023-2024 season is already underway. Pending approval of the Term Sheet, the Debtors are continuing to broadcast NHL content and to pay for such content on a per-game basis, which arrangement is premised on the Debtors' ability to continue to retain such content through the 2023-2024 NHL season pursuant to the Term Sheet. Accordingly, the Debtors respectfully request that the Court grant the relief requested in this motion on an emergency basis.

## **Waiver of Bankruptcy Rules 6004(a), 6004(h), 6006(e) and 6006(f)**

25. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h). The Debtors also submit that cause exists to waive the requirements of Rules 6006(e) and 6006(f) and to permit the Debtors to assume the NHL Agreements on an omnibus basis given that the assumption of such agreements is consensual and required by the Term Sheet, which were heavily negotiated with the counterparties to such agreements.

## **Notice**

26. The Debtors will provide notice of this motion to (a) the parties on the Master Service List available on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG, (b) the NHL, (c) each counterparty to the Term Sheet and the NHL Agreements, and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. The

Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the proposed order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

December 20, 2023

Respectfully submitted,

By: */s/ John F. Higgins*
**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
Bryan L. Rochelle (TX Bar No. 24107979)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile:  (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
brochelle@porterhedges.com

- and -

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Andrew N. Goldman (admitted *pro hac vice*)
Benjamin W. Loveland (admitted *pro hac vice*)
Lauren R. Lifland (admitted *pro hac vice*)
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile:  (212) 230-8888
andrew.goldman@wilmerhale.com
benjamin.loveland@wilmerhale.com
lauren.lifland@wilmerhale.com

*Section 327(e) Counsel to the Debtors and Debtors in Possession*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Brian S. Hermann (admitted *pro hac vice*)
Andrew M. Parlen (admitted *pro hac vice*)
Joseph M. Graham (admitted *pro hac vice*)
Alice Nofzinger (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990
bhermann@paulweiss.com
aparlen@paulweiss.com
jgraham@paulweiss.com
anofzinger@paulweiss.com

*Section 327(a) Counsel to the Debtors and Debtors in Possession*

**Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief. This statement is made pursuant to Local Rule 9013-1(i).

*/s/ Andrew N. Goldman*
Andrew N. Goldman

**Certificate of Service**

I certify that on December 20, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins