United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 12, 2024
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) ) | Case No. 23-90116 (CML) |
| Debtors. | ) ) ) | (Jointly Administered) |
|  | ) | **Re: Docket Nos. 1261, 1508** |

### AGREED ORDER (A) WITHDRAWING JOINT MOTION TO COMPEL ASSUMPTION OR REJECTION OF TELECAST RIGHTS AGREEMENTS AND (B) APPROVING THE FORM OF ADEQUATE ASSURANCES TO MLB PARTIES

Having considered the *Joint Motion of Major League Baseball and Certain Major League Baseball Clubs to Compel Assumption or Rejection of Telecast Rights Agreements* [Docket No. 1261] and the joinder of Rays Baseball Club, LLC to such joint motion [Docket No. 1508] (collectively, the "Motion"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and General Order No. 2012-6 of the United States District Court for the Southern District of Texas; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion and the provisions of this Order; and upon consideration of the Motion, the provisions of this Order, and the entire record of this case, this Court having found that resolution of the Motion through entry of this Order is in the best interests of the estates of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), their creditors, and other parties in interest; and upon all of the

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG.  The Debtors' service address for purposes of these chapter 11 cases is:  c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

proceedings heretofore held before this Court; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.  The Debtors shall not (a) seek to reject or, (b) in the case of non-Debtor joint ventures controlled directly or indirectly by any of the Debtors (the "<u>JVs</u>"), cause any such JV to terminate, any telecast rights agreements (such agreements, as may be amended, restated, supplemented, or otherwise modified from time to time, together with all related ancillary agreements, individually, a "<u>Telecast Rights Agreement</u>" and, collectively, the "<u>Telecast Rights Agreements</u>") to which the Debtors or the JVs are a party with any Major League Baseball team or any entity that is owned or controlled by, or owns or operates any Major League Baseball team (individually a "<u>Club</u>" and, collectively, the "<u>Clubs</u>"), in each case with an effective date of any such rejection or termination prior to the later of (x) the last date on which the applicable Debtor or the JV is required to broadcast games for such Club during the 2024 Major League Baseball season (the "<u>2024 MLB Season</u>") under the applicable Telecast Rights Agreement, and (y) the last date under any applicable Telecast Rights Agreement as to which payments are due and paid to any Club or Clubs corresponding to the 2024 MLB Season (the "<u>2024 MLB Final Payment Date</u>").

2.  All amounts owed by the Debtors and the JVs pursuant to the Telecast Rights Agreements for the 2024 MLB Season shall be paid in accordance with the terms of the applicable Telecast Rights Agreements and any order authorizing the Debtors to enter into and perform under an amendment to the applicable Telecast Rights Agreements.

3.  As further assurances and protections to the Clubs with respect to the Debtors' and JVs' obligations under the Telecast Rights Agreements, immediately upon entry of this Order, the Clubs will receive, and the Debtors are authorized and directed to implement the following additional assurances and protections (collectively, the "<u>MLB Adequate Assurance Package</u>"),

which shall continue until the earlier of (a) the effective date of a chapter 11 plan of reorganization for the Debtors (the "Plan Effective Date") and (b) the 2024 MLB Final Payment Date:

(a) **Superpriority Administrative Expense Claims**.  Any claim by the Office of the Commissioner of Baseball d/b/a Major League Baseball ("MLB") or a Club for amounts owed pursuant to a Telecast Rights Agreement in the event of a default by a Debtor or JV of its obligations under a Telecast Rights Agreement for the 2024 MLB Season at any time prior to the earlier of (a) the Plan Effective Date and (b) the 2024 MLB Final Payment Date, shall, (i) to the extent such claim is allowed against a Debtor, be entitled to a superpriority administrative expense claim status under section 507 of the Bankruptcy Code (the "MLB Superpriority Administrative Expense Claim") and (ii) to the extent such claim is against a JV, be referred to herein as a "MLB JV Claim"; *provided, however*, that, in each case, (i) MLB and the applicable Club shall be required to use commercially reasonable efforts to mitigate any damages, (ii) the amount of the damages and any MLB Superpriority Administrative Expense Claim or MLB JV Claim with respect thereto shall in no event exceed the aggregate amount of fees that remain outstanding and unpaid for the 2024 MLB Season under the applicable Telecast Rights Agreement, calculated in accordance with the terms thereof and (iii) MLB and the Clubs shall have until the bar date established by the Court for administrative claims to assert any MLB Superpriority Administrative Expense Claim.  For the avoidance of doubt, neither MLB nor the Clubs waive any rights or claims against the Debtors or the JVs, and reserve all rights with respect to such rights or claims, including the amount of damages, after the expiration of the MLB Adequate Assurance Package.

