United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 01, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) ) ) | Case No. 23-90116 (CML) |
| Debtors. | ) ) ) | (Jointly Administered) |

## ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT BY AND AMONG THE DEBTORS AND SINCLAIR, JPM, AND BALLY'S AND (II) GRANTING RELATED RELIEF

**[Related to Docket No. 1658]**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (a) approving and authorizing the Debtors to enter into and perform under a settlement (the "Settlement") with Sinclair,[3] JPM,[4] and Bally's[5] concerning, among other things, claims and causes of action asserted in the adversary proceedings captioned *Diamond Sports Group, LLC* v. *Sinclair Broadcast Group, Inc.*, Adv. Pro. No. 23-03134 (CML) (Bankr. S.D. Tex. 2023) and *Diamond Sports Group, LLC* v. *JPMorgan Chase Funding Inc.*, Adv. Pro. No. 23-03135 (CML) (Bankr. S.D. Tex. 2023) (collectively, the "Adversary Proceedings"), on the terms and conditions set forth herein and in the term sheet attached thereto as **Exhibit A** (the "Settlement Term Sheet") and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Term Sheet, as applicable.

[3] "Sinclair" means, collectively, Sinclair, Inc. and its direct and indirect wholly-owned or controlled subsidiaries (other than Diamond).

[4] "JPM" means, collectively, JPMorgan Chase Funding Inc. and JPMorgan Chase & Co.

[5] "Bally's" means, collectively, Bally's Corporation and its direct and indirect subsidiaries.

pursuant to 28 U.S.C. § 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest, including any and all parties bound by the various releases granted pursuant to the Settlement and this Order; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of and in opposition to the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. Pursuant to sections 105 and 363(b) of the Bankruptcy Code, Bankruptcy Rule 9019, and all applicable law, the Settlement by and among Diamond,[6] Sinclair, JPM, and Bally's, including the resolution of the Adversary Proceedings, and the transactions contemplated by the Settlement, is hereby authorized and approved on the terms set forth herein and in the Settlement Term Sheet and in the Definitive Documents.

2. The Debtors' execution of, and performance under, the Settlement Term Sheet is authorized and approved in all respects, and the Debtors are authorized to execute, deliver, and

---

[6] "Diamond" means, collectively, the Debtors and their respective direct and indirect subsidiaries.

perform under all additional instruments, documents, and agreements that may be necessary or desirable to implement the Settlement and the Settlement Term Sheet without further order of the Court, including, but not limited to, (a) an Amended MSA (or similar document), (b) any agreements concerning certain matters set forth in the Settlement Term Sheet between Sinclair and Diamond related to the YES Network ("YES"), Marquee Sports Network ("Marquee"), and the Tennis Channel ("Tennis"), and (c) any other definitive documentation relating to the Settlement or the implementation thereof. Diamond has the power and authority, and is hereby authorized, to take any and all actions necessary to consummate the Settlement with Sinclair, JPM, and Bally's and to perform any and all obligations contemplated by the Settlement Term Sheet, this Order, and the Definitive Documents, including, without limitation, the payment of any amounts and the granting of waivers and releases, in each case as set forth herein, in the Settlement Term Sheet, and in any applicable Definitive Documents.

3. The Mutual Releases (as defined below) set forth herein will only go into effect on the date on which Sinclair pays Diamond $495 million in cash (the "Settlement Cash Consideration," and such date, the "Release Effective Date"). Upon entry of this Order, the following terms apply:

　　a. Sinclair's obligation to pay the Settlement Cash Consideration and the other payments set forth herein is joint and several among each Sinclair entity.

　　b. Within two business days of entry of this Order, Sinclair shall provide Diamond with a $50 million non-refundable cash deposit (the "Deposit"). The Deposit will be credited towards the Settlement Cash Consideration on the Release Effective Date.

　　c. On or before the date that is 60 days from entry of this Order (as may be extended in accordance with the terms of the Settlement Term Sheet and paragraph 3.d of this Order, the "Closing Deadline"), Sinclair will pay Diamond the full remaining amount of the Settlement Cash Consideration (less the Deposit previously funded).

　　d. On or prior to the applicable Closing Deadline, Sinclair may pay a non-refundable cash fee of $6 million to Diamond (an "Extension Payment") to extend the Closing

    Deadline by an additional 15 days, which extension option is exercisable up to four times at $6 million in cash per each 15-day extension. Each Extension Payment will be in addition to and will not reduce the Settlement Cash Consideration, the Deposit, or payment to Diamond of the Deposit.

  e. Immediately upon payment, each of the Deposit, any Extension Payments, and the Settlement Cash Consideration will not be subject to any claw-back, preference, disgorgement, or return. Diamond shall be entitled to retain any Extension Payments and the Deposit regardless of whether or not the Release Effective Date occurs.

