**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) | Case No. 23-90116 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING
THE ADEQUACY OF THE DISCLOSURE STATEMENT; (II) APPROVING
THE SOLICITATION PROCEDURES AND SOLICITATION PACKAGES;
(III) SCHEDULING A HEARING ON CONFIRMATION OF THE PLAN;
(IV) ESTABLISHING PROCEDURES FOR OBJECTING TO THE PLAN;
(V) APPROVING THE FORM, MANNER, AND SUFFICIENCY OF NOTICE
OF THE CONFIRMATION HEARING; AND (VI) GRANTING RELATED RELIEF**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ by April 10, 2024, at 4:00 p.m. (prevailing Central Time). If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk by April 10, 2024, at 4:00 p.m. (prevailing Central Time). Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on April 17, 2024, at 10:00 a.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by an audio or video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

## Relief Requested

1.      By this motion, the Debtors seek entry of an order, substantially in the form attached hereto (the "Disclosure Statement Order"), (a) approving the adequacy of the *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization*, dated February 29, 2024 (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement"), (b) approving the procedures and related exhibits (the "Solicitation Procedures") for (i) soliciting, receiving, and tabulating votes to accept or reject the *Debtors' Joint Chapter 11 Plan of Reorganization*, dated February 29, 2024 (as may be amended, modified, or supplemented from time to time, the "Plan"),[2] (ii) voting to accept or reject the Plan, and (iii) filing objections to the Plan, (c) approving the confirmation schedule set forth herein, and (d) granting related relief.

## Introduction

2.      The Debtors' proposed Plan will allow the Debtors to emerge from chapter 11 as a going concern with a sustainable capital structure for the benefit of their lenders, employees, vendors, team and league partners, distributors, advertisers, and sports fans in local sports markets across the nation.  The Plan is currently supported by the parties to the amended and restated restructuring support agreement, dated as of February 26, 2024 (the "RSA," and such parties, the "RSA Parties"), which include Amazon.com Services LLC ("Amazon"), the Official Committee of Unsecured Creditors (the "UCC"), and creditors representing more than 94% of the Debtors' first lien debt, more than 95% of their second lien debt, and 96% of their unsecured

---

[2]      Capitalized terms used but not defined in this motion have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

notes.[3]  After months of intense negotiations, the Plan represents a feasible and value-maximizing reorganization that has support from substantially all of the Debtors' creditors and is in the best interests of all stakeholders.

3.  As further described in the Disclosure Statement, the Plan eliminates more than $8.5 billion of debt from the Debtors' balance sheet, provides for a commercial partnership with Amazon, and positions the Debtors to successfully operate in the rapidly changing sports broadcasting market on a post-emergence basis.  The Plan also provides that the proceeds resulting from the Debtors' settlement of their substantial litigation claims against Sinclair and others will be distributed to creditors.  The Debtors are confident that confirmation of the Plan provides the best possible outcome for their estates and stakeholders and therefore intend to solicit acceptances of the Plan.

4.  The Plan contemplates classifying Holders of Claims and Interests into certain classes for all purposes, including with respect to voting on the Plan.  The following chart represents the classes of Claims and Interests, their status, and their voting rights under the Plan:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | First Lien Claims | Impaired | Entitled to Vote |
| 4 | Junior Funded Debt Claims | Impaired | Entitled to Vote |
| 5 | Go-Forward Trade Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 9 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

---

[3]  A copy of the RSA is filed at Docket No. 1829-1.

5.     The Debtors are proposing to solicit votes to accept or reject the Plan from Holders of Claims in Class 3 (First Lien Claims), Class 4 (Junior Funded Debt Claims),[4] and Class 6 (General Unsecured Claims) (collectively, the "Voting Classes").  The Debtors are proposing to not solicit votes from Holders of Claims and Interests in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 5 (Go-Forward Trade Claims), Class 7 (Intercompany Claims), Class 8 (Intercompany Interests), and Class 9 (Existing Equity Interests) (collectively, the "Non-Voting Classes").

6.     In accordance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, the Debtors propose the following timeline to govern the process for soliciting, receiving, and tabulating votes on the Plan:[5]

| Event | Date/Deadline |
|---|---|
| Voting Record Date | April 15, 2024 |
| Disclosure Statement Hearing | April 17, 2024, at 10:00 a.m. (prevailing Central Time) |
| Solicitation Mailing Deadline | Four business days following entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter |
| Voting Resolution Event Deadline | May 15, 2024 |
| Initial Plan Supplement Filing[6] | May 15, 2024 |
| Voting/Opt-Out Deadline | May 22, 2024, at 4:00 p.m. (prevailing Central Time) |

---

[4]    Class 4 consists of Second Lien Notes Claims, Third Lien Notes Claims, and Unsecured Notes Claims (each as defined in the Plan, and together, the "Class 4 Notes Claims") and Second Lien Term Loan Claims, Second Lien Revolving Loan Claims, and Third Lien Term Loan Claims (each as defined in the Plan, and together, the "Class 4 Loan Claims" and together with the Class 4 Notes Claims, the "Junior Funded Debt Claims").

