IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) ) ) | Case No. 23-90116 (CML) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING (A) THE EMPLOYMENT OF CBRE, INC. AS REAL ESTATE BROKER EFFECTIVE AS OF FEBRUARY 15, 2024, AND (B) PAYMENT TO CBRE, INC. IN CONNECTION WITH ITS SERVICES AS REAL ESTATE BROKER, AND (II) GRANTING RELATED RELIEF**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within 21 days from the date this application was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within 21 days from the date this application was filed. Otherwise, the court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this application:

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto, (a) authorizing (i) the retention and employment of CBRE, Inc. ("CBRE") as the Debtors' real estate broker effective as of February 15, 2024, and (ii) payment to CBRE in connection with its services as real estate broker, and (b) granting related relief. In support of this application, the Debtors submit the declaration of CBRE Senior Managing Director Robert Caruso (the "Caruso Declaration) attached hereto as **Exhibit A**.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

**Introduction**

2.  The Debtors seek to employ CBRE to provide lease advisory services with respect to the Debtors' leased or subleased properties identified on Exhibit 2 to the Caruso Declaration (the "Leased Properties"). Pursuant to the Lease Advisory Services Agreement dated as of February 15, 2024 (the "Engagement Agreement"), attached hereto as **Exhibit B**, and as more specifically described therein, CBRE will represent the Debtors in (a) disposing of all or any portion of the Leased Properties (each such disposition, a "Disposition Transaction") and (b) identifying and acquiring new properties on behalf of the Debtors in accordance with the requirements of the Debtors' business (each such acquisition, an "Acquisition Transaction"). As compensation for a Disposition Transaction, the Debtors will pay CBRE a market rate commission for the locale in which the subject Leased Property is located in accordance with Exhibit A to the Engagement Agreement. As compensation for an Acquisition Transaction, CBRE will be paid a commission by the owner, lessor, or seller of such property, rather than the Debtors. CBRE's compensation for Disposition Transactions and Acquisition Transactions is more specifically described in Paragraphs 9 and 11 below and in Exhibit A to the Engagement Agreement. By this application, the Debtors also seek the authority to pay CBRE in accordance with the terms of the Engagement Agreement and without further order of this Court.

**Jurisdiction and Venue**

3.  The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this application to the extent that it is

later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 2014 and 2016, Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures").

**Background**

6. On March 14 and 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On March 15, 2023, the Court entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 27, 2023, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

7. On February 29, 2024, the Debtors filed the *Debtors' Joint Chapter 11 Plan of Reorganization* (as may be amended, modified or supplemented, the "Plan") [Docket No. 1845] and a related disclosure statement [Docket No. 1846].

**Services to be Provided and Professional Compensation**

8. Pursuant to the terms of the Engagement Agreement,[2] the services provided by CBRE will include the following (collectively, the "Services"):

   a. exclusively representing the Debtors in connection with (i) the disposition of all or any portion of the Leased Properties, which may include obtaining (x) one or more subtenants for all or a part of the Leased Properties, (y) an assignee of any of the Debtors' leasehold interests in connection therewith, or (z) the surrender, cancellation, buyout, or release from the Debtors' obligations under the subject Lease (as hereinafter defined) (collectively, a "Recapture") of any or all of the leases set forth on Exhibit B to the Engagement Agreement (each, a "Lease") from the applicable landlord(s), and (ii) finding, negotiating, and securing premises on behalf of the Debtors in accordance with the requirements of the Debtors' business; and

   b. marketing the Leased Properties using such advertising, canvassing, solicitation of licensed tenant representative brokers, and other promotional and marketing activities as the Debtors and CBRE may agree upon.

9. With respect to Disposition Transactions, CBRE will be compensated as follows:

   a. If any of the Leased Properties or any portion thereof are subleased to a subtenant or a Lease is assigned to an assignee (any such subtenant or assignee, a "Prospect"), the Debtors will pay CBRE commission(s) as follows: (i) if CBRE is the sole broker on a transaction, the Debtors will pay CBRE one full commission (a "Full Commission") computed in accordance with the schedule of rates and conditions set forth on Exhibit A of the Engagement Agreement (the "Commission Schedule"); or (ii) if an outside broker that is not a part of the primary team of CBRE brokers designated to assist in the disposition of the Leased Properties (an "Outside Broker") procures a sublease or assignment of a Lease to a Prospect, the Debtors will pay CBRE an additional one-half of a Full Commission (for a total of one and one-half of a Full Commission), and CBRE will compensate such Outside Broker(s) out of such commission payments made by the Debtors to CBRE. Such commission(s) shall be paid upon the later to occur of (x) full execution and unconditional delivery of the binding transactional documents (and, if so required, receipt of the applicable landlord's consent) and the delivery to the Debtors of any deposits or other security required in respect thereof, and (y) Court approval of such transaction, to the extent required.

---

[2] The following summary of the terms of the Engagement Agreement is for the Court's convenience. To the extent the summary of the terms in this application differs from the terms of the Engagement Agreement, the terms of the Engagement Agreement shall govern.

      b.    In the event of a Recapture by the applicable landlord (or its designee) with respect to any of the Leases, the Debtors will pay CBRE one Full Commission computed in accordance with the schedule of rates and conditions set forth on Exhibit A of the Engagement Agreement. Such commission(s) shall be paid upon the later to occur of (i) full execution and unconditional delivery of the binding transactional documents and the delivery to the Debtors of any deposits or other security required in respect thereof at execution of the binding transactional documents, and (ii) Court approval of such transaction, to the extent required.

10. In addition to the foregoing, and subject to the Debtors' prior approval, the Debtors have also agreed to reimburse CBRE for actual out-of-pocket expenses incurred by CBRE in connection with any Disposition Transaction.

11. In connection with any Acquisition Transaction, CBRE's commissions will be paid by the owner, seller, or lessor of the subject property, and the Debtors will have no obligation to pay such commissions to CBRE.

## Basis for Relief

**I. The Debtors Should be Permitted to Retain and Employ CBRE on the Terms and Conditions of the Engagement Agreement Pursuant to Sections 327 and 328 of the Bankruptcy Code**

12. The Debtors seek approval of the retention and employment of CBRE pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code provides that a debtor in possession "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in possession in carrying out its duties. 11 U.S.C. § 327(a).

13. In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or *percentage fee basis*, or on a contingent fee basis."

5

11 U.S.C. § 328(a) (emphasis added). Accordingly, section 328(a) of the Bankruptcy Code permits the compensation of professionals, including real estate brokers, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id*. at 862 (internal citations and emphasis omitted).

14. It is the custom and practice in the real estate industry for a broker's fees to be payable only if and when a transaction closes, rather than in accordance with the time expended by a broker in connection therewith. As such, CBRE does not bill clients on an hourly basis while performing services such as those provided for under the Engagement Agreement due to the transactional nature of such services. CBRE's expertise was an important factor in determining the fee structure under the Engagement Agreement, and the Debtors believe that the ultimate benefit to their estates resulting from the Services cannot be measured by reference to the number of hours to be expended by CBRE's professionals in the performance of such services. Additionally, it is not the general practice of real estate brokers like CBRE to keep detailed time records similar to those customarily kept by attorneys.

15. The Debtors believe that (a) CBRE's general commercial real estate experience and expertise, as well as its knowledge and experience with the Debtors and their current lease portfolio, will inure to the benefit of the Debtors in evaluating their lease portfolio and identifying

6

efficiencies and space needs going forward; (b) the value to the Debtors of CBRE's services under the Engagement Agreement derives in substantial part from that expertise and experience; and (c) the compensation structure contemplated by the Engagement Agreement is reasonable regardless of the number of hours to be expended by CBRE's professionals in the performance of services thereunder.

16. The Debtors therefore believe that the commission structure contemplated by the Engagement Agreement (the "Commission Structure") appropriately reflects the nature and scope of services to be provided by CBRE, CBRE's substantial experience with respect to commercial real estate services, and the fee structures typically utilized by CBRE and other leading real estate professionals that do not bill on an hourly basis (in bankruptcy or otherwise).

17. Based on the nature of the Services, and the fact that the Commission Structure was agreed to in part because CBRE does not bill clients on an hourly basis, the Debtors accordingly request that the Court waive the requirements of section 330 of the Bankruptcy Code and authorize the Debtors to pay CBRE commission payments provided for in the Engagement Agreement in the ordinary course and without further order of the Court. Requiring the Debtors to file fee applications on CBRE's behalf would unduly burden the Debtors' estates with further professional fees, with little corresponding benefit to stakeholders.

18. This framework is highly beneficial to the Debtors' estates and will allow them to better maximize the value of their real estate portfolio, as the Commission Structure does not require the Debtors to make any payments to CBRE unless and until a Disposition Transaction is consummated. Accordingly, the Debtors seek relief from any requirement for CBRE to maintain time records, file interim fee applications, or otherwise obtain any further order of the Court prior to the payment of any commission in accordance with the Engagement Agreement. CBRE will,

however, file a final fee application with a summary of fees earned and expenses incurred, as invoiced, along with a summary of the fees and expenses paid in connection therewith.

19. The Debtors submit that the retention of CBRE is in the best interests of their estates. In connection with implementing the reorganization contemplated by the Plan, including fully separating their business operations from Sinclair, Inc., the Debtors require a real estate broker with the resources, capabilities, market reach, and experience necessary to assist them in maximizing the value of their real estate portfolio, and CBRE is well qualified to serve in this role. As detailed in the Caruso Declaration, CBRE is a global leader in commercial real estate services and investments, with experience in the sale, leasing, and subleasing of office buildings and commercial real estate of similar kind and quality to the Leased Properties. Moreover, the compensation structure contemplated by the Engagement Agreement is reasonable and market-based. The Debtors accordingly believe that entering into the Engagement Agreement and compensating CBRE in accordance with the Commission Structure is an exercise of their sound business judgment.

20. This application is filed within 30 days of February 15, 2024, and, pursuant to Local Rule 2014-1 and paragraph 47 of the Complex Case Procedures, this application is deemed contemporaneous with February 15, 2024, and entitled to relief effective as of February 15, 2024. *See* Local Bankr. R. 2014-1(b)(1) ("If an application for approval of the employment of a professional is made within 30 days of the commencement of that professional's provision of services, it is deemed contemporaneous."); Complex Case Procedures ¶ 47.

II. **CBRE is a "Disinterested Person" as Defined in Section 101(14) of the Bankruptcy Code and as Required Under Section 327(a) of the Bankruptcy Code**

21. Section 327(a) of the Bankruptcy Code provides that any professional employed thereunder must be a "disinterested person." 11 U.S.C. § 327(a). CBRE has reviewed the list of

parties in interest provided to them by the Debtors and, except as disclosed in the Caruso Declaration, CBRE has no connections with the Debtors, their creditors, any parties in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed by the U.S. Trustee. Additionally, CBRE has informed the Debtors that it will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise following the filing of this application, and make additional disclosures to this Court if necessary or otherwise appropriate.

22. Additionally, CBRE and the Debtors believe that CBRE and its professionals do not hold or represent an "interest adverse" to the estates as they do not possess any economic interest that would tend to lessen the value of the estates or create either an actual or potential dispute in which the estates are rival claimants. *See, e.g.*, *In re Red Lion, Inc.*, 166 B.R. 296, 298 (Bankr. S.D. Tex. 1994). Finally, CBRE has not been retained to assist any entity or person other than the Debtors in matters relating to or in connection with the above-captioned chapter 11 cases.

23. Accordingly, the Debtors submit that CBRE is a "disinterested person" within the definition of section 101(14) of the Bankruptcy Code. 11 U.S.C. § 101(14).

24. Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules to support entry of an order authorizing the Debtors to retain and compensate CBRE on the terms described herein and in the Engagement Letter.

## Notice

25. The Debtors will provide notice of this application to (a) the parties on the Master Service List available on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG, and (b) any party that has requested notice pursuant to Bankruptcy

Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the proposed order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  March 15, 2024

Respectfully submitted,

*/s/ David F. DeVoe, Jr.*
David F. DeVoe, Jr.
Chief Operating Officer and Chief Financial Officer
Diamond Sports Group, LLC

**Certificate of Service**

  I certify that on March 15, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

               */s/ John F. Higgins*
               John F. Higgins