IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | Case No. 23-90116 (CML) |
| Debtors. | (Jointly Administered) |
| | Re: D.I. 1982-1 |

**STATEMENT OF MAJOR LEAGUE BASEBALL AND CERTAIN
MAJOR LEAGUE BASEBALL CLUBS IN ADVANCE OF
STATUS CONFERENCE SCHEDULED FOR MAY 15, 2024**

Atlanta National League Baseball Club, LLC (the "Braves"), Detroit Tigers, Inc. (the "Tigers"), Milwaukee Brewers Baseball Club, L.P. (the "Brewers"), Minnesota Twins, LLC (the "Twins"), Rangers Baseball Express LLC (the "Rangers") and Rays Baseball Club, LLC (the "Rays" and each of the Braves, Tigers, Brewers, Twins, Rangers and Rays, with certain of their affiliates, a "Signatory Club" and collectively, the "Signatory Clubs") and the Office of the Commissioner of Baseball d/b/a Major League Baseball ("MLB"), by and through their undersigned counsel, hereby respectfully submit the following statement (the "Statement") in advance of the May 15, 2024 status conference (the "Status Conference").

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

**STATEMENT**

**Introduction**

1. Since the Debtors commenced these chapter 11 cases in March 2023, they have struggled to find a path to reorganization. The Debtors, unfortunately, now face a new and potentially insurmountable obstacle. As the Debtors have often acknowledged, Comcast is one of their most important distributors; in 2023, payments from Comcast represented a substantial portion of the Debtors' revenue. Accordingly, the Debtors' ongoing relationship with Comcast is critical to their short- and long-term viability, and yet the Debtors were recently unable to negotiate a carriage renewal with Comcast. As a result, the broadcasts of the Debtors (and their non-debtor affiliates) were dropped by Comcast on May 1, 2024. This abrupt loss of carriage is profoundly harmful to MLB, the Signatory Clubs and the other MLB clubs that are parties to telecast rights agreements with the Debtors or the Debtors' non-debtor affiliates: Angels Baseball LP (the "Angels"), The Cincinnati Reds, LLC (the "Reds"), Cleveland Guardians Baseball Company, LLC (the "Guardians"), Kansas City Royals Baseball Club, LLC (the "Royals"), Marlins Teamco LLC (the "Marlins"), and St. Louis Cardinals, LLC (the "Cardinals" and each of the Angels, Reds, Guardians, Royals, Marlins and Cardinals, together with the Signatory Clubs, the "Clubs"). As of May 1, 2024, not one of the millions of fans of the Angels, Braves, Reds, Guardians, Tigers, Royals, Marlins, Brewers, Twins, Rangers, Rays and Cardinals who are Comcast subscribers are able to watch the local games of those Clubs through their current pay television service.

2. Unless Comcast and the Debtors can come to a new agreement, it is highly likely that the loss of carriage of the Debtors' broadcasts by Comcast, and the resulting loss of licensing fees from Comcast, will render the Plan unconfirmable, thereby wasting time and estate resources to the detriment of MLB, the Signatory Clubs and other interested parties. At a minimum, these developments amplify concerns about the Debtors' ability to demonstrate that the

confirmation of their potential plan of reorganization is not likely to be followed by further reorganization or liquidation. Accordingly, MLB and the Signatory Clubs respectfully submit that the Debtors should address at the Status Conference the significant issues raised by their loss of distribution by Comcast and the related uncertainty regarding Plan confirmation.

## Background

3. As recently as early January 2024, the Debtors' public game plan was to operate through the end of the 2024 MLB season and then liquidate in an orderly fashion. While liquidation was not a preferred outcome, this plan at least provided assurances (a) to MLB fans (as well as National Basketball Association ("NBA") and National Hockey League ("NHL") fans) that they would be able to watch their teams' games this season, and (b) to each of the leagues and their clubs that the clubs would be paid through the conclusion of their respective seasons.

4. However, in mid-January 2024, the Debtors suddenly announced a pivot to a plan of reorganization. This pivot was based on one concrete positive development and several aspirational positive developments. The concrete development was a litigation settlement pursuant to which Sinclair Broadcasting, the Debtors' ultimate equity owner, will pay the Debtors nearly $500 million. The Debtors' aspirational positive developments were all highly conditional—a potential plan of reorganization (the "Plan") premised on a restructuring support agreement (the "RSA") with certain of the Debtors' creditors that could result in the investment of substantial funds on confirmation, a debtor in possession financing facility (the "DIP Loan") provided by those creditors that would provide short-term liquidity at substantial cost, and a potential debt investment by Amazon.com Services LLC (the "Amazon Investment") that would, if implemented, include an operational relationship and outlet for the Debtors' direct to consumer offerings.

5. The Debtors have made only partial progress in effectuating their pivot. While the DIP Loan has been funded to provide short-term liquidity, it is very expensive and has created enormous liability for the Debtors. At the same time, the Plan, the RSA and the Amazon Investment are still dependent on, among other things: (1) the Debtors reaching satisfactory go forward arrangements with each of their three largest distributors—Comcast, DirecTV LLC ("DirecTV") and Charter Communications ("Charter" and together with DirecTV and Comcast, the "Key Distributors") and (2) the Debtors renewing their telecast rights agreements with NBA and NHL clubs to align with the economics they have assumed in the revenue forecasts underlying the Plan.

6. As recently as March 2024, the Debtors were operating under short-term contract extensions with their Key Distributors while they continued to negotiate longer-term agreements. In April 2024, the Debtors announced that they reached a multi-year renewal of their distribution agreement with Charter and, in May 2024, the Debtors announced a renewal with DirecTV. The Debtors were, however, unable to reach an agreement with Comcast regarding continued carriage and on May 1, 2024, droves of Comcast subscribers lost access to the Debtors' regional networks. The Debtors have made no filings with the Court regarding this material development or its implications on the Debtors' liquidity, Plan or confirmation timeline.

### Implications of Loss of Carriage

7. Based on the Debtors' own filings, payments from the Key Distributors represent approximately 81% of the Debtors' revenue. *See Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* [Dkt. No. 1983-1] (the "Disclosure Statement"). While the revenue generated from each of these Key Distributors is clearly vital to the Debtors' short- and long-term viability, to date, the Debtors have yet to demonstrate that those relationships are

stable.[2] To the contrary, the Debtors failed to reach a renewal agreement with Comcast before expiry of the term and have consequently lost a key driver of top-line financial performance, as well as a critical partner in their distribution network. Weeks have passed with no indication by the Debtors that an agreement is forthcoming or even possible with Comcast to restore distribution of their broadcasts. While the Debtors have announced renewal of their carriage agreements with Charter and DirecTV, they have not disclosed material terms and conditions of those renewals, and it is therefore unclear whether those agreements are adequate to support confirmation of the Plan. Further, the Debtors have made no announcement and provided no information that would indicate that they have been able to reach agreements to renew on their assumed economics with NBA or NHL clubs, which makes their future financial viability even less certain. The Debtors have, thus far, provided little to no information in their Disclosure Statement about how these contingencies will be resolved—and on what economic terms and conditions—and yet the Debtors have a confirmation hearing scheduled for June 18, 2024, with objections due by May 22, 2024. Given the need for considerable additional information, including the information sought by the discovery requests which MLB and the Signatory Clubs have already served on the Debtors, and for resolution of these material contingencies, it is difficult to imagine how confirmation can proceed on the current schedule.

8. Because the Debtors failed to reach an agreement to renew carriage with Comcast, because their networks went dark for Comcast subscribers and because the Debtors do not yet have agreements with the NBA or NHL, these chapter 11 cases now hang by the thinnest

---

[2] *See* Disclosure Statement ("The Debtors' ability to generate revenues is dependent upon the Debtors' ability to maintain and renew their agreements with Distributors.") *See also Debtors' Emergency Motion for Entry of an Order Authorizing Assumption of Directv Agreements, as Amended* [Dkt. No. 2040] (Debtors state that revenue generated from continued carriage with DirecTV, a Key Distributor along with Comcast and Charter, "is a crucial component of the Debtors' go-forward business plan").

of threads. Economically rational agreements with the Key Distributors are the lynchpins of the Debtors' reorganization. The failure to reach one such agreement—and, as a result, the abrupt loss of carriage of Debtors' networks on Comcast—and the lack of certain material information regarding the agreements reached with Charter and DirecTV raises fundamental questions about the viability of the Plan overall that must be answered immediately. By way of example,

- How are the Debtors' revenue streams impacted by the loss of Comcast payments?
- How are the Debtors' revenue forecasts (which were already projecting revenues to decline) impacted by the loss of Comcast revenue?
- When will the Debtors report their updated revenue forecasts to MLB and the Clubs (as required under the adequate assurance package approved by the Court)?
- Has the loss of Comcast revenue put the DIP Loan into default?
- Will the ongoing loss of Comcast revenue put the DIP Loan into default in the future, and, if so, when?
- How is the RSA impacted by the loss of Comcast carriage and related loss of revenue?
- How is the Amazon Investment impacted by the loss of Comcast carriage and related loss of revenue?
- Does the loss of Comcast carriage and related loss of revenue have any impact on the renewals announced with Charter and DirecTV, and, if so, how?
- With the loss of Comcast carriage and related loss of revenue, how can the Debtors satisfy the requirements of Section 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), including Section

1129(a)(11) of the Bankruptcy Code, which requires that the Debtors demonstrate that "confirmation of the [Plan] is not likely to be followed by the liquidation or the need for further reorganization" of the Debtors or their successors. 11 U.S.C. § 1129(a)(11).

- What is the current status of discussions with the NBA and NHL?
- What are the material financial terms of any new or revised agreements with the NBA and NHL and what are the resulting financial implications for distribution revenues and the Debtors' financial expectations?

MLB and the Signatory Clubs need answers to these questions to determine whether the Debtors can continue to perform under applicable telecast rights agreements. The Court needs answers to these questions to address feasibility of the Plan.

9. Beyond its impact on the broader bankruptcy process, the Debtors' failure to reach an agreement to renew with Comcast presents a critically time-sensitive issue for MLB and the Clubs. The 2024 MLB season is in its second month and now many MLB fans have lost access to broadcasts of their favorite Clubs' games because the Debtors were unable to reach agreement to renew with one of their Key Distributors. Already fans of the affected Clubs who subscribe to Comcast have likely missed being able to watch memorable, exciting and historic performances and games. For example, these fans have missed:

- Chris Sale's nine-strikeout performance (Braves), and Tarik Skubal (Tigers) striking out a career-high 12 batters;
- Elly De La Cruz (Reds) leading MLB in stolen bases and stealing two bases each game for three-straight games;

- José Ramírez (Guardians) hitting a go-ahead home run to surpass Larry Doby for most go-ahead homers in club history;

- The Royals reversing their struggles from 2023, playing terrific baseball and jockeying for their division lead;

- 12-year veteran Kevin Pillar's (Angels) two-home run, career-high six RBIs game;

- A Marlins' walk-off victory in a game during which Marlins' pitchers combined for 16 strikeouts;

- Willy Adames (Brewers) hitting two home runs to record at least four RBIs in a second straight game (marking the 11th occurrence in franchise history and the first by a shortstop);

- Sonny Gray (Cardinals) pitching 7 scoreless innings in a shutout victory;

- A walk-off triple by Jonny DeLuca in a game during which José Caballero stole four bases and scored three runs (Rays) to complete a three-game sweep;

- José Leclerc (Rangers) setting the record for most career strikeouts by a Rangers reliever in club history; and

- The Twins extending their winning streak to 12 games (tied for second longest in club history).

Fans who watch local game telecasts only through Comcast missed all of this, and more, in the period since May 1. On each additional day that the Debtors' broadcasts stay dark on Comcast, fans miss much more. As these meaningful examples demonstrate, MLB, the Clubs and baseball fans have been immediately and irreparably harmed by the Debtors' failure to maintain their

carriage agreement with Comcast, and this harm cannot be redressed simply with monetary damages.

10. In addition, the failure to negotiate a carriage renewal with Comcast may present significant additional problems for MLB and the Clubs as the season continues. Without incoming revenue from Comcast, the Debtors (along with their non-debtor affiliates) face a substantially increased risk of shutting down altogether. If this were to happen, MLB and the Clubs would once again find themselves in the untenable situation of having to address the failures of the Debtors, likely with little or no advance notice. MLB, the San Diego Padres, and the Arizona Diamondbacks were forced to scramble to implement alternative broadcasting arrangements when the Debtors suddenly dropped broadcasts of those clubs' games during the 2023 MLB season. The Debtors' loss of carriage on Comcast just over a month into the 2024 MLB season has required MLB again to exert considerable time, effort and expense in exploration of all available alternatives to protect its fans from being deprived of Club game broadcasts. The Debtors should not be permitted to stumble through the restructuring process, inflicting substantial injury upon fans who have lost broadcast access without warning while simultaneously subjecting multiple sports leagues and dozens of teams to significant financial risk.

## Conclusion

11. The issues raised above bear heavily on the resolution of these chapter 11 cases. MLB and the Signatory Clubs therefore respectfully submit that these issues should be addressed as soon as possible. Indeed, it is hard to envision how the loss of Comcast carriage would not have a massively adverse impact on the Debtors' revenue, the RSA and/or the DIP Loan, all of which are critical components of the Debtors' Plan, for which a confirmation hearing is fast approaching. The Debtors once again face a very high risk that they will not emerge from these chapter 11 cases as a going concern. MLB and the Signatory Clubs, in an effort to protect the

interests of all Clubs, cannot stand by and wait while their fan base suffers. In light of the exigent circumstances—most particularly, the fact that millions of baseball fans in a dozen markets have already lost access to their favorite Clubs' broadcasts—these issues are ripe for consideration by the Court at the Status Conference.

### Reservation of Rights

12. MLB and the Signatory Clubs submit this Statement without prejudice to, and with full express reservation of, the rights of MLB and the Signatory Clubs to supplement and amend this Statement prior to the Status Conference. MLB and the Signatory Clubs reserve the right to file any objection to confirmation of the Plan on the grounds described in this Statement or any other grounds not incorporated herein.[3]

---

[3] No Club will be taking any action inconsistent with any applicable telecast rights agreement amendments.

Dated: May 14, 2024
       Houston, Texas

**BRACEWELL LLP**

*/s/ William A. (Trey) Wood III*
William A. (Trey) Wood III
(Texas Bar No. 21916050)
711 Louisiana St., Suite 2300
Houston, Texas 77002
Telephone: (713) 221-1166
Facsimile: (713) 221-1212
E-mail: trey.wood@bracewell.com

Mark Dendinger (admitted *pro hac vice*)
CityPlace I, 34th Floor, 185 Asylum Street
Hartford, Connecticut 06103
Telephone: (860) 256-8541
Facsimile: (800) 404-3970
E-mail: mark.dendinger@bracewell.com

-and-

**SULLIVAN & CROMWELL LLP**
James L. Bromley (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: bromleyj@sullcrom.com
          kranzleya@sullcrom.com

Counsel for Office of the Commissioner of Baseball d/b/a Major League Baseball
Atlanta National League Baseball Club, LLC
Milwaukee Brewers Baseball Club, L.P.
Minnesota Twins, LLC
Detroit Tigers, Inc.
Rays Baseball Club, LLC

**WHITE & CASE LLP**

*/s/ Charles Koster*
Thomas E Lauria (Texas Bar No. 11998025)
Laura Femino (admitted pro hac vice)
Samuel Kava (admitted pro hac vice)
200 South Biscayne Blvd., Suite 4900
Miami, Florida
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: tlauria@whitecase.com
　　　　laura.femino@whitecase.com
　　　　sam.kava@whitecase.com

Glenn M. Kurtz (admitted pro hac vice)
Harrison Denman (admitted pro hac vice)
Camille M. Shepherd (admitted pro hac vice)
Elizabeth C. Stainton (admitted pro hac vice)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: gkurtz@whitecase.com
　　　　harrison.denman@whitecase.com
　　　　camille.shepherd@whitecase.com
　　　　elizabeth.stainton@whitecase.com

Charles Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
Email: charles.koster@whitecase.com


Counsel for:
Rangers Baseball Express LLC

-13-

**Certificate of Service**

I certify that on May 14, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                    */s/ William A. (Trey) Wood III*
                                                    William A. (Trey) Wood III