**Exhibit B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | Case No. 23-90116 (CML) |
| Debtors. | (Jointly Administered) |

**MAJOR LEAGUE BASEBALL AND CERTAIN MAJOR LEAGUE BASEBALL CLUBS FIRST SET OF INTERROGATORIES**

Pursuant to rules 2004 and 7033 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 33 of the Federal Rules of Civil Procedure (the "Civil Rules"), Atlanta National League Baseball Club, LLC (the "Braves"), Detroit Tigers, Inc. (the "Tigers"), Milwaukee Brewers Baseball Club, L.P. (the "Brewers"), Minnesota Twins, LLC (the "Twins"), Rangers Baseball Express LLC (the "Rangers") and Rays Baseball Club, LLC (the "Rays" and each of the Braves, Tigers, Brewers, Twins, Rangers and Rays, with certain of their affiliates, a "Club" and collectively, the "Clubs") and the Office of the Commissioner of Baseball d/b/a Major League Baseball ("MLB"), by and through their undersigned counsel, in connection with confirmation of the *Debtor's Joint Chapter 11 Plan of Reorganization* (Dkt. No. 1982) (as may be amended, modified, or supplemented from time to time, the "Plan"), hereby request that Diamond Sports Group, LLC and its affiliated debtors and debtors-in-possession (the "Debtors") provide written responses to the interrogatories herein (the "Interrogatories") to Sullivan & Cromwell LLP, Attention: James L. Bromley (bromleyj@sullcrom.com) and Alexa J. Kranzley

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

(kranzleya@sullcrom.com), no later than 5:00 p.m. EST on May 30, 2024, or by such other time as the parties shall agree.

MLB and the Clubs reserve all rights regarding the subject matter of the foregoing, and to amend, supplement and/or modify the interrogatories herein.

## Definitions

1. Each reference to a "Person": (i) shall be deemed to include that Person's agents, attorneys, and any other Person who acted on that Person's behalf; and (ii) with respect to entities, shall be deemed to include each and all of its subsidiaries, divisions, affiliates, predecessors and successors, and with respect to each of such entities, its officers, directors, shareholders, employees, members, partners, limited partners, representatives, agents, accountants, attorneys, and any other person who acted on its behalf.

2. References to the singular shall include the plural and references to the plural shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive; and the present tense shall include the past tense and the past tense shall include the present tense.

3. Defined terms shall have the meanings ascribed to them herein, whether or not capitalized.

4. "Any", "all", and "each" shall be construed broadly, and shall mean each, any, and all as necessary to bring within the scope of the Interrogatories all responses that otherwise could be construed to be outside of its scope.

5. "Amazon" means Amazon.com Services LLC and its affiliates.

6. "Amazon Commercial Arrangement" means that certain commercial arrangement with Amazon, as may be amended, modified or supplemented from time to time,

pursuant to which Amazon Prime Video will become the Debtors' primary partner through which customers will be able to purchase direct-to-consumer access to stream the Debtors' local sports programming.

7. "Amazon Exit Financing" means Amazon's commitment to provide $115 million in exit financing through the issuance of Convertible B Exit Notes.

8. "Charter" means Charter Communications, Inc., together with its affiliates.

9. "Comcast" means Comcast Corporation, together with its affiliates.

10. "Cox" means Cox Communications, Inc., together with its affiliates.

11. "DIP Credit Agreement" means that certain subordinated secured super-priority term loan debtor-in-possession credit agreement, as may be amended, modified or supplemented from time to time, among Diamond Sports Group, LLC, the lenders party thereto, and Alter Domus (US) LLC, as administrative agent and as collateral agent (Dkt. No. 1695-1).

12. "DirecTV" means DIRECTV, LLC, together with its affiliates.

13. "Distributor" means (i) any multichannel video programming distributor, including but not limited to, DirecTV, Charter, Cox, and Comcast, (ii) any virtual multichannel video programming distributors, including but not limited to DIRECTV STREAM and FuboTV, and (iii) direct-to-consumer distributors, including but not limited to Bally Sports+ and Amazon.com Services LLC through Amazon Prime Video.

14. "Financial Projections" means the financial projections, as may be amended, modified or supplemented from time to time, included in Exhibit D of the Disclosure Statement for the Debtor's Joint Chapter 11 Plan of Reorganization (Dkt No. 1972-1).

15. "Identify" means:

3

      a.    When used with respect to an entity, to state its full legal name and address;

      b.    When used in reference to any act, occurrence, communication, occasion, meeting, transaction, or conduct, to state its location, date, the persons participating, present or involved, and the substance of any discussion which took place.

16.    "RSA" means that certain Amended and Restated Restructuring Support Agreement, as may be amended, modified or supplemented from time to time, by and among the Debtors and the other parties thereto (Dkt No. 1829-1).

17.    "You" or "Your" means the Debtors, and all of their employees, representatives, agents, attorneys, advisors and any other entities or Persons acting on their behalf.

18.    These definitions are provided only for the purposes of the Interrogatories, and MLB and/or the Clubs reserve the right to modify these definitions or use different definitions for any other purpose.

## Instructions

1.    Pursuant to Bankruptcy Rule 7026 and Civil Rule 26(e), these Interrogatories shall be continuing and responses shall be supplemented when necessary to reflect events occurring and information becoming available subsequent to the serving of Your initial response.

2.    In the event You object to any Interrogatory, Definition, or Instruction, You should: (i) clearly indicate to which part or portion of the Interrogatory, Definition, or Instruction the objection is directed; (ii) state the grounds for the objection; (iii) clearly indicate

whether any information has been withheld based upon the objection; and (iv) provide all information to which the objection is not made.

3. If You claim that any of the Interrogatories call for information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or protection, set forth with specificity the grounds upon which You rely, so as to permit the Court to determine the legal sufficiency of Your objection, and provide the most responsive information You are willing to provide without a Court Order.

4. If You claim that any of the Interrogatories call for information that cannot be disclosed because it is subject to a confidentiality obligation between You and a third party, set forth with specificity the grounds upon which You rely, so as to permit the Court to determine the legal sufficiency of Your objection, including by (i) identifying the relevant agreement, including its name, date, and all parties thereto, and (ii) providing the specific terms of the relevant confidentiality provision, and provide the most responsive information You are willing to provide without a Court Order.

5. Answer each of the Interrogatories to the fullest extent possible, specifying Your knowledge and Your inability to answer the remainder, and state whatever information or knowledge You may have concerning the unanswered portions of each Interrogatory. If You are unable to answer any of the following Interrogatories fully and completely after exercising due diligence to secure the information necessary to make full and complete answers, so state.

6. No part of an Interrogatory shall be left unanswered merely because an objection is interposed to another part of the Interrogatory.

7. In no event is any answer to be left blank. If the answer to an Interrogatory is "none", "unknown", or "not applicable", such statement should be written in the answer.

5

Interrogatories

1. Identify the Distributors with which You currently have a distribution agreement with a term that exceeds one year from the date hereof and the date on which each such distribution agreement is set to expire or otherwise terminate.

2. Identify the Distributors with which You currently have a distribution agreement with a term that expires or otherwise terminates in less than one year from the date hereof and the date on which each such distribution agreement is set to expire or otherwise terminate.

3. Identify any assumptions underlying Your Financial Projections that differ from the actual terms of the distribution agreements that You currently have with the Distributors.

4. Identify the Distributors with which You previously had a distribution agreement but for which the term of the distribution agreement has expired or otherwise terminated in the past year.

5. Identify the percentage of Your revenue for each of the last five years that was generated from the distribution agreement with Comcast before the term of that distribution agreement expired on April 30, 2024.

6. Identify the percentage of Your revenue for each year of Your Financial Projections that was projected to be generated from an assumed or potential distribution agreement with Comcast.

7. Identify and describe in detail the current status of Your negotiations with Comcast for a new distribution agreement, including (i) the material terms agreed upon, (ii) the material terms not yet agreed upon, (iii) the dates that You provided proposed term sheets (or otherwise proposed or responded to the terms of a prospective agreement) to Comcast, and (iv)

the dates that Comcast provided proposed term sheets (or otherwise proposed or responded to the terms of a prospective agreement) to You.

8. State whether Comcast has requested that the Debtors' regional sports networks be moved from a more highly penetrated level of service to a less highly penetrated level of service in the cable packages that Comcast offers as part of Your negotiations for a new distribution agreement and describe the financial impact such a change would have on Your Financial Projections, including with respect to Your projected revenues.

9. State whether Your distribution agreements with Charter, Cox or DIRECTV contain "most favored nation" provisions that could be triggered by the terms discussed or exchanged in Your negotiations with Comcast.

10. Identify and describe in detail the impact, including the impact of any "most favored nation" provisions that could be triggered, on Your Financial Projections, including with respect to Your projected revenues and monthly ending cash balance, if You enter into a distribution agreement with Comcast on the terms most recently proposed by Comcast.

11. State the basis and reasoning for Your belief, as expressed during the Status Conference with the Court in the above-captioned matter on May 15, 2024, that You will be able to successfully enter into a new distribution agreement with Comcast.

12. Identify and describe in detail the impact on Your Financial Projections, including with respect to Your projected revenues and monthly ending cash balance, if You are unable to enter into a distribution agreement with Comcast.

13. Identify and describe in detail the impact on Your operations or revenues of the expiry of the term of the distribution agreement with Comcast on April 30, 2024 and corresponding loss of carriage.

14. State whether the failure to enter into a distribution agreement with Comcast will result in a default under the DIP Credit Agreement.

15. State whether the failure to enter into a distribution agreement with Comcast will result in a default under the RSA.

16. State whether the failure to enter into a distribution agreement with Comcast will result in a default or termination of the commitment under the Amazon Exit Financing or Amazon Commercial Arrangement or any formal or informal agreements between You and Amazon related thereto.

17. State whether the failure to enter into a distribution agreement with Comcast will result in a failure to meet the condition precedent of the Plan requiring a continuous and valid DIP Credit Agreement.

18. State whether the failure to enter into a distribution agreement with Comcast will result in a failure to meet the condition precedent of the Plan requiring a continuous and valid RSA.

19. State whether the failure to enter into a distribution agreement with Comcast will result in a failure to meet the condition precedent of the Plan requiring the issuance of the Amazon Exit Financing.

20. State the basis and reasoning for Your belief that, without entering into a distribution agreement with Comcast, You can successfully demonstrate that "confirmation of the [Plan] is not likely to be followed by liquidation or the need for further reorganization" of the Debtors or their successors.  11 U.S.C. § 1129(a)(11).

| | |
|---|---|
| Dated: May 23, 2024<br>Houston, Texas | **BRACEWELL LLP**<br><br>*/s/ William A. (Trey) Wood III*<br>William A. (Trey) Wood III<br>(Texas Bar No. 21916050)<br>711 Louisiana St., Suite 2300<br>Houston, Texas 77002<br>Telephone: (713) 221-1166<br>Facsimile: (713) 221-1212<br>E-mail: trey.wood@bracewell.com<br><br>Mark Dendinger (admitted *pro hac vice*)<br>CityPlace I, 34th Floor, 185 Asylum Street<br>Hartford, Connecticut 06103<br>Telephone: (860) 256-8541<br>Facsimile: (800) 404-3970<br>E-mail: mark.dendinger@bracewell.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>James L. Bromley (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: bromleyj@sullcrom.com<br>         kranzleya@sullcrom.com<br><br>Counsel for Office of the Commissioner of Baseball d/b/a/ Major League Baseball<br>Atlanta National League Baseball Club, LLC<br>Milwaukee Brewers Baseball Club, L.P.<br>Minnesota Twins, LLC<br>Detroit Tigers, Inc.<br>Rays Baseball Club, LLC |

**White & Case LLP**

*/s/ Thomas E Lauria*
Thomas E Lauria (Texas Bar No. 11998025)
Laura Femino (admitted *pro hac vice*)
Samuel Kava (admitted *pro hac vice*)
200 South Biscayne Blvd., Suite 4900
Miami, Florida
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
E-mail: tlauria@whitecase.com
      laura.femino@whitecase.com
      sam.kava@whitecase.com

Glenn M. Kurtz (admitted *pro hac vice*)
Harrison Denman (admitted *pro hac vice*)
Camille M. Shepherd (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
E-mail: gkurtz@whitecase.com
      harrison.denman@whitecase.com
      camille.shepherd@whitecase.com

Charles Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
Email: charles.koster@whitecase.com

Counsel for:
Rangers Baseball Express LLC