# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

June 17, 2024

**VIA ECF**

The Honorable Christopher M. Lopez
United States Bankruptcy Court for the Southern District of Texas
Courtroom 401
515 Rusk
Houston, TX 77002

Re: Diamond Sports Group, LLC., *et al*., Case No. 23-90116 (CML)

Dear Judge Lopez:

We represent Cox Communications, Inc. ("Cox") and write regarding Diamond Sports Group, LLC, *et. al.*'s (the "Debtors") Emergency Motion for Discovery Conference, filed on June 14, 2024 (ECF No. 2175). Cox is a multichannel video programming distributor that has entered into a series of distribution contracts with the Debtors. In Plan[1] discovery, the Office of the Commissioner of Baseball d/b/a Major League Baseball, the National Hockey League, and the National Basketball Association (collectively, the "Leagues") have requested that the Debtors disclose confidential and highly competitively-sensitive information regarding the Debtors' contracts with Cox and certain other distributors. Cox has worked with the Debtors and the other Distributors to propose a scope of production that provides the information that the Leagues need to assess the feasibility of the Debtors' financial projections without impairing future competition. As of this filing, the Leagues have not substantively responded to that proposal. I write briefly to preview Cox's position on the matter in advance of tomorrow's Emergency Discovery Conference.

Cox understands that the Leagues sought the discovery at issue in order to assess the feasibility of the financial projections that the Debtors offered in support of the Plan, and Cox offered a solution tailored to that purpose. Specifically, Cox understands that the Leagues question

---

[1] Capitalized terms not defined in this letter have the meanings given to them in the Debtors' Emergency Motion for Discovery Conference (ECF No. 2175).

whether the Debtors' projections are realistic compared to their actual historical performance. The Leagues issued a series of sweeping discovery requests that seek the terms of each contract each Distributor entered into with the Debtors.  *See* the Debtors' Emergency Motion for Discovery Conference Exhibit A, Request Nos. 9–12 (ECF No. 2175-1).  But that sort of contract-by-contract and market-by-market information constitutes trade secrets that Cox guards closely, and its disclosure to the Leagues—each of whom may be direct or indirect contract counterparties in future contract negotiations—risks significant competitive harm to Cox.  *See Lackey v. Dement*, 2019 WL 3238896, at *7 (W.D. Tex. July 18, 2019) (holding that trade secret discovery is only permitted when the production is both material and necessary to the litigation); *see also Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) (stating that "[c]ourts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor," and that "parties' status as competitors [is] a factor in denying discovery of confidential information") (quoting *Everco Indus. v. O.E.M. Prods. Co.*, 362 F.Supp. 204, 206 (N.D.Ill. 1973)).

The decision in *Lackey* is instructive.  There, the Court found that the billing practices, pricing arrangements, and payments terms of a non-party were confidential trade secrets, as the contracts reflecting this information contained confidentiality provisions, and the information "'derives independent economic benefit from not being generally known to, and not being readily ascertainable' to others and the disclosure thereof could result in a significant competitive disadvantage when negotiating future contracts." 2019 WL 3238896, at *6.  The Court explained that the requested discovery was not proportional to the needs of the case, as it "place[d] a burden on the third party to provide information that only tangentially relates to an issue in the case." *Id.* at *5.  The Court ultimately ruled that the Defendants in the case were not entitled to discovery of the non-party's confidential trade secrets, regardless of whether the court entered a protective order. *Id.* at *7.

Last Thursday (June 13, 2024), Cox made a proposal to the Leagues that was designed to provide the Leagues with the information necessary to test the Debtors' projections without impairing future competition or unnecessarily disclosing confidential information.  Specifically, Cox proposed that the Debtors produce:

- Historical and projected revenue from all relevant distributors on an aggregate basis, per below;
    - For historical revenue:  Past 12 months, and excluding Arizona and San Diego;[2]
    - For both historical and projected revenue:  Aggregated across both markets and distributors;
- Projections in aggregate (all distributors) showing both (1) if [most-favored nations provisions ("MFNs")] are triggered; and (2) if MFNs are not triggered.

(Exhibit A.)  Cox explained: "Given the competitive sensitivity of the information and its impact on future business negotiations, Cox believes it essential that the information be aggregated across providers and markets." (*Id.*)  However, Cox added that if the Leagues "believe [they] need additional information that can be provided on that basis, please let us know" and "[w]e

---

[2] Arizona and San Diego are excluded because Cox understands that the Debtors no longer operate in those regions.

will do our best to work with you." (*Id.*)  This information would enable the Leagues to test the Debtors' projections by comparing them to the Debtors' actual performance.

Cox has received no substantive response to its proposal.  The Distributors and the Leagues spoke last Thursday, after Cox made the proposal quoted above.  With respect to the manner in which Cox proposed the historical and projected revenue be provided, the Leagues raised no substantive concerns, but indicated that they would talk with their financial advisor and let Cox know whether the proposal provides the information that the Leagues believe necessary to test the Debtors' projections.  As of this writing, Cox has not heard back.

With respect to the MFNs, the Leagues raised generalized complaints about the information Cox proposed be provided.  We understand that the MLB wants (in anonymized form) the text of each MFN provision from each of the Debtors' contracts with each of the Distributors.  But Cox does not believe that information is necessary to test the Debtors' financial projections.  The existing deals are done, and if they triggered any MFNs then that should be baked into the Debtors' projections.  As for future agreements, the Debtors should not be expected to trigger an MFN unless doing so is profit maximizing.  On a call last Thursday, counsel to the MLB countered that "nothing Diamond has ever done has been profit maximizing."  Cox disagrees that assuming that the Debtors will act in a value-destroying manner is the appropriate lens through which to test the Debtors' financial projections, and so disagrees that parsing the terms of individual MFNs to guess what could happen in a series of hypothetical, value-destroying futures that may never come to pass is relevant to testing the reasonableness of the Debtors' projections.  In any event, Cox's proposal *does* let the Leagues test the impact of the Debtors triggering MFNs; it would quantify the revenue hit of triggering such MFNs and would therefore provide the Leagues with an upper range of the potential outcomes.

           Respectfully submitted,

           /s/ *Stuart R. Lombardi*
           Stuart R. Lombardi
           Willkie Farr & Gallagher LLP
           787 Seventh Avenue
           New York, NY 10019
           slombardi@willkie.com
           Tel: (212) 728-8000

           *Attorneys for Cox Communications, Inc.*