# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

**125 Broad Street**
**New York, New York 10004-2498**

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

June 20, 2024

<u>Via ECF</u>

The Honorable Christopher M. Lopez,
United States Bankruptcy Court for the Southern District of Texas,
Courtroom 401
515 Rusk Street
Houston, Texas 77002

Re:  *Diamond Sports Group, LLC., et al.,* Case No. 23-90116 (CML)

Dear Judge Lopez:

      We write on behalf of the Office of the Commissioner of Baseball ("<u>MLB</u>") and certain constituent major league baseball clubs (the "<u>Clubs</u>") with respect to the ongoing discovery disputes with Diamond Sports Group, LLC and its affiliated debtors and debtors-in-possession (the "<u>Debtors</u>") in connection with confirmation of the *Debtor's Joint Chapter 11 Plan of Reorganization* (Dkt. No. 1982) (as may be amended, modified, or supplemented from time to time, the "<u>Plan</u>").

      In particular, we write regarding critical information related to the Debtors' distribution arrangements with certain multichannel video programming distributors and virtual multichannel video programming distributors (collectively, the "<u>Distributors</u>"), including, but not limited to Charter Communications, Inc., Cox Communications, Inc., and DIRECTV, LLC.

      As the Court is well aware, over 80% of the Debtors' revenue is generated from distributing their regional sports networks through the Distributors.  As such, understanding the terms and conditions of the distribution arrangements with the Distributors, including, without limitation, how amounts owed by the Distributors to the Debtors are calculated and the circumstances under which those amounts may increase or decrease (and the triggers for those changes), is essential to assessing the feasibility of the Debtors' Plan.  This information is required to determine whether the Debtors' Plan can be confirmed by the Court.

      The Debtors commenced these cases in March 2023 and, to date, have successfully avoided providing this Court or other interested parties to the proceeding with any substantive information regarding their relationships with the Distributors.  On May 9, 2024, we

The Honorable Christopher M. Lopez                                                                                           -2-

served document requests to the Debtors seeking, among other things, information about their distribution agreements with a date range from January 1, 2023 to present.

We and the Debtors' representatives met and conferred on May 13, May 17, May 29, June 3, June 6, and June 11, and reached agreement on almost all issues. But we have not reached agreement on the production of information relating to the distribution agreements. Although this information is unquestionably within their custody and control, the Debtors have referenced the confidentiality restrictions in the underlying distribution agreements as the basis for their objection to disclosure. Yet they have refused to even disclose the terms of those restrictions in order to evaluate their position. While they have not appeared in this contested matter, the Distributors have echoed these confidentiality concerns. Importantly, and as we have raised before this Court and with the Debtors and Distributors, confidentiality alone is not a bar to production. *See In re Trevino*, 564 B.R. 890, 903 (Bankr. S.D. Tex. 2017) (citing 8A Fed. Prac. & Proc. Civ. § 2043 (3d ed.)) (stating that "[i]t is well settled that there is no absolute privilege for trade secrets and similar confidential information; the protection afforded is that if the information sought is shown to be relevant and necessary, proper safeguards will attend disclosure.").

At the Debtors' request, we and representatives of the National Basketball Association, the National Hockey League, the Debtors and certain of the Distributors met collectively on June 13, 2024 to discuss the document requests served on the Debtors – not on the Distributors – and the confidentiality concerns raised by the Debtors and Distributors. Coming out of that meeting, the Distributors – not the Debtors – proposed that the Debtors produce only (i) 12 months of historical distribution revenues aggregated across both markets and Distributors, excluding Arizona and San Diego, and (ii) projected distribution revenues on the same aggregated basis in two different scenarios – if the "Most Favored Nations" clauses (the "MFN Clauses") are "triggered" and if the MFN Clauses are "not triggered." The Distributors refused to allow the Debtors to provide the language of any key contractual provisions, even on an anonymized basis or on a professionals' eyes only ("PEO") basis and subject to standard and appropriate confidentiality provisions, including, but not limited to, the MFN Clauses themselves or related provisions governing the application or interaction of the various MFN Clauses.

At the same time the Distributors have made such demands, it is worth noting that (i) no discovery has been sought from the Distributors, (ii) the Debtors have made no motion to quash the discovery requests concerning the distribution agreements and (iii) the Distributors have neither moved to intervene nor filed any pleading with the Court seeking any substantive relief. Instead, the Distributors, who have been observing these proceedings since the petition date, want the parties to accept their insufficient proposal and want the Court to adopt and impose it as an evidentiary rule in a contested matter in which they have not appeared.

The Distributors' proposal is wholly insufficient for MLB and the Clubs to diligence the key assumptions of the Debtors' business plan or to allow the Court to make substantive judgments regarding the feasibility of the Plan. This unwillingness to provide detail,

The Honorable Christopher M. Lopez                                                                                          -3-

even on the assumptions underlying the limited information they are willing to provide and even on a PEO basis, makes their proposal unworkable.  In order for MLB and the Clubs to accurately assess the Debtors' business plan, including the feasibility of the Plan, MLB and the Clubs must be able to fully evaluate the 'base case' that the Debtors hope to achieve.  Given the Debtors' business model and operating costs, even the smallest movement in Distributor revenues has a substantial impact on profitability and cash flows.  This makes it imperative that the parties be able to closely examine the downside risks of the Debtors' business plan.

   In this regard, outside representatives and advisors for MLB and the Clubs must be able to examine (i) the current terms that the Debtors have agreed to with each Distributor, (ii) the associated Distributor-level revenues that the Debtors project, and (iii) the specific terms of each Distributor's MFN Clauses, including any existing contractual provision that is or could be impacted by the application of an MFN Clause (or any related clause that would impact Debtors' revenues post-emergence).  With respect to the MFN Clauses, common sense dictates that the application of these MFN Clauses would impact a broad range of contractual terms, such that overall financial performance of the Debtors under each distribution agreement could change based on whether or not the clauses are triggered.  In order for MLB and the Clubs to assess the veracity of the Debtors' projections and whether or not the Plan is feasible, we need to know how and when such clauses might be triggered, the terms of other contractual provisions affected, and the impact on the Debtors' revenues if this were to occur.

   With respect to Distributor-level revenues, MLB and the Clubs simply cannot conduct the required scenario analyses of likely business outcomes if the Debtors provide access only to information about aggregate revenues projected to be generated under two broadly undefined scenarios.  Given the Debtors' significant customer concentration (the Distributors represent over 80% of the Debtors' linear revenues), and the bespoke nature of the distribution agreements, it's imperative that MLB and the Clubs have the necessary detail to probe the financial impact of likely business outcomes.  This level of detail is necessary to examine how revenues might be impacted by, for example, the loss of a Distributor or the triggering of an MFN Clause that applies to one or more Distributors.  This information is even more important in light of the May 1, 2023 conclusion of the Debtors' commercial relationship with Comcast Corporation ("Comcast"), which demonstrated the financial importance of each Distributor.  To our knowledge, the Debtors are still attempting to forge a deal with Comcast, and any deal struck will have implications for the other Distributors and their respective MFN Clauses.  Without more granular information, and a better understanding of the actual terms of the distribution agreements, MLB and the Clubs will be unable to challenge the Debtors' assertions, evaluate feasibility of the Plan or determine whether to object to Plan approval.  Limiting production to the information suggested by the Distributors simply is not workable.

   In an effort to resolve the ongoing discovery disputes, MLB and the Clubs sent the letter attached hereto as Exhibit A to the Debtors and Distributors, which outlines our

The Honorable Christopher M. Lopez                                                                 -4-

proposal for producing information related to the Distributor arrangements.[1]  Importantly, MLB and the Clubs are willing to treat the information as PEO to protect the commercial sensitivity of the requested information.  By providing only advisors to MLB and the Clubs with permission to review this critical information, and not sharing that information with the internal business representatives responsible for ongoing commercial negotiations, we believe that the Distributors' legitimate concerns will be resolved.

          Respectfully,

          /s/ *James L. Bromley*

          James L. Bromley

          *Counsel for MLB and certain Clubs*

---

[1] In response to this proposal, counsel for Cox Communications, Inc. responded with a counter proposal, attached hereto as Exhibit B.  This counter proposal both mischaracterizes the current situation and continues to seek to deny MLB and the Clubs the information needed to assess the viability of the Debtors go-forward business plan.