**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) | Case No. 23-90116 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | (Emergency Relief Requested) |
| | ) | |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING ENTRY INTO AND PERFORMANCE UNDER THE NBA TERM
SHEET; (II) AUTHORIZING ASSUMPTION OF CERTAIN NBA AGREEMENTS; (III)
APPROVING THE FORM OF ADEQUATE ASSURANCES TO NBA PARTIES; AND
(IV) GRANTING RELATED RELIEF**

---

**Emergency relief has been requested. Relief is requested not later than 2:00 p.m. (prevailing Central Time) on September 3, 2024.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on September 3, 2024, at 2:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez." Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

1.       The above-captioned debtors and debtors in possession (collectively, the

"<u>Debtors</u>") respectfully state as follows in support of this motion:

---

[1]       A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG.  The Debtors' service address for purposes of these chapter 11 cases is:  c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

**Relief Requested**

2.      By this motion, the Debtors seek entry of an order, substantially in the form attached hereto (the "Proposed Order"), (a) authorizing the Debtors to enter into and perform their obligations under a term sheet with NBAMV (as defined below) (including on behalf of certain National Basketball Association (the "NBA") teams) and certain of its affiliates, attached hereto as **Exhibit A** (the "NBA Term Sheet"), that modifies the terms of the Debtors' rights agreements with NBAMV, certain of its affiliates, and certain NBA teams, (b) authorizing the Debtors to assume the rights agreements (as modified by the NBA Term Sheet) and certain related ancillary agreements to which they are parties with the NBA, certain of its affiliates, and certain NBA teams, which agreements are listed on **Exhibit B** hereto, (c) approving the form of adequate assurances and protection to the NBA Parties (as defined below), (d) subject to a contemporaneous or subsequent amendment to the DIP Order, amending the DIP Order (as defined below), and (e) granting related relief.

**Preliminary Statement**

3.      The NBA Term Sheet is an illustration of the significant progress made by the Debtors as a result of tireless and continuing efforts to negotiate and secure go-forward relationships with the key commercial parties in these cases, including the Debtors' professional sports league and team partners, so that the Debtors can emerge from chapter 11 as a going-concern business.  The Debtors are optimistic that the results of these negotiations will provide the basis for a confirmable going-concern plan of reorganization, and the Debtors believe that the NBA Term Sheet represents a significant step towards achieving that goal.  The Debtors are contemporaneously filing a motion seeking approval of a similar arrangement with the National Hockey League and its teams.

4.     Pursuant to the NBA Term Sheet, the NBA Parties have agreed to certain modifications to their rights agreements.  The Debtors have agreed to operate under these modified agreements through at least the end of the 2024-2025 NBA season, irrespective of whether the Debtors confirm a going-concern plan of reorganization.  As assurances to the NBA Parties that the Debtors will perform their obligations under the NBA Term Sheet and the modified agreements, the NBA Term Sheet provides the NBA Parties with certain protections in the form of potential superpriority administrative expense claims against the Debtors and liens on certain of the Debtors' assets, as more particularly described in the Proposed Order.  Likewise, as a result of the continuance of the Debtors' operations through at least the end of the 2024-2025 NBA season and to obtain the support of the Debtors' first lien lenders, the Debtors have also agreed to a modification to the current DIP Order which would eliminate certain crediting of adequate protection interest payments, as more particularly described in the Proposed Order (which modification will be subject to any contemporaneous or subsequent amendment to the DIP Order).[2]

5.     If the Debtors ultimately confirm a going concern chapter 11 plan and comply with the terms of the NBA Term Sheet, then the modified rights agreements will continue in effect beyond the 2024-2025 NBA season, thus avoiding the need for further negotiations with the NBA Parties in the near-term to maintain ongoing business relationships and giving the Debtors and other parties in interest assurances regarding the Debtors' go-forward relationships with the NBA Parties.  But if the Debtors, in consultation with their stakeholders, determine to wind down the Debtors' business or fail to comply with the terms of the NBA Term Sheet, then all agreements with the NBA Parties will terminate automatically at the end of the 2024-2025 NBA season

---

[2]     Contemporaneous with the filing of this Motion, the Debtors are filing a motion to approve an amended DIP Order (which will include additional modifications).

(subject to earlier exercise by the NBA Parties of any remedies they may have), thus providing certainty to the NBA Parties by allowing them to transition operations at that time and minimize any potential disruption to fans.

6.      The NBA Term Sheet therefore strikes an optimal balance between providing the Debtors with a path forward and the optionality and flexibility needed to continue to pursue the best outcome for these chapter 11 cases, a confirmable going-concern plan for the long term, while providing the NBA Parties with assurances that, among other things, their games will be broadcast for the 2024-2025 NBA season and the clarity needed for their own business operations and planning beyond the 2024-2025 NBA season.

7.      The NBA Term Sheet and the relief requested herein enjoys the support of the Debtors' major creditor constituencies, including the members of the Crossholder Group (defined below), representing the "Required Lenders" under the Debtors' debtor-in-possession financing facility (the "DIP Facility").

8.      For these reasons, and as set forth more fully herein, the Debtors respectfully submit that entry into the NBA Term Sheet is a reasonable exercise of their business judgment and in the best interests of the Debtors' estates.  Accordingly, the Debtors request that the Court approve the Debtors' entry into the NBA Term Sheet, authorize the Debtors' assumption of the NBA Agreements, as modified by the NBA Term Sheet, and enter the Proposed Order providing the NBA Parties with the assurances contained therein.

**Jurisdiction and Venue**

9.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of*

4

*Texas*, dated May 24, 2012 (the "<u>Amended Standing Order</u>"). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

10.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11.     The bases for the relief requested herein are sections 105(a), 361, 362, 363(b), 364, 365, and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), Bankruptcy Rules 4001, 6004 and 6006, and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "<u>Local Rules</u>").

<u>**Background**</u>

**I.     Procedural Background**

12.     On March 14 and 15, 2023 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On March 15, 2023, the Court entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 27, 2023, the Office of the United States Trustee for the Southern District of Texas appointed an official committee of unsecured creditors. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## II.   The Debtors' Relationship With the NBA

### a.   The NBA Agreements

13.     The Debtors' regional sports networks ("RSNs") broadcast NBA games for 11 NBA teams in the RSNs' regional markets.[3]  The RSNs obtain their linear rights through separate telecast rights agreements between each individual NBA team and the respective RSN (the "NBA Telecast Rights Agreements").

14.     The RSNs obtain their direct-to-consumer ("DTC") rights (as well as additional digital and streaming rights) and the ability to distribute games in the teams' extended markets (i.e., a broader geographic footprint than the teams' home territory) through separate agreements between the NBA's media and licensing unit—NBA Media Ventures, LLC ("NBAMV")—and the respective RSN (the "Extended Market Agreements" or "EMAs").  After the conclusion of the 2020-2021 NBA season, when the EMAs were set to expire on their terms, Debtor Diamond Sports Group, LLC ("Diamond") and the applicable RSNs, on the one hand, and NBAMV, on the other hand, negotiated and entered into a Binding Term Sheet that became effective in January 2022 (the "2022 Agreement")

15.     The Debtors are also parties to certain related ancillary agreements with various NBA teams, including suite licenses and similar agreements (the "Ancillary Agreements," and together with the NBA Telecast Rights Agreements, EMAs, and the 2022 Agreement, the "NBA

---

[3]     Two non-debtor RSNs, Diamond Sports Kansas City, LLC and Diamond Sports Net Florida 2, LLC, which are operated and majority owned by the Debtors, broadcast the games of two additional NBA teams, the Indiana Pacers and the Orlando Magic (the "Non-Debtor NBA RSNs"), resulting in a total of 13 NBA teams presently in the Debtors' RSN portfolio. NBAMV, its affiliates, and the NBA teams that are counterparties to telecast rights agreements with the Debtors and the Non-Debtor NBA RSNs are referred to herein as the "NBA Parties."  As of the Petition Date, the Debtors also broadcast the games of the Phoenix Suns, but the Debtors' agreements relating to the Phoenix Suns expired on their terms during the course of these chapter 11 cases.  The Debtors have filed a motion to reject their Agreements with the Dallas Mavericks and New Orleans Pelicans concurrently herewith.

Agreements"). A list of the NBA Agreements to which the Debtors are parties is attached hereto as **Exhibit B**.

> **b. The NBA Term Sheet**

16.     Both before and after the Petition Date, the Debtors and the NBA Parties have engaged in extensive, constructive negotiations regarding their go-forward relationship. In or around November 2023, the Debtors began working on implementing the terms of an agreement with an ad hoc group of first lien lenders (the "First Lien Group"), certain other significant funded debt creditors, and the official committee of unsecured creditors (the UCC") that contemplated the orderly winding down of the Debtors' business [Docket No. 1342-1] (the "Cooperation Agreement"). In connection with the Cooperation Agreement, the Debtors and the NBA began negotiating the terms of an arrangement that would allow the Debtors to maximize value for stakeholders. Those negotiations culminated in a term sheet with NBAMV that contemplated the Debtors' continuing to broadcast NBA games only through the conclusion of the 2023-24 season [Docket No. 1344-1], which the Court approved on January 3, 2024 [Docket No. 1378].

17.     While pursuing the Cooperation Agreement and thereafter, the Debtors continued to explore restructuring alternatives that might allow reorganization of the business as a going concern. On January 16, 2024, the Debtors terminated the Cooperation Agreement and executed a new restructuring support agreement (as may be modified, amended, or supplemented from time to time, the "RSA") with an ad hoc group of creditors holding first lien, second lien, and unsecured debt claims (the "Crossholder Group"), the First Lien Group, and Amazon.com Services LLC ("Amazon") [Docket No. 1613] that contemplated such an outcome. The RSA was amended February 26, 2024, to reflect the terms of a comprehensive settlement with the UCC and resolving its objections to the proposed restructuring transactions [Docket No. 1829-1]. At that same time,

the Debtors' DIP Facility was approved by an order of this Court entered on February 26, 2024 [Docket No. 1834] (the "DIP Order").  On February 29, 2024, the Debtors filed their *Joint Chapter 11 Plan of Reorganization* [Docket No. 1845] (as may be modified, amended, or supplemented from time to time, the "Plan"), embodying the transactions contemplated by the RSA.

18.     The Plan, and any other going-concern plan that the Debtors may propose, is premised on the successful negotiation of continuing relationships with the Debtors' various partners, including the NBA and other professional sports leagues and teams, as well as the Debtors' distribution partners.  While the Debtors have had success in these endeavors to date, discussions remain ongoing, and the Debtors require additional time to pursue agreements and file an amended plan that will provide the best possible outcome for all stakeholders.  The NBA Term Sheet permits the Debtors to do that, while providing both the Debtors and the NBA Parties with protections in the event the Debtors are unable to confirm a going-concern plan.

19.     Key terms of the NBA Term Sheet include:[4]

a.   Beneficial modifications to the NBA Agreements.

b.   Continuation and/or extension of the modified NBA Agreements if the Debtors confirm a going-concern chapter 11 plan and otherwise comply with the terms and conditions of the NBA Term Sheet, thus eliminating the need for additional negotiations between the Debtors and the NBA Parties with respect to seasons beyond the 2024-2025 NBA season.

c.   Expiration of each NBA Agreement at the end of the 2024-2025 NBA season if the Debtors have not confirmed a going-concern chapter 11 plan or have failed to comply with the terms and conditions of the NBA Term Sheet, thus eliminating potential rejection damage claims (or administrative expense claims) for fees that would otherwise have been due under such agreements beyond the 2024-2025 NBA season.

---

[4]     The summary of the NBA Term Sheet in this motion is qualified in its entirety by the provisions of the NBA Term Sheet and all exhibits and schedules thereto.  To the extent anything in this motion is inconsistent with the NBA Term Sheet, the terms of the NBA Term Sheet shall control.

20.     In exchange for these modifications, the Debtors have agreed to assume all of the NBA Agreements (as modified by the NBA Term Sheet) and make all payments and continue to broadcast games thereunder through at least the conclusion of the 2024-2025 NBA season.  As assurances to the NBA Parties that the Debtors will perform their obligations under the NBA Term Sheet and the modified agreements, the NBA Term Sheet provides the NBA Parties with certain protections in the form of potential superpriority administrative expense claims against the Debtors and liens on the Debtors' assets (each subject to certain priorities), as more particularly described in the Proposed Order.  To compensate the Debtors' first lien lenders for any delay caused by the extension of the Debtors' operations, the Proposed Order makes a modification to the DIP Order to eliminate certain crediting of adequate interest payments (which modification will be subject to any contemporaneous or subsequent amendment to the DIP Order).

**Basis for Relief**

21.     Entry into the NBA Term Sheet and assumption of the NBA Agreements, as modified by the NBA Term Sheet, should be approved as a reasonable exercise of the Debtors' business judgment.

22.     With respect to the Debtors' entry into the NBA Term Sheet, section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing.  11 U.S.C. § 363(b)(1).  It is well established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so.  *See, e.g., ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using,

selling, or leasing the property outside the ordinary course of business.") (quoting *Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986)).

23.    "The business judgment standard in section 363 is flexible and encourages discretion." *In re ASARCO, L.L.C.*, 650 F.3d at 601. "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); *see also In re Idearc, Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009), *aff'd sub nom. Spencer Ad Hoc Equity Comm. v. Idearc, Inc., (In re Idearc, Inc.)*, 662 F.3d 315 (5th Cir. 2011) ("In the absence of a showing of bad faith or an abuse business of discretion, the debtor's business judgment will not be altered."); *Comm. of Asbestos-Related Litigants &/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

24.    With respect to assumption of the NBA Agreements, section 365(a) of the Bankruptcy Code authorizes a debtor in possession to assume or reject its executory contracts and unexpired leases, subject to the approval of the bankruptcy court. 11 U.S.C. § 365(a). Like transactions entered into pursuant to section 363 of the Bankruptcy Code, the decision to assume or reject an executory contract pursuant to section 365 is a matter within the "business judgment" of the debtor in possession. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Pisces Energy, LLC*, No. 09-36591, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound

10

business judgment.").  Upon a finding that a debtor exercised its sound business judgment in determining that assumption of an executory contract is in the best interests of its estate, a court should approve the assumption or rejection under section 365(a) of the Bankruptcy Code.  *See Richmond Leasing Co.*, 762 F.2d at 1309; *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").[5]

25.      Here, there can be no doubt that entry into the NBA Term Sheet and assumption of the NBA Agreements (as modified by the NBA Term Sheet) is a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors, their estates, and all stakeholders.  As described above, the NBA Term Sheet yields material benefits to the Debtors.  The NBA Term Sheet provides the Debtors with optionality at a critical moment in these chapter 11 cases.  If the Debtors confirm a plan allowing the business to continue as a going concern, the terms of NBA Agreements, as modified by the NBA Term Sheet, continue or are extended beyond the 2024-2025 NBA season on terms beneficial to the Debtors.  In the event that the Debtors ultimately determine that they must wind down their operations, the NBA Term Sheet provides that the NBA Agreements will expire automatically at the conclusion of the 2024-2025 NBA season, thus

---

[5]      The standard applicable to the Debtors' decision to grant adequate assurances to the NBA Parties pursuant to section 364 of the Bankruptcy Code is equally deferential and respects the Debtors' business judgment.  *See In re Estrada*, No. 16-80003-G3-11, 2016 WL 745536, at *3 (Bankr. S.D. Tex. Feb. 24, 2016) ("In determining whether to approve a motion to obtain credit, courts generally permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties."); *In re AMR Corp.*, 485 B.R. 279, 287 (Bankr. S.D.N.Y. 2013) ("In determining whether to approve a debtor's request under Section 364, a Court must examine whether the relief requested is an appropriate exercise of the debtor's business judgment."), *aff'd*, 730 F.3d 88 (2d Cir. 2013); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

reducing the potential for rejection damages claims by the NBA Parties.  This "toggle" mechanism provides the Debtors with the flexibility needed to continue to pursue the best outcome for these chapter 11 cases.

26.  In connection with the benefits obtained through the NBA Term Sheet, the Debtors have agreed to assume the NBA Agreements and to pay the amounts due and continue broadcasting games thereunder through the 2024-2025 NBA season.  The NBA Term Sheet further entitles the NBA Parties to the assurances and protections described above and contained in the Proposed Order.  Given the benefits and flexibility that the NBA Term Sheet otherwise provides to the Debtors, the Debtors believe that these provisions represent a reasonable compromise.

27.  The lenders under the Debtors' DIP Facility are the future owners of the Debtors' business in a reorganization scenario, and the Crossholder Group, representing the Required Lenders thereunder, is supportive of the agreements reflected in the NBA Term Sheet (including the grant of adequate assurance protections to the NBA Parties) as the Crossholder Group continues to work with the Debtors on the ultimate outcome for the chapter 11 cases.

28.  For these reasons, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested therein, including authorizing the Debtors' entry into and performance under the NBA Term Sheet and their assumption of the NBA Agreements, as modified by the NBA Term Sheet, as a reasonable exercise of their business judgment.

## **Emergency Consideration**

29.  Pursuant to Local Rule 9013-1, the Debtors respectfully request emergency consideration of this motion.  The relief requested in this motion relates to performance under the modified NBA Agreements during the 2024-2025 NBA season, which commences in October 2024.  Both the Debtors and NBA Parties require clarity on their continuing obligations under the

NBA Agreements as they begin preparations for the upcoming season. This is especially true given the Debtors' continuing efforts to resolve their negotiations with other parties, such as the other leagues, teams, and distribution partners, in furtherance of the pursuit of a going-concern plan of reorganization. Moreover, the NBA Term Sheet requires the Debtors to obtain entry of the Proposed Order on an emergency basis. Thus, any delay in granting the relief requested therein would cause irreparable harm to the Debtors. Accordingly, the Debtors respectfully request that the Court grant the relief requested in this motion on an emergency basis.

### Waiver of Bankruptcy Rules 6004(a), 6004(h), 6006(e) and 6006(f)

30.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h). The Debtors also submit that cause exists to waive the requirements of Rules 6006(e) and 6006(f) and to permit the Debtors to assume the NBA Agreements on an omnibus basis given that the assumption of such agreements is consensual and required by the NBA Term Sheet, which were heavily negotiated with the counterparties to such agreements.

### Notice

31.     The Debtors will provide notice of this motion to (a) the parties on the Master Service List available on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG, (b) the NBA Parties, and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

[*Remainder of page intentionally left blank*]

August 23, 2024

Respectfully submitted,

By: _/s/ John F. Higgins_

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
Bryan L. Rochelle (TX Bar No. 24107979)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile:  (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
brochelle@porterhedges.com

- and -

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Andrew N. Goldman (admitted *pro hac vice*)
Benjamin W. Loveland (admitted *pro hac vice*)
Lauren R. Lifland (admitted *pro hac vice*)
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile:  (212) 230-8888
andrew.goldman@wilmerhale.com
benjamin.loveland@wilmerhale.com
lauren.lifland@wilmerhale.com

*Section 327(e) Counsel to the Debtors and Debtors in Possession*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Brian S. Hermann (admitted *pro hac vice*)
Andrew M. Parlen (admitted *pro hac vice*)
Joseph M. Graham (admitted *pro hac vice*)
Alice Nofzinger (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990
bhermann@paulweiss.com
aparlen@paulweiss.com
jgraham@paulweiss.com
anofzinger@paulweiss.com

*Section 327(a) Counsel to the Debtors and Debtors in Possession*

**Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.  This statement is made pursuant to Local Rule 9013-1(i).

*/s/ Andrew N. Goldman*
Andrew N. Goldman

**Certificate of Service**

I certify that on August 23, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins