IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) ) ) | Case No. 23-90116 (CML) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DECLARATION OF ZUL JAMAL IN SUPPORT OF THE DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER AMENDING THE FINAL DIP ORDER**

Pursuant to 28 U.S.C. § 1746, I, Zul Jamal, hereby declare, under penalty of perjury, the following to the best of my information, knowledge, and belief:

1. I am a Managing Director of Moelis & Company LLC ("<u>Moelis</u>") in Moelis' New York office, located at 399 Park Avenue, 4th floor, New York, NY 10022. I have over 23 years of experience in investment banking, providing in-court and out-of-court recapitalization and restructuring advisory services to companies, creditors, sponsors, and other interested parties. Furthermore, I have specific experience in chapter 11 bankruptcies, exchange offers, consent solicitations, lender negotiations, and distressed financings. I graduated *magna cum laude* with a Bachelor of Science in Economics from the Wharton School at the University of Pennsylvania.

2. Since I began my career, my experience includes numerous notable restructuring assignments, such as Advanced Glassfiber Yarns, Advanced Lighting Technologies, Aleris International Inc., Alpha Media, American Media, Inc., AMR Corporation, Aston Martin, Cone Mills Corp, Core Digital Media, Inc., Crown Cork & Seal Co., Dex Media, Inc., Energy Future

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

Holdings, Genesis Global Holdco, LLC, Hexion Topco, LLC, Holley Performance Products, Inc., Innkeepers USA Trust, Jason Industries, Lyondell Chemical Company, Momentive Performance Materials, Inc., RentPath, Sorenson Communications, Inc., TPC Group Inc., Tribune Company, and Russell-Stanley Holdings, Inc.

3. Moelis is a leading global investment banking and financial advisory firm (NYSE: MC) with approximately 1,000 employees in locations around the world. Moelis provides a broad range of financial advisory services including (a) mergers and acquisitions, (b) recapitalization & restructuring, (c) capital markets, and (d) private funds advisory. Moelis serves as investment banker to the above-captioned debtors and debtors in possession (collectively, the "Debtors"). As a Managing Director, I am responsible for the day-to-day activities of the Moelis deal team assigned to this matter.

4. I submit this declaration in support of the *Debtors' Emergency Motion for Entry of an Order Amending the Final DIP Order* (the "Motion"), filed contemporaneously herewith.

5. On September 19, 2022, the Debtors engaged Moelis to act as their investment banker in connection with the Debtors' restructuring initiatives. Since its engagement, Moelis has rendered financial advisory services to the Debtors in connection with the evaluation of strategic alternatives for restructuring their debt obligations and improving their liquidity and overall financial condition. Additionally, Moelis has worked closely with the Debtors' management and other professionals retained by the Debtors.

6. Since Moelis began working with the Debtors to provide assistance in connection with the Debtors' evaluation of their financing and restructuring options, I, along with other members of the Moelis team, have become knowledgeable about the Debtors' capital structure,

business, finances, liquidity needs, and operations, which has allowed us to provide an evaluation of the Debtors' liquidity, cash needs, and prospects for reorganization as a going concern.

7. Except as otherwise noted herein, the facts set forth in this declaration are based upon my personal knowledge, information provided to me by the Debtors' representatives or professional advisors, my discussions with employees of Moelis working directly with me or under my supervision or direction, or my review of relevant documents, including the Debtors' books and records maintained in the ordinary course of their business.

8. In making this declaration, I have relied in part on information and material that the Debtors' representatives and professional advisors have gathered, prepared, verified, and provided to me, at my direction or for my benefit in preparing this declaration.

9. I am not being compensated for this testimony other than through payments received by Moelis in its capacity as investment banker to the Debtors.

10. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

**The Proposed DIP Order Amendments**[2]

11. The Debtors and their advisors have worked tirelessly over the last several months to secure new go-forward agreements with their key commercial counterparties, which agreements are expected to form the backbone of the Debtors' business plan supporting their reorganization as a going concern. While the Debtors have made substantial progress in these efforts, particularly with their distribution partners and most recently with new go-forward agreements with the NBA and the NHL, the Debtors need additional time to complete their business and reorganization plans,

---

[2] Capitalized terms used but not otherwise defined in this section have the meanings ascribed to them in the Motion.

3

including, among other things, to work to finalize a new naming rights agreement and seek to raise additional exit financing through a new accounts receivable financing facility.

12. I have been informed by the advisors to the first lien lenders that the first lien lenders would prefer different treatment than their previously agreed plan treatment due to the extended timeline of these cases and the fact that the Debtors' current projections are different than the projections that formed the basis of the RSA. Following good faith, arm's-length negotiations among the first lien lenders, the DIP lenders, and the Debtors, among others, the parties have reached agreement to amendments to the Existing DIP Order that will provide the Debtors with additional time to finalize their business and reorganization plans and provide the first lien lenders with greater certainty regarding the repayment of their claims up to an agreed upon claims cap. I understand that these agreements are incorporated into the DIP Amendment Order.

13. Pursuant to the terms of the agreement among the parties, if the Debtors (a) continue to pursue a going concern reorganization and have not pivoted to a winddown by October 1, 2024, and (b) have failed to consummate an Acceptable Plan by November 15, 2024, then the Debtors will make the Additional First Lien Paydown to the first lien lenders on November 18, 2024. The Additional First Lien Paydown will equal an amount that would provide the first lien lenders with an aggregate cash recovery equal to the $637 million winddown claims cap contemplated under the Existing DIP Order (after taking into account the initial First Lien Paydown made upon the closing of the DIP Facility and the crediting of adequate protection payments in accordance with the DIP Amendment Order), with the estimated payment equaling approximately $215 million. Consistent with the potential winddown scenario contemplated by the RSA, if the Debtors pivot to a winddown after the Pivot Deadline, the first lien lenders will similarly be entitled to payment of the Additional Cash Paydown. In both cases, the Debtors have

also agreed to pay the Centerview Transaction Fee at the time (and to the extent) that the Debtors make any Additional First Lien Paydown.  Finally, as part of the longer case timeline, the Debtors, with the support of their required DIP lenders under their DIP credit agreement, agreed to certain adjustments to the crediting of adequate protection payments to the principal outstanding on the first lien claims, which crediting goes away (a) after November 15, 2024, to the extent the Debtors (x) are pursuing a going-concern reorganization or (y) have not pivoted to a wind down by October 1, 2024, and (b) after December 31, 2024, to the extent the Debtors pivot to a wind down of their operations by October 1, 2024.

14. I believe the Debtors' agreement to pay the Additional First Lien Paydown results in a significant benefit for the Debtors' estates, as the first lien lenders have agreed to reduce the cap on the total amount of their claims in a reorganization scenario by $15 million (as compared to the corresponding cap provided for under the Existing DIP Order).  In addition, I understand that, to the extent that the Additional First Lien Paydown is made, the total amount of remaining first lien claims will (a) in a reorganization scenario, be capped at $10 million (plus adequate protection payments on that amount continuing to accrue and be paid after November 15, 2024), and (b) in a winddown scenario, be deemed discharged as of the date that payment is made.  I believe the amendments set forth in the DIP Amendment Order will allow the Debtors' reorganization efforts benefit from the continued support of their key creditor constituencies and provide the Debtors with additional time and flexibility to make necessary decisions regarding go-forward business arrangements with their key commercial counterparties.

15. I understand that the first lien claims are secured by substantially all of the Debtors' assets, including all of the Debtors' cash and accounts receivable.  In addition, I understand there is an intercreditor agreement between the DIP lenders and the first lien lenders that, among other

things, provides the first lien lenders with consent rights over any treatment on account of their claims other than payment in full in cash and also requires the DIP lenders to turn over cash payments made to the DIP lenders, including from the Debtors' assets that may have previously been unencumbered, like the Sinclair litigation proceeds, until the first lien lenders are paid in full in cash.  I believe that any Additional First Lien Paydown likely would not affect the recovery of any other creditors, as I understand, based on my review of the Debtors' current and projected cash and accounts receivable positions (as provided to Moelis by the Debtors), and in light of the Debtors' other assets, that the first lien lenders' claims are secured by assets having a value over the aggregate amount of the proposed paydown.  In addition, I do not believe that the payment of the Centerview Transaction Fee at the time of any Additional First Lien Paydown should negatively affect any other creditor, as the Debtors are already obligated to pay the fee as part of the adequate protection package provided to the first lien secured parties under the Existing DIP Order.  I understand that the DIP Amendment Order merely modifies the timing of that payment.

16.    I understand that the first lien lenders have various termination rights under the Existing DIP Order related to the use of cash collateral due to the fact that the Debtors did not obtain confirmation of a chapter 11 plan on or before August 5, 2024.  I believe that absent the Debtors' agreement to pay the Additional First Lien Paydown, the first lien lenders would not have agreed to support the Debtors' continued use of cash collateral to emerge from chapter 11 as a going concern, which could have forced the Debtors to pivot back to a wind down of their operations.  I further believe that a going-concern plan of reorganization will likely provide a better outcome for the Debtors' estates and creditor recoveries than a wind down of their operations, and that the Debtors' agreement to make the Additional First Lien Paydown and the Centerview

Transaction Fee is therefore an exercise of the Debtors' sound business judgment under the circumstances.

17. In short, I believe that the amendments set forth in the DIP Amendment Order will allow the Debtors' reorganization efforts to benefit from the continued support of their key creditor constituencies and provide the Debtors with additional time and flexibility to seek to complete their business and reorganization plans, and are therefore in the best interests of the Debtors' estates under the circumstances.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 23, 2024
New York, NY

                                            /s/ *Zul Jamal*
                                            Zul Jamal
                                            Managing Director
                                            Moelis & Company LLC