# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) Case No. 23-90116 (CML) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) (Emergency Hearing Requested) |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER (I) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT SUPPLEMENT, (II) AUTHORIZING CONTINUED SOLICITATION OF THE AMENDED PLAN, AND (III) GRANTING RELATED RELIEF

> **Emergency relief has been requested. Relief is requested not later than 1:00 p.m. (prevailing Central Time) on October 7, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on October 7, 2024, at 1:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:[2]

### Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Supplemental Solicitation Order"), (a) conditionally approving the supplement to the disclosure statement in connection with the *Debtors' First Amended Joint Chapter 11 Plan of Reorganization* filed substantially contemporaneously herewith (as may be amended, supplemented, or modified from time to time, the "Amended Plan"), substantially in the form attached as **Exhibit A** to the Supplemental Solicitation Order (the "Disclosure Statement Supplement"), as providing adequate information, (b) authorizing continued solicitation of the Amended Plan, and (c) granting related relief.

### Preliminary Statement

2. The Debtors seek the authority to continue their path to confirmation of the Amended Plan and the successful conclusion of these chapter 11 cases. The Amended Plan is the result of the Debtors' good faith, arm's-length, and hard fought negotiations with various parties in interest. As discussed in the Disclosure Statement and the Disclosure Statement Supplement, the Debtors have been engaged in discussions with key stakeholders, including renegotiating and/or renewing agreements with the NHL, the NBA, and MLB and their respective teams, the Debtors' major MVPDs, including DIRECTV, Charter, Comcast, and Cox, and their major vMVPDs, such as FuboTV. Since entry of the Disclosure Statement Order, the Debtors have entered into new or renewed agreements with each of the NHL, NBA, DIRECTV, Cox, Charter, FuboTV, and Comcast. These agreements have resulted in updates to the Debtors' business plan,

---

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Amended Plan or the Disclosure Statement Supplement (each as defined herein), as applicable.

2

which in turn have resulted in changes to the Debtors' reorganization plan. As part of these developments, the Debtors also reached agreement on amendments to the order approving their debtor-in-possession financing facility, which resulted in changes to the treatment of the first lien lenders' claims.

3. The Amended Plan memorializes the results of the Debtors' efforts to date. Importantly, the Debtors continue to negotiate and finalize the terms of certain potential go-forward arrangements in connection with their post-emergence business plan, including potential commercial partnerships and investments in the Debtors' reorganized business. To allow the Debtors and their stakeholders additional time to complete those arrangements, while also providing certainty that these chapter 11 cases will be resolved before year end, the Amended Plan also reflects a toggle structure pursuant to which the Debtors will determine, with the consent of the Required DIP Commitment Parties and in consultation with the UCC, by no later than December 16, 2024, whether a going-concern reorganization will be pursued or whether an orderly winddown following the completion of the 2024-2025 NBA and NHL seasons will be implemented. The Debtors understand that key stakeholders require certainty with respect to when these chapter 11 cases will be fully resolved. The Debtors believe that the Amended Plan delivers this timing certainty, while also affording the Debtors additional time to achieve a value-maximizing going-concern reorganization.

4. To this end, the Debtors now seek conditional approval from this Court with respect to the Disclosure Statement Supplement, which has been designed to provide parties in interest adequate information (as that term is used in section 1125 of the Bankruptcy Code) with respect to the modifications to the Original Plan (as defined below) that have resulted in the Amended Plan.

5. The Debtors also respectfully request that the Court authorize the Debtors to continue soliciting votes on the Amended Plan. In connection therewith, the Debtors seek approval of the following dates and deadlines related to confirmation of the Amended Plan:

| Event | Date/Deadline |
|---|---|
| Plan Supplement Filing[3] | October 21, 2024 |
| Voting/Opt-Out Deadline<br>Amended Plan and Disclosure Statement Supplement Objection Deadline | November 5, 2024, at 4:00 p.m. (prevailing Central Time) |
| Deadline to File Voting Report<br>Confirmation Brief and Reply Deadline | November 12, 2024 |
| Hearing on Confirmation of the Amended Plan and Final Approval of the Disclosure Statement Supplement | November 14, 2024, at 9:00 a.m. (prevailing Central Time)<br>November 15, 2024, at 9:00 a.m. (prevailing Central Time) (if necessary) |

6. In short, the relief requested herein is an essential step forward in the Debtors' efforts to confirm their chapter 11 plan and consummate a value-maximizing reorganization by no later than year end.

**Jurisdiction and Venue**

7. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to

---

[3] The Debtors may file additional Plan Supplements (which may be in multiple installments) on or prior to the Effective Date.

the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The bases for the relief requested herein are sections 105(a), 1125, and 1127 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 2002, 3017, 3018, and 3020, rules 3016-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas* effective September 18, 2024 (the "Complex Case Procedures").

## Background

### I. The Solicitation Process

10. The Disclosure Statement was approved by the Court as containing adequate information, and the Debtors were authorized to commence solicitation on the Original Plan, pursuant to the Court's order entered on April 17, 2024 [Docket No. 1977] (the "Solicitation Order"). On the same day, the Debtors filed the solicitation versions of the *Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 1982] (the "Original Plan") and the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 1983] (the "Disclosure Statement").

11. The Solicitation Order, among other things, (a) approved the Disclosure Statement as having adequate information with respect to the Original Plan, (b) established solicitation and tabulation procedures for the Original Plan, (c) established May 22, 2024, as the deadline for voting on and/or objecting to confirmation of the Original Plan, and (d) scheduled a hearing to consider confirmation of the Original Plan for June 18, 2024. The Debtors caused solicitation packages containing the Original Plan, Disclosure Statement, and ballots to be mailed soon after the Court's

entry of the Solicitation Order. As of the date hereof, certain Holders of Claims have voted on the Original Plan.[4]

12. Through various notices filed with the Court, and in accordance with the Solicitation Order, the Debtors subsequently modified certain dates and deadlines related to solicitation and confirmation of the Original Plan [Docket Nos. 2058, 2109, 2251, 2258, and 2295]. Most recently, on July 24, 2024, the Debtors filed a notice adjourning the confirmation hearing and all related dates and deadlines set forth in the Solicitation Order to dates to be determined.

**II.     The Plan Modifications**

13. As noted above, the Debtors, in consultation with the RSA Parties, among others, determined to make certain modifications to the Original Plan (collectively, the "Plan Modifications"), which are reflected in the Amended Plan. The Debtors intend to move forward expeditiously to obtain confirmation of the Amended Plan, which the Debtors believe maximizes the value of their estates for all stakeholders. The Plan Modifications primarily include implementation of the following concepts:

   a. **Toggle Structure**: The Amended Plan provides for a toggle between a going-concern reorganization and an orderly winddown following the completion of the 2024-2025 NBA and NHL seasons. Whether a going-concern reorganization is ultimately pursued will be determined by the Debtors, with the consent of the Required DIP Commitment Parties and in consultation with the UCC, on or before December 16, 2024, and the Debtors will file a notice with the Bankruptcy Court by no later than that date advising parties in interest of that determination. To the extent a going-concern reorganization is not pursued, the Debtors will reject or otherwise terminate all of their contracts with MLB and its applicable teams effective as of December 31, 2024, well in advance of the 2025 MLB season.

   b. **Treatment of Class 3 First Lien Claims**: In a going-concern reorganization, each holder of an Allowed First Lien Claim will receive its *pro rata* share of Cash in an amount equal to $647 million less the sum of

---

[4] For the avoidance of doubt, all Holders of Claims entitled to vote on the Amended Plan will be permitted to cast new votes at their option.

    (i) the AP Reduction Amount, (ii) the amount of the First Lien Paydown, and (iii) the amount of any Additional First Lien Paydown.[5]

 c. **Treatment of Class 4 Junior Funded Debt Claims**:  In a going-concern reorganization, each holder of an Allowed Junior Funded Debt Claim will receive its *pro rata* share of 10% of the New TopCo Equity (subject to dilution by the DIP Commitment Party Investment Option, the Management Incentive Plan, the Naming Rights Equity (if any), and the Exit Facility Equity (if any)).

 d. **Treatment of DIP Claims**:  In a going-concern reorganization, DIP Claims will be treated as follows:

   i. <u>With respect to the aggregate principal amount of the DIP Claims and Capitalized DIP Interest</u>:  DIP Lenders will receive (x) $270 million in cash, (y) any Cash raised from an Acceptable Exit Financing (provided that the Reorganized Debtors have at least $50 million of cash or cash equivalents on their balance sheet after giving effect to the transactions occurring on the Reorganization Effective Date), and (z) up to $200 million in aggregate principal amount of Exit Term Loans.

   ii. <u>With respect to the DIP MOIC</u>:  DIP Lenders will receive 45% of the New TopCo Equity (subject to dilution by the DIP Commitment Party Investment Option, the Management Incentive Plan, the Naming Rights Equity (if any), and the Exit Facility Equity (if any)).

   iii. <u>With respect to the DIP Commitment Premium</u>:  DIP Commitment Parties will receive 45% of the New TopCo Equity (subject to dilution by the DIP Commitment Party Investment Option, the Management Incentive Plan, the Naming Rights Equity (if any), and the Exit Facility Equity (if any)).

 e. **Treatment of Claims in Orderly Winddown**:  In the event an orderly winddown is ultimately pursued, no New TopCo Equity (or any exit debt) will be issued and, following the completion of the 2024-2025 NBA and NHL seasons, the Debtors' cash will be distributed to holders of DIP Claims, Allowed First Lien Claims (to the extent not already paid in full in cash up to the applicable cap), and Allowed General Unsecured Claims, as set forth in the Amended Plan and the DIP Amendment Order.  To the extent any cash remains following the foregoing distributions, such cash will be

---

[5] For the avoidance of doubt, this treatment for holders of First Lien Claims is in addition to any Post-Additional First Lien Paydown AP Interest Payments (as defined in the Amended Plan), payable in accordance with the DIP Order, which Post-Additional First Lien Paydown AP Interest Payments that are accrued and unpaid as of the Plan Effective Date (if any) shall be paid on the Plan Effective Date.

    distributed to holders of Allowed Junior Funded Debt Claims. In such a scenario, Go-Forward Trade Claims will be treated as General Unsecured Claims. The Amended Plan does not otherwise modify the treatment of General Unsecured Claims.

  f. **Removal of Provisions Related to the Litigation Proceeds Condition and the Convertible B Exit Note**: As described in the Disclosure Statement Supplement, since the filing of the Original Plan, the Litigation Proceeds Condition (as defined in the Original Plan) was met on April 30, 2024. Accordingly, the Amended Plan reflects the removal of provisions related to the Litigation Proceeds Condition, including provisions and concepts related to certain exit financing that would have been relevant in the event the Litigation Proceeds Condition had not been met. In addition, and also as described in the Disclosure Statement Supplement, Amazon will no longer be providing the Debtors with exit financing through the Convertible B Exit Note (as defined in the Original Plan) and provisions related to the Convertible B Exit Note have been removed from the Amended Plan.

14. The Debtors submit that the Plan Modifications and the Amended Plan provide a clear path to resolution of these chapter 11 cases. Importantly, the Amended Plan sets a hard deadline of December 16, 2024, for the Debtors to determine, with the consent of the Required DIP Commitment Parties and in consultation with the UCC, whether a going-concern reorganization or an orderly winddown will be pursued, which creates timing certainty for the Debtors and all stakeholders, including providing MLB and its teams finality well in advance of the 2025 MLB season. At the same time, the toggle structure affords the Debtors and key stakeholders additional time to finalize the terms of potential go-forward commercial agreements and investments that will provide a path to a going-concern reorganization, which the Debtors believe will maximize value for all stakeholders.

## Basis for Relief

**I. The Court Should Conditionally Approve the Disclosure Statement Supplement**

15. Section 1127(a) of the Bankruptcy Code permits a plan proponent to modify a plan "at any time before confirmation," and once filed, "the plan as modified becomes the plan."

11 U.S.C. § 1127(a).  Subsections 1127(c) and (f)(2) of the Bankruptcy Code provide certain safeguards to ensure that the disclosure requirements of section 1125 of the Bankruptcy Code continue to be met with respect to a modified plan.  See 11 U.S.C. §§ 1127(c), (f)(2).  Specifically, section 1127(c) of the Bankruptcy Code imposes a general obligation upon the plan proponent to comply with section 1125 of the Bankruptcy Code with respect to a modified plan. Section 1127(f)(2) of the Bankruptcy Code further provides that "[t]he plan, as modified, shall become the plan only after there has been disclosure under section 1125 as the court may direct, notice and a hearing, and such modification is approved."  11 U.S.C. § 1127(f)(2).

16. The Debtors respectfully submit that the Disclosure Statement Supplement, together with the existing Disclosure Statement, contains adequate disclosure for purposes of sections 1125 and 1127 of the Bankruptcy Code with respect to the Amended Plan.  The Court previously approved the Disclosure Statement as providing adequate information, and the Debtors now seek conditional approval of the Disclosure Statement Supplement to expedite the solicitation and confirmation process with respect to the Amended Plan.  The Debtors will then seek final approval of the Disclosure Statement Supplement as containing adequate disclosure at the hearing to consider confirmation of the Amended Plan.

17. A plan proponent must provide impaired creditors and equity holders with "adequate information" regarding a proposed chapter 11 plan pursuant to section 1125 of the Bankruptcy Code.  *See* 11 U.S.C. § 1125(a)(1).  A disclosure statement must, as a whole, provide information that is reasonably sufficient to permit holders of impaired claims and equity interests entitled to vote on the chapter 11 plan to make an informed judgment on such plan.  *See In re J.D. Mfr., Inc.*, 2008 WL 4533690, at *2 (Bankr. S.D. Tex. Oct. 2, 2008) ("'Adequacy' of information is a determination that is relative both to the entity (e.g., assets/business being reorganized or

9

liquidated) and to the sophistication of the creditors to whom the disclosure statement is addressed."); *In re U.S. Brass Corp.*, 194 B.R. 420, 423 (Bankr. E.D. Tex. 1996) (stating that "[t]he purpose of the disclosure statement is . . . to provide enough information to interested persons so they may make an informed choice"). Congress intended the determination of whether a disclosure statement contains adequate information to be a flexible, fact-specific inquiry left to the Court's discretion:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection. There will be a balancing of interests in each case. In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest.

H.R. Rep. 95-595, at 409 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6365; *see also Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Co-op., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("The legislative history of § 1125 indicates that, in determining what constitutes 'adequate information' with respect to a particular disclosure statement . . . the kind and form of information are left essentially to the judicial discretion of the court and that the information required will necessarily be governed by the circumstances of the case."); *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) (opining that what constitutes adequate information is "subjective," "made on a case by case basis," and "largely in the discretion of the bankruptcy court").

18. As noted above, the Court—pursuant to the Solicitation Order—previously approved the Disclosure Statement as containing adequate information and authorized the Debtors to solicit votes on the Original Plan based upon the adequacy of the Disclosure Statement. The Debtors have supplemented the Disclosure Statement by preparing the Disclosure Statement

Supplement, which provides a detailed description of the Plan Modifications described in this motion, certain risk factors associated with the Amended Plan, and the new voting and objection deadlines with respect to the Amended Plan.

19. The Debtors believe that the Disclosure Statement Supplement provides the necessary information to Holders of DIP Claims and Holders of Claims entitled to vote on the Amended Plan, while also avoiding the cost associated with preparing and circulating a revised disclosure statement that would do little more than mimic (often word-for-word) the terms of the Amended Plan (which Holders will already be receiving) and the Disclosure Statement. The Debtors therefore submit that the Disclosure Statement Supplement, together with the Disclosure Statement, satisfies the requirements of sections 1125, 1127(c), and 1127(f)(2) of the Bankruptcy Code.

20. Bankruptcy Local Rule 3016-2 and section P of the Complex Case Procedures permit a plan proponent to move for conditional approval of a disclosure statement and a combined hearing to consider final approval of the disclosure statement and confirmation of the plan. Conditional approval of the Disclosure Statement Supplement and proceeding with a combined hearing on an expedited timeline are warranted under the circumstances of these chapter 11 cases because, among other things, (a) the Disclosure Statement has already been approved, (b) the Plan Modifications are relatively limited in scope, many (such as the treatment of the first lien claims) have been previewed by prior relief approved by the Court, and are supported by applicable RSA Parties, and (c) the expeditious resolution of these chapter 11 cases will benefit all parties in interest. As noted above, the Debtors understand that key stakeholders require certainty with respect to when these chapter 11 cases will be fully resolved. The Debtors believe that the Amended Plan and the expedited solicitation and confirmation process afforded by conditional

approval of the Disclosure Statement Supplement described herein will deliver this critical timing certainty.

## II. Authorization of Continued Solicitation of Votes

21. Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of eligible claims and interests upon approval of a disclosure statement. Such materials generally include the plan or a court-approved summary of the plan, the court-approved disclosure statement, notice of the voting deadline, and "any other information as the court may direct." *See* Fed. R. Bankr. P. 3017(d). Moreover, section 105 of the Bankruptcy Code grants courts broad authority to enter any order or judgment "necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a). The Debtors assert that the Disclosure Statement Supplement adequately describes the Plan Modifications and reasons for such modifications.

22. The Debtors will use commercially reasonable efforts to cause the Claims Agent to distribute a solicitation package (each a "Supplemental Solicitation Package") to Holders of Claims entitled to vote on the Amended Plan within one business day after entry of an order approving the Disclosure Statement Supplement, or as soon as reasonably practicable thereafter. Each Supplemental Solicitation Package[6] will contain:

    a.    the Amended Plan, including a redline indicating all of the Plan Modifications;

    b.    the Disclosure Statement Supplement;

    c.    the Supplemental Solicitation Order (without exhibits), which will provide notice of the hearing to consider confirmation of the Amended Plan and final approval of the Disclosure Statement Supplement and the deadlines to submit ballots and file objections, if any, to the Amended Plan;

---

[6] The Amended Plan, Disclosure Statement Supplement, and Supplemental Solicitation Order (without exhibits) will be provided in hard copy (i.e., paper format) or electronic format on a USB flash drive at the Debtors' option. Supplemental Solicitation Package materials provided in electronic format will be available in hard copy, free of charge, upon request to the Claims Agent.

d. the applicable ballot for Holders of Claims in each of the voting Classes, substantially in the forms attached as **Exhibit B** to the Supplemental Solicitation Order (collectively, the "New Form Ballots"), respectively; and

e. a pre-addressed postage prepaid return envelope.

23. The Debtors propose to cause the Supplemental Solicitation Package to be mailed to the Holders of Claims entitled to vote on the Amended Plan. As noted above, regardless of whether a Holder of Claims has already voted on the Original Plan, all Holders of Claims entitled to vote on the Amended Plan will be permitted to cast new votes at their option. In addition, because the Amended Plan contemplates that Class 5 Go-Forward Trade Claims will be treated as General Unsecured Claims in the event an orderly winddown is pursued pursuant to the Amended Plan, Holders of Class 5 Go-Forward Trade Claims will be provided provisional ballots to cast votes on the Amended Plan. Any Holder of Claims that previously submitted a ballot on the Original Plan but now wishes to submit a different vote for the Amended Plan will be permitted to do so. Any new ballots received before the voting deadline of November 5, 2024, at 4:00 p.m., prevailing Central Time, will control over previously submitted ballots. For Holders of Claims that do not submit a new ballot, their prior vote (if any) will control in compliance with section 1127(d) of the Bankruptcy Code.

24. The Debtors respectfully request that the Court authorize the Debtors' proposed service on the Holders of Claims entitled to vote on the Amended Plan.

### III. Non-Substantive Modifications

25. The Debtors request authority to make non-substantive or immaterial changes to the Disclosure Statement Supplement, the Amended Plan, the Supplemental Solicitation Package, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure

Statement, the Plan, and any other materials in the Supplemental Solicitation Package before distribution.

## Emergency Consideration

26. Pursuant to Local Rule 9013-1, the Debtors respectfully request emergency consideration of this motion. As set forth in this motion, the Debtors believe that any delay in granting the relief requested would imperil the Debtors' restructuring efforts and cause irreparable harm. Accordingly, the Debtors respectfully request that the Court grant the relief requested in this motion on an emergency basis.

## Notice

27. The Debtors will provide notice of this motion to (a) the parties on the Master Service List available on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG, and (b) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Supplemental Solicitation Order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| October 2, 2024 | Respectfully submitted, |
| | /s/ *John F. Higgins* |
| | **PORTER HEDGES LLP** |
| | John F. Higgins (TX Bar No. 09597500) |
| | M. Shane Johnson (TX Bar No. 24083263) |
| | Megan Young-John (TX Bar No. 24088700) |
| | Bryan L. Rochelle (TX Bar No. 24107979) |
| | 1000 Main St., 36th Floor |
| | Houston, Texas 77002 |
| | Telephone: (713) 226-6000 |
| | Facsimile: (713) 226-6248 |
| | jhiggins@porterhedges.com |
| | sjohnson@porterhedges.com |
| | myoung-john@porterhedges.com |
| | brochelle@porterhedges.com |

- and -

| | |
|---|---|
| **WILMER CUTLER PICKERING HALE AND DORR LLP** | **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |
| Andrew N. Goldman (admitted *pro hac vice*) | Brian S. Hermann (admitted *pro hac vice*) |
| Benjamin W. Loveland (admitted *pro hac vice*) | Andrew M. Parlen (admitted *pro hac vice*) |
| Lauren R. Lifland (admitted *pro hac vice*) | Joseph M. Graham (admitted *pro hac vice*) |
| 250 Greenwich Street | Alice Nofzinger (admitted *pro hac vice*) |
| New York, New York 10007 | 1285 Avenue of the Americas |
| Telephone: (212) 230-8800 | New York, New York 10019 |
| Facsimile: (212) 230-8888 | Telephone: (212) 373-3000 |
| andrew.goldman@wilmerhale.com | Facsimile: (212) 757-3990 |
| benjamin.loveland@wilmerhale.com | bhermann@paulweiss.com |
| lauren.lifland@wilmerhale.com | aparlen@paulweiss.com |
| | jgraham@paulweiss.com |
| | anofzinger@paulweiss.com |
| *Section 327(e) Counsel to the Debtors and Debtors in Possession* | *Counsel to the Debtors and Debtors in Possession* |

**Certificate of Accuracy**

      I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.  This statement is made pursuant to Local Rule 9013-1(i).

      */s/ John F. Higgins*
      John F. Higgins

**Certificate of Service**

      I certify that on October 2, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

      */s/ John F. Higgins*
      John F. Higgins