IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) ) ) | Case No. 23-90116 (CML) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' REPLY IN SUPPORT OF THE DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT SUPPLEMENT, (II) AUTHORIZING CONTINUED SOLICITATION OF THE AMENDED PLAN, AND (III) GRANTING RELATED RELIEF**

[Related to Docket Nos. 2499, 2515]

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply in support of the *Debtors' Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement Supplement, (II) Authorizing Continued Solicitation of the Amended Plan, and (III) Granting Related Relief* [Docket No. 2499] (the "Motion") and in response to the objection filed by the United States Trustee for the Southern District of Texas (the "U.S. Trustee") [Docket No. 2515] (the "Objection").

**Reply**

1. The U.S. Trustee raises only one objection to the Motion, which is that the Debtors' solicitation materials include an opt-out mechanism for third-party releases and that this mechanism is non-consensual. The U.S. Trustee's objection is wrong under the clear law in this jurisdiction and should be overruled.

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG.  The Debtors' service address for purposes of these chapter 11 cases is:  c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

2. The Debtors crafted the opt-out mechanism in their solicitation materials to conform to settled law in this Circuit prohibiting non-consensual releases, *see In re Pac. Lumber Co.*, 584 F.3d 229 (5th Cir. 2009), as well as settled law in this District as to what constitutes a consensual release. *See Cole v. Nabors Corp. Servs., Inc. (In re CJ Holding Co.)*, 597 B.R. 597, 608–09 (S.D. Tex. 2019). Thus, the Debtors' solicitation materials were uncontroversial when they were filed and approved by this Court after notice and a hearing on April 17, 2024. Indeed, the U.S. Trustee filed nothing in connection with the Debtors' solicitation materials at that time. Now, nearly six months after the Court has already approved the solicitation materials, including the opt-out mechanism, the U.S. Trustee has decided to object to that mechanism.

3. The U.S. Trustee relies on the Supreme Court's decision in *Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071 (2024) to justify its objection. But *Purdue* did not limit consensual releases or otherwise address what qualifies as a consensual release. *See Purdue*, 144 S. Ct. at 2087 ("Nothing in what we have said should be construed to call into question *consensual* third-party releases offered in connection with a bankruptcy reorganization plan . . . . Nor do we have occasion today to express a view on what qualifies as a consensual release."). In other words, as this Court noted in *Robertshaw* and as discussed above, because non-consensual third-party releases were already prohibited in the Fifth Circuit, "*Purdue* did not change the law in this Circuit." *In re Robertshaw US Holding Corp.*, No. 24-90052, 2024 WL 3897812, at *17 (Bankr. S.D. Tex. Aug. 16, 2024) (citing *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995)). And, as this Court found in *Robertshaw*, "what constitutes consent, including opt-out features and deemed consent for not opting out, has long been settled in this District." *Id.* (noting that "[h]undreds of chapter 11 cases have been confirmed in this District with consensual third-party releases with an opt-out").

4. There is no reason for the Court to revisit its prior approval of the solicitation materials and the opt-out mechanic now. Indeed, in overruling a nearly identical post-*Purdue* objection by the U.S. Trustee, this Court recently held in *Robertshaw* that "[t]here is nothing improper with an opt-out feature for consensual third-party releases in a chapter 11 plan." 2024 WL 3897812, at *17. The U.S. Trustee does not identify any meaningful distinction between this case and *Robertshaw*, because there is none. Here, as in *Robertshaw*:

> Parties in interest were provided detailed notice about the Plan, the deadline to object to plan confirmation, the voting deadline, and the opportunity to opt out of the third-party releases. The Disclosure Statement included a detailed description about the third-party releases and the opt-out. . . . All ballots provided claimants an opportunity to opt out. Non-voting parties . . . received a Notice of Non-Voting Status that offered a chance to opt out too. The ballots and the Notice of Non-Voting Status allowed parties to carefully review and consider the terms of the third-party release and the consequences of electing not to opt-out.

*Id.* at *18. And here, as in *Robertshaw*, the opportunity to opt out of the third-party releases appears in clear and conspicuous language throughout the solicitation materials. In addition, the notice of the confirmation hearing published in the national editions of *The New York Times* and *USA Today* on April 23, 2024, included the following in all-caps, bold type, along with a link where any reader could obtain a copy of the plan and disclosure statement free of charge:

> **YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE THIRD-PARTY RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE VIII OF THE PLAN, AS YOUR RIGHTS MAY BE AFFECTED.**

*Certificate of Publication* [Docket No. 2027].

5. The U.S. Trustee argues that "[t]here is no evidence in the Plan or the solicitation materials that the Debtors provided notice to the unusually broad breadth of parties included in the definition of 'Releasing Parties.'" (Objection ¶ 60.) But the definition of "Releasing Parties" is

nearly identical to that in *Robertshaw*, and evidence of service on those parties is freely and publicly available. *See Affidavit of Service of Solicitation Materials* [Docket No. 2055-2]. In addition, the breadth of the claims released under the Debtors' plan are, as in *Robertshaw*, "narrowly tailored to this case," as the released claims include only those that are based on or relate to, among other things, the Debtors and their estates, the chapter 11 cases, and related prepetition and postpetition claims and transactions, with a carveout for claims arising from actual fraud, willful misconduct, or gross negligence. *See Robertshaw*, 2024 WL 3897812, at *18.[2]

6. To bolster its argument, the U.S. Trustee cites to non-binding case law that holds that an "opt out" is non-consensual. *See, e.g.*, *In re SunEdison, Inc.*, 576 B.R. 453 (Bankr. S.D.N.Y. 2017). But as noted by the court in *Mallinckrodt*, and as recognized by this and other courts since *Purdue*, deemed consent is used throughout the judicial system, including the bankruptcy system:

> The notion that an individual or entity is in some instances deemed to consent to something by their failure to act is one that is utilized throughout the judicial system. When a party to a lawsuit is served with a complaint or a motion, they need to file an answer or otherwise respond, or a judgment is automatically entered against them. Within the bankruptcy system, Debtors send out bar date notices and if claimants fail to file a proof of claim by a certain time, they lose the right to assert a claim. Additionally, if a claim objection is filed and the claimant fails to respond, the claim is disallowed. There is no reason why this principle should not be applied in the same manner to properly noticed releases within a plan of reorganization.

---

[2] Notably, in the few months since the *Purdue* decision was issued, this Court and others have overruled similar objections by the U.S. Trustee to opt-out mechanisms multiple times. *See, e.g.*, *In re FTX Trading Ltd.*, Case No. 22-11068 (Bankr. D. Del. Oct. 8, 2024) [Docket No. 26404]; *In re DRF Logistics, LLC*, Case No. 24-90447 (CML) (Bankr. S.D. Tex. Sept. 24, 2024) [Docket No. 276]; *In re Eiger BioPharmaceuticals, Inc.*, Case No. 24-80040-SGJ11 (N.D. Tex. Sept. 5, 2024) [Docket No. 639]; *In re Gigamonster Networks, LLC*, Case No. 23-10051 (JKS) (Bankr. D. Del. Aug. 30, 2024) [Docket No. 889]; *In re Bowflex Inc.*, Case No. 24-12364 (ABA) (Bankr. D.N.J. Aug. 19, 2024) [Docket No. 614]; *In re Invitae Corp.*, Case No. 24-11362 (MBK) (Bankr. D.N.J. Aug. 9, 2024) [Docket No. 932]. In other words, *Robertshaw* is not an outlier.

*In re Mallinckrodt PLC*, 639 B.R. 837, 879 (Bankr. D. Del. 2022). Moreover, the U.S. Trustee's argument that courts must analyze state contract law to determine what is consensual would result in varying enforceability of releases granted under a plan from state to state, undermining the federal bankruptcy system's goal of uniformity.

7. By the Motion, the Debtors are simply seeking to continue the solicitation they have already commenced with the Court's authorization nearly six months ago, with the opt-out mechanism entirely unchanged from the one the Court approved at that time. The matter on which the U.S. Trustee objects therefore has already been decided in this case for purposes of solicitation and the Court should not permit this late-in-time Objection to disrupt the Debtors' ongoing solicitation process by altering mechanics through which parties in interest have already submitted votes and elections. *See, e.g.*, *In re AKD Invs.*, 79 F.4th 487, 491 (5th Cir. 2023) ("Generally, 'when a court decides' an issue, 'that decision should continue to govern the same issues in subsequent stages of the same case.'" (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983))); *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001) (noting that, for the law of the case doctrine to apply, "the issues need not have been explicitly decided" as "the doctrine also applies to those issues decided by 'necessary implication'" (quoting *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001))). Such delay and disruption is not justified by the circumstances of these cases, particularly where the Debtors' proposed release, opt-out mechanic, and provision of notice is consistent with numerous cases approved in this District and others, including after *Purdue*. Instead, the Objection should be overruled and the previously-approved opt-out mechanic should be reaffirmed.

| | |
|---|---|
| October 9, 2024 | Respectfully submitted,<br><br>*/s/ John F. Higgins*<br>**PORTER HEDGES LLP**<br>John F. Higgins (TX Bar No. 09597500)<br>M. Shane Johnson (TX Bar No. 24083263)<br>Megan Young-John (TX Bar No. 24088700)<br>Bryan L. Rochelle (TX Bar No. 24107979)<br>1000 Main St., 36th Floor<br>Houston, Texas 77002<br>Telephone: (713) 226-6000<br>Facsimile: (713) 226-6248<br>jhiggins@porterhedges.com<br>sjohnson@porterhedges.com<br>myoung-john@porterhedges.com<br>brochelle@porterhedges.com<br><br>- and -<br><br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>Brian S. Hermann (admitted *pro hac vice*)<br>Andrew M. Parlen (admitted *pro hac vice*)<br>Joseph M. Graham (admitted *pro hac vice*)<br>Alice Nofzinger (admitted *pro hac vice*)<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Telephone: (212) 373-3000<br>Facsimile: (212) 757-3990<br>bhermann@paulweiss.com<br>aparlen@paulweiss.com<br>jgraham@paulweiss.com<br>anofzinger@paulweiss.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

**Certificate of Service**

    I certify that on October 9, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                */s/ John F. Higgins*
                                                John F. Higgins