## Exhibit A

**Changed-Pages Only Redline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) Case No. 23-90116 (CML) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**ORDER (I) CONDITIONALLY APPROVING THE**
**ADEQUACY OF THE DISCLOSURE STATEMENT SUPPLEMENT,**
**(II) AUTHORIZING CONTINUED SOLICITATION OF THE AMENDED PLAN,**
**AND (III) GRANTING RELATED RELIEF**

**[Related to Docket Nos. 1897, 1977, 1983, [●2499]]**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (a) conditionally approving the Disclosure Statement Supplement as providing adequate information, (b) authorizing continued solicitation of the Amended Plan, and (c) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG.  The Debtors' service address for purposes of these chapter 11 cases is:  c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

6.      The New Form Ballots are approved for solicitation of votes to Holders of Claims in Classes 3, 4, 5, and 6 of the Amended Plan, which Holders are entitled to receive the Supplemental Solicitation Package, the form of which is hereby approved, and cast new ballots to vote on the Amended Plan.

7.      All ballots and opt-out forms must be properly executed, completed, and returned so that they are *actually received* by the Claims Agent by no later than 4:00 p.m. (prevailing Central Time) on November 5, 2024, (the "Voting/Opt-Out Deadline").   The Debtors are authorized to extend the Voting/Opt-Out Deadline in their discretion in accordance with the Solicitation Order.

8.      The notice of Confirmation Hearing, substantially in the form attached hereto as **Exhibit C** (the "Confirmation Hearing Notice"), is approved.  **Cause exists to shorten the deadlines set forth in Bankruptcy Rule 2002(b).**  The Debtors shall cause the Claims Agent to serve the Confirmation Hearing Notice upon (a) all known Holders of Claims against and Interests in the Debtors as of the Record Date, (b) all DIP Lenders (as defined in the Plan), (c) the parties on the Master Service List available on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG, and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002 no later than ~~28~~**25** days before the Voting/Opt-Out Deadline. The Confirmation Hearing Notice and such service thereof shall be deemed good and sufficient notice of the Confirmation Hearing and no further notice need be given.

9.      Objections to final approval of the Disclosure Statement Supplement and confirmation of the Amended Plan, if any, must:  (a) be in writing; (b) conform to the applicable Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of such party's Claim or Interest; (d) state with particularity the basis and

4

nature of any objection to the Amended Plan or the Disclosure Statement Supplement, as applicable; (e) propose a modification to the Amended Plan or the Disclosure Statement Supplement, as applicable, that would resolve such objection (if applicable); and (f) be filed, contemporaneously with a proof of service, with the Court and served so that it is actually received by each of the notice parties identified in the Confirmation Hearing Notice no later than November 5, 2024, at 4:00 p.m., prevailing Central Time **(the "Plan Objection Deadline")**.

10.   Any objections to final approval of the Disclosure Statement Supplement and confirmation of the Amended Plan not timely filed and served in the manner set forth above shall not be considered and shall be overruled.

**11.   The Debtors will mail to non-debtor counterparties to the Debtors' Executory Contracts and Unexpired Leases at least 21 days before the Plan Objection Deadline the Rejection Notices and Cure Notices, notifying them of the forthcoming assumption or rejection of their Executory Contract or Unexpired Lease. Counterparties to Executory Contracts and Unexpired Leases shall have until the Plan Objection Deadline to file and serve an objection to the Debtors' proposed assumption, rejection, or Cure Claim amount in accordance with the procedures set forth in such notice.**

~~11~~**12**.   Briefs in support and replies, if any, to any objection to final approval of the Disclosure Statement Supplement or confirmation of the Amended Plan, as applicable, shall be filed with the Court no later than November 12, 2024.

~~12~~**13**.   The deadline for submission of the certification of votes on the Amended Plan shall be November 12, 2024.

~~13~~**14**.   All other solicitation and voting tabulation procedures previously approved in the Solicitation Order, and not otherwise modified by this Order, remain in effect and binding.

5

14**15**.  The Debtors are authorized to make non-substantive changes to the Disclosure Statement Supplement, the Amended Plan, the Supplemental Solicitation Package, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement Supplement, the Amended Plan, the Supplemental Solicitation Package, and any other related materials prior to their mailing to parties in interest.

15**16**.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

16**17**.  This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Houston, Texas
Dated:  _____

_____
CHRISTOPHER LOPEZ
UNITED STATES BANKRUPTCY JUDGE

On October 2, 2024, the Debtors filed the *Debtors' First Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 2497-1] (as may be amended, supplemented, or otherwise modified from time to time, the "Amended Plan"), **a copy of** which is attached hereto as **Exhibit A**, along with a. **A** redline of the Amended Plan against the Original Plan [Docket No. 2497-2], which is attached hereto as **Exhibit B**.  Among other things, and as described more fully below, the Amended Plan revises the treatment of DIP Claims, First Lien Claims, Junior Funded Debt Claims, and, in certain scenarios, the Go-Forward Trade Claims and the General Unsecured Claims.[2]

Pursuant to section 1127(a) of the Bankruptcy Code, because the Amended Plan has been filed before confirmation, the Amended Plan is now the Debtors' plan and supersedes and replaces all prior chapter 11 plans filed by the Debtors, including the Original Plan.

This supplement to the Disclosure Statement (this "Disclosure Statement Supplement") is being provided to all Holders of Claims and Interests to describe developments since the filing of the Original Plan and Disclosure Statement and the changes to the Original Plan that are incorporated in the Amended Plan.

The following are the major dates and deadlines in connection with confirmation of the Amended Plan and final approval of this Disclosure Statement Supplement:

| **Event** | **Date/Deadline** |
|---|---|
| Plan Supplement Filing **Date**[3] | October 21, 2024 |

---

[2]   In the event of any inconsistency between the description of the Amended Plan set forth in this Disclosure Statement Supplement and the Amended Plan, the terms of the Amended Plan shall govern.

[3]   The**On October 2, 2024, the Debtors filed an initial Plan Supplement attaching a Schedule of Rejected Executory Contracts and Unexpired Leases and a Schedule of Assumed Executory Contracts and Unexpired Leases [Docket No. 2498].  Following the Plan Supplement Filing Date, the** Debtors may file additional Plan Supplements (which may be in multiple installments) on or prior to the Effective Date**.  The Debtors reserve all rights to amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Amended Plan and Second A&R RSA (as defined below)**.

## 2. Modifications to UCC Settlement

As noted in the Disclosure Statement, the DIP Order and the RSA memorialized the terms of a comprehensive settlement among the Debtors, the First Lien Group, the Crossholder Group, and the UCC that resolved the UCC's objections with respect to the DIP Facility and the ~~the Original Plan and~~ provided for, among other things, ~~cash payments to~~ Holders of Allowed General Unsecured Claims ~~in an amount equal to~~ **(and, in the event of a wind down or liquidation of the Debtors' estates, Holders of Allowed Go-Forward Trade Claims) to receive their applicable share of** the lesser of (i) \$13 million and (ii) a dollar amount equal to a 6% recovery on an aggregate basis (the "Unsecured Claim Cash Distribution"), which amounts would be set aside in a reserve (the "Unsecured Claims Reserve") in the event the Debtors proved unable to satisfy all administrative expenses under section 503(b) of the Bankruptcy Code in connection with a ~~wind down~~**chapter 11** plan~~,~~ or if the DIP Agent asserted that a termination event occurred under the DIP Order and exercised any remedies provided under the DIP Order (the "Reserve Funding Triggers").

In light of the above amendments to the DIP Order required by the First Lien Group, as well as the superpriority adequate assurance claims proposed to be granted to the NBA and NHL under the NBA/NHL Motions, the UCC, the Debtors, the First Lien Group, and the Crossholder Group agreed to certain modifications to the UCC Settlement to protect recoveries for unsecured creditors from the risks associated with the Debtors' continued pursuit of a going-concern reorganization. These modifications to the UCC Settlement were incorporated into the DIP Order and the Amended Plan and included, among other things, the following:

- The Unsecured Claims Reserve will be funded in the event of a Wind Down Pivot (as defined in the DIP Order) or the payment of the Additional First Lien Paydown (in addition to the original Reserve Funding Triggers).

- In the case of a winddown or liquidation, the Debtors will not make any payments or plan distributions to the DIP Lenders on account of any (A) paid-in-kind interest under the DIP Facility accruing on or after October 1, 2024, or (B) ~~any~~ Excess DIP Amounts (as defined in the DIP Order) unless and until the Unsecured Claim Cash Distribution has occurred.

- For purposes of determining whether the Reserve Distribution Conditions (as defined in the DIP Order) have been met, any cash interest payments accruing under the DIP Facility on or after October 1, 2024, will be deemed to reduce the outstanding principal amount of DIP Obligations (as defined in the DIP Order) required to be paid to the DIP Lenders prior to making the Unsecured Claim Cash Distribution to unsecured creditors.

In light of the foregoing, the UCC agreed to support the amendments to the DIP Order, and, on September 3, 2024, the Bankruptcy Court entered the DIP Amendment Order.

**E.     Developments with Respect to Amazon**

Since the filing of the Original Plan and Disclosure Statement, the Debtors have been engaged in good faith negotiations with Amazon regarding the terms of a go-forward commercial partnership.  As described in the Disclosure Statement, Amazon had also initially committed to provide the Debtors with $115 million in exit financing in connection with the Original Plan pursuant to the Convertible B Exit Notes subject to certain required conditions and based on facts and assumptions existing at that time, which conditional commitment was documented in the Exit Note Commitment Letter.  Amazon had termination rights under the RSA (which would terminate their obligations under the Exit Note Commitment Letter), including because the Debtors had not obtained confirmation of a chapter 11 plan by August 5, 2024.   During negotiations around amendments to the Original Plan, and following material changes to the Debtors' proposed business plan and capital structure, and given that the conditions to the investment could not be satisfied, Amazon informed the Debtors that they did not expect to provide that investment on the original terms contemplated in January 2024.  In connection with **entry into** the ~~negotiations among the~~**Second A&R** RSA ~~Parties described below~~, and subject to certain conditions (including releases by the RSA Parties and others), Amazon will waive any right it may have to the $4.025 million break fee contemplated by the Exit Note Commitment Letter and previously approved by the Bankruptcy Court, which waiver and releases are memorialized in the Amended Plan.  ~~In addition to ongoing negotiations regarding an amended restructuring support agreement described below,~~ Amazon and the Debtors ~~have remained~~**remain** engaged on the terms of a go-forward commercial agreement.

**F.     Naming Rights Negotiations**

The Debtors are close to reaching agreement with a third party on the terms of an agreement for naming and branding rights with respect to the Debtors' RSNs.  The contemplated agreement will lock in a new naming rights partner for the 2024-2025 NHL and NBA seasons while also providing the Debtors with a long-term naming rights partner if the Debtors are ultimately able to emerge as a going concern.

The naming rights agreement is contemplated to allow the naming rights partner to purchase up to a single-digit percentage of equity in the Reorganized Debtors and earn performance warrants exercisable for up to a like percentage of equity in the Reorganized Debtors.  These equity components will incentivize the naming rights partner to use its best efforts to broaden the Debtors' subscriber base and provide the naming rights partner with an opportunity to co-invest in the Debtors' reorganized business.  The equity components of the contemplated naming rights agreement have been incorporated into the Amended Plan.

**G.     RSA Amendments**

In light of the developments described above, the RSA Parties have been engaged in good faith negotiations regarding revisions to the RSA ~~(in addition to the revisions to~~**and** the Original Plan ~~reflected in the Amended Plan).  Negotiations regarding amendments to the RSA were not finalized by the date the Amended Plan was filed with the Court.  Since the filing of the Amended Plan~~**.  On October 9, 2024**, the RSA Parties ~~have been focused on negotiating and finalizing~~**executed** a second amended and restated restructuring support agreement~~, which is a~~

7

~~critical component to lock in the treatments contemplated by~~ **(the "Second A&R RSA"), which among other things, memorializes the parties' agreements and commitments with respect to support of** the Amended Plan.  **A copy of the Second A&R RSA is attached hereto as Exhibit F.**

### H.    SPV Cash

On September 24, 2024, the Debtors, in consultation with the RSA Parties, caused their non-Debtor affiliate Diamond Sports Finance SPV, LLC to transfer approximately $50 million that it held in a segregated account to an account held by the Debtors.  This transfer was made to streamline the Debtors' bank accounts and cash management system and to bolster liquidity, and the Debtors intend to use that cash to fund the transactions contemplated by the Amended Plan.

## II.    Summary of Changes to the Original Plan

### A.    Overview of Toggle Structure

The Amended Plan provides for a toggle between a going-concern reorganization and an orderly winddown following the completion of the 2024-2025 NBA and NHL seasons.  Whether a going-concern reorganization is ultimately pursued will be determined by the Debtors, with the consent of the Required DIP Commitment Parties, on or before December 16, 2024, and the Debtors will file a notice with the Bankruptcy Court by no later than that date advising parties in interest of the determination.  To the extent a going-concern reorganization is not pursued, the Debtors will reject or otherwise terminate all of their contracts with MLB and its applicable teams effective as of December 31, 2024, well in advance of the 2025 MLB season.

### B.    Revised Plan Treatments

The Amended Plan modifies distributions that will be made to holders of DIP Claims, First Lien Claims, and Junior Funded Debt Claims in a going-concern reorganization as summarized in the table below:

| Claims | Treatment Under Amended Plan |
|---|---|
| **DIP Claims** | DIP Claims will be treated as follows:<br><br>• With respect to the aggregate principal amount of the DIP Claims and Capitalized DIP Interest:  DIP Lenders will receive (x) $270 million in cash, (y) ~~any~~the net Cash proceeds raised from an Acceptable Exit Financing (provided that the Reorganized Debtors have at least $50 million of cash or cash equivalents on their balance sheet after giving effect to the transactions occurring on the Reorganization Effective Date), and (z) ~~up to $200 million in aggregate~~ ~~principal amount of~~the Exit Term Loans.<br><br>• With respect to the DIP MOIC:  DIP Lenders will receive 45% of the New TopCo Equity (subject to dilution by the DIP Commitment Party Investment Option, the Management Incentive Plan, the Naming Rights Equity (if any), and the Exit Facility Equity (if any)).<br><br>• With respect to the DIP Commitment Premium:  DIP Commitment Parties will receive 45% of the New TopCo Equity (subject to dilution by the DIP Commitment Party Investment Option, the Management Incentive Plan, the Naming Rights Equity (if any), and the Exit Facility Equity (if any)).<br><br>• **With respect to the Other DIP Obligations:  The Debtors will pay any other DIP Claims, including any accrued and unpaid interest as of the Plan Effective Date, in Cash; provided that cash payment on account of interest accruing under the DIP Facility on and after October 1, 2024 shall, solely for purposes of determining whether the Reserve Distribution Conditions (as defined in the DIP Order) have been met, be deemed to reduce the outstanding principal amount of DIP Claims required to be distributed to the DIP Lenders prior to distributing funds held in the Unsecured Claims Reserve to holders of Allowed General Unsecured Claims.** |
| **Class 3 First Lien Claims** | Each holder of an Allowed First Lien Claim will receive its *pro rata* share of Cash in an amount equal to $647 million *less* the sum of (i) the AP Reduction Amount; (ii) the amount of the First Lien Paydown; and (iii) the amount of any Additional First Lien Paydown.[5] |
| **Class 4 Junior Funded Debt Claims** | Each holder of an Allowed Junior Funded Debt Claim will receive its *pro rata* share of 10% of the New TopCo Equity (subject to dilution by the DIP Commitment Party Investment Option, the Management Incentive Plan, the Naming Rights Equity (if any), and the Exit Facility Equity (if any)). |

---

[5]   For the avoidance of doubt, this treatment for holders of First Lien Claims is in addition to any Post-Additional First Lien Paydown AP Interest Payments, payable in accordance with the DIP Order, which Post-Additional First Lien Paydown AP Interest Payments that are accrued and unpaid as of the Plan Effective Date (if any) shall be paid on the Plan Effective Date.

In the event an orderly winddown is ultimately pursued, no New TopCo Equity (or any exit debt) will be issued and, following the completion of the 2024-2025 NBA and NHL seasons, the Debtors' cash will be distributed to holders of DIP Claims, Allowed First Lien Claims (to the extent not already paid in full in cash up to the applicable cap), and Allowed General Unsecured Claims, as set forth in the Amended Plan and the DIP Amendment Order.  To the extent any cash remains following the foregoing distributions, such cash will be distributed to holders of Allowed Junior Funded Debt Claims.  In such a scenario, Go-Forward Trade Claims will be treated as General Unsecured Claims.  As noted above, the Amended Plan does not otherwise modify the treatment of General Unsecured Claims.

**C.    Revised Illustrative Class Recoveries**

The following table summarizes:  (i) the treatment of Claims and Interests under the Amended Plan; (ii) which Classes are impaired by the Amended Plan; (iii) which Classes are entitled to vote on the Amended Plan; and (iv) the estimated recoveries for Holders of Claims and Interests. **The classification, treatment, and the projected recoveries of classified Claims are described in summary form below for illustrative purposes only and are subject to material change.  Actual recoveries could differ materially from the estimates in the following table based on, among other things, whether the amount of Claims actually Allowed against the applicable Debtor exceeds (or are less than) the estimates provided below and the ultimate valuation of the Debtors' reorganized business following negotiations with their commercial counterparties.  In such an instance, the recoveries available to the Holders of Claims could be materially different when compared to the estimates provided below.**  To the extent that any inconsistency exists between the summaries contained in this Disclosure Statement Supplement and the Amended Plan, the terms of the Amended Plan shall govern.

| Class | Claim or Interest | Amended Plan Treatment | Entitlement to Vote | Estimated Allowed Claims | Approx. Percentage Recovery Under Amended Plan: Reorganization | Approx. Percentage Recovery Under Amended Plan: Orderly Runoff | Approx. Percentage Recovery in a Chapter 7 Liquidation |
|---|---|---|---|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) | $0 | 100% | 100% | 0% |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) | $650,000 | 100% | 100% | 100% |

| Class | Claim or Interest | Amended Plan Treatment | Entitlement to Vote | Estimated Allowed Claims | Approx. Percentage Recovery Under Amended Plan–: Reorganization | Approx. Percentage Recovery Under Amended Plan–: Orderly Runoff | Approx. Percentage Recovery in a Chapter 7 Liquidation |
|---|---|---|---|---|---|---|---|
| 3 | First Lien Claims | Impaired | Entitled to Vote | $647,000,000[6] | 100% | 100% | 100% |
| 4 | Junior Funded Debt Claims | Impaired | Entitled to Vote | $8,425,611,996 | <1%–1% | 0% | 0% |
| 5 | Go-Forward Trade Claims | Unimpaired / **Impaired** | Not Entitled to Vote (Deemed to Accept) / **Entitled to Vote**[7] | $5,280,000 | 100% | 6%[7] | 0%[8] |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote | $170,020,000[9] | 6% | 6% | 0% |
| 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) | N/A | N/A | N/A | 0% |
| 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) | N/A | N/A | N/A | N/A |

---

[6]   Estimate assumes an Orderly Runoff is not pursued.  The Debtors used $350 million of the proceeds of the DIP Facility to repay a like principal amount of the First Lien Claims at the closing of the DIP Facility on February 28, 2024.

[7]   **In the event the Debtors pursue a reorganization pursuant to the Amended Plan, Holders of Go-Forward Trade Claims will be Unimpaired and will be presumed to accept the Amended Plan.  In the event the Debtors pursue an Orderly Runoff, however, Holders of Go-Forward Trade Claims will be Impaired and receive the same treatment as Holders of Allowed General Unsecured Claims.  Accordingly, Holders of Go-Forward Trade Claims will be provided provisional ballots to cast votes on the Amended Plan, which votes will only be counted in the event the Debtors pursue an Orderly Runoff.**

[7]   ~~In the event~~ ~~of~~ an Orderly Runoff, Go-Forward Trade Claims will be ~~treated as~~ General Unsecured Claims.

[8]   Go-Forward Trade Claims are treated as General Unsecured Claims for purposes of this analysis.

[9]   Estimate assumes an Orderly Runoff is not pursued.

Holder must submit a new ballot.  If multiple ballots are received from the same Holder with respect to the same Claim prior to the Voting Deadline, the last properly executed ballot timely received before the Voting Deadline will be deemed to reflect that voter's intent and will supersede and revoke any prior ballot.  Holders who previously submitted a ballot for the Original Plan and do not intend to change their vote for the Amended Plan do not need to submit a new ballot, and the prior submitted ballot will remain valid in compliance with section 1127(d) of the Bankruptcy Code.

Parties may request new or additional ballots at no charge by: (i) accessing the Debtors' restructuring website at https://cases.ra.kroll.com/DSG; (ii) writing to Diamond Sports Group, LLC Ballots Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232; or (iii) calling or emailing the Claims Agent at:

U.S./Canada (toll-free): (877) 720-6635
International (toll): +1 (646) 440-4763

Email: DSGInfo@ra.kroll.com (with "DSG Solicitation Inquiry" in the subject line)

*       *       *       *       *

Copies of the Amended Plan and the Disclosure Statement (and all exhibits thereto) and all other documents filed in these chapter 11 cases may be obtained free of charge by: (a) visiting the website maintained by the Claims Agent, at https://cases.ra.kroll.com/DSG; (b) calling (877) 720-6635 (U.S./Canada Toll-Free) or +1 (646) 440-4763 (International); or (c) emailing DSGinfo@ra.kroll.com (with "DSG Solicitation Inquiry" in the subject line). Copies may also be obtained for a fee via PACER at http://www.txs.uscourts.gov.

**[*Remainder of page intentionally left blank*]**

Dated:    October 29, 2024                **DIAMOND SPORTS GROUP, LLC** (for itself
                                          and on behalf of each of its subsidiary debtors as
                                          debtors and debtors in possession)

                                          By:  */s/ David Preschlack*
                                                Name:  David Preschlack
                                                Title:   Chief Executive Officer

## Exhibit A

**Amended Plan**

[Filed at Docket No. ~~2497-1~~**2521-1**]

## **Exhibit B**

### **Redline of Amended Plan**

[Filed at Docket No. ~~2497-2~~**2521-3**]

The Debtors do not, as a matter of course, publish or disclose their financial projections. Accordingly, the Debtors disclaim any obligation to, (a) furnish updated Financial Projections to Holders of Claims at any time in the future, (b) include updated information in any documents that may be required to be filed with the Bankruptcy Court or the Securities and Exchange Commission, or (c) otherwise make updated information or Financial Projections publicly available.

**Summary of General Assumptions**

The Financial Projections reflect numerous assumptions concerning the anticipated future performance of the Reorganized Debtors, some of which may not materialize, including, without limitation, assumptions concerning: (a) the timing of confirmation and consummation of the Amended Plan in accordance with its terms; (b) the anticipated future performance of the Reorganized Debtors, including, without limitation, the Reorganized Debtors' ability to maintain or increase revenue and gross margins, control future operating expenses, or make necessary capital expenditures; (c) general business and economic conditions; (d) overall industry performance and trends, including related to subscriber "churn" in the traditional linear cable and satellite business; and (e) the Reorganized Debtors' ability to grow their DTC product, including through ~~their~~**a potential** commercial arrangement with Amazon. The Financial Projections assume that the Debtors' will enter into an exclusive "channels" arrangement with a strategic partner with respect to the Debtors' DTC offering. The Financial Projections also make assumptions regarding the Debtors' ongoing negotiations with MLB, MLB teams, naming rights partners, and DTC distribution partners. As noted above, the Financial Projections assume that a Wind-Down Toggle does not occur.

The Financial Projections assume that the Amended Plan will be consummated on December 1, 2024, and the Debtors will emerge from chapter 11 at that time, although there can be no assurance as to when the Effective Date will actually occur, and that the Reorganized Debtors will continue to conduct their post-emergence operations substantially similar to their current business. The Financial Projections have been prepared using accounting policies that are consistent with those applied in the Debtors' historical financial statements. The Financial Projections, however, are unaudited and do not purport to represent financial statements prepared in accordance with accounting principles generally accepted in the United States, and are not intended to fully reconcile to the consolidated financial statements prepared by the Debtors. The Financial Projections assume working capital accounts, including accounts receivable, inventories, prepaid expenses, accounts payable, and accrued expenses continue to perform in line with historical activity.

Revenues include projected receipts from MVPDs and vMVPDs, the Debtors' DTC business, ad sales, and the naming rights deal. As described in the Disclosure Statement Supplement and the Disclosure Statement, the Debtors have successfully reached renewals of their distribution agreements with Charter, DIRECTV, Comcast, Cox, and others regarding longer-term distribution deals. The Financial Projections reflect, among other things, the terms of these renewed agreements. With respect to linear revenues, the Financial Projections assume certain customer churn rates over the Projection Period. There is no guaranty that the assumptions made in the Financial Projections in connection with the Debtors' go-forward

**Exhibit F**

**Second A&R RSA**

**[Filed at Docket No. 2519-1]**

> **accept or reject the Amended Plan shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan. By objecting to or electing to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a Released Party in connection therewith.**

**Article VIII.D of the Amended Plan contains the following Third-Party Release:**

**Except as otherwise expressly set forth in the Amended Plan (including pursuant to Article IV.~~W~~X) or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party (other than the Debtors, the Post-Effective Date Debtors, and their Estates), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Post-Effective Date Debtor, its Estate, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtors, any investment in any Debtor by any Released Party, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Amended Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any other benefit provided by any Debtor to any Released Party, cash management arrangements, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the Prepetition Credit Agreements, the Prepetition Notes Indentures, the formulation, preparation, dissemination, negotiation, or Filing of the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or**

other agreement contemplated by the Amended Plan or the reliance by any Released Party on the Amended Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Plan Transaction before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the solicitation of votes on the Amended Plan, the pursuit of Confirmation of the Amended Plan, the pursuit of Consummation, the administration and implementation of the Amended Plan, including the issuance or distribution of debt and/or securities pursuant to the Amended Plan, or the distribution of property under the Amended Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities primarily arising out of any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.   Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Amended Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Amended Plan, including the New A/R Facility Credit Agreement, the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, any Plan Supplement document, or any claim, obligation, or right arising under or preserved pursuant to the Amended Plan or the Confirmation Order, including those rights which are expressly preserved pursuant to Article IV.~~W~~X, or (2) any Sinclair Party from any claim or Cause of Action asserted or assertable by any JPM Party or any of its Affiliates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Amended Plan, and, further, shall constitute the Bankruptcy Court's finding that this Third-Party Release is:  (1) consensual; (2) essential to the Confirmation of the Amended Plan; (3) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Plan Transactions and implementing the Amended Plan; (4) a good faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the

**IMPORTANT NOTICE**
**REGARDING TREATMENT FOR CLASS 4**

Class 4 consists of any Junior Funded Debt Claims.

As described in more detail in the Disclosure Statement Supplement, and Amended Plan, if the Amended Plan is confirmed and the Effective Date occurs, each Holder of an Allowed Junior Funded Debt Claim (or its designee(s) as designated pursuant to and in accordance with the Distribution Designation Procedures) shall receive its *pro rata* share of:

(i)     if the Wind-Down Toggle has not occurred, the Junior Creditor Equity; and

(ii)    ~~If~~**if** the Wind-Down Toggle has occurred, the net proceeds of the Wind Down and the Sinclair-Related Litigation Proceeds ~~(excluding proceeds used to fund the Unsecured Claims Reserve)~~ remaining after (w) payment of the First Lien Claims in Cash in an amount equal to the Wind Down Claim Cap, (x) the repayment of the DIP Claims in full in Cash, (y) payment of the Unsecured Claim Cash Distribution, and (z) payment of all Administrative Expense Claims, Other Secured Claims, and Other Priority Claims.

**Your vote to accept or reject the Amended Plan will be applied to all Second Lien Revolving Loan Claims, Second Lien Term Loan Claims, or Third Lien Term Loan Claims of which you are a Holder.**

**Your vote to accept or reject the Amended Plan will be applied to each Debtor against which you hold a Second Lien Revolving Loan Claims, Second Lien Term Loan Claims, and Third Lien Term Loan Claim.**

**PLEASE READ ARTICLE II.B OF THE DISCLOSURE STATEMENT SUPPLEMENT, AND ARTICLE III OF THE AMENDED PLAN FOR MORE DETAILS.**

[*Remainder of page intentionally left blank*]

**accept or reject the Amended Plan shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan. By objecting to or electing to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a Released Party in connection therewith.**

<u>**Article VIII.D of the Amended Plan contains the following Third-Party Release:**</u>

**Except as otherwise expressly set forth in the Amended Plan (including pursuant to Article IV.~~W~~X) or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party (other than the Debtors, the Post-Effective Date Debtors, and their Estates), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Post-Effective Date Debtor, its Estate, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtors, any investment in any Debtor by any Released Party, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Amended Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any other benefit provided by any Debtor to any Released Party, cash management arrangements, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the Prepetition Credit Agreements, the Prepetition Notes Indentures, the formulation, preparation, dissemination, negotiation, or Filing of the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or**

other agreement contemplated by the Amended Plan or the reliance by any Released Party on the Amended Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Plan Transaction before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the solicitation of votes on the Amended Plan, the pursuit of Confirmation of the Amended Plan, the pursuit of Consummation, the administration and implementation of the Amended Plan, including the issuance or distribution of debt and/or securities pursuant to the Amended Plan, or the distribution of property under the Amended Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities primarily arising out of any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.   Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Amended Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Amended Plan, including the New A/R Facility Credit Agreement, the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, any Plan Supplement document, or any claim, obligation, or right arising under or preserved pursuant to the Amended Plan or the Confirmation Order, including those rights which are expressly preserved pursuant to **Article IV.~~W~~X,** or (2) any Sinclair Party from any claim or Cause of Action asserted or assertable by any JPM Party or any of its Affiliates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Amended Plan, and, further, shall constitute the Bankruptcy Court's finding that this Third-Party Release is:  (1) consensual; (2) essential to the Confirmation of the Amended Plan; (3) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Plan Transactions and implementing the Amended Plan; (4) a good faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the

**IMPORTANT NOTICE**
**REGARDING TREATMENT FOR CLASS 4**

Class 4 consists of any Junior Funded Debt Claims.

As described in more detail in the Disclosure Statement Supplement and Amended Plan, if the Amended Plan is confirmed and the Effective Date occurs, each Holder of an Allowed Junior Funded Debt Claim (or its designee(s) as designated pursuant to and in accordance with the Distribution Designation Procedures) shall receive its *pro rata* share of:

(i)     if the Wind Down Toggle has not occurred, the Junior Creditor Equity; and

(ii)    if the Wind Down Toggle has occurred, the net proceeds of the Wind Down and the Sinclair-Related Litigation Proceeds (excluding proceeds used to fund the Unsecured Claims Reserve) remaining after (w) payment of the First Lien Claims in Cash in an amount equal to the Wind Down Claim Cap, (x) the repayment of the DIP Claims in full in Cash, (y) payment of the Unsecured Claim Cash Distribution, and (z) payment of all Administrative Expense Claims, Other Secured Claims, and Other Priority Claims.

**This Master Ballot pertains only to the Second Lien Notes, Third Lien Notes, or Unsecured Notes for which a box is checked on <u>Exhibit A</u> hereto.**

**The votes on this Master Ballot will be applied to each Debtor against which the applicable Beneficial Holders have a Claim on account of the Second Lien Notes, Third Lien Notes, or Unsecured Notes for which a box is checked on <u>Exhibit A</u> hereto.**

**PLEASE READ ARTICLE II.B OF THE DISCLOSURE STATEMENT SUPPLEMENT, AND ARTICLE III OF THE AMENDED PLAN FOR MORE DETAILS.**

[*Remainder of page intentionally left blank*]

**IMPORTANT NOTICE**
**REGARDING TREATMENT FOR CLASS 4**

Class 4 consists of any Junior Funded Debt Claims.

As described in more detail in the Disclosure Statement Supplement and Amended Plan, if the Amended Plan is confirmed and the Effective Date occurs, each Holder of an Allowed Junior Funded Debt Claim (or its designee(s) as designated pursuant to and in accordance with the Distribution Designation Procedures) shall receive its *pro rata* share of:

(i) if the Wind-Down Toggle has not occurred, the Junior Creditor Equity; and

(ii) if the Wind-Down Toggle has occurred, the net proceeds of the Wind Down and the Sinclair-Related Litigation Proceeds ~~(excluding proceeds used to fund the Unsecured Claims Reserve)~~ remaining after (w) payment of the First Lien Claims in Cash in an amount equal to the Wind Down Claim Cap, (x) the repayment of the DIP Claims in full in Cash, (y) payment of the Unsecured Claim Cash Distribution, and (z) payment of all Administrative Expense Claims, Other Secured Claims, and Other Priority Claims.

**Your vote to accept or reject the Amended Plan will be applied to each Debtor against which you hold a Second Lien Notes Claim, a Third Lien Notes Claim, or an Unsecured Notes Claim.**

**PLEASE READ ARTICLE II.B OF THE DISCLOSURE STATEMENT SUPPLEMENT, AND ARTICLE III OF THE AMENDED PLAN FOR MORE DETAILS.**

[*Remainder of page intentionally left blank*]

accept or reject the Amended Plan shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan.  By objecting to or electing to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a Released Party in connection therewith.

**Article VIII.D of the Amended Plan contains the following Third-Party Release:**

Except as otherwise expressly set forth in the Amended Plan (including pursuant to Article IV.~~W~~X) or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party (other than the Debtors, the Post-Effective Date Debtors, and their Estates), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Post-Effective Date Debtor, its Estate, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtors, any investment in any Debtor by any Released Party, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Amended Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any other benefit provided by any Debtor to any Released Party, cash management arrangements, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the Prepetition Credit Agreements, the Prepetition Notes Indentures, the formulation, preparation, dissemination, negotiation, or Filing of the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or

other agreement contemplated by the Amended Plan or the reliance by any Released Party
on the Amended Plan or the Confirmation Order in lieu of such legal opinion) relating to
any of the foregoing, created or entered into in connection with the Prior Restructuring
Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement,
the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the
Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the
Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New
A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt,
the Plan Supplement), any other Definitive Document, or any Plan Transaction before or
during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance
claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the
Filing of the Chapter 11 Cases, the solicitation of votes on the Amended Plan, the pursuit of
Confirmation of the Amended Plan, the pursuit of Consummation, the administration and
implementation of the Amended Plan, including the issuance or distribution of debt and/or
securities pursuant to the Amended Plan, or the distribution of property under the
Amended Plan or any other related agreement, or upon any other act or omission,
transaction, agreement, event, or other occurrence related or relating to any of the
foregoing taking place on or before the Effective Date, other than claims or liabilities
primarily arising out of any act or omission of a Released Party that constitutes actual
fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a
Final Order of a court of competent jurisdiction.  Notwithstanding anything to the
contrary in the foregoing, the releases set forth above do not release (1) any post-Effective
Date obligations of any party or Entity under the Amended Plan, the Confirmation Order,
any Restructuring Transaction, or any document, instrument, or agreement (including
those set forth in the Plan Supplement) executed to implement the Amended Plan,
including the New A/R Facility Credit Agreement, the Prior Restructuring Support
Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA
Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair
Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial
Agreement, the Naming Rights Agreement, any Plan Supplement document, or any claim,
obligation, or right arising under or preserved pursuant to the Amended Plan or the
Confirmation Order, including those rights which are expressly preserved pursuant to
**Article IV.~~W~~X**, or (2) any Sinclair Party from any claim or Cause of Action asserted or
assertable by any JPM Party or any of its Affiliates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval,
pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by
reference each of the related provisions and definitions contained in the Amended Plan,
and, further, shall constitute the Bankruptcy Court's finding that this Third-Party Release
is:  (1) consensual; (2) essential to the Confirmation of the Amended Plan; (3) given in
exchange for the good and valuable consideration provided by each of the Released Parties,
including the Released Parties' substantial contributions to facilitating the Plan
Transactions and implementing the Amended Plan; (4) a good faith settlement and
compromise of the claims and Causes of Action released by the Third-Party Release; (5) in
the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7)
given and made after due notice and opportunity for hearing; and (8) a bar to any of the

> **accept or reject the Amended Plan shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan.  By objecting to or electing to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a Released Party in connection therewith.**

**<u>Article VIII.D of the Amended Plan contains the following Third-Party Release</u>:**

**Except as otherwise expressly set forth in the Amended Plan (including pursuant to Article IV.~~W~~X) or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party (other than the Debtors, the Post-Effective Date Debtors, and their Estates), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Post-Effective Date Debtor, its Estate, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtors, any investment in any Debtor by any Released Party, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Amended Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any other benefit provided by any Debtor to any Released Party, cash management arrangements, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the Prepetition Credit Agreements, the Prepetition Notes Indentures, the formulation, preparation, dissemination, negotiation, or Filing of the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or**

other agreement contemplated by the Amended Plan or the reliance by any Released Party on the Amended Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Plan Transaction before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the solicitation of votes on the Amended Plan, the pursuit of Confirmation of the Amended Plan, the pursuit of Consummation, the administration and implementation of the Amended Plan, including the issuance or distribution of debt and/or securities pursuant to the Amended Plan, or the distribution of property under the Amended Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities primarily arising out of any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Amended Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Amended Plan, including the New A/R Facility Credit Agreement, the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, any Plan Supplement document, or any claim, obligation, or right arising under or preserved pursuant to the Amended Plan or the Confirmation Order, including those rights which are expressly preserved pursuant to Article IV.~~W~~X, or (2) any Sinclair Party from any claim or Cause of Action asserted or assertable by any JPM Party or any of its Affiliates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Amended Plan, and, further, shall constitute the Bankruptcy Court's finding that this Third-Party Release is:  (1) consensual; (2) essential to the Confirmation of the Amended Plan; (3) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Plan Transactions and implementing the Amended Plan; (4) a good faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the

> **accept or reject the Amended Plan shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan.  By objecting to or electing to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a Released Party in connection therewith.**

<u>**Article VIII.D of the Amended Plan contains the following Third-Party Release:**</u>

**Except as otherwise expressly set forth in the Amended Plan (including pursuant to Article IV.~~W~~X) or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party (other than the Debtors, the Post-Effective Date Debtors, and their Estates), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Post-Effective Date Debtor, its Estate, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtors, any investment in any Debtor by any Released Party, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Amended Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any other benefit provided by any Debtor to any Released Party, cash management arrangements, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the Prepetition Credit Agreements, the Prepetition Notes Indentures, the formulation, preparation, dissemination, negotiation, or Filing of the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or**

other agreement contemplated by the Amended Plan or the reliance by any Released Party on the Amended Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Plan Transaction before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the solicitation of votes on the Amended Plan, the pursuit of Confirmation of the Amended Plan, the pursuit of Consummation, the administration and implementation of the Amended Plan, including the issuance or distribution of debt and/or securities pursuant to the Amended Plan, or the distribution of property under the Amended Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities primarily arising out of any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.   Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Amended Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Amended Plan, including the New A/R Facility Credit Agreement, the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, any Plan Supplement document, or any claim, obligation, or right arising under or preserved pursuant to the Amended Plan or the Confirmation Order, including those rights which are expressly preserved pursuant to **Article IV.~~W~~X**, or (2) any Sinclair Party from any claim or Cause of Action asserted or assertable by any JPM Party or any of its Affiliates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Amended Plan, and, further, shall constitute the Bankruptcy Court's finding that this Third-Party Release is:  (1) consensual; (2) essential to the Confirmation of the Amended Plan; (3) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Plan Transactions and implementing the Amended Plan; (4) a good faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the

---

If you have questions about this Confirmation Hearing Notice, please contact
Kroll Restructuring Administration LLC
**Telephone**:  (877) 720-6635 (U.S./Canada Toll-Free) or +1 (646) 440-4763 (International)
**Email**:  DSGinfo@ra.kroll.com (with "DSG Solicitation Inquiry" in the subject line)
**Website**:  https://cases.ra.kroll.com/DSG

---

The following chart summarizes the treatment provided by the Amended Plan to each class of Claims against and Interests in the Debtors, and indicates the voting status of each class:

| Class | Claim or Interest | Amended Plan Treatment | Entitlement to Vote | Estimated Allowed Claims | Approx. Percentage Recovery Under Amended Plan—: Reorganization | Approx. Percentage Recovery Under Amended Plan—: Orderly Runoff | Approx. Percentage Recovery in a Chapter 7 Liquidation |
|---|---|---|---|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) | $0 | 100% | 100% | 0% |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) | $650,000 | 100% | 100% | 100% |
| 3 | First Lien Claims | Impaired | Entitled to Vote | $647,000,000[4] | 100% | 100% | 100% |
| 4 | Junior Funded Debt Claims | Impaired | Entitled to Vote | $8,425,611,996 | <1%–1% | 0% | 0% |

---

[4]   Estimate assumes an Orderly Runoff is not pursued.  The Debtors used $350 million of the proceeds of the DIP Facility to repay a like principal amount of the First Lien Claims at the closing of the DIP Facility on February 28, 2024.

| Class | Claim or Interest | Amended Plan Treatment | Entitlement to Vote | Estimated Allowed Claims | Approx. Percentage Recovery Under Amended Plan—: Reorganization | Approx. Percentage Recovery Under Amended Plan—: Orderly Runoff | Approx. Percentage Recovery in a Chapter 7 Liquidation |
|---|---|---|---|---|---|---|---|
| 5 | Go-Forward Trade Claims | Unimpaired / **Impaired** | Not Entitled to Vote (Deemed to Accept) / **Entitled to Vote[5]** | $5,280,000 | 100% | 6%[‡] | 0%[6] |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote | $170,020,000[7] | 6% | 6% | 0% |
| 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) | N/A | N/A | N/A | 0% |
| 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) | N/A | N/A | N/A | N/A |
| 9 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) | N/A | 0% | 0% | 0% |

### Non-Voting Status of Holders of Certain Claims and Interests

As set forth above, certain Holders of Claims and Interests are **not** entitled to vote on the Amended Plan.  As a result, such parties will not receive any Ballots or other related solicitation materials to vote on the Amended Plan.  Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and, so long as the Wind-Down Toggle has not occurred, Class

---

[5]   **In the event the Debtors pursue a reorganization pursuant to the Amended Plan, Holders of Go-Forward Trade Claims will be Unimpaired and will be presumed to accept the Amended Plan.  In the event the Debtors pursue an Orderly Runoff, however, Holders of Go-Forward Trade Claims will be Impaired and receive the same treatment as Holders of Allowed General Unsecured Claims.  Accordingly, Holders of Go-Forward Trade Claims will be provided provisional ballots to cast votes on the Amended Plan, which votes will only be counted in the event the Debtors pursue an Orderly Runoff.**

[‡]   In the event of an Orderly Runoff, Go-Forward Trade Claims will be treated as General Unsecured Claims.

[6]   Go-Forward Trade Claims are treated as General Unsecured Claims for purposes of this analysis.

[7]   Estimate assumes an Orderly Runoff is not pursued.

4

pursuant to the Amended Plan or the Confirmation Order, including those rights which are expressly preserved pursuant to <u>Article IV.</u><s>W</s><u>X</u>.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Amended Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Plan Transactions and implementing the Amended Plan; (2) a good faith settlement and compromise of the claims and Causes of Action released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Post-Effective Date Debtors, or the Debtors' Estates asserting any claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D          <u>Third-Party Release</u>

Except as otherwise expressly set forth in the Amended Plan (including pursuant to <u>Article IV.</u><s>W</s><u>X</u>) or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party (other than the Debtors, the Post-Effective Date Debtors, and their Estates), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Post-Effective Date Debtor, its Estate, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtors, any investment in any Debtor by any Released Party, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Amended Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any other benefit provided by any Debtor to any Released Party, cash management arrangements, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the Prepetition Credit

Agreements, the Prepetition Notes Indentures, the formulation, preparation, dissemination, negotiation, or Filing of the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Amended Plan or the reliance by any Released Party on the Amended Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Plan Transaction before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the solicitation of votes on the Amended Plan, the pursuit of Confirmation of the Amended Plan, the pursuit of Consummation, the administration and implementation of the Amended Plan, including the issuance or distribution of debt and/or securities pursuant to the Amended Plan, or the distribution of property under the Amended Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities primarily arising out of any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Amended Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Amended Plan, including the New A/R Facility Credit Agreement, the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, any Plan Supplement document, or any claim, obligation, or right arising under or preserved pursuant to the Amended Plan or the Confirmation Order, including those rights which are expressly preserved pursuant to **Article IV.~~W~~X**, or (2) any Sinclair Party from any claim or Cause of Action asserted or assertable by any JPM Party or any of its Affiliates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by

held directly or indirectly), predecessors, successors, assigns, subsidiaries, participants, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, employees, agents, advisory board members, investment fund advisors or managers, investment managers, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that the following Persons and Entities shall not be Releasing Parties: (i) a Person or Entity that either (A) elects to opt out of the releases contained in the Amended Plan or (B) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Amended Plan that is not resolved before entry of the Confirmation Order; (ii) other than (A) non-Debtor Diamond Sports Finance SPV, LLC and the New A/R Facility Borrower, (B) any Debtor that is a member or equity holder (regardless of whether such interests are held directly or indirectly) in a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, and (C) any members, directors, managers, officers, employees, or agents appointed by any Debtor at a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, any other Person or Entity affiliated with a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date and any non-Debtor Affiliates thereof; or (iii) Affiliates of JPMorgan Chase & Co. other than the JPM Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE AMENDED PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS CONFIRMATION HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

**[*Remainder of page intentionally left blank*]**