(b) **MLB Security Deposit**.  Within five (5) business days following entry of this Order, the Debtors shall fund $20 million using Cash Collateral (as such term is defined in the Cash Collateral Order[2]) into a segregated account held by the Debtors solely for the exclusive benefit of the Clubs (the "MLB Security Deposit").  The MLB Security Deposit will not be commingled with any other cash, will remain property of the Debtors' estates, and will be included in the Debtors' Liquidity for purposes of the Minimum Liquidity Amount (each as defined in the Cash Collateral Order or any order approving any debtor-in-possession financing ("DIP Financing")).  Until the earlier of the Plan Effective Date and the end of the 2024 MLB Season, the Debtors shall not use the MLB Security Deposit for any purpose other than satisfying any allowed MLB Superpriority Administrative Expense Claim or MLB JV Claim in accordance with this Order.  Upon the earlier

---

[2] "Cash Collateral Order" means the *Corrected Final Order (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Adequate Protection to Prepetition Secured Parties; (V) Modifying Automatic Stay; and (VI) Granting Related Relief* [Docket No. 572], as may be amended, restated, supplemented, or otherwise modified from time to time.

of the Plan Effective Date and the 2024 MLB Final Payment Date, any remaining amount of the MLB Security Deposit shall be released to the Debtors.

(c) **MLB Liens**. To secure the payment of any allowed MLB Superpriority Administrative Expense Claim and any MLB JV Claim, the Debtors are authorized to grant and perfect, and hereby deemed to have granted and perfected, to MLB and the Clubs, ratably based upon any remaining unpaid obligations to MLB and each Club through the 2024 MLB Final Payment Date, without the necessity of execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, or by possession or control, valid, binding, continuing, enforceable, fully-perfected, nonavoidable security interests in and liens (each an "MLB Lien" and, collectively, the "MLB Liens") on (i) the MLB Security Deposit, (ii) the Debtors' interests in the YES JV[3] (including any distributions from the YES JV) and any sales proceeds with respect thereto (collectively, the "YES Adequate Assurance Collateral"), and (iii) all proceeds of the Sinclair-Related Litigations (as defined in the Restructuring Support Agreement[4]) received by the Debtors that are not subject to the Prepetition First Liens (as defined in the Cash Collateral Order) (collectively, the "Unencumbered Sinclair-Related Litigation Collateral"). The MLB Liens shall be subject to the limitations and priorities described below, and the Debtors shall not incur any liens with priority over the MLB Liens, except to the extent set forth herein.

(i) The MLB Lien on the MLB Security Deposit will be a first-priority lien, which shall be senior to the liens of all creditors, including the Prepetition Liens and Adequate Protection Liens of the Prepetition Secured Parties (each as defined in the Cash Collateral Order or any order approving any DIP Financing) and the liens granted to secure any DIP Financing.

(ii) The MLB Lien on each of the YES Adequate Assurance Collateral and the Unencumbered Sinclair-Related Litigation Collateral shall be (x) junior only to the First Lien Adequate Protection Liens (as defined in the Cash Collateral Order or any order approving any DIP Financing) but only until, and to the extent that, the Prepetition First Lien Secured Parties collect $100 million on account of their First

---

[3] "YES JV" means the joint venture, Red Seam Holdings LLC, with respect to the YES Network, in which Debtor Sports Network II, LLC holds certain ownership interests.

[4] "Restructuring Support Agreement" means that certain Restructuring Support Agreement, dated as of January 16, 2024, by and among Diamond Sports Group, LLC and each of its direct or indirect subsidiaries that are signatory thereto, as Company Parties, the Consenting First Lien Creditors, the Consenting Unsecured Creditors and the Strategic Investor (each as defined therein), a copy of which was filed with this Court on January 17, 2024 [Docket No. 1613-1], as may be amended in accordance with the terms thereof.

      Lien Adequate Protection Superpriority Claims (as defined in the Cash Collateral Order) and (y) senior to the liens of all creditors other than the Prepetition First Lien Secured Parties (to the extent specified in clause (x) of this subparagraph), including, for the avoidance of doubt, any liens granted to secure any DIP Financing.

  (iii) For the avoidance of doubt, the MLB Liens shall not (x) impair or otherwise restrict the First Lien Paydown (as defined in the DIP Motion)[5] contemplated to be made to the Prepetition First Lien Secured Parties as provided for in the DIP Motion, or (y) secure any claims against the Debtors or the JVs other than any MLB Superpriority Administrative Expense Claim and the MLB JV Claim.

  (iv) For the avoidance of doubt, without the need for a further order of this Court or any action by any party, the MLB Liens shall terminate, be automatically released and be of no further force and effect upon the earlier to occur of the Plan Effective Date and the MLB 2024 Final Payment Date.

(d) ***Reporting***.  The Debtors shall contemporaneously deliver to MLB and the Clubs any budget or financial information delivered to the Debtors' creditors pursuant to the Cash Collateral Order or any order approving any DIP Financing.

(e) ***First Lien Limited Payment Forbearance***.  Other than (i) the adequate protection payments owing under the Cash Collateral Order or any order approving any DIP Financing and (ii) the First Lien Paydown, the Prepetition First Lien Secured Parties will not be entitled to any additional payments on account of the Prepetition First Lien Indebtedness until the earlier of the Plan Effective Date and September 30, 2024; *provided* that, if the Plan Effective Date has not occurred by September 30, 2024, no additional payments to the Prepetition First Lien Secured Parties will be permitted if, at such time or thereafter, the Debtors are in default on their payment obligations to any of the Clubs under the Telecast Rights Agreements for any amounts owed in connection with the 2024 MLB Season, until such time that the Debtors have cured any such payment default.

---

[5] *See Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (A) Enter into and Perform Under the DIP Commitment Letter, (B) Obtain Postpetition Financing, (C) Use Proceeds of the DIP Facility to Make the First Lien Paydown, (D) Use Cash Collateral, (E) Grant Liens and Provide Claims with Superpriority Administrative Expense Status, and (F) Grant Adequate Protection to the Prepetition First Lien Secured Parties; (II) Approving the Election Procedures and the DIP Election Forms; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 1659] (the "DIP Motion").

4. For the avoidance of doubt, each of Cleveland Guardians Baseball Company, LLC, Minnesota Twins, LLC, and Rangers Baseball LLC are included in, and shall equally and ratably benefit from, the MLB Adequate Assurance Package as "Clubs" pursuant to this Order. Nothing in this Order shall impair or restrict the protections afforded to the Clubs pursuant to any order authorizing the Debtors to enter into and perform under an amendment to the applicable Telecast Rights Agreements.

5. Nothing in the Cash Collateral Order or any order approving any DIP Financing provided to the Debtors in their chapter 11 cases shall impair or restrict the protections afforded to MLB and the Clubs under this Order. The Cash Collateral Order shall be deemed modified to the extent necessary to permit the Debtors to perform and satisfy the obligations to MLB and the Clubs under this Order, and any subsequent orders with respect to the use of cash collateral or DIP Financing shall provide that the Debtors are authorized to perform and satisfy the obligations to the MLB and the Clubs under this Order. In the event of any conflict between this Order, on the one hand, and Cash Collateral Order or any order approving any DIP Financing provided to the Debtors in their chapter 11 cases, on the other hand, this Order controls, and any subsequent orders with respect to the use of Cash Collateral or any order approving any DIP Financing provided to the Debtors in their chapter 11 cases shall so provide.

6. The automatic stay is hereby modified, without the need for further relief from this Court, to allow the granting of the MLB Superpriority Administrative Expense Claim and the MLB Liens in accordance with the terms of this Order. Without limiting the protections afforded to any Club pursuant to any order authorizing the Debtors to enter into and perform under an amendment to the applicable Telecast Rights Agreement, upon the occurrence of an event of default by a Debtor or JV of its obligations under a Telecast Rights Agreement for the 2024 MLB Season, the

automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified without the need for further relief from this Court to permit MLB or the applicable Club to deliver to the applicable Debtor or JV a notice of the occurrence of an event of default; *provided, however*, that prior to exercising any right or remedy provided in this Order, (a) MLB or the applicable Club shall file a motion seeking emergency relief from the automatic stay (a "Stay Relief Motion"), and the undersigned parties to this Order shall consent to an emergency hearing upon five days' notice to such parties, and (b) following a determination on the Stay Relief Motion, the Court may fashion an appropriate remedy, including, but not limited to, providing that the automatic stay as to MLB or the applicable Club is terminated and providing that MLB and the Clubs may exercise all rights and remedies provided in this Order.

7. Upon entry of this Order, the Motion is deemed withdrawn, and so long as the Debtors and the JVs perform in accordance with this Order, neither MLB nor any Club shall file a motion seeking to compel assumption or rejection of any Telecast Rights Agreement prior to the earlier to occur of the Plan Effective Date and the 2024 MLB Final Payment Date.

8. Notwithstanding anything to the contrary in this Order, nothing in this Order shall alter or be deemed or construed to alter any rights, remedies, or defenses of the Debtors, the JVs, MLB, any Club, the Prepetition First Lien Secured Parties, or any other parties in interest, in each case in respect of any of the Debtors, the Debtors' affiliates, the Telecast Rights Agreements, or in these chapter 11 cases, including (without limitation), in any litigation, adversary proceeding, contested matter, or otherwise.

9. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

10. Notice of this Order is hereby deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

11. Notwithstanding Bankruptcy Rule 6006(d), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

12. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

13. With respect to the Debtors and the Debtors' obligations under the Telecast Rights Agreements, this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order. With respect to the JVs and the JVs' obligations under the Telecast Rights Agreements, this Court retains exclusive jurisdiction with respect to matters arising from or related to the implementation, interpretation, and enforcement of the MLB JV Claims and the MLB Liens under this Order.

Signed: February 12, 2024

_____
Christopher Lopez
United States Bankruptcy Judge

Agreed to as form and consent:

| | |
|---|---|
| */s/ Oliver S. Zeltner* | */s/ John F. Higgins* |
| **JONES DAY** | **PORTER HEDGES LLP** |
| Heather Lennox (admitted *pro hac vice*) | John F. Higgins (TX Bar No. 09597500) |
| Philip M. Oliss (admitted *pro hac vice*) | M. Shane Johnson (TX Bar No. 24083263) |
| Oliver S. Zeltner (TX Bar No. 2410400) | Megan Young-John (TX Bar No. 24088700) |
| Brett W. Bell (admitted *pro hac vice*) | Bryan L. Rochelle (TX Bar No. 24107979) |
| Nick Buchta (admitted *pro hac vice*) | 1000 Main St., 36th Floor |
| Alexander W. Prunka (admitted *pro hac vice*) | Houston, Texas 77002 |
| North Point | Telephone: (713) 226-6000 |
| 901 Lakeside Avenue | Facsimile:  (713) 226-6248 |
| Cleveland, Ohio 44114-1190 | jhiggins@porterhedges.com |
| Telephone: (216) 586-3939 | sjohnson@porterhedges.com |
| Facsimile: (216) 579-0212 | myoung-john@porterhedges.com |
| hlennox@jonesday.com | brochelle@porterhedges.com |
| poliss@jonesday.com | |
| ozeltner@jonesday.com | *Counsel for Debtors and Debtors in Possession* |
| bbell@jonesday.com | |
| nbuchta@jonesday.com | |
| aprunka@jonesday.com | - and - |
| | |
| *Counsel for Cleveland Guardians Baseball Company, LLC* | **WILMER CUTLER PICKERING  HALE AND DORR LLP** |
| | Andrew Goldman (admitted *pro hac vice*) |
| | Benjamin Loveland (admitted *pro hac vice*) |
| | 250 Greenwich Street |
| | New York, New York 10007 |
| | Telephone: (212) 230-8800 |
| | Facsimile:  (212) 230-8888 |
| | andrew.goldman@wilmerhale.com |
| | benjamin.loveland@wilmerhale.com |
| | |
| | *Section 327(e) Counsel to the Debtors and Debtors in Possession* |

Agreed to as form and consent:

| | |
|---|---|
| */s/ William A. (Trey) Wood* | */s/ Thomas E. Lauria* |
| **BRACEWELL LLP** | **WHITE & CASE LLP** |
| William A. (Trey) Wood (Texas Bar No. 21916050) | Thomas E. Lauria (Texas Bar No. 11998025) |
| 711 Louisiana St., Suite 2300 | Laura Femino (admitted *pro hac vice*) |
| Houston, Texas 77002 | Samuel Kava (admitted *pro hac vice*) |
| Telephone: (713) 221-1166 | 200 South Biscayne Blvd., Suite 4900 |
| Facsimile: (713) 221-1212 | Miami, Florida |
| trey.wood@bracewell.com | Telephone: (305) 371-2700 |
| | Facsimile: (305) 358-5744 |
| | tlauria@whitecase.com |
| Mark Dendinger (admitted *pro hac vice*) | laura.femino@whitecase.com |
| CityPlace I, 34th Floor, 185 Asylum Street | sam.kava@whitecase.coms |
| Hartford, Connecticut 06103 | |
| Telephone: (860) 256-8541 | Glenn M. Kurtz (admitted *pro hac vice*) |
| Facsimile: (800) 404-3970 | Harrison Denman (admitted *pro hac vice*) |
| E-mail: mark.dendinger@bracewell.com | Camille M. Shepherd (admitted *pro hac vice*) |
| | Elizabeth C. Stainton (admitted *pro hac vice*) |
| - and - | 1221 Avenue of the Americas |
| | New York, New York 10020 |
| **SULLIVAN & CROMWELL LLP** | Telephone: (212) 819-8200 |
| James L. Bromley (admitted *pro hac vice*) | Facsimile: (212) 354-8113 |
| Alexa J. Kranzley (admitted *pro hac vice*) | gkurtz@whitecase.com |
| 125 Broad Street | harrison.denman@whitecase.com |
| New York, NY 10004 | camille.shepherd@whitecase.com |
| Telephone: (212) 558-4000 | elizabeth.stainton@whitecase.com |
| Facsimile: (212) 558-3588 | |
| bromleyj@sullcrom.com | Charles Koster (Texas Bar No. 24128278) |
| kranzleya@sullcrom.com | 609 Main Street, Suite 2900 |
| | Houston, Texas 77002 |
| *Counsel for Office of the Commissioner of Baseball, Atlanta National League Baseball Club, Inc., Milwaukee Brewers Baseball Club, L.P., Minnesota Twins, LLC, Detroit Tigers, Inc., Rays Baseball Club, LLC* | Telephone: (713) 496-9700 |
| | Facsimile: (713) 496-9701 |
| | charles.koster@whitecase.com |
| | |
| | *Counsel for Rangers Baseball Express LLC* |