4. The Amended MSA is hereby assumed by Debtor Diamond Sports Group, LLC pursuant to section 365 of the Bankruptcy Code effective as of the date of this Order.

5. The Bally's Agreement is hereby rejected pursuant to section 365 of the Bankruptcy Code effective as of the date of this Order. Notwithstanding the rejection of the Bally's Agreement and regardless of whether the Release Effective Date occurs, Diamond may from this date forward continue to use the Bally's trade name at no cost to Diamond through the end of the 2024 Major League Baseball season.

6. Sinclair is hereby deemed to have waived and will be forever barred from asserting, filing, or claiming any claims against Diamond on account of: (i) management and incentive fees in excess of the fee caps under the MSA Letter Agreement; (ii) any other claims on account of prepetition goods or services provided to Diamond; and (iii) any rejection or other breach claims relating to the MSA, MSA Letter Agreement, Amended MSA, and the Bally's Agreement. This waiver of claims will be effective regardless of whether the Release Effective Date Occurs.

7. Bally's is hereby deemed to have waived and will be forever barred from asserting, filing, or claiming any claims against Diamond, including, but not limited to, any claims related to prepetition goods or services provided to Diamond and any rejection or other breach claim in connection with the Bally's Agreement. This waiver of claims will be effective regardless of whether the Release Effective Date Occurs.

8. For good and valuable consideration, the following releases are hereby authorized, approved, and effective upon, and subject to, the occurrence of the Release Effective Date (the "Mutual Release"):

    a. Each of Sinclair, JPM, Bally's, and each of their respective Related Parties[7] (collectively, the "Defendant Parties") is, and is deemed to be, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by Diamond from any and all manner of actions, causes of action, suits, debts, liens, contracts, agreements, promises, liabilities, claims (including, but not limited to, claims for attorneys' fees, costs, and sanctions), counterclaims, damages, demands, controversies, disputes, defenses, remedies, offsets, recoupment, losses, costs, or expenses of any nature, in law or equity, currently existing or arising in the future, whether known or unknown, foreseen or unforeseen, secured or unsecured, liquidated or unliquidated, disputed or undisputed, choate or inchoate, suspected or unsuspected, fixed or contingent, concealed or hidden, latent or patent, that Diamond, its estate, or either of their respective successors on their own behalf or on behalf of any of their creditors has or could have asserted against such parties (whether derivatively or directly), related in way to the Adversary Proceedings (or the facts, transactions, and allegations asserted therein), any transactions between or involving both Diamond and Sinclair, the 2019 Diamond acquisition and related financing, the MSA, the MSA Letter Agreement, the Bally's Agreement, the Debtors' chapter 11 cases, or any other matters involving or relating to Sinclair or Diamond in any way; *provided*, *however*, that the release set forth above will not release or otherwise affect any post-Settlement claims or obligations of any party or entity under this Order, the Settlement Term Sheet, the Amended MSA, or any instrument, document, or agreement implementing or related to the Settlement (including, without limitation, any Definitive Documents).

    b. Diamond and each of its Related Parties is deemed to be conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each Defendant Party (other than JPM's Related Parties (including any of their respective subsidiaries)) from any and all manner of actions, causes of action, in law or equity, suits, debts liens, contracts, agreements, promises, liabilities, claims (including, but not limited to, claims for attorneys' fees, costs, and sanctions), counterclaims, damages, demands, losses, costs, or expenses of any nature, currently existing or arising in the future, whether known or unknown, suspected or unsuspected, fixed or contingent, concealed or hidden, latent or patent, that Diamond could have asserted against such parties (whether derivatively or directly), related in way to the Adversary Proceedings, the MSA, the MSA Letter Agreement, the Bally's Agreement, the Debtors' chapter 11 cases, and/or any other

---

[7] "Related Parties" means a released party's current and former affiliates, and such released party's or such affiliates' current and former members, directors, managers, officers, equity holders, agents, representatives, and other professionals, in each case, in their capacities as such; *provided* that Diamond and Sinclair are not Related Parties of each other for purposes of this definition.

5

matters involving or relating to Sinclair or Diamond in any way; *provided*, *however*, that the release set forth above will not release or otherwise affect (i) any post-Settlement claims or obligations of any party or entity under this Order, the Settlement Term Sheet, the Amended MSA, or any instrument, document, or agreement implementing or related to the Settlement (including, without limitation, any Definitive Documents); or (ii) claims held by JPM (or, for the avoidance of doubt, any of its Related Parties (including any of their respective subsidiaries)) arising under the loans made to or debt instruments issued by Diamond.

c. EACH OF DIAMOND, SINCLAIR, JPM, AND BALLY'S EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS.  WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH OF DIAMOND, SINCLAIR, JPM, AND BALLY'S EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING, WITHOUT LIMITATION, THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542.  THE RELEASES CONTAINED HEREIN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

d. Each releasing party is deemed to represent and warrant to each released party that the releasing party owns the entirety of each released claim and has not sold, transferred, assigned, or conveyed any part thereof.  No person or individual may bring or prosecute a released claim through subrogation, assignment, or any theory of right derived from the releasing parties.

e. If the Release Effective Date does not occur on or before the Closing Deadline, the Mutual Release will not be effective and each of Diamond and the Defendant Parties shall retain all claims, causes of action, and defenses, except as otherwise specified in the Settlement Term Sheet or this Order.

f. After the Release Effective Date, the Mutual Release is binding on Diamond's estates, including any chapter 7 or chapter 11 trustee, liquidator, or equivalent administrator that may be appointed.

9. Each of the Adversary Proceedings will be held in abeyance until the Release Effective Date. Upon the Release Effective Date, each of the Adversary Proceedings will be deemed dismissed with prejudice and with each party bearing its own costs, and the Debtors shall file a confirmatory notice of such dismissal on the docket for each of the Adversary Proceedings within one business day after the Release Effective Date. If the Release Effective Date does not occur by the Closing Deadline, the parties to the Adversary Proceedings may take all steps necessary to recommence such proceedings.

10. Upon the Release Effective Date, to the extent that Bally's has rights, claims, or causes of action against Sinclair under the Bally's Agreement on account of Diamond's rejection of the Bally's Agreement, Bally's shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever waived, released, and discharged any and all such rights, claims, and causes of action, effective as of the Release Effective Date.

11. Upon the occurrence of the Release Effective Date, Sinclair will have the right to: (a) cause another party to acquire Diamond's interest in the Marquee Sports Network, subject to the terms and conditions contained in the Settlement Term Sheet, the Amended MSA, and any applicable Definitive Document(s), as applicable, and (b) in the event Diamond winds down certain business operations, acquire residual assets, subject to the terms and conditions in the Settlement Term Sheet, the Amended MSA, and any applicable Definitive Document(s), as applicable.

12. Diamond will continue to provide services to Sinclair, YES, Marquee, and Tennis on the terms and conditions set forth in the Settlement Term Sheet, the Amended MSA, and any applicable Definitive Documents, as applicable. As between Diamond and Sinclair, the terms and

conditions of the Amended MSA and any Specified Definitive Documents (as defined herein)[8] shall govern and control over the terms and conditions of the Settlement Term Sheet.

13. Unless otherwise provided herein, to the extent there is any express conflict between the provisions of the Settlement Term Sheet and this Order, the provisions of this Order will govern.

14. The Debtors, Sinclair, JPM, and Bally's will implement any provisions of the Settlement Term Sheet (including, without limitation, with respect to the termination of the A/R Facility (as used in the Settlement Term Sheet) and the release provisions therein) not otherwise addressed in this Order and the Amended MSA in accordance with the terms of the Settlement Term Sheet and any other applicable Definitive Documents, as applicable.

15. If Diamond's chapter 11 cases are dismissed, this Order shall remain in full effect and shall not be vacated pursuant to section 349 of the Bankruptcy Code or otherwise.

16. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

17. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

---

[8] "Specified Definitive Documents" means any Definitive Documents executed and/or delivered by Diamond and Sinclair in connection with Diamond's and Sinclair's entry into the Amended MSA.

18.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Settlement Term Sheet, the Amended MSA, this Order, and/or any other Definitive Documents.

Signed:  March 01, 2024

_____
Christopher Lopez
United States Bankruptcy Judge