[5]    Capitalized terms used but not defined in this paragraph have the meanings ascribed to them later in this motion.

[6]    The Debtors may file additional Plan Supplements (which may be in multiple installments) on or prior to the Effective Date.  The Debtors intend to file, among other Plan Supplement documents, initial drafts of the credit agreement for the Take Back Term Loans, the note purchase agreement or similar documents for the Convertible B Exit Notes, and the New Intercreditor Agreement, as well as the Schedule of Assumed Executory Contracts and Unexpired Leases, the Schedule of Rejected Executory Contracts and Unexpired Leases, and the schedule of retained Causes of Action with the Plan Supplement prior to the Voting Deadline and Plan Objection Deadline.

| Event | Date/Deadline |
|---|---|
| Plan Objection Deadline | May 22, 2024, at 4:00 p.m. (prevailing Central Time) |
| Deadline to File Voting Report | May 31, 2024 |
| Confirmation Brief and Reply Deadline | June 14, 2024 |
| Confirmation Hearing | June 18, 2024, at 9:00 a.m. (prevailing Central Time) |

7.     The Debtors submit that the proposed solicitation timeline, as further detailed below, will afford the Court, the Debtors, and all parties in interest reasonable time to review and consider the Plan and Disclosure Statement prior to the hearing on confirmation of the Plan (the "Confirmation Hearing").  This timeline will also provide parties with sufficient time to consider whether to vote to accept or reject the Plan (if applicable) and whether to object to entry of an order confirming the Plan.

### Jurisdiction and Venue

8.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The bases for the relief requested herein are sections 105(a), 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 2002, 3016, 3017, 3018, 3020, and 9006, Rules 2002-1, 3016-1, and 9013-1 of

the Bankruptcy Local Rules for the Southern District of Texas (the "<u>Local Rules</u>"), and the

Procedures for Complex Cases in the Southern District of Texas.

<u>**Basis for Relief**</u>

### I.    Approval of the Disclosure Statement

11.    Under section 1125 of the Bankruptcy Code, a plan proponent must provide holders

of impaired claims and interests with "adequate information" regarding a debtor's proposed

chapter 11 plan, which is defined as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable
> in light of the nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the debtor, and a
> hypothetical investor typical of the holders of claims or interests in the case, that
> would enable such hypothetical investor of the relevant class to make an informed
> judgment about the plan.

11 U.S.C. § 1125(a)(1).

12.    Whether a disclosure statement contains adequate information is intended by

Congress to be a flexible, fact-specific inquiry left within the discretion of the Court:

> Precisely what constitutes adequate information in any particular instance will
> develop on a case-by-case basis.  Courts will take a practical approach as to what
> is necessary under the circumstances of each case, such as the cost of preparation
> of the statements, the need for relative speed in solicitation and confirmation, and,
> of course, the need for investor protection.  There will be a balancing of interests in
> each case. In reorganization cases, there is frequently great uncertainty.  Therefore
> the need for flexibility is greatest.

H.R. Rep. 95-595, at 409 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6365; *see also Oneida*

*Motor Freight, Inc.* v. *United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (observing that

"adequate information will be determined by the facts and circumstances of each case");

*Tex. Extrusion Corp.* v. *Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157

(5th Cir. 1988) (opining that what constitutes adequate information is "subjective," "made on a

case-by-case basis," and "largely in the discretion of the bankruptcy court").

6

13.     In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

    a.    the events that led to the filing of a bankruptcy petition;

    b.    the relationship of the debtors with their affiliates;

    c.    a description of the available assets and their value;

    d.    the anticipated future of the companies;

    e.    the source of information stated in the disclosure statement;

    f.    the present condition of the debtors while in chapter 11;

    g.    claims asserted against the debtors;

    h.    the estimated return to creditors under a chapter 7 liquidation;

    i.    the chapter 11 plan or a summary thereof;

    j.    financial information, valuations, and projections relevant to the creditors' decision to accept or reject the chapter 11 plan;

    k.    information relevant to risks posed to creditors under the plan;

    l.    the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

    m.    litigation likely to arise in a non-bankruptcy context; and

    n.    tax attributes of the debtors.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996) (citing *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984)); *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (citing factors that courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (setting forth a non-exhaustive list of 19 categories of information that may be included in a disclosure statement).  Disclosure regarding

all of the aforementioned topics is not necessary in every case. *See In re U.S. Brass*, 194 B.R. at 425; *see also In re Phoenix Petroleum*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

14.     The Disclosure Statement is extensive and comprehensive. It includes descriptions of (a) the Plan (Article V), (b) the Debtors' business operations (Article II), (c) key events leading to the commencement of these chapter 11 cases (Article III), (d) the Debtors' significant prepetition indebtedness (Article II.D), (e) the settlements and compromises embodied in the Plan, including with the Debtors' first lien lenders and the UCC (Article VII.C.6), (f) financial information and a valuation analysis that would be relevant to creditors' determination to accept or reject the Plan (Exhibit D and Exhibit E), (g) a liquidation analysis setting forth the estimated recoveries that Holders of Claims and Interests would receive in a hypothetical chapter 7 liquidation (Exhibit C), (h) securities disclosures with respect to the Plan (Article IX), (i) risk factors associated with the Plan (Article VIII), and (j) federal tax law consequences of the Plan (Article X).[7]  In addition, drafts of the Disclosure Statement were shared and discussed with the RSA Parties and other parties in interest in the time leading up to the filing of the Disclosure Statement and this motion.

15.     The Debtors believe that the information provided in the Disclosure Statement is sufficiently detailed and contains adequate information to allow Holders of Claims in the Voting Classes to make an informed decision regarding whether to vote to accept or reject the Plan. Accordingly, the Debtors respectfully submit that the Disclosure Statement provides "adequate

---

[7]     The Debtors intend to file their financial projections, valuation analysis, and liquidation analysis and otherwise update the Disclosure Statement in advance of the hearing to approve the adequacy of the Disclosure Statement consistent with numerous cases filed in this district.

information" under section 1125(a) of the Bankruptcy Code and, therefore, should be approved by the Court.

**II.      The Disclosure Statement Provides Sufficient Notice of Injunction, Exculpation, and Release Provisions in the Plan**

16.      Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction.  *See* Fed. R. Bankr. P. 3016(c).  Article VIII.F of the Plan describes in detail the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing. Moreover, Articles VIII.C, VIII.D, and VIII.E of the Plan describe in detail the release and exculpation provisions of the Plan.  Articles VIII.C, VIII.D, VIII.E, and VIII.F are set forth conspicuously in bold typeface in the Plan and in Article V.D of the Disclosure Statement. Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c).

**III.     The Debtors Provided Adequate Notice of the Disclosure Statement Hearing**

17.      Bankruptcy Rule 3017(a) provides that a hearing on the adequacy of a disclosure statement, and the objection deadline for any such hearing, shall each be on 28-days' notice to the "debtors, creditors, equity security holders, and other parties in interest[.]"  Fed. R. Bankr. P. 3017(a); *see also* Fed. R. Bankr. P 2002(b).  As set forth below, the Debtors satisfied the notice requirements contained in the Bankruptcy Rules.

18.      The Debtors, through their claims and solicitation agent, Kroll Restructuring Administration LLC (the "Claims Agent"), served (or caused to be served) a notice that identifies the date, time, and place of the hearing on the Disclosure Statement, how to obtain copies of the Disclosure Statement and the exhibits thereto, and the deadline and procedures for filing objections

to approval of the Disclosure Statement.  This notice was served upon the following parties at least

28 days prior to the deadline to object to the adequacy of the Disclosure Statement:  (a) all parties

that have filed a written request for notice pursuant to Bankruptcy Rule 2002; (b) any party with a

filed proof of claim as of such date; and (c) all of the Debtors' known creditors and equity holders,

including Holders of the Debtors' publicly traded securities who will be served through their

Nominees.  The Debtors submit that they have provided adequate notice of the hearing on the

approval of the Disclosure Statement and request that the Court approve such notice as appropriate

and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the

Local Rules.

### IV.      Approval of the Solicitation Procedures and Forms of Solicitation Materials

19.      The Debtors also request that the Court approve the Solicitation Procedures and

forms of solicitation materials.  As set forth below, the Debtors submit that the Solicitation

Procedures comply with the various applicable provisions of the Bankruptcy Code and

Bankruptcy Rules and should be approved.

20.      The following chart summarizes the notices and materials to be provided by the

Debtors to each class of Claims and Interests:

| Voting Classes | Materials To Be Provided |
|---|---|
| Class 3:  First Lien Claims<br>Class 4:  Junior Funded Debt Claims<br>Class 6:  General Unsecured Claims | • Plan, Disclosure Statement, Disclosure Statement Order (without exhibits), Solicitation Procedures, and applicable Ballots<br>• Confirmation Hearing Notice<br>• Cover letter(s) |
| **Non-Voting Classes** | **Materials To Be Provided** |
| Class 1:  Other Secured Claims<br>Class 2:  Other Priority Claims<br>Class 5:  Go-Forward Trade Claims<br>Class 9:  Existing Equity Interests | • Confirmation Hearing Notice<br>• Notice of Non-Voting Status (including Opt-Out Form) |
| Class 7:  Intercompany Claims<br>Class 8:  Intercompany Interests | • None |

### A.      Establishment of a Voting Record Date

21.      Bankruptcy Rule 3017(d) provides that, for soliciting votes in connection with a plan, eligible voting holders of claims and interests are "of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d); *see also* Fed. R. Bankr. P. 3018(a) (containing a similar provision for determination of a voting record date). The Debtors request that the Court establish April 15, 2024 (the "Voting Record Date"), as the date for determining: (a) Holders of Claims that are entitled to receive a Solicitation Package (as defined herein); (b) Holders of Claims that are entitled to vote to accept or reject the Plan; and (c) whether Claims have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of such Claim.

### B.      Proposed Solicitation and Voting Procedures

22.      Section 1126(c) of the Bankruptcy Code provides that a "class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected the plan." 11 U.S.C. § 1126(c). Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c). Consistent with these requirements, the Debtors propose to use the Solicitation Procedures, which are attached as **Exhibit A** to the Disclosure Statement Order.

23.      The proposed Solicitation Procedures include specific voting requirements and procedures and set forth specific criteria with respect to the general tabulation of the ballots contained in the Solicitation Packages (the "Ballots"), voting procedures applicable to Holders of

Claims, and tabulation of such votes. The Debtors believe that the proposed Solicitation Procedures will facilitate the Plan confirmation process by clarifying any obligations of Holders of Claims entitled to vote to accept or reject the Plan. The Solicitation Procedures will also create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity requirements of section 1126(c) of the Bankruptcy Code.

24.     Among other things, to ease and clarify the process of tabulating all votes received, the proposed Solicitation Procedures and related Ballots establish and communicate how the Claims Agent will tabulate the votes and elections contained in the Ballots. Specifically, the Solicitation Procedures provide that the Debtors not count a Ballot if it is, among other things, illegible, submitted by a Holder of Claim that is not entitled to vote on the Plan, unsigned, or clearly not marked. Further, the Debtors, subject to any contrary order of the Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Debtors' voting report. Accordingly, the Debtors submit that the Solicitation Procedures are in the best interest of their estates, Holders of Claims, and other parties in interest, and that good cause supports the relief requested herein.

### C.     Form and Distribution of Solicitation Packages to Parties Entitled to Vote on the Plan

25.     To perform a solicitation, Bankruptcy Rule 3017(d) requires, unless the Court orders otherwise, that the Debtors transmit certain information to Holders of Claims and Interests, as well as to the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"). *See* Fed. R. Bankr. P. 3017(d). Pursuant to Bankruptcy Rule 3017(d), the Debtors propose that, within four business days after entry of the Disclosure Statement Order, the Debtors, through the Claims Agent, will commence distribution of Solicitation Packages by

first-class, postage prepaid mail to each Holder of Claims in the Voting Classes or their Nominees as discussed herein.  The "Solicitation Package" will include the following materials:

    a.    the Disclosure Statement;

    b.    the exhibits to the Disclosure Statement, which include (i) the Plan, (ii) the RSA, (iii) the Liquidation Analysis, (iv) the Financial Projections, and (v) the Valuation Analysis;

    c.    a copy of the Disclosure Statement Order (without exhibits) approving, among other things, the Disclosure Statement and the Solicitation Procedures;

    d.    the Solicitation Procedures;

    e.    the appropriate Ballot with voting instructions for each Holder (accompanied by a postage prepaid business reply envelope addressed to the Solicitation Agent);

    f.    a cover letter (the "Cover Letter");[8] and

    g.    the Confirmation Hearing Notice.

26.    The Debtors also propose to serve the Solicitation Package, minus a Ballot, on all entities that have filed a written request for notice with the Court pursuant to Bankruptcy Rule 2002.

27.    Given that the contents of the Solicitation Package are quite voluminous, and to save unnecessary costs, the Debtors further request that they be authorized to distribute the contents of the Solicitation Packages consisting of the Disclosure Statement (with all exhibits thereto, including the Plan and all exhibits thereto) and the Disclosure Statement Order (without exhibits) in an electronic format, such as a flash drive, instead of paper format.  In the event such an electronic format is used, only the contents of the Solicitation Packages consisting of the Solicitation Procedures, Ballot (with prepaid business reply envelope addressed to the Claims

---

[8]    In addition, Solicitation Packages delivered to Holders of Class 6 General Unsecured Claims will include a letter from the UCC (the "UCC Cover Letter") recommending that such Holders vote to accept the Plan.

Agent), Cover Letter (and, if applicable, the UCC Cover Letter), and notice of the Confirmation Hearing (the "Confirmation Hearing Notice") will be delivered in paper format to Holders of Claims in the Voting Classes (or such Holder's Nominee).  If a party who receives any documents contained in its Solicitation Package electronically prefers a paper copy format, the party may request paper copies from the Claims Agent free of charge by (a) visiting the Claims Agent's website at https://cases.ra.kroll.com/DSG, (b) writing to Diamond Sports Group, LLC Ballots Processing Center c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232, (c) emailing DSGinfo@ra.kroll.com (with "DSG Solicitation Inquiry" in the subject line), or (d) calling the Debtors' restructuring hotline at (877) 720-6635 (U.S./Canada toll-free) or +1 (646) 440-4763 (international).  Copies may also be obtained for a fee via PACER at http://www.txs.uscourts.gov.

28.    In addition, for purposes of serving the Solicitation Package (with respect to voting and non-voting parties), the Debtors seek authority for the Claims Agent to rely on the address information maintained by the Debtors and provided to the Claims Agent as of the Voting Record Date.  The Debtors further request that the Court waive (a) any requirement to re-mail undeliverable Solicitation Packages or other undeliverable solicitation-related notices that were returned marked "undeliverable," "moved—no forwarding address," or otherwise returned unless an updated address is provided to the Claims Agent by the Voting Record Date, and (b) any obligation for the Debtors or the Claims Agent to conduct any additional research for updated addresses based on undeliverable Solicitation Packages or other undeliverable solicitation-related notices.

### D.     Non-Solicitation of and Form of Notices to Non-Voting Classes and Holders of Disputed Claims

29.     Holders in Non-Voting Classes ("Non-Voting Holders") are either (a) unimpaired under, and conclusively presumed to accept, the Plan pursuant to section 1126(f) of the Bankruptcy Code or (b) impaired under, and conclusively presumed to reject, the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, the Debtors are requesting a waiver of the requirement that they mail copies of the Plan and Disclosure Statement to Non-Voting Holders. *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of court-approved disclosure statement to, among others, classes of unimpaired creditors and equity security holders).  In lieu of furnishing each Non-Voting Holder with a Solicitation Package, the Debtors propose to send to Non-Voting Holders (other than Non-Voting Holders in Class 7 and Class 8) within four business days of the entry of the Disclosure Statement Order (a) the Confirmation Hearing Notice and (b) a notice of non-voting status (the "Notice of Non-Voting Status").

30.     The Notice of Non-Voting Status, attached as **Exhibit C** to the Disclosure Statement Order, contains the full text of the Third-Party Release set forth in Article VIII.D of the Plan and advises such Non-Voting Holders that they will be deemed to have consented to the Third-Party Release unless they timely and properly choose to opt out.  With respect to Non-Voting Holders in Class 1, Class 2, Class 5, and Class 9, such notices will include a form and return envelope addressed to the Claims Agent allowing such Holders, at their election, to opt out of the Third-Party Release set forth in the Plan by the Voting Deadline (the "Opt-Out Form").  Additionally, Holders of Claims that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their Claim, and the Debtors will provide notice to such Holders, substantially in the form attached to the Disclosure Statement Order as **Exhibit E** (the "Disputed Claim Notice"), which explains to such Holders the procedures for establishing

claim amounts for voting purposes and includes an Opt-Out Form. Under the circumstances, the Debtors submit that the Notice of Non-Voting Status and Disputed Claim Notice are adequate and appropriate to provide Non-Voting Holders notice of their non-voting status and the opportunity to opt out or otherwise object to the Third-Party Release set forth in Article VIII.D of the Plan.

31.    In compliance with section 1123(a)(1) of the Bankruptcy Code and as reflected in Article II of the Plan, Administrative Claims and Priority Tax Claims are not classified under the Plan. *See* 11 U.S.C. § 1123(a)(1) (providing for classification of claims other than administrative and priority tax claims). Holders of such Claims are therefore not entitled to vote on the Plan and will not be provided the Solicitation Package. The Claims Agent will, however, send Holders of such Claims a Confirmation Hearing Notice and a Notice of Non-Voting Status. With respect to Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests), the Debtors request a waiver of any requirement to serve a Notice of Non-Voting Status or any other type of notice in connection with the Plan because such Claims and Interests are held by the Debtors or their affiliates.

### E.    Forms of Ballots

32.    Bankruptcy Rule 3017(d) requires that the Debtors use a form of ballot substantially conforming to the appropriate official form. The Ballots, copies of which are attached as **Exhibit B** to the Disclosure Statement Order, are based on Official Form No. 314 but were modified to address the particular aspects of these chapter 11 cases and to be relevant and appropriate for each Voting Class.

33.    The Debtors, through the Claims Agent, will distribute, or cause to be distributed, the Ballots to Holders of Claims in the Voting Classes as of the Voting Record Date, including to banks, brokers, or other intermediaries ("Nominees") that hold Class 4 Notes Claims in "street name" on behalf of beneficial holders of such Claims ("Beneficial Holders") with instructions to forward the materials (or otherwise convey the content of the Solicitation Packages) to their

Beneficial Holders.  The Ballots for Beneficial Holders will instruct each Beneficial Holder voting on the Plan through a Nominee to return the Ballot for Beneficial Holders (the "Beneficial Holder Ballot") to the appropriate Nominee (or to otherwise convey their vote to their Nominee) in sufficient time for such Nominee to timely submit a master ballot ("Master Ballot") to accept or reject the Plan on behalf of the Beneficial Holders so that they are actually received by the Claims Agent no later than **4:00 p.m. (prevailing Central Time) on May 22, 2024 (the "Voting Deadline")**.  The Claims Agent will then tabulate each such vote received.

34.     The Ballots and Opt-Out Forms (from Holders of Claims or Interests in Non-Voting Classes) may be returned to the Claims Agent via the first-class, postage prepaid business reply envelope included in the Solicitation Package, if applicable, or by hand or overnight delivery (at the Holder's expense).  In addition to accepting physical Ballots and Opt-Out Forms, the Debtors request authorization to accept Ballots and Opt-Out Forms via electronic transmissions, solely through a customized online balloting portal on the Debtors' case website maintained by the Claims Agent at https://cases.ra.kroll.com/DSG.[9]  Parties entitled to vote and Holders of Claims or Interests in Non-Voting Classes may cast an electronic Ballot or Opt-Out Form, as applicable, and electronically sign and submit the Ballot or Opt-Out Form instantly by utilizing the online balloting portal (which allows a Holder to submit an electronic signature).  Instructions for electronic, online transmission of Ballots and Opt-Out Forms are set forth on the forms of Ballots and Opt-Out Forms, in the Disclosure Statement, and on the Debtors' case website at https://cases.ra.kroll.com/DSG.  The encrypted Ballot and Opt-Out Form data and audit trail created by such electronic submission shall become part of the record of any Ballot or Opt-Out

---

[9]     Notwithstanding the foregoing, Beneficial Holders may return pre-validated Beneficial Holder Ballots, and Nominees that hold Class 4 Notes Claims in "street name" on behalf of Beneficial Holders may return Master Ballots, in each case, via electronic mail to dsgballots@ra.kroll.com.

Form, respectively, submitted in this manner and the electronic signature of the party utilizing the online balloting portal to submit an electronic Ballot or Opt-Out Form, as applicable, will be deemed to be immediately legally valid and effective.

35.     Each Ballot and Opt-Out Form contains detailed instructions on how to complete it and how to make any applicable elections contained therein.  In particular, each Ballot indicates that, to be counted as a vote to accept or reject the Plan, the Ballot must be properly executed, completed, and delivered to the Claims Agent so that it is actually received by no later than the Voting Deadline.  The Ballots also clearly indicate that, by voting to accept the Plan, the Holder will be deemed to consent to the Third-Party Release set forth in Article VIII.D of the Plan (which provision is set forth in full in Item 3 of the Ballots).  The Ballots also provide that if a Holder abstains from voting to accept or reject the Plan or votes to reject the Plan and in each case, does not check the box in Item 3 of the Ballots indicating an intent to opt out of granting the Third-Party Release provided in Article VIII.D of the Plan, such Holder will be deemed to have consented to the Third-Party Release set forth in Article VIII.D.  Similarly, the Opt-Out Form provides that Holders of Claims or Interests in Non-Voting Classes will be deemed to grant the Third-Party Release set forth in Article VIII.D of the Plan unless such Holders affirmatively opt out of the Third-Party Release by submitting their Opt-Out Form to the Claims Agent on or before **May 22, 2024, at 4:00 P.M. (Prevailing Central Time) (the "Opt-Out Deadline")**.

**V.      Procedures in Respect of the Assumption of Executory Contracts and Unexpired Leases**

36.     The Plan provides that all Executory Contracts and Unexpired Leases to which the Debtors are parties shall be deemed assumed by the Debtors as of the Effective Date, unless such contract or lease (a) was assumed (or assumed and assigned) or rejected previously by the Debtors, (b) previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to

assume, assume and assign, or reject that is pending as of the Effective Date, or (d) is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases.

37.     The Debtors propose to serve the Confirmation Hearing Notice on all parties to Executory Contracts and Unexpired Leases.  In advance of the deadline to object to confirmation of the Plan (the "Plan Objection Deadline"), the Debtors also propose to send notices to counterparties to Executory Contracts and Unexpired Leases that will be rejected or assumed pursuant to the Plan (the "Rejection Notice" and the "Cure Notice," respectively), substantially in the forms attached to the Disclosure Statement Order as **Exhibit F** and **Exhibit G**, to applicable counterparties to Executory Contracts and Unexpired Leases.  The Rejection Notice and Cure Notice each notify such counterparties of, among other things, the proposed treatment of Executory Contracts and Unexpired Leases under the Plan, information pertaining to deadlines to object to such treatment, including with respect to cure Claims and adequate assurance under section 365 of the Bankruptcy Code, and instructions for filing a Claim for potential damages in connection with the Debtors' rejection of any Executory Contracts and Unexpired Leases.  For the avoidance of doubt, a Holder will only be entitled to receive Solicitation Materials on account of a Claim arising from the rejection of an Executory Contract or Unexpired Lease if the Claim is filed by the Voting Record Date.

38.     The Debtors respectfully submit that these notices and the related procedures set forth herein are appropriate under the circumstances.

## VI.     Establishment of Confirmation Hearing Date and Approval of Confirmation Hearing Notice and Procedures for Objections to Confirmation of the Plan

39.     Bankruptcy Rule 3020(b)(1) authorizes the Court to fix a time for filing objections to confirmation of a chapter 11 plan.  Further, Bankruptcy Rule 2002(b) requires at least 28-days'

notice be given by mail to all creditors of the time fixed for filing objections to confirmation of a chapter 11 plan.

40.     The Debtors propose that the Confirmation Hearing be set, subject to the Court's schedule, on June 18, 2024, at 9:00 a.m. (prevailing Central Time), and that the Court establish May 22, 2024, at 4:00 p.m. (prevailing Central Time) as the Plan Objection Deadline.  The proposed Plan Objection Deadline will provide Holders of Claims and Interests with sufficient notice of the deadline for filing objections to Plan, while still affording the Debtors and other parties time to file a responsive brief and, if possible, consensually resolve any objections received. The Debtors further request that they be authorized to file replies to any timely objections or responses to confirmation no later than two business days before the Confirmation Hearing.

41.     The Debtors further propose that the Court direct that any responses or objections to confirmation of the Plan must:  (a) be in writing; (b) conform to the applicable Bankruptcy Rules and the Local Rules; (c) state the name of the objecting party and the amount and nature of the Claim or Interest of such party; (d) state the legal and factual basis for and the nature of any objection; and (e) be filed with the Court, together with proof of service.

42.     Setting the Plan Objection Deadline, as requested, and requiring that any objecting parties satisfy the above-mentioned conditions, is warranted.  First, the Debtors' proposed schedule would provide all parties with at least 28-days' notice of the Plan Objection Deadline, as required by Bankruptcy Rule 2002(b)(1).  In addition, the requested relief otherwise complies with the applicable rules and will provide the Court, the Debtors, and other parties in interest with sufficient time to consider any objections before the Confirmation Hearing.  Lastly, the Voting Classes will have received notice of the Plan and the restructuring transactions contemplated thereunder at least

28 days before the Plan Objection Deadline, if not earlier, through the Solicitation Procedures. Accordingly, all parties will receive sufficient notice of the Plan Objection Deadline and the Plan.

43.     The Debtors further propose to serve a notice substantially in the form attached as **Exhibit D** to the Disclosure Statement Order.  The Confirmation Hearing Notice sets forth (a) the date, time, and place of the Confirmation Hearing, (b) instructions for obtaining copies of the Disclosure Statement and the Plan, (c) the Plan Objection Deadline and the procedures for filing objections to confirmation of the Plan, and (d) a summary of Voting Classes and Non-Voting Classes and related information regarding the Plan.  The Confirmation Hearing Notice also clearly provides that certain Holders of Claims or Interests in Non-Voting Classes who do not timely object to the Third-Party Release set forth in Article VIII.D of the Plan (which provision is set forth in full in the Confirmation Hearing Notice) by the Voting Deadline and the Opt-Out Deadline will be deemed to have granted the Third-Party Release.   In addition, as required by Bankruptcy Rule 2002(c), Article VIII.F of the Plan, which sets forth the entities subject to an injunction under the Plan and the acts they are enjoined from pursuing, is set forth conspicuously in bold typeface in the Confirmation Hearing Notice.

44.     The Confirmation Hearing Notice will be served upon the Debtors' creditor matrix and all interest Holders of record, which service will occur as soon as possible after the Court's approval of the Confirmation Hearing Notice.  The Debtors also propose to send the Confirmation Hearing Notice to Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 3 (First Lien Claims), Class 4 (Junior Funded Debt Claims), Class 5 (Go-Forward Trade Claims), Class 6 (General Unsecured Claims), and Class 9 (Existing Equity Interests) as of the close of business on the applicable Voting Record Date within four business days following entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter.  Further,

for Nominees through which Beneficial Holders hold certain Claims, the Debtors request that the Court authorize (a) the Debtors to provide the Nominees with sufficient copies of the Confirmation Hearing Notice to forward to the Beneficial Holders and (b) the Nominees to forward the Confirmation Hearing Notice or copies thereof to the Beneficial Holders within five business days of the receipt by such Nominee of the Confirmation Hearing Notice.

45.     In addition, Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."   The Debtors request that this Court authorize the Debtors to give supplemental publication notice of the Confirmation Hearing on a date not less than 28 days before the Confirmation Hearing in the national editions of *The New York Times* and *USA Today* (the "Publication Notice").  The Debtors believe that the publication of certain of the contents of the Confirmation Hearing Notice in this manner will provide sufficient notice of the date, time, and place of the Confirmation Hearing and the Plan Objection Deadline (and related procedures) to persons who do not otherwise receive the Confirmation Hearing Notice by mail.

46.     As an additional form of notice to parties in interest in these cases, the Debtors intend to post to the Claims Agent's website (https://cases.ra.kroll.com/DSG) various chapter 11 documents, including (a) the Plan, (b) the Disclosure Statement (including all exhibits, when filed), (c) the Plan Supplement documents, agreements, schedules, and exhibits, when filed, (d) this motion and any orders entered in connection with this motion, and (e) the Confirmation Hearing Notice.

47.     The proposed service of the Confirmation Notice will provide sufficient notice to all parties in interest in these chapter 11 cases of the commencement of such cases, the date, time, and place of the Confirmation Hearing, and the procedures for objecting to confirmation of the

Plan.  In addition, the Publication Notice will provide sufficient notice to any person who did not otherwise receive notice pursuant to the Confirmation Hearing Notice.

**VII.    Non-Substantive Modifications**

48.    The Debtors request authority to make non-substantive or immaterial changes to the Disclosure Statement, the Plan, the Solicitation Procedures, the Confirmation Hearing Notice, the Notice of Non-Voting Status, the Ballots, the Cover Letter, the UCC Cover Letter, the Cure Notice, the Rejection Notice, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

<u>**Notice**</u>

49.    The Debtors will provide notice of this motion to (a) the parties on the Master Service List available on the website of the Debtors' claims and noticing agent at <u>https://cases.ra.kroll.com/DSG</u>, and (b) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors will also provide notice of the hearing on the Disclosure Statement to all known creditors and other parties in interest at least 28 days before the objection deadline with respect to this motion.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the proposed Disclosure Statement Order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

March 12, 2024

Respectfully submitted,

/s/ John F. Higgins

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
Bryan L. Rochelle (TX Bar No. 24107979)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
brochelle@porterhedges.com

- and -

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Andrew N. Goldman (admitted *pro hac vice*)
Benjamin W. Loveland (admitted *pro hac vice*)
Lauren R. Lifland (admitted *pro hac vice*)
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
andrew.goldman@wilmerhale.com
benjamin.loveland@wilmerhale.com
lauren.lifland@wilmerhale.com

*Section 327(e) Counsel to the Debtors and Debtors in Possession*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Brian S. Hermann (admitted *pro hac vice*)
Andrew M. Parlen (admitted *pro hac vice*)
Joseph M. Graham (admitted *pro hac vice*)
Alice Nofzinger (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
bhermann@paulweiss.com
aparlen@paulweiss.com
jgraham@paulweiss.com
anofzinger@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on March 12, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins