United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 09, 2024

Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) Case No. 23-90116 (CML) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## ORDER (I) CONDITIONALLY APPROVING THE
## ADEQUACY OF THE DISCLOSURE STATEMENT SUPPLEMENT,
## (II) AUTHORIZING CONTINUED SOLICITATION OF THE AMENDED PLAN,
## AND (III) GRANTING RELATED RELIEF
### [Related to Docket Nos. 1897, 1977, 1983, 2499]

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (a) conditionally approving the Disclosure Statement Supplement as providing adequate information, (b) authorizing continued solicitation of the Amended Plan, and (c) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors'

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Disclosure Statement Supplement is conditionally approved as containing adequate information within the meaning of sections 1125 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3017.

2.      The Debtors are authorized to distribute the Disclosure Statement Supplement and Supplemental Solicitation Packages[3] to solicit votes or provide the opportunity to modify votes, as applicable, on, and pursue confirmation of, the Amended Plan.  To the extent not withdrawn, settled, or otherwise resolved, any objections to the conditional approval of the Disclosure Statement Supplement are hereby overruled.

---

[3]   The Amended Plan, Disclosure Statement Supplement, and Supplemental Solicitation Order (without exhibits) shall be provided in hard copy (i.e., paper format) or electronic format on a USB flash drive at the Debtors' option. Supplemental Solicitation Package materials provided in electronic format shall be available in hard copy, free of charge, upon request to the Claims Agent.

3. The following dates and deadlines are approved:

| **Event** | **Date/Deadline** |
|---|---|
| Plan Supplement Filing[4] | October 21, 2024 |
| Voting/Opt-Out Deadline<br><br>Amended Plan and Disclosure Statement Supplement Objection Deadline | November 5, 2024, at 4:00 p.m. (prevailing Central Time) |
| Deadline to File Voting Report<br><br>Confirmation Brief and Reply Deadline | November 12, 2024 |
| Hearing on Confirmation of the Amended Plan and Final Approval of the Disclosure Statement Supplement | November 14, 2024, at 9:00 a.m. (prevailing Central Time)<br><br>November 15, 2024, at 9:00 a.m. (prevailing Central Time) (if necessary) |

4. The hearing to consider final approval of the Disclosure Statement Supplement and confirmation of the Amended Plan (the "Confirmation Hearing") will begin on November 14, 2024, at 9:00 a.m., prevailing Central Time, before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of Texas. If necessary, the Confirmation Hearing will be continued on November 15, 2024, at 9:00 a.m., prevailing Central Time. Any further dates for the Confirmation Hearing will be scheduled to the extent necessary.

5. The solicitation materials to be transmitted to Holders of Claims in the Classes entitled to vote on the Amended Plan shall include the following: (a) the Amended Plan, including a redline identifying the Plan Modifications; (b) the Disclosure Statement Supplement; (c) this Order (without exhibits), which will provide notice of the Confirmation Hearing and the deadlines

---

[4] The Debtors may file additional Plan Supplements (which may be in multiple installments) on or prior to the Effective Date.

to submit ballots and file objections, if any, to the Amended Plan; (d) the applicable New Form Ballot for Holders of Claims in each of the voting Classes; and (e) a pre-addressed postage prepaid return envelope.

6.     The New Form Ballots are approved for solicitation of votes to Holders of Claims in Classes 3, 4, 5, and 6 of the Amended Plan, which Holders are entitled to receive the Supplemental Solicitation Package, the form of which is hereby approved, and cast new ballots to vote on the Amended Plan.

7.     All ballots and opt-out forms must be properly executed, completed, and returned so that they are *actually received* by the Claims Agent by no later than 4:00 p.m. (prevailing Central Time) on November 5, 2024, (the "Voting/Opt-Out Deadline").   The Debtors are authorized to extend the Voting/Opt-Out Deadline in their discretion in accordance with the Solicitation Order.

8.     The notice of Confirmation Hearing, substantially in the form attached hereto as **Exhibit C** (the "Confirmation Hearing Notice"), is approved.  Cause exists to shorten the deadlines set forth in Bankruptcy Rule 2002(b).  The Debtors shall cause the Claims Agent to serve the Confirmation Hearing Notice upon (a) all known Holders of Claims against and Interests in the Debtors as of the Record Date, (b) all DIP Lenders (as defined in the Plan), (c) the parties on the Master Service List available on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG, and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002 no later than 25 days before the Voting/Opt-Out Deadline.  The Confirmation Hearing Notice and such service thereof shall be deemed good and sufficient notice of the Confirmation Hearing and no further notice need be given.

9. Objections to final approval of the Disclosure Statement Supplement and confirmation of the Amended Plan, if any, must: (a) be in writing; (b) conform to the applicable Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of such party's Claim or Interest; (d) state with particularity the basis and nature of any objection to the Amended Plan or the Disclosure Statement Supplement, as applicable; (e) propose a modification to the Amended Plan or the Disclosure Statement Supplement, as applicable, that would resolve such objection (if applicable); and (f) be filed, contemporaneously with a proof of service, with the Court and served so that it is actually received by each of the notice parties identified in the Confirmation Hearing Notice no later than November 5, 2024, at 4:00 p.m., prevailing Central Time (the "Plan Objection Deadline").

10. Any objections to final approval of the Disclosure Statement Supplement and confirmation of the Amended Plan not timely filed and served in the manner set forth above shall not be considered and shall be overruled.

11. The Debtors will mail to non-debtor counterparties to the Debtors' Executory Contracts and Unexpired Leases at least 21 days before the Plan Objection Deadline the Rejection Notices and Cure Notices, notifying them of the forthcoming assumption or rejection of their Executory Contract or Unexpired Lease. Counterparties to Executory Contracts and Unexpired Leases shall have until the Plan Objection Deadline to file and serve an objection to the Debtors' proposed assumption, rejection, or Cure Claim amount in accordance with the procedures set forth in such notice.

12. Briefs in support and replies, if any, to any objection to final approval of the Disclosure Statement Supplement or confirmation of the Amended Plan, as applicable, shall be filed with the Court no later than November 12, 2024.

13.     The deadline for submission of the certification of votes on the Amended Plan shall be November 12, 2024.

14.     All other solicitation and voting tabulation procedures previously approved in the Solicitation Order, and not otherwise modified by this Order, remain in effect and binding.

15.     The Debtors are authorized to make non-substantive changes to the Disclosure Statement Supplement, the Amended Plan, the Supplemental Solicitation Package, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement Supplement, the Amended Plan, the Supplemental Solicitation Package, and any other related materials prior to their mailing to parties in interest.

16.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

17.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed:  October 09, 2024

_____

Christopher Lopez

United States Bankruptcy Judge

## Exhibit A

**Disclosure Statement Supplement**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) | Case No. 23-90116 (CML) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DISCLOSURE STATEMENT SUPPLEMENT FOR THE DEBTORS'
FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**

**PLEASE TAKE NOTICE THAT:**

On March 14 and 15, 2023 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

On April 17, 2024, the Bankruptcy Court entered an order approving the Debtors' disclosure statement for the Debtors' proposed chapter 11 plan [Docket No. 1977] (the "Disclosure Statement Order"). On the same day, the Debtors filed the solicitation versions of the *Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 1982] (the "Original Plan") and the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 1983] (the "Disclosure Statement") and commenced solicitation of acceptances and rejections of the Original Plan. Capitalized terms used but not defined herein have the meaning ascribed to them in the Disclosure Statement or the Amended Plan (as defined herein), as applicable.

As discussed in the Disclosure Statement and as described more fully herein, the Debtors have been engaged in discussions with key stakeholders, including renegotiating and/or renewing agreements with the NHL, the NBA, and MLB and their applicable respective teams, the Debtors' major MVPDs, including DIRECTV, Charter, Comcast, and Cox, and their major vMVPDs, such as FuboTV. Since entry of the Disclosure Statement Order, the Debtors have entered into new or renewed agreements with each of the NHL, NBA, DIRECTV, Cox, Charter, FuboTV, and Comcast. The Debtors are also close to reaching agreement with a third party on a new naming rights and branding agreement. These agreements have resulted in updates to the Debtors' business plan, which in turn have resulted in changes to the Debtors' reorganization plan.

On October 2, 2024, the Debtors filed the *Debtors' First Amended Joint Chapter 11 Plan of Reorganization* (as may be amended, supplemented, or otherwise modified from time to time,

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is:  c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

the "Amended Plan"), a copy of which is attached hereto as **Exhibit A**.  A redline of the Amended Plan against the Original Plan is attached hereto as **Exhibit B**.  Among other things, and as described more fully below, the Amended Plan revises the treatment of DIP Claims, First Lien Claims, Junior Funded Debt Claims, and, in certain scenarios, the Go-Forward Trade Claims and the General Unsecured Claims.[2]

Pursuant to section 1127(a) of the Bankruptcy Code, because the Amended Plan has been filed before confirmation, the Amended Plan is now the Debtors' plan and supersedes and replaces all prior chapter 11 plans filed by the Debtors, including the Original Plan.

This supplement to the Disclosure Statement (this "Disclosure Statement Supplement") is being provided to all Holders of Claims and Interests to describe developments since the filing of the Original Plan and Disclosure Statement and the changes to the Original Plan that are incorporated in the Amended Plan.

The following are the major dates and deadlines in connection with confirmation of the Amended Plan and final approval of this Disclosure Statement Supplement:

| **Event** | **Date/Deadline** |
|---|---|
| Plan Supplement Filing Date[3] | October 21, 2024 |
| Voting/Opt-Out Deadline<br>Amended Plan and Disclosure Statement Supplement Objection Deadline | November 5, 2024, at 4:00 p.m. (prevailing Central Time) |
| Deadline to File Voting Report<br>Confirmation Brief and Reply Deadline | November 12, 2024 |
| Hearing on Confirmation of the Amended Plan and Final Approval of the Disclosure Statement Supplement | November 14, 2024, at 9:00 a.m. (prevailing Central Time)<br>November 15, 2024, at 9:00 a.m. (prevailing Central Time) (if necessary) |

---

[2]   In the event of any inconsistency between the description of the Amended Plan set forth in this Disclosure Statement Supplement and the Amended Plan, the terms of the Amended Plan shall govern.

[3]   On October 2, 2024, the Debtors filed an initial Plan Supplement attaching a Schedule of Rejected Executory Contracts and Unexpired Leases and a Schedule of Assumed Executory Contracts and Unexpired Leases [Docket No. 2498].  Following the Plan Supplement Filing Date, the Debtors may file additional Plan Supplements (which may be in multiple installments) on or prior to the Effective Date.  The Debtors reserve all rights to amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Amended Plan and Second A&R RSA (as defined below).

## I.     Summary of Developments Since the Filing of the Original Plan and Disclosure Statement

### A.     Developments with Sinclair

As discussed in detail in the Disclosure Statement, the Debtors and their parent, Sinclair, entered into the Sinclair Settlement, which was approved pursuant to the Sinclair Settlement Order [Docket No. 1849].  A condition of that settlement was that Sinclair pay $495 million in cash on or before April 30, 2024, subject to extension for additional consideration.  If Sinclair failed to pay the $495 million, the Original Plan contained a Litigation Trust that would pursue litigation against Sinclair.  On April 30, 2024, the Debtors received the full $495 million in cash (the "Sinclair Settlement Proceeds") from Sinclair pursuant to the Sinclair Settlement Order.  As a result of the payment of the Sinclair Settlement Proceeds, the Sinclair Release Effective Date occurred on April 30, 2024, and the Litigation Proceeds Condition (as defined in the Original Plan) was met.  Accordingly, the Amended Plan no longer includes a Litigation Trust.

As set forth in the Sinclair Settlement Order, Sinclair's payment of the Sinclair Settlement Proceeds provided Sinclair with the right to acquire or cause an affiliate or third party to acquire the Marquee Interests.  On July 25, 2024, Sinclair provided the Debtors with written notice that it was exercising its right to acquire the Marquee Interests under the Sinclair Settlement Order.  The transfer of the Marquee Interests was completed on August 9, 2024, and the Debtors no longer have any interest in the Marquee Interests.

As part of the Sinclair Settlement, the Debtors and Sinclair entered into an amendment to the MSA, pursuant to which Sinclair provided the Debtors ongoing management and transition services to facilitate the Debtors' reorganization and separation from Sinclair.  That separation will be complete as of October 31, 2024, and the Debtors will have no need for management or transition services after that date.

### B.     MVPD Agreements

As described in the Disclosure Statement, the Debtors reached agreement with Charter on a multi-year renewal of their distribution agreement on April 3, 2024.  Subsequent to that, the Debtors also reached agreements with Cox on April 30, 2024, DIRECTV on May 1, 2024, and FuboTV on May 22, 2024.  Notwithstanding these successes, the Debtors and Comcast reached an impasse on the terms of a renewal and, following the expiration of the existing distribution agreement on April 30, 2024, the Debtors' RSNs were taken off the air on Comcast on May 1, 2024.  On July 28, 2024, following months of negotiations, the Debtors and Comcast reached an agreement on a go-forward distribution agreement that restored the Debtors' RSNs to Comcast's cable packages on August 1, 2024.  In connection with entry into the Comcast agreement, the Debtors also amended their distributions agreements with DIRECTV and Charter.

### C.     League and Team Agreements

The Debtors have been engaged in discussions with their team and league partners both before and after the Petition Date.  Following the Debtors' pivot to a going-concern reorganization upon signing the January RSA on January 16, 2024, the Debtors made proposals to each of the NBA, the NHL, and their respective teams on go-forward agreements.  After months of

negotiations, on August 23, 2024, the Debtors entered into term sheets with each of the NBA and the NHL and their respective teams. These term sheets provide beneficial modifications to the Debtors' existing agreements with the leagues and teams and, subject to compliance with the terms and conditions set forth in the term sheets, for the extension of those agreements for seasons beyond the 2024-2025 NBA and NHL seasons. In the event the Debtors do not confirm a going-concern plan, the agreements will terminate at the end of the 2024-2025 NBA and NHL seasons, thus eliminating potential rejection damage claims (and administrative expense claims) for rights fees that would otherwise be due under such agreements beyond the 2024-2025 NBA and NHL seasons.

On August 23, 2024, the Debtors filed motions seeking approval of those term sheets and assumption of various agreements with each of the NBA and NHL and the underlying telecast rights agreements with the teams, each as amended by the term sheets [Docket Nos. 2355, 2358] (collectively, the "NBA/NHL Motions"). On September 3, 2024, the Bankruptcy Court entered orders approving those motions [Docket Nos. 2389, 2390].

### D.     DIP Amendment Order

#### *1. Additional First Lien Paydown*

Under the DIP Order [Docket No. 1834], the Debtors' first lien lenders had a right to terminate the Debtors' consensual use of cash collateral if the Debtors did not obtain confirmation of a chapter 11 plan by August 5, 2024. Due to various factors, including the events discussed above, the Debtors were unable to confirm a chapter 11 plan by that milestone. In addition, the Debtors' go-forward distribution revenue and rights profile had been updated to reflect the deals they had reached with distributors and league and team partners, as described above, which resulted in changes to the Debtors' financial projections relative to the financial projections that underpinned the agreements memorialized in the DIP Order, the RSA, and other related documents in January 2024.

As a result of those developments, the first lien lenders required certain amendments to the DIP Order in return for their consent to the Debtors' continued use of cash collateral in pursuit of a going-concern reorganization. The first lien lenders also indicated that they would no longer consent to the plan treatment provided for in the RSA, and would instead require any treatment on account of their claims to provide for payment in full in cash up to agreed-upon claims caps.

The Debtors, the DIP Lenders, the first lien lenders, and the UCC engaged in good-faith, arm's-length negotiations to address the missed milestone and provide the Debtors with sufficient time to explore all reorganization and business plan opportunities. Those negotiations resulted in amendments to the DIP Order that the Debtors sought approval of pursuant to a motion filed on August 23, 2024 [Docket No. 2362]. On September 3, 2024, the Court entered an order amending the DIP Order [Docket No. 2388] (the "DIP Amendment Order"). Among other changes, these amendments incorporated the following changes with respect to the treatment of First Lien Claims:

- The First Lien Claims Cap in a going-concern reorganization was reduced from $662 million to $647 million. The First Lien Claims Cap remained $637 million in a winddown of the Debtors' business.

- If the Debtors have not pivoted to a winddown by October 1, 2024, the Debtors must make the Additional First Lien Paydown on November 18, 2024, which, if paid on November 18, 2024, will be approximately $215 million.

- The cash used to fund the Additional First Lien Paydown will come from the Sinclair Settlement Proceeds.

- In addition, if the Debtors are still pursuing a reorganization after the Additional First Lien Paydown is made, holders of First Lien Claims will continue to receive Adequate Protection Interest Payments (as defined in the DIP Amendment Order) in an amount calculated on $10 million for remaining First Lien Claims.

As noted in the Disclosure Statement, the Debtors have already repaid $350 million of the First Lien Term Loan Facility upon the closing of the DIP Facility pursuant to the First Lien Paydown.  The Debtors did not pivot to a winddown by October 1, 2024, and as a result, must make the Additional First Lien Paydown by November 18, 2024.  The DIP Order and the amendments to the DIP Order also provide for the crediting of certain adequate protection payments toward the First Lien Claims Cap.[4]

### 2. Modifications to UCC Settlement

As noted in the Disclosure Statement, the DIP Order and the RSA memorialized the terms of a comprehensive settlement among the Debtors, the First Lien Group, the Crossholder Group, and the UCC that resolved the UCC's objections with respect to the DIP Facility and provided for, among other things, Holders of Allowed General Unsecured Claims (and, in the event of a wind down or liquidation of the Debtors' estates, Holders of Allowed Go-Forward Trade Claims) to receive their applicable share of the lesser of (i) $13 million and (ii) a dollar amount equal to a 6% recovery on an aggregate basis (the "Unsecured Claim Cash Distribution"), which amounts would be set aside in a reserve (the "Unsecured Claims Reserve") in the event the Debtors proved unable to satisfy all administrative expenses under section 503(b) of the Bankruptcy Code in connection with a chapter 11 plan or if the DIP Agent asserted that a termination event occurred under the DIP Order and exercised any remedies provided under the DIP Order (the "Reserve Funding Triggers").

In light of the above amendments to the DIP Order required by the First Lien Group, as well as the superpriority adequate assurance claims proposed to be granted to the NBA and NHL under the NBA/NHL Motions, the UCC, the Debtors, the First Lien Group, and the Crossholder Group agreed to certain modifications to the UCC Settlement to protect recoveries for unsecured creditors from the risks associated with the Debtors' continued pursuit of a going-concern reorganization.  These modifications to the UCC Settlement were incorporated into the DIP Order and the Amended Plan and included, among other things, the following:

---

[4]  Adequate Protection Interest Payments on account of amounts that accrue after November 15, 2024 (and to be paid current as set forth above) shall not be applied to the First Lien Claims Cap (each as defined in the DIP Amendment Order).

- The Unsecured Claims Reserve will be funded in the event of a Wind Down Pivot (as defined in the DIP Order) or the payment of the Additional First Lien Paydown (in addition to the original Reserve Funding Triggers).

- In the case of a winddown or liquidation, the Debtors will not make any payments or plan distributions to the DIP Lenders on account of any (A) paid-in-kind interest under the DIP Facility accruing on or after October 1, 2024, or (B) Excess DIP Amounts (as defined in the DIP Order) unless and until the Unsecured Claim Cash Distribution has occurred.

- For purposes of determining whether the Reserve Distribution Conditions (as defined in the DIP Order) have been met, any cash interest payments accruing under the DIP Facility on or after October 1, 2024, will be deemed to reduce the outstanding principal amount of DIP Obligations (as defined in the DIP Order) required to be paid to the DIP Lenders prior to making the Unsecured Claim Cash Distribution to unsecured creditors.

In light of the foregoing, the UCC agreed to support the amendments to the DIP Order, and, on September 3, 2024, the Bankruptcy Court entered the DIP Amendment Order.

### E.   Developments with Respect to Amazon

Since the filing of the Original Plan and Disclosure Statement, the Debtors have been engaged in good faith negotiations with Amazon regarding the terms of a go-forward commercial partnership.  As described in the Disclosure Statement, Amazon had also initially committed to provide the Debtors with $115 million in exit financing in connection with the Original Plan pursuant to the Convertible B Exit Notes subject to certain required conditions and based on facts and assumptions existing at that time, which conditional commitment was documented in the Exit Note Commitment Letter.  Amazon had termination rights under the RSA (which would terminate their obligations under the Exit Note Commitment Letter), including because the Debtors had not obtained confirmation of a chapter 11 plan by August 5, 2024.  During negotiations around amendments to the Original Plan, and following material changes to the Debtors' proposed business plan and capital structure, and given that the conditions to the investment could not be satisfied, Amazon informed the Debtors that they did not expect to provide that investment on the original terms contemplated in January 2024.  In connection with entry into the Second A&R RSA, and subject to certain conditions (including releases by the RSA Parties and others), Amazon will waive any right it may have to the $4.025 million break fee contemplated by the Exit Note Commitment Letter and previously approved by the Bankruptcy Court, which waiver and releases are memorialized in the Amended Plan.  Amazon and the Debtors remain engaged on the terms of a go-forward commercial agreement.

### F.   Naming Rights Negotiations

The Debtors are close to reaching agreement with a third party on the terms of an agreement for naming and branding rights with respect to the Debtors' RSNs.  The contemplated agreement will lock in a new naming rights partner for the 2024-2025 NHL and NBA seasons while also

providing the Debtors with a long-term naming rights partner if the Debtors are ultimately able to emerge as a going concern.

The naming rights agreement is contemplated to allow the naming rights partner to purchase up to a single-digit percentage of equity in the Reorganized Debtors and earn performance warrants exercisable for up to a like percentage of equity in the Reorganized Debtors. These equity components will incentivize the naming rights partner to use its best efforts to broaden the Debtors' subscriber base and provide the naming rights partner with an opportunity to co-invest in the Debtors' reorganized business. The equity components of the contemplated naming rights agreement have been incorporated into the Amended Plan.

### G.   RSA Amendments

In light of the developments described above, the RSA Parties have been engaged in good faith negotiations regarding revisions to the RSA and the Original Plan. On October 9, 2024, the RSA Parties executed a second amended and restated restructuring support agreement (the "Second A&R RSA"), which among other things, memorializes the parties' agreements and commitments with respect to support of the Amended Plan. A copy of the Second A&R RSA is attached hereto as **Exhibit F**.

### H.   SPV Cash

On September 24, 2024, the Debtors, in consultation with the RSA Parties, caused their non-Debtor affiliate Diamond Sports Finance SPV, LLC to transfer approximately $50 million that it held in a segregated account to an account held by the Debtors. This transfer was made to streamline the Debtors' bank accounts and cash management system and to bolster liquidity, and the Debtors intend to use that cash to fund the transactions contemplated by the Amended Plan.

## II.   Summary of Changes to the Original Plan

### A.   Overview of Toggle Structure

The Amended Plan provides for a toggle between a going-concern reorganization and an orderly winddown following the completion of the 2024-2025 NBA and NHL seasons. Whether a going-concern reorganization is ultimately pursued will be determined by the Debtors, with the consent of the Required DIP Commitment Parties, on or before December 16, 2024, and the Debtors will file a notice with the Bankruptcy Court by no later than that date advising parties in interest of the determination. To the extent a going-concern reorganization is not pursued, the Debtors will reject or otherwise terminate all of their contracts with MLB and its applicable teams effective as of December 31, 2024, well in advance of the 2025 MLB season.

### B.      Revised Plan Treatments

The Amended Plan modifies distributions that will be made to holders of DIP Claims, First Lien Claims, and Junior Funded Debt Claims in a going-concern reorganization as summarized in the table below:

| Claims | Treatment Under Amended Plan |
|---|---|
| **DIP Claims** | DIP Claims will be treated as follows: <br><br> • <u>With respect to the aggregate principal amount of the DIP Claims and Capitalized DIP Interest</u>: DIP Lenders will receive (x) $270 million in cash, (y) the net Cash proceeds raised from an Acceptable Exit Financing (provided that the Reorganized Debtors have at least $50 million of cash or cash equivalents on their balance sheet after giving effect to the transactions occurring on the Reorganization Effective Date), and (z) the Exit Term Loans. <br><br> • <u>With respect to the DIP MOIC</u>: DIP Lenders will receive 45% of the New TopCo Equity (subject to dilution by the DIP Commitment Party Investment Option, the Management Incentive Plan, the Naming Rights Equity (if any), and the Exit Facility Equity (if any)). <br><br> • <u>With respect to the DIP Commitment Premium</u>: DIP Commitment Parties will receive 45% of the New TopCo Equity (subject to dilution by the DIP Commitment Party Investment Option, the Management Incentive Plan, the Naming Rights Equity (if any), and the Exit Facility Equity (if any)). <br><br> • <u>With respect to the Other DIP Obligations</u>: The Debtors will pay any other DIP Claims, including any accrued and unpaid interest as of the Plan Effective Date, in Cash; <u>provided</u> that cash payment on account of interest accruing under the DIP Facility on and after October 1, 2024 shall, solely for purposes of determining whether the Reserve Distribution Conditions (as defined in the DIP Order) have been met, be deemed to reduce the outstanding principal amount of DIP Claims required to be distributed to the DIP Lenders prior to distributing funds held in the Unsecured Claims Reserve to holders of Allowed General Unsecured Claims. |
| **Class 3 First Lien Claims** | Each holder of an Allowed First Lien Claim will receive its *pro rata* share of Cash in an amount equal to $647 million <u>less</u> the sum of (i) the AP Reduction Amount; (ii) the amount of the First Lien Paydown; and (iii) the amount of any Additional First Lien Paydown.[5] |

---

[5]   For the avoidance of doubt, this treatment for holders of First Lien Claims is in addition to any Post-Additional First Lien Paydown AP Interest Payments, payable in accordance with the DIP Order, which Post-Additional First Lien Paydown AP Interest Payments that are accrued and unpaid as of the Plan Effective Date (if any) shall be paid on the Plan Effective Date.

| Claims | Treatment Under Amended Plan |
|---|---|
| **Class 4 Junior Funded Debt Claims** | Each holder of an Allowed Junior Funded Debt Claim will receive its *pro rata* share of 10% of the New TopCo Equity (subject to dilution by the DIP Commitment Party Investment Option, the Management Incentive Plan, the Naming Rights Equity (if any), and the Exit Facility Equity (if any)). |

In the event an orderly winddown is ultimately pursued, no New TopCo Equity (or any exit debt) will be issued and, following the completion of the 2024-2025 NBA and NHL seasons, the Debtors' cash will be distributed to holders of DIP Claims, Allowed First Lien Claims (to the extent not already paid in full in cash up to the applicable cap), and Allowed General Unsecured Claims, as set forth in the Amended Plan and the DIP Amendment Order. To the extent any cash remains following the foregoing distributions, such cash will be distributed to holders of Allowed Junior Funded Debt Claims. In such a scenario, Go-Forward Trade Claims will be treated as General Unsecured Claims. As noted above, the Amended Plan does not otherwise modify the treatment of General Unsecured Claims.

### C.   Revised Illustrative Class Recoveries

The following table summarizes:  (i) the treatment of Claims and Interests under the Amended Plan; (ii) which Classes are impaired by the Amended Plan; (iii) which Classes are entitled to vote on the Amended Plan; and (iv) the estimated recoveries for Holders of Claims and Interests. **The classification, treatment, and the projected recoveries of classified Claims are described in summary form below for illustrative purposes only and are subject to material change. Actual recoveries could differ materially from the estimates in the following table based on, among other things, whether the amount of Claims actually Allowed against the applicable Debtor exceeds (or are less than) the estimates provided below and the ultimate valuation of the Debtors' reorganized business following negotiations with their commercial counterparties. In such an instance, the recoveries available to the Holders of Claims could be materially different when compared to the estimates provided below.** To the extent that any inconsistency exists between the summaries contained in this Disclosure Statement Supplement and the Amended Plan, the terms of the Amended Plan shall govern.

| Class | Claim or Interest | Amended Plan Treatment | Entitlement to Vote | Estimated Allowed Claims | Approx. Percentage Recovery Under Amended Plan: Reorganization | Approx. Percentage Recovery Under Amended Plan: Orderly Runoff | Approx. Percentage Recovery in a Chapter 7 Liquidation |
|---|---|---|---|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) | $0 | 100% | 100% | 0% |

9

| Class | Claim or Interest | Amended Plan Treatment | Entitlement to Vote | Estimated Allowed Claims | Approx. Percentage Recovery Under Amended Plan: Reorganization | Approx. Percentage Recovery Under Amended Plan: Orderly Runoff | Approx. Percentage Recovery in a Chapter 7 Liquidation |
|---|---|---|---|---|---|---|---|
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) | $650,000 | 100% | 100% | 100% |
| 3 | First Lien Claims | Impaired | Entitled to Vote | $647,000,000[6] | 100% | 100% | 100% |
| 4 | Junior Funded Debt Claims | Impaired | Entitled to Vote | $8,425,611,996 | <1%–1% | 0% | 0% |
| 5 | Go-Forward Trade Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Entitled to Vote[7] | $5,280,000 | 100% | 6% | 0%[8] |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote | $170,020,000[9] | 6% | 6% | 0% |
| 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) | N/A | N/A | N/A | 0% |
| 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) | N/A | N/A | N/A | N/A |

---

[6]   Estimate assumes an Orderly Runoff is not pursued.  The Debtors used $350 million of the proceeds of the DIP Facility to repay a like principal amount of the First Lien Claims at the closing of the DIP Facility on February 28, 2024.

[7]   In the event the Debtors pursue a reorganization pursuant to the Amended Plan, Holders of Go-Forward Trade Claims will be Unimpaired and will be presumed to accept the Amended Plan.  In the event the Debtors pursue an Orderly Runoff, however, Holders of Go-Forward Trade Claims will be Impaired and receive the same treatment as Holders of Allowed General Unsecured Claims.  Accordingly, Holders of Go-Forward Trade Claims will be provided provisional ballots to cast votes on the Amended Plan, which votes will only be counted in the event the Debtors pursue an Orderly Runoff.

[8]   Go-Forward Trade Claims are treated as General Unsecured Claims for purposes of this analysis.

[9]   Estimate assumes an Orderly Runoff is not pursued.

| Class | Claim or Interest | Amended Plan Treatment | Entitlement to Vote | Estimated Allowed Claims | Approx. Percentage Recovery Under Amended Plan: Reorganization | Approx. Percentage Recovery Under Amended Plan: Orderly Runoff | Approx. Percentage Recovery in a Chapter 7 Liquidation |
|---|---|---|---|---|---|---|---|
| 9 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) | N/A | 0% | 0% | 0% |

### D.        Revised Disclosure Statement Exhibits

The Disclosure Statement attached the following financial exhibits:  Liquidation Analysis (Exhibit C), Financial Projections (Exhibit D), and Valuation Analysis (Exhibit E).  Revised versions of the Liquidation Analysis, Financial Projections, and Valuation Analysis are attached hereto as **Exhibit C**, **Exhibit D**, and **Exhibit E**, respectively.

## III.        Additional Risk Factors

### A.        The Debtors May Not Be Able to Obtain Sufficient Exit Financing

The Debtors' ability to reorganize as a going concern will depend on the Debtors' ability to raise additional exit financing commitments, including through the New A/R Facility, to fund distributions under the Amended Plan and provide sufficient liquidity to support the Reorganize Debtors' business on a post-emergence basis.  Although the Debtors are in discussions with multiple potential financing sources, there can be no assurances that the Debtors will be able to secure commitments acceptable to the Required DIP Commitment Parties on the timeframe required by the Amended Plan.

<div align="center">*        *        *        *        *</div>

<div align="center">**Continued Solicitation of Votes**</div>

The Debtors have caused this Disclosure Statement Supplement and new ballots to be mailed to the Holders of Claims entitled to vote on the Amended Plan and have separately provided the Amended Plan and this Disclosure Statement Supplement to each DIP Lender.  To be counted as votes to accept or reject the Amended Plan, all ballots must be properly executed, completed, and returned (as appropriate and in accordance with the instructions accompanying the ballot), so that they are **actually received** by the Claims Agent no later than the Voting Deadline, which is **November 5, 2024, at 4:00 p.m., prevailing Central Time**.

Holders of Claims in the Voting Classes are free to submit a new ballot with respect to the Amended Plan.  If an eligible Holder (a) did not submit a ballot for the Original Plan and now wishes to vote on the Amended Plan or (b) previously submitted a ballot for the Original Plan but now wishes to submit a ballot reflecting a different vote for the Amended Plan, such Holder must submit a new ballot.  If multiple ballots are received from the same Holder with respect to the same

Claim prior to the Voting Deadline, the last properly executed ballot timely received before the Voting Deadline will be deemed to reflect that voter's intent and will supersede and revoke any prior ballot.  Holders who previously submitted a ballot for the Original Plan and do not intend to change their vote for the Amended Plan do not need to submit a new ballot, and the prior submitted ballot will remain valid in compliance with section 1127(d) of the Bankruptcy Code.

Parties may request new or additional ballots at no charge by: (i) accessing the Debtors' restructuring website at https://cases.ra.kroll.com/DSG; (ii) writing to Diamond Sports Group, LLC Ballots Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232; or (iii) calling or emailing the Claims Agent at:

<div align="center">

U.S./Canada (toll-free): (877) 720-6635
International (toll): +1 (646) 440-4763

</div>

Email: DSGInfo@ra.kroll.com (with "DSG Solicitation Inquiry" in the subject line)

<div align="center">

*       *       *       *       *

</div>

Copies of the Amended Plan and the Disclosure Statement (and all exhibits thereto) and all other documents filed in these chapter 11 cases may be obtained free of charge by:  (a) visiting the website maintained by the Claims Agent, at https://cases.ra.kroll.com/DSG;  (b) calling (877) 720-6635 (U.S./Canada Toll-Free)  or  +1 (646) 440-4763 (International);  or (c) emailing DSGinfo@ra.kroll.com (with "DSG Solicitation Inquiry" in the subject line).  Copies may also be obtained for a fee via PACER at http://www.txs.uscourts.gov.

<div align="center">

*[Remainder of page intentionally left blank]*

</div>

Dated:    October 9, 2024          **DIAMOND SPORTS GROUP, LLC** (for itself
and on behalf of each of its subsidiary debtors as
debtors and debtors in possession)

By: *_/s/ David Preschlack_____*
        Name:   David Preschlack
        Title:   Chief Executive Officer

## Exhibit A

**Amended Plan**

[Filed at Docket No. 2521-1]

**<u>Exhibit B</u>**

**Redline of Amended Plan**

[Filed at Docket No. 2521-3]

**Exhibit C**

**Liquidation Analysis**

**Liquidation Analysis**

**Introduction**

Under the "Best Interests Test" set forth in section 1129(a)(7) of the Bankruptcy Code,[1] the Bankruptcy Court may not confirm a chapter 11 plan unless the plan provides each holder of a claim or interest who does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code. Accordingly, to demonstrate that the Debtors' Amended Plan (regardless of whether the Wind-Down Toggle occurs thereunder) satisfies the Best Interests Test, the Debtors, with the assistance of their professional advisors, have prepared this hypothetical liquidation analysis (this "***Liquidation Analysis***") presenting recoveries that may be obtained by Holders of Claims and Interests upon a disposition of assets in a chapter 7 liquidation as an alternative to recoveries provided under the Amended Plan .

This Liquidation Analysis sets forth an estimated range of recovery values for each Class of Claims and Interests upon disposition of the Debtors' assets pursuant to a hypothetical chapter 7 liquidation. As illustrated by this Liquidation Analysis, no Holder of a Claim or Interest will receive or retain property under the Amended Plan of a value that is less than such Holder would receive in a chapter 7 liquidation. Accordingly, and as set forth in greater detail below, the Debtors believe that the Amended Plan (regardless of whether the Wind-Down Toggle occurs thereunder) satisfies the Best Interests Test.

This Liquidation Analysis presents information based on, among other things, the Debtors' books and records, good-faith estimates regarding asset recoveries, and Claims arising in connection with liquidation under chapter 7 of the Bankruptcy Code. This Liquidation Analysis has not been examined or reviewed by independent accountants in accordance with standards promulgated by the American Institute of Certified Public Accountants. The determination of the proceeds from the liquidation of assets involves the use of estimates and assumptions. Although the Debtors consider the estimates and assumptions underlying this Liquidation Analysis to be reasonable under the circumstances, such estimates and assumptions are subject to business, economic, competitive, and other uncertainties and contingencies beyond the Debtors' and their professional advisors' control. Accordingly, the estimated results set forth in this Liquidation Analysis may not be realized if the Debtors were liquidated. Actual results in such a proceeding could vary materially from those presented herein, which could result in distributions to members of applicable Classes of Claims to differ from those set forth in this Liquidation Analysis.

**This Liquidation Analysis is a hypothetical exercise that has been prepared for the sole purpose of presenting a reasonable, good-faith estimate of the proceeds that would be realized if the Debtors were liquidated in accordance with chapter 7 of the Bankruptcy Code as of the Conversion Date (as defined below). This Liquidation Analysis is not intended and should not be used for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims under the Amended Plan. No independent appraisals were**

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement Supplement, to which this Liquidation Analysis is attached as **Exhibit C**, the Disclosure Statement, or the Amended Plan attached to the Disclosure Statement Supplement as **Exhibit A**, as applicable.

conducted in preparing this Liquidation Analysis.  This Liquidation Analysis does not purport to be a valuation of the Debtors' assets in the context of a going-concern reorganization, and there may be a significant difference between the values and recoveries defined in this Liquidation Analysis and the values that may be realized in an actual liquidation.   All assumptions made herein, including those made for purposes of the "higher recovery" scenario, are for purposes of this Liquidation Analysis only and are subject to change.  The Debtors make no representations or warranties regarding the accuracy of the estimates and assumptions contained herein.

Nothing contained in this Liquidation Analysis is intended to be, or constitutes, a concession, admission, or allowance of any Claim by the Debtors.  The actual amount or priority of Allowed Claims in the Chapter 11 Cases could materially differ from the estimated amounts set forth and used in this Liquidation Analysis.  The Debtors reserve all rights to supplement, modify, or amend this Liquidation Analysis, including by changing the assumptions and analyses set forth herein, at any time.

The following Liquidation Analysis should be reviewed with the accompanying notes.  The following table reflects this Liquidation Analysis on an aggregated basis for the Debtor entities.

[*Remainder of page intentionally left blank*]

## Liquidation Analysis Table

| ($000's) | 11/30/2024 Estimated Book Balance | Estimated Recovery $ Lower | Estimated Recovery $ Higher | Estimated Recovery % Lower | Estimated Recovery % Higher | Note |
|---|---|---|---|---|---|---|
| **ILLUSTRATIVE FIRST LIEN ASSETS AND RECOVERY** | | | | | | |
| **A.** | **ASSETS** | | | | | |
| | Cash and Cash Equivalents | $        155,852 | $ 140,267 | $ 155,852 | 90% | 100% | 1 |
| | Accounts Receivable | 256,429 | 135,862 | 174,638 | 53% | 68% | 2 |
| | Prepaid Assets and Other Current Assets | 31,523 | 2,822 | 8,302 | 9% | 26% | 3 |
| | Property, Plant and Equipment ("PP&E") | 46,187 | - | 1,775 | 0% | 4% | 4 |
| | Rights of Use Assets | 23,304 | - | - | 0% | 0% | 5 |
| | Customer Relationships | 1,915,524 | - | - | 0% | 0% | 5 |
| | Other Definite-Lived Intangible Assets | 136,993 | - | - | 0% | 0% | 5 |
| | Equity Investments and Other Assets | 409,365 | 92,000 | 115,000 | 22% | 28% | 6 |
| | *Equity Investment - SPV* | | - | - | | | 6 |
| | *Equity Investment - Majority Owned JVs (Bally JVs)* | | - | - | | | 6 |
| | *Equity Investment - Minority-Owned JVs - (Excluding YES)* | | - | - | | | 6 |
| | *Equity Investment - Minority-Owned JVs - YES* | | 92,000 | 115,000 | 80% | 100% | 6 |
| | Sinclair Litigation Proceeds, net of Additional First Lien Paydown | 279,612 | 279,612 | 279,612 | 100% | 100% | 7 |
| | MLB Security Deposit | | *See MLB Claims and Recovery Section Below* | | | | 12 |
| | **GROSS LIQUIDATION PROCEEDS** | | **650,563** | **735,179** | | | |
| **B.** | **LIQUIDATION EXPENSES** | | | | | | |
| | Chapter 7 Wind-Down Expenses | | (20,078) | (16,063) | | | 8 |
| | Chapter 7 Wind-Down Professional Fees | | (7,500) | (6,000) | | | 9 |
| | Chapter 7 Trustee Fees | | (19,517) | (22,055) | | | 10 |
| | **TOTAL LIQUIDATION EXPENSES** | | **(47,095)** | **(44,118)** | | | |
| | NET LIQUIDATION PROCEEDS AVAILABLE TO SATISFY CARVE-OUT CLAIMS | | **603,468** | **691,061** | | | |
| **C.** | **CARVE-OUT CLAIMS  (UNPAID PROFESSIONAL FEES)** | (13,600) | (13,600) | (13,600) | 100% | 100% | 11 |
| | NET LIQUIDATION PROCEEDS AVAILABLE TO REMAINING CLAIMS | | **589,868** | **677,461** | | | |
| **ILLUSTRATIVE MLB CLAIMS AND RECOVERY** | | | | | | |
| **D.** | **ASSETS TO SATISFY MLB CLAIMS** | | | | | | |
| | MLB Security Deposit | 20,000 | 20,000 | 20,000 | 100% | 100% | 12 |
| | **GROSS LIQUIDATION PROCEEDS** | | **20,000** | **20,000** | | | |
| **E.** | **LIQUIDATION EXPENSES** | | | | | | |
| | Chapter 7 Trustee Fees | | (600) | (600) | | | 10 |
| **F.** | **MLB CLAIMS** | (16,424) | (16,424) | (16,424) | 100% | 100% | 13 |
| | NET LIQUIDATION PROCEEDS AVAILABLE TO SATISFY REMAINING | | **2,976** | **2,976** | | | |
| **ILLUSTRATIVE DIP CLAIMS, NBA CLAIMS, NHL CLAIMS, JUNIOR FUNDED DEBT CLAIMS, AND GENERAL UNSECURED CLAIMS, UNSECURED CLAIM RESERVE, AND OTHER ASSETS AND RECOVERIES** | | | | | | |
| **G.** | **ASSETS TO SATISFY REMAINING CLAIMS** | | | | | | |
| | Remaining Assets after satisfying Carve Out Claims | | 589,868 | 677,461 | | | |
| | Remaining Assets after satisfying MLB Claims | | 2,976 | 2,976 | | | |
| | **GROSS LIQUIDATION PROCEEDS** | | **592,844** | **680,437** | | | |
| **H.** | **DIP CLAIMS (EXCLUDING THE EXCLUDED DIP** | (528,515) | (341,833) | (392,339) | 65% | 74% | 14 |
| **I.** | **NBA CLAIMS** | (253,139) | (163,726) | (187,916) | 65% | 74% | 15 |
| **J.** | **NHL CLAIMS** | (134,953) | (87,285) | (100,182) | 65% | 74% | 16 |
| | NET LIQUIDATION PROCEEDS AVAILABLE TO SATISFY GENERAL UNSECURED CLAIMS (UNSECURED CLAIMS RESERVE) | | - | - | | | |
| **K.** | **GENERAL UNSECURED CLAIMS (UNSECURED CLAIMS RESERVE)** | (175,288) | - | - | 0% | 0% | 17 |
| | NET LIQUIDATION PROCEEDS AVAILABLE TO SATISFY EXCLUDED DIP AMOUNT CLAIMS | | - | - | | | |
| **L.** | **EXCLUDED DIP AMOUNTS CLAIMS** | (170,485) | - | - | 0% | 0% | 18 |
| | NET LIQUIDATION PROCEEDS AVAILABLE TO SATISFY JUNIOR FUNDED DEBT CLAIMS | | - | - | | | |
| **M.** | **JUNIOR FUNDED DEBT CLAIMS** | (8,425,612) | - | - | 0% | 0% | 19 |
| | NET LIQUIDATION PROCEEDS AVAILABLE TO SATISFY REMAINING CLAIMS | | - | - | | | |
| **N.** | **REMAINING CLAIMS (OTHER SECURED, ADMIN, OTHER PRIORITY, INTERCOMPANY, AND EQUITY INTERESTS)** | n/a | - | - | 0% | 0% | 20-25 |

3

**General Notes and Assumptions**

This Liquidation Analysis has been prepared assuming that the Debtors hypothetically commence a liquidation under chapter 7 of the Bankruptcy Code as of November 30, 2024 (the "***Conversion Date***").

Except as otherwise noted herein, the asset values reflected in this Liquidation Analysis are based upon the Debtors' unaudited books and records as of August 31, 2024, adjusted to reflect forecasted operating results between September 1, 2024, and November 30, 2024.

This Liquidation Analysis includes estimated ranges of value for all assets where such estimates could be made reasonably under current facts and circumstances. The ranges utilized in this Liquidation Analysis include "lower" and "higher" estimates. There is no assurance that in an actual chapter 7 liquidation recoveries of any individual asset category or in total would be within the reflected range.

It is assumed that the Bankruptcy Court would appoint a chapter 7 trustee (the "***Trustee***") on the Conversion Date to oversee the liquidation of the Debtors' estates, during which process substantially all of the Debtors' assets would be sold, abandoned, surrendered, or otherwise liquidated, as applicable, and the cash proceeds, net of liquidation-related costs, distributed in accordance with applicable law. These activities, together with claims reconciliation, dissolution of corporate entities, and other associated matters, have been estimated to require approximately 6 months to complete. While it is possible that the liquidation period could be extended, this would increase the risk of additional liquidation costs and reduce overall distributable proceeds and recoveries. Under section 704 of the Bankruptcy Code, a trustee must, among other duties, collect and convert the property of the estate as expeditiously (generally at distressed prices) as is compatible with the Best Interests Test.

Any available net proceeds would be allocated to the applicable Holders of Claims and Interests in accordance with section 726 of the Bankruptcy Code and the terms of the DIP Order as amended by the *Order Amending the Final DIP Order* [Docket No. 2388] (the "***Amended DIP Order***") (and in the event of any conflict between this Liquidation Analysis and the Amended DIP Order, the terms of the Amended DIP Order shall control). Under a chapter 7 liquidation, all secured claims are required to be satisfied from the proceeds of the collateral securing such claims before any such proceeds would be distributed to any other creditors, subject to the terms of the Amended DIP Order, including the Unsecured Claims Reserve (as defined below) and the Carve Out (as defined in the Amended DIP Order). Subject to the terms of the Amended DIP Order, this Liquidation Analysis otherwise assumes the application of the rule of absolute priority of distributions with respect to the remaining proceeds of the Debtors. Under that rule, no junior creditor receives any distribution until all senior creditors are paid in full. The costs, expenses, and fees associated with the liquidation would be paid in full from the liquidation proceeds before the balance of the proceeds would be made available to pay chapter 11 administrative Claims, and then to pay priority Claims and then to pay unsecured Claims. This Liquidation Analysis assumes that the Unsecured Claims Reserve is funded pursuant to the terms of the Amended DIP Order.

This Liquidation Analysis assumes that the Debtors would be liquidated in a jointly

administered case.  Except as otherwise noted herein, each Debtor is jointly and severally liable for each of the Carve-Out Claims, First Lien Claims, MLB Claims, DIP Claims, NBA Claims, NHL Claims, and the Junior Funded Debt Claims (each as defined below).  Because there is no scenario under this Liquidation Analysis in which all such Claims will be paid in full, this Liquidation Analysis is presented on a consolidated basis.  For purposes of this Liquidation Analysis, the term "***General Unsecured Claims***" includes all Go-Forward Trade Claims.  In addition, for purposes of illustrating recoveries resulting from the distribution of amounts held in the Unsecured Claims Reserve, this Liquidation Analysis assumes that all General Unsecured Claims are asserted against the Debtors on a consolidated basis.  For the avoidance of doubt, the Amended Plan does not provide for the substantive consolidation of the Debtors.

This Liquidation Analysis assumes that Claims related to administrative expenses (including professional fees), chapter 7 trustee expenses, and the Carve Out are allocated across the Debtors according to the percentage of asset recovery by each entity.  Parties in interest may dispute that allocation.  Any successful challenge to the allocation of the Claims described in this paragraph could materially alter recoveries shown in this Liquidation Analysis.

This Liquidation Analysis contains an estimate of the amount of certain Classes of Claims that may ultimately become Allowed Claims.  The Debtors developed the estimate for each Class of Claims based on the Debtors' continuing review of Claims filed in the Chapter 11 Cases, the Debtors' books and records, and the Debtors' schedules and statements.  The Debtors also developed an estimate of additional Claims that would arise in a chapter 7 liquidation.  Accordingly, this analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims under the Amended Plan.  Moreover, the Claims filed against the Debtors' Estates have not been fully evaluated by the Debtors and no order or finding has been entered or made by the Bankruptcy Court estimating or otherwise fixing the amount of any Claims at the projected amounts of Allowed Claims set forth in this Liquidation Analysis.  Thus, the actual amount of Allowed Claims could differ materially from the amount of Allowed Claims estimated herein.

This Liquidation Analysis does not include estimates for the tax consequences that may be triggered upon the liquidation of the Debtors in the manner described above.

This Liquidation Analysis assumes that all asset proceeds and creditor recoveries are at nominal amounts and does not consider the discounting of values over time (except for the depreciation of PP&E (as defined below)).  The discounting of values would result in lower recoveries to stakeholders than those presented.

*[Remainder of page intentionally left blank]*

5

**Specific Notes to this Liquidation Analysis**

**ILLUSTRATIVE FIRST LIEN ASSETS AND RECOVERY**

**1.      Cash and Cash Equivalents**

The Debtors' estimated cash balance (excluding cash held at non-Debtor entities, including the Majority-Owned JVs) as of the Conversion Date is $156 million.  The Debtors' estimated cash balance includes approximately $51 million of cash previously held at DSPV related to the Debtors' Prepetition A/R Loan Facility (the "***DSPV Cash***").  Recoveries from this asset were categorized as Equity Interests – SPV in the Liquidation Analysis filed as <u>Exhibit C</u> to the Disclosure Statement (the "***Prior Liquidation Analysis***").  The Prepetition A/R Loan Facility was terminated in March 2024, and the DSPV Cash was transferred to a segregated account held in the name of DSPV at Wilmington Trust, National Association.  The DSPV Cash was transferred to the Debtors in September 2024.  This Liquidation Analysis assumes 100% of the estimated cash balance is available for distribution in the higher recovery estimate and 90% in the lower recovery estimate, to account for potential negative variances in cash flows from operations prior to the Conversion Date.

**2.      Accounts Receivable**

The Debtors' estimated accounts receivable balance as of the Conversion Date is approximately $247 million.  Accounts receivable are primarily comprised of distribution / affiliate revenue receivables due from MVPDs, advertising revenue receivables due from advertising agencies, and DTC revenue from streaming service counterparties.

Recovery estimates for accounts receivable were made at the sub-classification level and considered factors such as counterparty, aging, concentration, and potential offsets resulting in a blended lower recovery estimate of 53% and a higher recovery estimate of 68%:

**3.      Prepaid Assets and Other Current Assets**

The Debtors' estimated book balance for prepaid expenses and other current assets as of the Conversion Date is approximately $32 million.  The balance includes prepayments for insurance premiums, lease obligations, DTC marketing-related deposits, and other current assets.

The Debtors estimate a recovery of prepaid expenses and deposits between 9% and 26% in aggregate, based on a review of the nature and the amounts of the component balances as of August 31, 2024.

**4.      Property, Plant & Equipment ("*PP&E*")**

The Debtors' estimated PP&E book value as of the Conversion Date is approximately $46 million.  PP&E primarily consists of production equipment, computer hardware, and leasehold improvements.

Production equipment and computer hardware are assumed to yield net recoveries of 0% to 5% of net book value, based on a review of the nature and the amount of the component balances on August 31, 2024.  No recovery is assumed for leasehold improvements or other PP&E.

In aggregate, the Debtors assume a lower recovery estimate of 0% and a higher recovery estimate of 4% for PP&E.

Subject to the terms and conditions of the Sinclair Settlement Order, if the Debtors wind down any of their business operations in a liquidation, Sinclair may, at no cost to Sinclair, acquire any residual assets unless the Debtors have received a bona fide offer(s) to acquire such assets.

**5.      Rights of Use, Customer Relationships, and Other Definite-Lived Intangible Assets**

The Debtors' estimated book value of these intangible assets as of the Conversion Date is approximately $2.1 billion.   These are all considered non-saleable, intangible assets with no value in a liquidation.

**6.      Equity Investments and Other Assets**

The Debtors' estimated book value for these assets as of August 31, 2024, is approximately $409 million.

"***Equity Investments – SPV***" includes the Debtors' 100% equity interest in DSPV, which was the borrower under the Debtors' Prepetition A/R Loan Facility. The remaining cash at the DSPV (i.e., the approximately $51 million DSPV Cash) was transferred to the Debtors in September 2024 (see Cash and Cash Equivalents, above).  No additional recovery is assumed from this equity interest.

"***Equity Investments – Majority-Owned JVs***" includes the Debtors' majority equity interests in non-Debtor joint ventures.  In the absence of operational and business support from the Debtors, it is assumed that all of the Majority-Owned JVs would undertake parallel liquidations, under which the proceeds of such liquidations would be distributed in accordance with the priority of claims and ownership on an entity-by-entity basis.  It is assumed that claims exceed the asset recoveries at each of the Majority-Owned JVs and, as a result, no recovery is assumed from these equity interests.

"***Equity Investments – Minority-Owned JVs (Excluding YES)***" includes the Debtors' non-majority equity interests in Mobile Television Group (excludes Marquee, which was transferred to Sinclair in August 2024 pursuant to the terms of the Sinclair Settlement Order).

> **Mobile Television Group** – Subject to the terms of the Sinclair Settlement Order, and applicable law, if the Debtors wind down any of their business operation in a liquidation, Sinclair may, at no cost to Sinclair, acquire any residual assets unless the Debtors have received a bona fide offer(s) to acquire such assets.  Given the uncertainty of the Debtors' ability to sell their interest in Mobile Television Group, along with the terms in the Sinclair Settlement Order, no proceeds related to Mobile Television Group have been included in this Liquidation Analysis.

"***Equity investments – Minority-owned JVs (YES)***":  The potential value of the Debtors' interests in Red Seam Holdings LLC (the "***YES Adequate Assurance Collateral***") has not been determined. For illustrative purposes, this Liquidation Analysis includes an estimated book value of $115 million for the YES Adequate Assurance Collateral.  The estimated book value is based on the aggregate principal amount of Convertible B Exit Notes, which would have been secured by the YES Adequate Assurance Collateral and issued on the Effective Date if the prior Plan of Reorganization filed on April 16, 2024 [Docket No. 1982] had been consummated.  The Debtors assume a lower recovery of 80% and a higher recovery of 100% of the illustrative estimated book value of the YES Adequate Assurance Collateral.

- Proceeds of the Debtors' minority equity interest in YES are (a) *first*, used to satisfy the Carve-Out Claims, (b) *second*, used to satisfy the First Lien Adequate Protection Superpriority Claims (as defined in the Amended DIP Order) (up to $100 million, but such claims are assumed to be satisfied in full as part of the Additional First Lien Paydown, as defined in the Amended DIP Order), (c) *third*, used to satisfy the MLB Claims (as defined below), (d) *fourth,* available to satisfy the remaining First Lien Adequate Protection Superpriority Claims (if any, but such claims are assumed to be satisfied in full as part of the Additional First Lien Paydown), (e) *fifth.* available to satisfy the DIP Claims, the NBA Claims, and the NHL Claims, and (f) *sixth,* available to satisfy other creditor claims assuming application of the rule of absolute priority.

## 7.     Sinclair Litigation Proceeds, net of the Additional First Lien Paydown

As further described in the Disclosure Statement and the Disclosure Statement Supplement, the Debtors commenced the Adversary Proceedings against SBG, certain of SBG's affiliates and related individuals, Bally's, and JPM, which Adversary Proceedings were subsequently settled pursuant to the Sinclair Settlement Order.  Pursuant to the terms of the Sinclair Settlement Order, the Debtors received settlement payments in the aggregate amount of $495 million from Sinclair ($50 million received in March 2024 and $445 million received in May 2024).

The amount included in the "***Sinclair Litigation Proceeds, net of the Additional First Lien Paydown***" in this Liquidation Analysis reflects the total amount due from Sinclair (consisting of the Unencumbered Sinclair-Related Litigation Collateral (as defined in the MLB Adequate Assurance Order) and the Encumbered Sinclair-Related Litigation Collateral (i.e., all proceeds of the Sinclair-Related Litigations received by the Debtors that are not Unencumbered Sinclair-Related Litigation Collateral)) pursuant to the terms of the Sinclair Settlement Order, net of the Additional First Lien Paydown, which is assumed to occur on November 18, 2024 pursuant to the Amended DIP Order.

- The First Lien Claims consist of the principal amount, unpaid interest, fees, premiums, and all other obligations, amounts, and expenses arising under or in connection with the First Lien Credit Agreement (as defined in the Amended DIP Order) (the "***First Lien Claims***").

- Pursuant to the Amended DIP Order, in the event of a liquidation, the First Lien Claims are capped at $637 million of outstanding principal and interest ("***Wind Down Claim Cap***") including, without limitation, any asserted deficiency claims, make-whole claims,

8

diminution in value claims, and recharacterization claims.

- Pursuant to the Amended DIP Order, to the extent an Acceptable Plan (as defined in the Amended DIP Order) has not been consummated by November 15, 2024 and no Wind Down Pivot (as defined in the Amended DIP Order) has occurred on or before October 1, 2024, then on November 18, 2024, the Debtors, their successors, or a chapter 7 trustee (and in the case of a chapter 7 trustee, as soon as reasonably practicable after appointment) are authorized and directed to pay to the First Lien Agent, for the benefit of itself and the Prepetition First Lien Lenders, cash in an amount equal to the Wind Down Claim Cap (after the application of certain reductions as described below).

- Pursuant to the Amended DIP Order, the Wind Down Claim Cap is reduced by the aggregate amount of Cash paid as adequate protection to the holders of First Lien Claims on account of amounts that accrued from October 1, 2023, through and including November 15, 2024, pursuant to the Cash Collateral Order or the Amended DIP Order, as applicable, the First Lien Paydown (as defined in the Amended DIP Order) and the Additional First Lien Paydown (if any).  The First Lien Paydown of $350 million was paid by the Debtors on February 28, 2024.  Accordingly, after applying the Wind Down Claim Cap, the outstanding First Lien Claims are estimated to be approximately $215 million on November 18, 2024, which would be deemed as being satisfied in full upon payment of the Additional First Lien Paydown.

- Pursuant to the Amended DIP Order, subject to the Carve-Out Claims, the Assumption Orders (as defined in the Amended DIP Order), and the MLB Adequate Assurance Order, the First Lien Adequate Protection Superpriority Claims shall not be junior or *pari passu* to any claims and shall have priority over all administrative expense claims and other claims against each of the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, and 1114 of the Bankruptcy Code.

- Finally, pursuant to the Priorities Annex (as defined in the Amended DIP Order), the First Lien Claims are senior to the DIP Superpriority Claims (as defined in the Amended DIP Order).

Net Proceeds from the Encumbered Sinclair-Related Litigation Collateral, net of the Additional First Lien Paydown, are (a) *first,* used to satisfy the Carve-Out Claims, (b) *second*, used to satisfy the First Lien Claims up to the Wind Down Claim Cap (although such claims are assumed to be satisfied in full up to the Wind Down Claim Cap as part of the Additional First Lien Paydown), (c) *third*, used to satisfy the MLB Claims, (d) *fourth*, available to satisfy the DIP Claims, the NBA Claims, and the NHL Claims, and (e) *fifth*, available to satisfy other creditor claims assuming application of the rule of absolute priority.

Net Proceeds from the Unencumbered Sinclair-Related Litigation Collateral, net of the Additional First Lien Paydown, are (a) *first*, used to satisfy the Carve-Out Claims, (b) *second*, used to satisfy the First Lien Adequate Protection Superpriority Claims (up to $100 million, although such claims are assumed to be satisfied in full as part of the Additional First Lien Paydown), (c) *third*, used to

satisfy the MLB Claims, (d) *fourth*, available to satisfy the remaining First Lien Adequate Protection Superpriority Claims (if any, as such claims are assumed to be satisfied in full as part of the Additional First Lien Paydown), (e) *fifth*, available to satisfy the DIP Claims, the NBA Claims, and the NHL Claims, and (f) *sixth*, available to satisfy other creditor claims assuming application of the rule of absolute priority.

**8.      Chapter 7 Wind-Down Expenses**

Wind-down expenses are assumed to consist primarily of the ordinary course general and administrative costs that would be required to liquidate the Debtors' businesses during a six-month wind-down period after the Conversion Date. Expenses would primarily include wind-down employee compensation, insurance, and costs associated with the dissolution of corporate entities.

All estimated postpetition accounts payable and accrued expenses (with the exception of professional fees included in the Carve-Out Claims below) as of the Conversion Date are assumed to be Administrative Claims and thus not treated as wind-down expenses or otherwise deducted for purposes of deriving "net proceeds available" in this Liquidation Analysis.

**9.      Chapter 7 Wind-down Professional Fees**

Professional fees include estimates for advisors supporting the chapter 7 proceeding.

**10.     Chapter 7 Trustee Fees**

Trustee fees are assumed to be 3% of liquidation proceeds realized, including cash and cash equivalents, pursuant to sections 326 and 330 of the Bankruptcy Code.

**11.     Carve-Out Claims**

The Amended DIP Order permits the carve-out of certain statutory fees and allowed professional fees of the Debtors and any committee appointed in the chapter 11 cases pursuant to section 1103 of the Bankruptcy Code (the "***Carve-Out Claims***").  The Carve-Out Claims include estimated incurred but unpaid professional and trustee fees through the Conversion Date.

**ILLUSTRATIVE MLB CLAIMS AND RECOVERY**

**12.     MLB Security Deposit**

As further described in the MLB Adequate Assurance Order, the Debtors deposited $20 million in a segregated account held by the Debtors for the exclusive benefit of the Clubs (as defined in the MLB Adequate Assurance Order).

Pursuant to the MLB Adequate Assurance Order and the Amended DIP Order, prior to the end of the 2024 MLB Season (as defined in the MLB Adequate Assurance Order), the Debtors shall not use the MLB Security Deposit for any purpose other than satisfying any allowed MLB Superiority Administrative Expense Claim or MLB JV Claim (each as defined in the MLB

10

Adequate Assurance Order).

### 13.    MLB Claims

The MLB Superpriority Administrative Expense Claims and MLB JV Claims (collectively, the "**_MLB Claims_**") include all outstanding and unpaid telecast rights payments related to the 2024 MLB Season owed to the Clubs whose telecast rights agreements are with the Debtors or Majority-Owned JVs, subject to reduction for any mitigation of damages set forth in the MLB Adequate Assurance Order.  The estimated claim balance includes all unpaid telecast rights payments for the 2024 MLB Season due on or after November 30, 2024, and, for the purposes of this analysis, includes no mitigation.  The estimated claim balance also includes an estimated amount of performance bonuses that may be payable by the Debtors or the non-Debtor Majority-Owned JVs, as applicable, to the applicable Clubs for the 2024 MLB Season, all or a portion of which may not be payable subject to the applicable Clubs' performance in the 2024 MLB Season.

Pursuant to the MLB Adequate Assurance Order, the MLB Superpriority Administrative Expense Claims are entitled to superpriority administrative expense claim status under section 507 of the Bankruptcy Code.  The MLB Claims (including both the MLB Superpriority Administrative Expense Claims and MLB JV Claims) are secured by the MLB Liens (as defined in the MLB Adequate Assurance Order).  With respect to the MLB Security Deposit, the MLB Liens are senior to all other liens.  With respect to the YES Adequate Assurance Collateral and the Unencumbered Sinclair-Related Litigation Collateral, the MLB Liens are subordinate to the Carve-Out Claims and the First Lien Adequate Protection Superpriority Claims (up to $100 million, although such claims are assumed to be satisfied in full as part of the Additional First Lien Paydown) but are senior to all other claims.  The MLB Superpriority Administrative Expense Claims are otherwise subordinate to the Carve-Out Claims and rank _pari passu_ with each of the First Lien Adequate Protection Superpriority Claims (assumed to be satisfied in full as part of the Additional First Lien Paydown), the DIP Superpriority Claims, the NBA Superpriority Administrative Expense Claims (as defined in the NBA Adequate Assurance Order [Docket No. 2390]), and the NHL Superpriority Administrative Expense Claims (as defined in the NHL Adequate Assurance Order [Docket No. 2389]).

### ILLUSTRATIVE DIP CLAIMS, NBA CLAIMS, NHL CLAIMS. JUNIOR FUNDED DEBT CLAIMS, GENERAL UNSECURED CLAIMS, UNSECURED CLAIMS RESERVE, AND OTHER ASSETS AND RECOVERIES

### 14.    DIP Claims (Excluding the Excluded DIP Amounts)

The estimated DIP Claims (excluding the Excluded DIP Amounts (as defined in the Amended DIP Order) and as further described below) on the Conversion Date are estimated to be $529 million. The claim balance includes the outstanding principal amount, unpaid interest, the DIP Commitment Premium Claims, and all other obligations, amounts, and expenses arising under or in connection with the DIP Credit Agreement, excluding the (x) DIP MOIC, (y) any PIK Amounts (as defined below) accruing on or after October 1, 2024, and (z) any Excess DIP Amounts (as defined below).  Holders of DIP Claims (excluding any DIP Claims on account of the Excluded DIP Amounts) are estimated to receive a 65% recovery in the lower recovery estimate and a 74%

recovery in the higher recovery estimate.

Pursuant to the Amended DIP Order, the Debtors shall not make any payment on account of the Excluded DIP Amounts unless the Unsecured Claims Reserve has been funded by the Debtors. This Liquidation Analysis therefore assumes that no distributions will be made on account of the Excluded DIP Amounts unless and until Holders of Allowed General Unsecured Claims have received distributions from the Unsecured Claims Reserve.

Pursuant to the Amended DIP Order, the DIP Claims (i) are subordinate and subject in right of payment to the First Lien Claims up to the Wind Down Claim Cap (assumed to be satisfied in full as part of the Additional First Lien Paydown) in all respects and (ii) are subordinate to the MLB Claims with respect to the MLB Security Deposit, the YES Adequate Assurance Collateral, and the Unencumbered Sinclair-Related Litigation Collateral, but are *pari passu* with the NBA Claims and the NHL Claims and any recovery on account of (i) the DIP Superpriority Claims from the DIP Collateral, (ii) any NHL Superpriority Administrative Expense Claims from the NHL Adequate Assurance Collateral, and (iii) any NBA Superpriority Administrative Expense Claims from the NBA Adequate Assurance Collateral shall be shared on a *pro rata* basis.

**15.    NBA Claims[2]**

The NBA Superpriority Administrative Expense Claims and NBA JV Claims (collectively, the "***NBA Claims***") include all outstanding and unpaid telecast rights payments related to the 24–25 NBA Season owed to the NBA Parties whose telecast rights agreements are with the Debtors or Majority-Owned JVs, subject to reduction for any mitigation of damages set forth in the NBA Adequate Assurance Order.   The estimated claim balance includes all unpaid telecast rights payments for the 24–25 NBA Season due on or after November 30, 2024, and, for the purposes of this analysis, includes no mitigation.   The estimated claim balance also includes all unpaid EMA rights fees owed to the NBA.   Holders of NBA Claims are estimated to receive a 65% recovery in the lower recovery estimate and a 74% recovery in the higher recovery estimate.

Pursuant to the NBA Adequate Assurance Order, the NBA Superpriority Administrative Expense Claims are entitled to superpriority administrative expense claim status under section 507 of the Bankruptcy Code.   The NBA Claims (including both the NBA Superpriority Administrative Expense Claims and NBA JV Claims) are secured by the NBA Liens.   The NBA Superpriority Administrative Expense Claims (i) are subordinate and subject in right of payment to the First Lien Claims up to the Wind Down Claim Cap (assumed to be satisfied in full as part of the Additional First Lien Paydown) in all respects and (ii) are subordinate to the MLB Claims with respect to the MLB Security Deposit, the YES Adequate Assurance Collateral, and the Unencumbered Sinclair-Related Litigation Collateral, but are *pari passu* with the DIP Claims and the NHL Claims and any recovery on account of (i) the DIP Superpriority Claims from the DIP Collateral, (ii) any NHL Superpriority Administrative Expense Claims from the NHL Adequate Assurance Collateral, and (iii) any NBA Superpriority Administrative Expense Claims from the NBA Adequate Assurance

---

[2]   Capitalized terms used in this section but not otherwise defined herein have the meanings ascribed to them in the NBA Adequate Assurance Order.

Collateral shall be shared on a *pro rata* basis.

## 16.    NHL Claims[3]

The NHL Superpriority Administrative Expense Claims and NHL JV Claims (collectively, the "***NHL Claims***") include all outstanding and unpaid telecast rights payments related to the 24–25  NHL Season owed to the NHL Parties whose telecast rights agreements are with the Debtors or Majority-Owned JVs, subject to reduction for any mitigation of damages set forth in the NHL Adequate Assurance Order.   The estimated claim balance includes all unpaid telecast rights payments for the 24–25 NHL Season due on or after November 30, 2024, and, for the purposes of this analysis, includes no mitigation.   The estimated claim balance also includes an estimated amount of performance bonuses that may be payable by the Debtors to the applicable NHL Parties for the 24–25 NHL Season, all or a portion of which may not be payable subject to the NHL Parties' performance in the 24–25 NHL Season.   Holders of NHL Claims are estimated to receive a 65% recovery in the lower recovery estimate and a 74% recovery in the higher recovery estimate.

Pursuant to the NHL Term Sheet, the NHL Superpriority Administrative Expense Claims are entitled to superpriority administrative expense claim status under section 507 of the Bankruptcy Code.   The NHL Claims (including both the NHL Superpriority Administrative Expense Claims and NHL JV Claims) are secured by the NHL Liens.   The NHL Superpriority Administrative Expense Claims (i) are subordinate and subject in right of payment to the First Lien Claims up to the Wind Down Claim Cap (assumed to be satisfied in full as part of the Additional First Lien Paydown) in all respects and (ii) are subordinate to the MLB Claims with respect to the MLB Security Deposit, the YES Adequate Assurance Collateral, and the Unencumbered Sinclair-Related Litigation Collateral, but are *pari passu* with the DIP Claims and the NBA Claims and any recovery on account of (i) the DIP Superpriority Claims from the DIP Collateral, (ii) any NHL Superpriority Administrative Expense Claims from the NHL Adequate Assurance Collateral, and (iii) any NBA Superpriority Administrative Expense Claims from the NBA Adequate Assurance Collateral shall be shared on a *pro rata* basis.

## 17.    General Unsecured Claims; Unsecured Claims Reserve

Pursuant to the Amended DIP Order, in the event that, among other things, the Debtors are unable to satisfy all administrative expenses under section 503(b) of the Bankruptcy Code in connection with a chapter 11 plan, which is the outcome reflected by this Liquidation Analysis, the Debtors must fund a reserve (the "***Unsecured Claims Reserve***") in an amount equal to the lesser of (a) a dollar amount equal to a 6% cash recovery on an aggregate basis on account of all Allowed General Unsecured Claims and (b) $13 million.[4]   This Liquidation Analysis assumes that the amount to be

---

[3]  Capitalized terms used in this section but not otherwise defined herein have the meanings ascribed to them in the NHL Adequate Assurance Order.

[4]  The Amended DIP Order provides for the following priorities of distribution with respect to amounts funded into the Unsecured Claims Reserve:  The Unsecured Claims Reserve shall not be distributed to Holders of Allowed General Unsecured Claims until (x) Payment in Full (as defined in the DIP Subordination Provisions) of the First Lien Claims (including any such Payment in Full following the payment of the Additional First Lien Paydown after the occurrence of a Wind Down Pivot) and (y) all DIP Obligations (other than the Excluded DIP Amounts) have been paid in cash (clauses (x) and (y), together, the "***Reserve Distribution Conditions***").  If the Debtors have no other sources of cash or monetizable assets to provide for the Payment in Full of the First Lien Claims, the Debtors

funded into the Unsecured Claims Reserve is estimated to be approximately $10.5 million, which is 6% of $175 million, the estimated Allowed General Unsecured Claims (including, for the avoidance of doubt, any Go-Forward Trade Claims).

For illustrative purposes, in both the higher and lower recovery estimate in this Liquidation Analysis, the funds in the Unsecured Claims Reserve are presented as not available to satisfy any Allowed General Unsecured Claims as the remaining assets of the Debtors are not sufficient to satisfy the DIP Claims (other than the Excluded DIP Amounts) in full (and the deficiency is larger than the full amount of the Unsecured Claims Reserve). Accordingly, in the event the Unsecured Claims Reserve is the sole source of recovery, Holders of Allowed General Unsecured Claims are estimated to receive no recovery in the lower recovery or in the higher recovery estimate.

For the avoidance of doubt, Unsecured Notes Claims are not included in General Unsecured Claims; instead, Unsecured Notes Claims are included in Junior Funded Debt Claims.

For the avoidance of doubt, nothing contained in this analysis is intended to be, or constitutes, a concession, admission, or allowance of any General Unsecured Claims by the Debtors, and any values set forth herein are for illustrative purposes only.

## 18.    Excluded DIP Amounts

Pursuant to the Amended DIP Order, the Excluded DIP Amounts is the aggregate amount of the (x) DIP MOIC, (y) any PIK Amounts accruing on or after October 1, 2024, or (z) any Excess DIP Amounts. Pursuant to the Amended DIP Order, the Unsecured Claims Reserve must be funded by the Debtors before the Debtors may distribute any cash on account of the Excluded DIP Amounts. The aggregate amount of Claims on account of the Excluded DIP Amounts is estimated to be approximately $170 million for the purposes of this Liquidation Analysis. Holders of DIP Claims on account of the Excluded DIP Amounts are estimated to receive no recovery on account of such claims in the lower or higher recovery estimate.

- Pursuant to the Amended DIP Order, the DIP MOIC is equal to 0.4 multiplied by the total principal amount of DIP Loans less the aggregate amount received by the DIP Lenders in cash on account of payments of cash interest on the DIP Loans. The aggregate amount of Claims on account of the DIP MOIC is estimated to be approximately $163 million for the purposes of this Liquidation Analysis.

- Pursuant to the DIP Credit Agreement, the DIP Loans (as defined in the Amended DIP Order) bear interest on the outstanding principal amount thereof at a rate per annum equal to 10.00%; provided that on each Interest Payment Date (as defined in the DIP Credit Agreement) (i) accrued interest at a rate per annum equal to 5.00% shall be payable in cash (subject to the DIP Subordination Provisions) and (ii) accrued interest at a rate per annum

---

may use all or a portion of the Unsecured Claims Reserve to satisfy First Lien Claims. After Payment in Full of the First Lien Claims, if the Debtors have no other sources of cash or monetizable assets to provide for payment of all DIP Obligations (other than the Excluded DIP Amounts) in cash, the Debtors may use all or a portion of the Unsecured Claims Reserve to make payments to the DIP Lenders until all DIP Obligations other than the Excluded DIP Amounts have been paid in full.

equal to 5.00% shall be payable in kind (the amount of interest paid in kind, "***PIK Amount***") by capitalizing the PIK Amount and adding it to, and increasing the then-outstanding aggregate principal amount of the DIP Loans by, such PIK Amount on and as of such Interest Payment Date and such PIK Amount shall thereafter constitute principal of the DIP Loans and shall bear interest at the rate set forth in the DIP Credit Agreement.  As part of the Amended DIP Order, any PIK Amounts accruing on or after October 1, 2024, through the Conversion Date are treated as Excluded DIP Amounts. The aggregate amount of Claims on account of the PIK Amounts is estimated to be approximately $4 million for the purposes of this Liquidation Analysis.

- Pursuant to the Amended DIP Order, solely for purposes of determining whether the Reserve Distribution Conditions have been met, any cash payments made on account of interest accruing under the DIP Facility (as defined in the Amended DIP Order) on and after October 1, 2024, through the Conversion Date shall be deemed to reduce the outstanding principal amount of DIP Obligations (the "***Reduced DIP Obligations***" and, any outstanding principal amount of DIP Obligations in excess of the Reduced DIP Obligations, the "***Excess DIP Amounts***") required to be paid to the DIP Lenders prior to the distribution of the funds held in the Unsecured Claims Reserve to holders of Allowed General Unsecured Claims and Allowed Go-Forward Trade Claims.  The aggregate amount of Claims on account of the Excess DIP Amounts is estimated to be approximately $4 million for the purposes of this Liquidation Analysis.

## 19.    Junior Funded Debt Claims

The "***Junior Funded Debt Claims***" consist of the Second Lien Claims, the Third Lien Claims, and the Unsecured Notes Claims as described below.  This Liquidation Analysis concludes that Holders of Junior Funded Debt Claims will receive no recovery in a hypothetical chapter 7 liquidation.

- Second Lien Revolving Loan Claims are allowed in the aggregate amount of $230,205,129.51;

- Second Lien Term Loan Claims are allowed in the aggregate amount of $3,234,860,037.30;

- Second Lien Notes Claims are allowed in the aggregate amount of $3,134,954,571.84;

- Third Lien Term Loan Claims are allowed in the aggregate amount of $4,194,855.45;

- Third Lien Notes Claims are allowed in the aggregate amount of $10,530,821.04; and

- Unsecured Notes Claims are allowed in the aggregate amount of $1,810,866,581.14.

## 20.    Other Secured Claims

This Liquidation Analysis concludes that Holders of Other Secured Claims will receive no recovery in a hypothetical chapter 7 liquidation.

The Company does not anticipate there to be any allowed Other Secured Claims.

**21.    Administrative Claims**

Administrative Claims include postpetition accounts payable and accrued expenses, including estimated severance for terminated employees prior to the Conversion Date, and any purported break fee payable under the Convertible B Exit Note Commitment Letter.  This Liquidation Analysis concludes that, except as otherwise specifically described herein, Holders of Administrative Claims will receive no recovery in a hypothetical chapter 7 liquidation.

**22.    Other Priority Claims**

This Liquidation Analysis concludes that Holders of Other Priority Claims will receive no recovery in a hypothetical chapter 7 liquidation.

**23.    Intercompany Claims**

This Liquidation Analysis concludes that Holders of Intercompany Claims will receive no recovery in a hypothetical chapter 7 liquidation.

**24.    Intercompany Interests**

This Liquidation Analysis concludes that Holders of Intercompany Interests will receive no recovery in a hypothetical chapter 7 liquidation.

**25.    Existing Equity Interests**

This Liquidation Analysis concludes that Holders of Existing Equity Interests will receive no recovery in a hypothetical chapter 7 liquidation.

**<u>Conclusion</u>**

The Debtors have determined, as summarized in the above analysis, that upon the effective date of the Amended Plan, the Amended Plan (regardless of whether the Wind-Down Toggle occurs thereunder) will provide all Holders of Claims with a recovery (if any) that is not less than what such Holders would receive pursuant to a hypothetical liquidation of the Debtors under chapter 7 of the Bankruptcy Code, and as such believe that the Amended Plan (regardless of whether the Wind-Down Toggle occurs thereunder) satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

*[Remainder of page intentionally left blank]*

**<u>Exhibit D</u>**

**Financial Projections**

## Financial Projections

The Debtors' management ("Management")[1] prepared the following financial projections for the Reorganized Debtors (collectively, the "Financial Projections") to provide parties in interest, including Holders of Claims who may be entitled to vote to accept or reject the Amended Plan, with information about the future performance of the Debtors' operations (assuming the Wind-Down Toggle does not occur under the Amended Plan).  As of the date hereof, and as more fully described in the Disclosure Statement Supplement and the Disclosure Statement, the Debtors remain in negotiations with various commercial counterparties, including MLB, MLB teams, naming rights partners, and DTC distribution partners, among others, regarding go-forward arrangements.  The Financial Projections reflect, among other things, the terms of the recently renewed MVPD agreements and the potential outcomes of the aforementioned ongoing negotiations, as well as assumptions around naming rights, advertising sales, and DTC growth. Accordingly, the Financial Projections remain subject to update following completion of such negotiations.

The Financial Projections were prepared in good faith and reflect Management's estimate of the expected consolidated financial position, results of operations, and cash flows for the Reorganized Debtors after the transactions contemplated by the Amended Plan for 2024 through 2027 (the "Projection Period") assuming the Wind-Down Toggle does not occur under the Amended Plan, and are not applicable in a scenario where the Wind-Down Toggle occurs.  For the purposes of the Financial Projections, the Effective Date is assumed to be December 1, 2024 (the "Assumed Effective Date").  The Financial Projections take into account the estimated effects on the deleveraging and capitalization of the Debtors as set forth in the Amended Plan.

The Financial Projections reflect Management's judgment of expected future operating, business, and financial conditions, which are subject to change.  Although the Debtors have prepared the Financial Projections in good faith and believe the assumptions to be reasonable, it is important to note that the Debtors can provide no assurance that such assumptions will be realized.  All estimates and assumptions shown within the Financial Projections were developed by Management.  The Financial Projections have not been audited or reviewed by independent accountants.  The assumptions disclosed herein are those that Management believes to be significant to the Financial Projections.  Although Management is of the opinion that these assumptions, when considered on an overall basis, are reasonable under the current circumstances and expectations, such assumptions are subject to significant uncertainties, such as changes in customer demand and consumer preferences, successful implementation of cost-cutting and growth plans, laws and regulations, interest rates, inflation, and other economic factors affecting the Reorganized Debtors' business, and no assurance can be given that the Financial Projections will be realized.  Despite efforts to foresee and plan for the effects of changes in these circumstances, the impact cannot be predicted with certainty.  Consequently, actual financial results could vary significantly from projected results.  The Financial Projections should not be regarded as an expressed or implied representation or warranty by the Debtors, the Reorganized

---

[1]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement Supplement, to which these Financial Projections are attached as **Exhibit D**, the Disclosure Statement, or the Amended Plan attached to the Disclosure Statement Supplement as **Exhibit A**, as applicable.

Debtors, or any other person as to the fairness, accuracy, correctness, completeness, or reliability of the information, opinions, or conclusions expressed in the Financial Projections.

The Financial Projections have been prepared on a consolidated basis.

Management continues to review treatment and planning strategies for U.S. federal, state, and foreign income tax purposes. The Financial Projections set forth herein assume an illustrative combined federal, state, and local tax rate of 24%.  Actual treatment and realization of planning strategies may vary materially, resulting in substantially greater tax liabilities for the Debtors than is set forth in the Financial Projections.

**The Financial Projections, including the underlying assumptions, should be carefully reviewed in evaluating the Amended Plan.  The significant assumptions used in the preparation of the Financial Projections are stated below.  The Financial Projections assume that the Debtors will emerge from chapter 11 on the Assumed Effective Date and that a Wind-Down Toggle does not occur.  The Financial Projections should be read in conjunction with (i) the Disclosure Statement and the Disclosure Statement Supplement, including any of the exhibits thereto or incorporated references therein, as well as the risk factors set forth in Article VIII of the Disclosure Statement and Article III of the Disclosure Statement Supplement, and (ii) the significant assumptions, qualifications, and notes set forth below. In deciding whether to vote to accept or reject the Amended Plan, Holders of Claims must make their own determinations as to the reasonableness of such assumptions.**

**The Financial Projections were not prepared with a view toward compliance with the guidelines established by the American Institute of Certified Public Accountants, the Financial Accounting Standards Board, or the rules and regulations of the Securities and Exchange Commission.  Furthermore, the Financial Projections have not been audited, reviewed, or subjected to any procedures designed to provide any level of assurance by the Debtors' independent public accountants.  While presented with numerical specificity, the Financial Projections are based upon a variety of estimates and assumptions which, although developed and considered reasonable by Management, may not be realized and are subject to significant business, economic, and competitive uncertainties and contingencies, many of which are inherently difficult to predict and beyond the control of Management.  These uncertainties include, among other things, the ultimate outcome and contents of a confirmed plan of reorganization and the timing of the confirmation of such plan.  As noted above, the Financial Projections have also been developed while the Debtors remain in negotiations regarding material go-forward contractual arrangements, which may affect the Financial Projections in a material and possibly adverse or positive manner.  Consequently, the Financial Projections should not be regarded as a representation or warranty by the Debtors, or any other person, as to the accuracy of the Financial Projections or that the Financial Projections will be realized.  Moreover, the Financial Projections are subjective in many respects, and thus are susceptible to multiple interpretations and periodic revisions based on actual experience and future developments.  Actual results may vary materially from those presented in the Financial Projections.**

The Debtors do not, as a matter of course, publish or disclose their financial projections. Accordingly, the Debtors disclaim any obligation to, (a) furnish updated Financial Projections to

Holders of Claims at any time in the future, (b) include updated information in any documents that may be required to be filed with the Bankruptcy Court or the Securities and Exchange Commission, or (c) otherwise make updated information or Financial Projections publicly available.

**Summary of General Assumptions**

The Financial Projections reflect numerous assumptions concerning the anticipated future performance of the Reorganized Debtors, some of which may not materialize, including, without limitation, assumptions concerning: (a) the timing of confirmation and consummation of the Amended Plan in accordance with its terms; (b) the anticipated future performance of the Reorganized Debtors, including, without limitation, the Reorganized Debtors' ability to maintain or increase revenue and gross margins, control future operating expenses, or make necessary capital expenditures; (c) general business and economic conditions; (d) overall industry performance and trends, including related to subscriber "churn" in the traditional linear cable and satellite business; and (e) the Reorganized Debtors' ability to grow their DTC product, including through a potential commercial arrangement with Amazon. The Financial Projections assume that the Debtors' will enter into an exclusive "channels" arrangement with a strategic partner with respect to the Debtors' DTC offering. The Financial Projections also make assumptions regarding the Debtors' ongoing negotiations with MLB, MLB teams, naming rights partners, and DTC distribution partners. As noted above, the Financial Projections assume that a Wind-Down Toggle does not occur.

The Financial Projections assume that the Amended Plan will be consummated on December 1, 2024, and the Debtors will emerge from chapter 11 at that time, although there can be no assurance as to when the Effective Date will actually occur, and that the Reorganized Debtors will continue to conduct their post-emergence operations substantially similar to their current business. The Financial Projections have been prepared using accounting policies that are consistent with those applied in the Debtors' historical financial statements. The Financial Projections, however, are unaudited and do not purport to represent financial statements prepared in accordance with accounting principles generally accepted in the United States, and are not intended to fully reconcile to the consolidated financial statements prepared by the Debtors. The Financial Projections assume working capital accounts, including accounts receivable, inventories, prepaid expenses, accounts payable, and accrued expenses continue to perform in line with historical activity.

Revenues include projected receipts from MVPDs and vMVPDs, the Debtors' DTC business, ad sales, and the naming rights deal. As described in the Disclosure Statement Supplement and the Disclosure Statement, the Debtors have successfully reached renewals of their distribution agreements with Charter, DIRECTV, Comcast, Cox, and others regarding longer-term distribution deals. The Financial Projections reflect, among other things, the terms of these renewed agreements. With respect to linear revenues, the Financial Projections assume certain customer churn rates over the Projection Period. There is no guaranty that the assumptions made in the Financial Projections in connection with the Debtors' go-forward arrangements with their MVPD partners will materialize. Thus, the projected revenues remain subject to change following finalization of such negotiations.

Operating expenses include production costs, sports rights payments, and other variable operating expenses, including costs associated with implementing the separation from Sinclair contemplated by the Amended Plan.  The Financial Projections reflect the terms agreed with the NBA, the NHL, and their applicable teams for the duration of the Projection Period, which agreements were approved in orders entered by the Bankruptcy Court [Docket Nos. 2389, 2390]. As described in the Disclosure Statement Supplement and the Disclosure Statement, the Debtors are currently engaged with MLB and certain of its teams regarding the go-forward treatment of their contracts.  The Financial Projections reflect, among other things, the potential outcomes of the ongoing negotiations with their team and league partners.  There is no guaranty that the assumptions made in the Financial Projections in connection with the Debtors' go-forward arrangements with their team and league partners will materialize.  Thus, the projected operating expenses remain subject to change following finalization of such negotiations.

The Financial Projections assume a post-emergence capital structure as of the Assumed Effective Date consisting of $200 million in aggregate principal amount of the Exit Term Loans and $100 million in loans outstanding under the New A/R Facility.  The Exit Term Loans are assumed to have a maturity in the fourth quarter of 2027 and the New A/R Facility is assumed to have a maturity outside the Projection Period.  Interest expense for the New A/R Facility is assumed to be 9.0% per annum cash interest.  Interest expense for the Reorganized Debtors' Exit Term Loans is assumed to be 12.0% per annum cash interest.  The Financial Projections assume no Investment Option is exercised during the Projection Period.

*[Reminder of the Page is Intentionally Left Blank.]*

## <u>UNAUDITED PROJECTED BALANCE SHEET</u>

($ in millions)

| | Forecast | | | |
|---|---|---|---|---|
| | **Dec-24E** | **Dec-25E** | **Dec-26E** | **Dec-27E** |
| **Assets** | | | | |
| **Current Assets** | | | | |
| Cash & Cash Equivalents | $249 | $293 | $307 | $290 |
| Accounts Receivable | 246 | 197 | 197 | 209 |
| Prepaid Sports Rights | 48 | 45 | 45 | 45 |
| Prepaid Expenses & Other Current Assets | 30 | 50 | 71 | 70 |
| **Total Current Assets** | **$573** | **$585** | **$620** | **$615** |
| | | | | |
| **Non-Current Assets** | | | | |
| Other Assets | $253 | $253 | $253 | $253 |
| Property & Equipment | 61 | 66 | 69 | 69 |
| Operating Lease Assets | 24 | 24 | 24 | 24 |
| Customer Relationships & Other Definite-Lived Intangible Assets, net | 1,118 | 1,118 | 1,118 | 1,118 |
| **Total Non-Current Assets** | **$1,456** | **$1,461** | **$1,464** | **$1,464** |
| | | | | |
| **Total Assets** | **$2,029** | **$2,046** | **$2,084** | **$2,079** |
| | | | | |
| **Liabilities & Equity** | | | | |
| **Current Liabilities** | | | | |
| Accounts Payable and Accrued Liabilities | $69 | $38 | $45 | $54 |
| New Exit Term Loans and New A/R Facility, current | -- | -- | 123 | -- |
| Operating Lease Liabilities, current | 12 | 12 | 12 | 12 |
| Other Current Liabilities | 15 | 24 | 40 | 54 |
| **Total Current Liabilities** | **$96** | **$73** | **$220** | **$120** |
| | | | | |
| **Non-Current Liabilities** | | | | |
| New Term Loans New A/R Facility, non-current | $300 | $247 | $75 | $63 |
| Operating Lease Liabilities, non-current | 16 | 16 | 16 | 16 |
| Other Long-Term Liabilities | 5 | 5 | 5 | 5 |
| Redeemable Noncontrolling Interests | 6 | 6 | 6 | 6 |
| **Total Non-Current Liabilities** | **$326** | **$274** | **$101** | **$89** |
| | | | | |
| **Total Liabilities** | **$422** | **$347** | **$321** | **$210** |
| | | | | |
| **Total Equity** | **$1,606** | **$1,699** | **$1,763** | **$1,869** |
| | | | | |
| **Total Liabilities & Equity** | **$2,029** | **$2,046** | **$2,084** | **$2,079** |

5

### UNAUDITED PROJECTED INCOME STATEMENT

| ($ in millions) | Forecast | | | |
| --- | --- | --- | --- | --- |
| | **2024E** | **2025E** | **2026E** | **2027E** |
| EoP Linear Paying Subscribers | 22.6 | 20.1 | 18.2 | 16.7 |
| EoP DTC Subscribers | 0.7 | 1.5 | 1.8 | 2.1 |
| **Linear** | | | | |
| Distribution Revenue | $1,477 | $662 | $547 | $517 |
| Advertising and Other Revenue | 368 | 206 | 212 | 215 |
| **Total Linear Revenue** | **$1,845** | **$868** | **$760** | **$731** |
| Linear Expenses (excl. Sports Rights) | ($439) | ($246) | ($248) | ($265) |
| **Linear EBITDA Contribution** | **$1,406** | **$622** | **$512** | **$466** |
| **DTC** | | | | |
| Streaming Revenue | $74 | $157 | $327 | $475 |
| Advertising & Other Revenue | 15 | 34 | 55 | 67 |
| **Total DTC Revenue** | **$88** | **$190** | **$382** | **$542** |
| Cost of Revenue | ($13) | ($47) | ($100) | ($145) |
| Marketing Expenses | (15) | (21) | (37) | (51) |
| Other Expenses | (38) | (29) | (30) | (33) |
| **Total DTC Expenses (excl. Sports Rights)** | **($66)** | **($98)** | **($167)** | **($229)** |
| **DTC EBITDA Contribution** | **$22** | **$93** | **$215** | **$313** |
| **Consolidated Financials** | | | | |
| Linear EBITDA Contribution | $1,406 | $622 | $512 | $466 |
| DTC EBITDA Contribution | 22 | 93 | 215 | 313 |
| Sports Rights Payments | (1,499) | (675) | (637) | (637) |
| **Consolidated EBITDA** | **($70)** | **$39** | **$90** | **$143** |

## UNAUDITED PROJECTED STATEMENT OF CASH FLOWS

|  | Forecast | | | |
| --- | --- | --- | --- | --- |
| *($ in millions)* | **2024E** | **2025E** | **2026E** | **2027E** |
| **Consolidated EBITDA** | **($70)** | **$39** | **$90** | **$143** |
| Net JV and NCI Funds | 3 | 26 | 21 | 20 |
| Capital Expenditures | (8) | (17) | (19) | (19) |
| Separation Work | (21) | -- | -- | -- |
| Debt Service | (79) | (86) | (79) | (158) |
| Restructuring Professional Fees | (111) | -- | -- | -- |
| Emergence Transaction Fees & Other | (58) | -- | -- | -- |
| GUC Recoveries | (10) | -- | -- | -- |
| Federal & Local Income Taxes | -- | (2) | (2) | (14) |
| Initial DIP Funding | 100 | -- | -- | -- |
| Net Cash Flows of Emergence Sources & Uses | (97) | -- | -- | -- |
| Net Working Capital | 293 | 84 | 3 | 11 |
| **Increase / (Decrease) in Cash** | **($59)** | **$44** | **$14** | **($17)** |

## Exhibit E

**Valuation Analysis**

### Valuation Analysis[1]

THE VALUATION INFORMATION CONTAINED HEREIN IS NOT A PREDICTION OR GUARANTEE OF THE ACTUAL MARKET VALUE THAT MAY BE REALIZED THROUGH THE SALE OF ANY SECURITIES TO BE ISSUED PURSUANT TO THE AMENDED PLAN. THIS VALUATION IS PRESENTED SOLELY FOR THE PURPOSE OF PROVIDING ADEQUATE INFORMATION AS REQUIRED BY SECTION 1125 OF THE BANKRUPTCY CODE TO ENABLE THE HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE AMENDED PLAN TO MAKE AN INFORMED JUDGMENT ABOUT THE AMENDED PLAN AND SHOULD NOT BE USED OR RELIED UPON FOR ANY OTHER PURPOSE, INCLUDING THE PURCHASE OR SALE OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS.

At the Debtors' request, Moelis & Company LLC ("Moelis") performed a valuation analysis to estimate the enterprise value of the Reorganized Debtors (the "Enterprise Value") on a going concern basis.

The valuation analysis set forth herein (this "Valuation Analysis") is based on information as of September 30, 2024, and is based on the business plan prepared by the Debtors' management. This Valuation Analysis assumes that the Wind-Down Toggle does not occur under the Amended Plan, and is not applicable in a scenario where the Wind-Down Toggle occurs.

Based upon and subject to the review and analysis described herein, and subject to the assumptions, limitations, and qualifications described herein, Moelis' view, as of September 30, 2024, was that the Enterprise Value of the Reorganized Debtors, as of an assumed valuation date, for purposes of Moelis' valuation analysis, of December 1, 2024 (the "Assumed Valuation Date"), would be in a range between $600 million and $1,000 million.  This analysis is based on the Debtors' management's assumption that the Reorganized Debtors will emerge with approximately $80 million of net debt on the balance sheet as of the Assumed Effective Date.  After adjusting for net debt, the implied equity value (the "Equity Value") would be in a range between $520 million and $920 million.

Moelis' views are necessarily based on economic, monetary, market, and other conditions as in effect on, and the information made available to Moelis as of the date of its analysis (September 30, 2024).  It should be understood that, although subsequent developments may affect Moelis' views, Moelis does not have any obligation to update, revise, or reaffirm its analysis or its estimate.

Moelis' analysis is based, at the Debtors' direction, on a number of assumptions, including, among other assumptions, that (i) the Debtors will be reorganized in accordance with the Amended Plan, which will be effective on the Assumed Valuation Date, (ii) the Reorganized Debtors will achieve the results set forth in the Debtors' management's financial projections attached as Exhibit D to the Disclosure Statement Supplement (the "Financial Projections") for 2024 through 2027

---

[1]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement Supplement, to which this Valuation Analysis is attached as **Exhibit E**, the Disclosure Statement, or the Amended Plan attached to the Disclosure Statement Supplement as **Exhibit A**, as applicable.

(the "<u>Projection Period</u>") provided to Moelis by the Debtors,[2] (iii) the Reorganized Debtors' capitalization and available cash will be as set forth in the Amended Plan and the Disclosure Statement Supplement, and (iv) the Reorganized Debtors will be able to obtain all future financings, on the terms and at the times, necessary to achieve the results set forth in the Financial Projections.  Moelis makes no representation as to the achievability or reasonableness of such assumptions.  In addition, Moelis assumed that there will be no material change in economic, monetary, market, and other conditions as in effect on, and the information made available to Moelis, as of the Assumed Valuation Date.

Moelis assumed, at the Debtors' direction, that the Financial Projections prepared by the Debtors' management were reasonably prepared on a basis reflecting the best currently available estimates and judgments of the Debtors' management as to the future financial and operating performance of the Reorganized Debtors.  The future results of the Reorganized Debtors are dependent upon various factors, many of which are beyond the control or knowledge of the Debtors, and consequently are inherently difficult to project.  The Reorganized Debtors' actual future results may differ materially (positively or negatively) from the Financial Projections and, as a result, the actual enterprise value and/or equity value of the Reorganized Debtors may be materially higher or lower than the estimated range herein.  Among other things, failure to consummate the Amended Plan in a timely manner may have a materially negative impact on the enterprise value and/or equity value of the Reorganized Debtors.

The estimated Enterprise and Equity Values set forth above represent hypothetical enterprise and equity values of the Reorganized Debtors as the continuing operators of the business and assets of the Debtors, after giving effect to the Amended Plan, based on consideration of certain valuation methodologies as described below.  The estimated Enterprise and Equity Values do not purport to constitute an appraisal or necessarily reflect the actual market values that might be realized through a sale or liquidation of the Reorganized Debtors, their securities or their assets, which may be materially higher or lower than the estimated value ranges herein.  The actual value of an operating business such as the Reorganized Debtors' business is subject to uncertainties and contingencies that are difficult to predict and will fluctuate with changes in various factors affecting the financial condition and prospects of such a business.

In conducting its analysis, Moelis, among other things: (i) reviewed certain publicly available business and financial information relating to the Reorganized Debtors that Moelis deemed relevant (i.e. historical filings, court filings, cleansed information as part of the current chapter 11 process, etc.); (ii) reviewed the Financial Projections furnished to Moelis by the Debtors; (iii) reviewed the capitalization of the Reorganized Debtors; (iv) conducted discussions with members of senior management and representatives of the Debtors concerning the matters described in clauses (i) and (iii) of this paragraph, as well as their views concerning the Debtors' business and prospects before giving effect to the Amended Plan, and the Reorganized Debtors' business and prospects after giving effect to the Amended Plan; (v) reviewed publicly available financial and stock market data for certain other companies in lines of business that Moelis deemed relevant; (vi) reviewed publicly available financial data for certain transactions that Moelis deemed

---

[2]   Notwithstanding the use of the Financial Projections for purposes of this Valuation Analysis, the Valuation Analysis and the Financial Projections are qualified in their entirety by the notes set forth in the Financial Projections and the Disclosure Statement Supplement.

relevant; and (vii) conducted such other financial studies and analyses and took into account such other information as Moelis deemed appropriate.  In connection with its review, Moelis did not assume any responsibility for independent verification of (and did not independently verify) any of the information supplied to, discussed with, or reviewed by Moelis and, with the consent of the Debtors, relied on such information being complete and accurate in all material respects.  In addition, at the direction of the Debtors, Moelis did not make any independent evaluation or appraisal of any of the assets or liabilities (contingent, insurance-related, derivative, off-balance-sheet, tax-related, or otherwise, nor was Moelis furnished with any such evaluation or appraisal) of the Reorganized Debtors.  Moelis also assumed, with the Debtors' consent, that the final form of the Amended Plan does not differ in any respect material to its analysis from the final draft of the Amended Plan that Moelis reviewed.

The estimated Enterprise and Equity Values set forth herein do not constitute a recommendation to any Holder of a Claim as to how such Holder of a Claim should vote or otherwise act with respect to the Amended Plan.  Moelis has not been asked to and does not express any view as to what the trading value of the Reorganized Debtors' securities would be when issued pursuant to the Amended Plan or the prices at which they may trade in the future.  The estimated Enterprise and Equity Values set forth herein does not constitute an opinion as to fairness from a financial point of view to any Holder of a Claim of the consideration to be received by such Holder of a Claim under the Amended Plan, if any, or of the terms and provisions of the Amended Plan.

*[Remainder of page intentionally left blank]*

<u>Valuation Methodologies</u>

In preparing its valuation, Moelis performed a variety of financial analyses and considered a variety of factors. The following is a brief summary of the material financial analyses performed by Moelis, which consisted of (a) a discounted unlevered cash flow analysis, (b) a selected publicly traded companies analysis, and (c) for reference only, a selected transactions analysis. This summary does not purport to be a complete description of the analyses performed and factors considered by Moelis. The preparation of a valuation analysis is a complex analytical process involving various judgmental determinations as to the most appropriate and relevant methods of financial analysis and the application of those methods to particular facts and circumstances, and such analyses and judgments are not readily susceptible to summary description. As such, Moelis' valuation analysis must be considered as a whole. Reliance on only one of the methodologies used, or portions of the analysis performed, could create a misleading or incomplete conclusion as to enterprise value.

A. ***Discounted Unlevered Cash Flow Analysis.*** The discounted cash flow ("<u>DCF</u>") analysis is a valuation methodology that estimates the value of an asset or business by calculating the present value of expected future cash flows to be generated by that asset or business plus a present value of the estimated terminal value of that asset or business. Moelis' DCF analysis used the Financial Projections' estimated debt-free, after-tax free cash flows through December 31, 2027. These cash flows were then discounted at a range of estimated weighted average costs of capital ("<u>Discount Rate</u>") for the Reorganized Debtors. In determining the estimated terminal value of the Reorganized Debtors, Moelis utilized the perpetuity growth rate method which estimates a range of values for the Reorganized Debtors at the end of the Projection Period based on applying a range of growth rates to final year unlevered free cash flow. In estimating a range of perpetuity growth rates for its DCF analysis, Moelis took into account the highly contractual nature of the Reorganized Debtors' business, the long-term secular declines in the Reorganized Debtors' linear business segment, and the nascent nature of the Reorganized Debtors' DTC business segment.

To determine the Discount Rate, Moelis used the estimated cost of equity and the estimated after-tax cost of debt for the Reorganized Debtors, assuming a targeted, long-term, debt-to-total capitalization ratio based on debt-to-capitalization ratios of the selected publicly traded companies and the proposed capital structure contemplated by the Amended Plan. Moelis calculated the cost of equity based on (i) the capital asset pricing model, which assumes that the expected equity return is a function of the risk-free rate, equity risk premium, and the correlation of the stock performance of the selected publicly traded companies to the return on the broader market, and (ii) an adjustment related to the estimated equity market capitalization of the Reorganized Debtors, which reflects the historical equity risk premium of small, medium, and large equity market capitalization companies. Moelis utilized the statutory corporate tax rate in determining a go-forward blended tax rate. Moelis calculated the cost of debt utilizing its judgment based on the size, industry, and end-uses for the Reorganized Debtors and on corporate credit spreads in the current market environment.

B. ***Selected Publicly Traded Companies Analysis*** The selected publicly traded companies analysis is based on the enterprise values of selected publicly traded broadcasting and

regional sports network companies, diversified media and networks companies, and streamers that have operating and financial characteristics comparable in certain respects to the Reorganized Debtors.  Under this methodology, certain financial multiples that measure financial performance and value are calculated for each selected company and then applied to certain financial metrics for the Reorganized Debtors to imply an enterprise value for the Reorganized Debtors.  Moelis used, among other measures, enterprise value (defined as market value of equity, plus book value of debt and book value of preferred stock and minority interests, less cash, subject to adjustments for other items where appropriate) for each selected company as a multiple of such company's publicly available consensus projected earnings before interest, taxes, depreciation, and amortization ("EBITDA") for calendar year 2026 and 2027.

Although the selected companies were used for comparison purposes, no selected publicly traded company is either identical or directly comparable to the business of the Reorganized Debtors.  Accordingly, Moelis' comparison of selected publicly traded companies to the business of the Reorganized Debtors and analysis of the results of such comparisons was not purely mathematical, but instead involved considerations and judgments concerning differences in operating and financial characteristics and other factors that could affect the relative values of the selected publicly traded companies and the Reorganized Debtors.  The selection of appropriate companies for this analysis is a matter of judgment and subject to limitations due to sample size and the public availability of meaningful market-based information.

C.  ***Selected Transactions Analysis.***  Moelis conducted a selected transactions analysis for reference only and did not rely on the selected transactions analysis in determining its valuation analysis. The selected transactions analysis is based on the implied enterprise values of companies and assets involved in publicly disclosed merger and acquisition transactions for which the targets had operating and financial characteristics comparable in certain respects to the Reorganized Debtors.  Under this methodology, a multiple is derived using the enterprise value of each such target, calculated as the consideration paid and the net debt assumed in the selected precedent transaction relative to a financial metric, in this case EBITDA.  Such multiples were then applied to the Reorganized Debtors' EBITDA projected for the twelve month period as of December 31, 2026, to imply an enterprise value for the Reorganized Debtors.  Moelis analyzed various merger and acquisition transactions that have occurred in the broadcasting / regional sports network sector since 2012.

Although the selected precedent transactions were used for comparison purposes, no company included in the selected precedent transaction analysis is either identical or directly comparable to the business of the Reorganized Debtors.  Accordingly, Moelis' comparison of selected precedent transactions to the business of the Reorganized Debtors and analysis of the results of such comparisons was not purely mathematical, but instead involved considerations and judgments concerning differences in operating and financial characteristics and other factors that could affect the relative values implied by the selected precedent transactions analysis and the Reorganized Debtors.  The selection of appropriate transactions for this analysis is a matter of judgment and subject to limitations due to sample size and the public availability of meaningful market-based information.  Due to the limited number of recent transactions with

disclosed financials in the broadcasting / regional sports network sector, this methodology was considered for reference only.

<u>Reorganized Debtors - Valuation Considerations</u>

The estimated Enterprise Value and Equity Value set forth herein is not necessarily indicative of actual value, which may be significantly higher or lower than the ranges set forth herein. Accordingly, none of the Debtors, Moelis, or any other person assumes responsibility for the accuracy of such estimated Enterprise Value.  Depending on the actual financial results of the Debtors or changes in the economy and the financial markets, the equity value of the Reorganized Debtors as of the Assumed Valuation Date may differ from the estimated Equity Value set forth herein.  In addition, the market prices, to the extent there is a market, of the Reorganized Debtors' securities will depend upon, among other things, prevailing interest rates, conditions in the economy and the financial markets, the investment decisions of creditors receiving such securities under the Amended Plan (some of whom may prefer to liquidate their investment rather than hold it on a long-term basis), and other factors that generally influence the prices of securities.

*[Remainder of page intentionally left blank]*

**<u>Exhibit F</u>**

**Second A&R RSA**

[Filed at Docket No. 2519-1]

**<u>Exhibit B</u>**

**New Form Ballots**

**<u>Exhibit B-1</u>**

**Class 3 First Lien Claims Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) | Case No. 23-90116 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BALLOT FOR (I) VOTING TO ACCEPT OR REJECT
THE DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION AND (II) OPTING OUT OF THIRD-PARTY RELEASE**

**BALLOT FOR HOLDERS OF CLASS 3 FIRST LIEN CLAIMS**

---

**Please read and follow the enclosed instructions for
completing Ballots carefully before completing this Ballot.**

**If you are a Holder of a Class 3 First Lien Claim and you previously submitted a Ballot indicating your vote to accept or reject the Original Plan (as defined below), and you _DO NOT_ wish to change that vote, no action with respect to a vote on the Amended Plan (as defined below), using this Ballot is required.**

**If you are a Holder of a Class 3 First Lien Claim and you previously submitted a Ballot indicating your vote to accept or reject the Original Plan, and you _DO_ wish to change that vote, you must modify your vote with respect to the Amended Plan by submitting this Ballot in accordance with instructions provided below.**

**For the vote on this Ballot to be counted, this Ballot must be completed, executed, and returned so as to be *actually received* by the Claims Agent (as defined below) by November 5, 2024, at 4:00 p.m., prevailing Central Time (the "_Voting Deadline_") in accordance with the following:**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting votes with respect to the *Debtors' First Amended Joint Chapter 11 Plan of Reorganization* (as may be amended, modified, or supplemented from time to time, the "Amended Plan") as set forth in the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement") and the *Disclosure Statement Supplement for the Debtors' First Amended Joint Chapter 11 Plan of Reorganization* (the "Disclosure Statement Supplement"). The United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is:  c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

and, on a conditional basis, the Disclosure Statement Supplement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), by entry of orders on April 17, 2024 [Docket No. 1977], and October [●], 2024 [Docket No. [●]] (the "DS Supplement Order").  The Bankruptcy Court's approval of the Disclosure Statement or the Disclosure Statement Supplement does not indicate approval of the Amended Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Amended Plan.

You are receiving this ballot (the "Ballot") because the Debtors' records indicate that you are a Holder of one or more First Lien Claims in Class 3 as of **April 15, 2024** (the "Voting Record Date").  You previously received a Ballot and a solicitation package from the Debtors with respect to the *Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 1982] (the "Original Plan").

**Regardless of whether you have already voted on the Original Plan, you may, but are not required to, cast a new vote on the Amended Plan with this Ballot.  The latest received valid Ballot timely received by the Claims Agent prior to the Voting Deadline will supersede and revoke any other Ballots with respect to the same Claims.**

**As such, if you do not wish to change your prior vote to accept or reject the Original Plan, you do not need to take any action with respect to a vote on the Amended Plan using this Ballot.  If you do not take any action with respect to a vote on the Amended Plan using this Ballot, your prior vote on the Original Plan (including any deemed consent to granting the Third-Party Release under the Original Plan) will be counted in the Claims Agent's tabulation of votes cast on the Amended Plan.**

The rights and treatment for each Class are described in the Disclosure Statement Supplement, which is included in the package (the "Solicitation Package") you are receiving with this Ballot.  The Solicitation Package also contains copies of the Amended Plan, DS Supplement Order, and certain other materials.  If you received any documents comprising the Solicitation Package in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov or (b) at no charge from Kroll Restructuring Administration LLC (the "Claims Agent") by:  (i) accessing the Debtors' restructuring website at https://cases.ra.kroll.com/DSG; (ii) writing to Diamond Sports Group, LLC Ballots Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232; or (iii) calling or emailing the Claims Agent at:

<div align="center">

U.S./Canada (toll-free):  (877) 720-6635
International (toll):  +1 (646) 440-4763

Email:  DSGInfo@ra.kroll.com (with "DSG Solicitation Inquiry" in the subject line)

</div>

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Amended Plan, opting out of the Third-Party Release (as defined and described in more detail below), and making certain certifications with respect to the Amended Plan.  If you believe you have received this Ballot in error, please contact the Claims Agent *immediately* at the address, telephone number, email address, or via the Debtors' restructuring website set forth above.

<div align="center">2</div>

You should review the Disclosure Statement, the Disclosure Statement Supplement, the Amended Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Amended Plan and the Amended Plan's classification and treatment of your Claims.

**The Bankruptcy Court may confirm the Amended Plan and thereby bind all Holders of Claims and Interests to the terms of the Amended Plan.  To have your vote count as either an acceptance or rejection of the Amended Plan, you must complete and return this Ballot so that the Claims Agent *actually receives* it on or before the Voting Deadline.**

**The Voting Deadline is on <u>November 5, 2024, at 4:00 p.m.</u>, prevailing Central Time.**

*[Remainder of page intentionally left blank]*

3

**IMPORTANT NOTICE**
**REGARDING TREATMENT FOR CLASS 3**

Class 3 consists of any First Lien Claims.

As described in more detail in the Disclosure Statement Supplement and Amended Plan, if the Amended Plan is confirmed and the Effective Date occurs, each Holder of an Allowed First Lien Claim shall receive:[2]

(i) if the Wind-Down Toggle has not occurred, its pro rata share of Cash in an amount equal to $647 million <u>less</u> the sum of (x) the AP Reduction Amount, (y) the amount of the First Lien Paydown, and (z) the amount of any Additional First Lien Paydown; and

(ii) if the Wind-Down Toggle has occurred, its pro rata share of Cash in an amount equal to $637 million <u>less</u> the sum of (x) the AP Reduction Amount, (y) the amount of the First Lien Paydown, and (z) the amount of any Additional First Lien Paydown.

**Your vote to accept or reject the Amended Plan will be applied to all First Lien Claims of which you are a Holder.**

**Your vote to accept or reject the Amended Plan will be applied to each Debtor against which you hold a First Lien Claim.**

**PLEASE READ ARTICLE II.B OF THE DISCLOSURE STATEMENT SUPPLEMENT, AND ARTICLE III OF THE AMENDED PLAN FOR MORE DETAILS.**

[*Remainder of page intentionally left blank*]

---

[2]   For the avoidance of doubt, this treatment for Holders of First Lien Claims is in addition to any Post-Additional First Lien Paydown AP Interest Payments payable in accordance with the DIP Order, which Post-Additional First Lien Paydown AP Interest Payments that are accrued and unpaid as of the Effective Date (if any) shall be paid on the Effective Date.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

<u>**Item 1**</u>. **Amount of Claim(s)**

The undersigned certifies that, as of the Voting Record Date, the undersigned was, or is an authorized signatory for the Entity that was, a Holder of one or more First Lien Claims in the aggregate principal amount set forth in the box below:

$\boxed{\$_____}$

<u>**Item 2**</u>. **Vote on Amended Plan**

Please vote either to accept or to reject the Amended Plan with respect to your Claims set forth in <u>Item 1</u>. Any Ballot that indicates both an acceptance and a rejection of the Amended Plan or does not indicate either an acceptance or rejection of the Amended Plan will not be counted.

**<u>The Holder of the Claims identified in Item 1 votes to (check one box)</u>:**

☐ <u>**ACCEPT**</u> (vote FOR) the Amended Plan     ☐ <u>**REJECT**</u> (vote AGAINST) the Amended Plan

**Your vote to accept or reject the Amended Plan will be applied to all First Lien Claims of which you are a Holder.**

**Your vote to accept or reject the Amended Plan will be applied to each Debtor against which you hold a First Lien Claim in the same manner and in the same amount as indicated in <u>Item 1</u> and <u>Item 2</u> above.**

*[Ballot continues on following page]*

**Item 3.**        **Important Information Regarding the Third-Party Release**

If you vote to accept the Amended Plan, you will be deemed to have consented to the release given by each of the Releasing Parties to the Released Parties as set forth in Article VIII.D of the Amended Plan (the "Third-Party Release"), which is copied below for reference.

If you vote to reject the Amended Plan in Item 2 above or abstain from voting to accept or reject the Amended Plan, you have the option to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan by checking the opt out election box below.

If you validly submit your Ballot and vote to reject the Amended Plan in Item 2 above or abstain from voting to accept or reject the Amended Plan, and, in each case, check the box below, then you will be deemed not to consent to the Third-Party Release set forth in Article VIII.D of the Amended Plan.

If you do not (i) validly submit your Ballot with the below box checked or (ii) file an objection with the Bankruptcy Court in the Chapter 11 Cases that expressly objects to your inclusion as a Releasing Party under the Third-Party Release set forth in Article VIII.D of the Amended Plan, then you will be deemed to have consented to the Third-Party Release; *provided* that if you (x) previously abstained from voting on the Original Plan or voted to reject the Original Plan and, in each case, opted out of granting the Third-Party Release set forth in the Original Plan and (y) do not vote to accept or reject the Amended Plan, you shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan.

If you elect to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a "Released Party" in connection therewith.

**The Holder of the Claims identified in Item 1 elects to:**

> ☐  **OPT OUT of the Third-Party Release contained in Article VIII.D of the Amended Plan**

All Holders of Claims that do not file an objection with the Bankruptcy Court in the Chapter 11 Cases that expressly objects to the inclusion of such Holder as a Releasing Party under the Third-Party Release contained in Article VIII.D of the Amended Plan or do not elect to opt out of the Third-Party Release as provided in this Ballot will be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties; *provided* that any Holder of a Claim that (i) previously abstained from voting on the Original Plan or voted to reject the Original Plan and, in each case, opted out of granting the Third-Party Release set forth in the Original Plan and (ii) does not vote to accept or reject the Amended Plan shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan. By objecting to or electing to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the

6

benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a Released Party in connection therewith.

**Article VIII.D of the Amended Plan contains the following Third-Party Release:**

Except as otherwise expressly set forth in the Amended Plan (including pursuant to Article IV.X) or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party (other than the Debtors, the Post-Effective Date Debtors, and their Estates), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Post-Effective Date Debtor, its Estate, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtors, any investment in any Debtor by any Released Party, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Amended Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any other benefit provided by any Debtor to any Released Party, cash management arrangements, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the Prepetition Credit Agreements, the Prepetition Notes Indentures, the formulation, preparation, dissemination, negotiation, or Filing of the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Amended Plan or the reliance by any Released Party on the Amended Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Prior Restructuring Support Agreement, the Cooperation Agreement, the

Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Plan Transaction before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the solicitation of votes on the Amended Plan, the pursuit of Confirmation of the Amended Plan, the pursuit of Consummation, the administration and implementation of the Amended Plan, including the issuance or distribution of debt and/or securities pursuant to the Amended Plan, or the distribution of property under the Amended Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities primarily arising out of any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Amended Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Amended Plan, including the New A/R Facility Credit Agreement, the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, any Plan Supplement document, or any claim, obligation, or right arising under or preserved pursuant to the Amended Plan or the Confirmation Order, including those rights which are expressly preserved pursuant to <u>Article IV.X</u>, or (2) any Sinclair Party from any claim or Cause of Action asserted or assertable by any JPM Party or any of its Affiliates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Amended Plan, and, further, shall constitute the Bankruptcy Court's finding that this Third-Party Release is:   (1) consensual; (2) essential to the Confirmation of the Amended Plan; (3) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Plan Transactions and implementing the Amended Plan; (4) a good faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

<p style="text-align:center">*      *      *      *      *</p>

Under the Amended Plan, "Released Parties" means, collectively, and in each case in its capacity as such:  (a) each Debtor and Post-Effective Date Debtor; (b) the Consenting Parties; (c) the Prepetition Notes Trustees; (d) the Prepetition Agents; (e) the UCC and each UCC Member; (f) the Sinclair-Related Litigations Defendants; (g) the Plan Administrator; and (h) with respect to each Person or Entity listed or described in any of the foregoing clauses (a) through (g), each such Person's or Entity's current and former Affiliates, and each such Person's or Entity's and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, participants, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, employees, agents, advisory board members, investment fund advisors or managers, investment managers, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that the following Persons and Entities shall not be Released Parties: (i) a Person or Entity that either (A) elects to opt out of the releases contained in the Amended Plan or (B) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Amended Plan that is not resolved before entry of the Confirmation Order; or (ii) other than (A) non-Debtor Diamond Sports Finance SPV, LLC and the New A/R Facility Borrower, (B) any Debtor that is a member or equity holder (regardless of whether such interests are held directly or indirectly) in a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, and (C) any members, directors, managers, officers, employees, or agents appointed by any Debtor at a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, any other Person or Entity affiliated with a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date and any non-Debtor Affiliates thereof.

Under the Amended Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) each Debtor and Post-Effective Date Debtor; (b) the Consenting Parties; (c) all Holders of Claims (except as set forth in the proviso herein); (d) the Prepetition Notes Trustees; (e) the Prepetition Agents; (f) the UCC and each UCC Member; (g) the Sinclair-Related Litigations Defendants; (h) the Plan Administrator; and (i) with respect to each Person or Entity listed or described in any of the foregoing clauses (a) through (h), each such Person's or Entity's current and former Affiliates, and each such Person's or Entity's and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, participants, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, employees, agents, advisory board members, investment fund advisors or managers, investment managers, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that the following Persons and Entities shall not be Releasing Parties: (i) a Person or Entity that either (A) elects to opt out of the releases contained in the Amended Plan or (B) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Amended Plan that is not resolved before entry of the Confirmation Order; (ii) other than (A) non-Debtor Diamond Sports Finance SPV, LLC and the New A/R Facility Borrower, (B) any Debtor that is a member or equity holder (regardless of whether such interests are held directly or indirectly) in a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, and (C) any members, directors, managers, officers, employees, or agents appointed by any Debtor at

a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, any other Person or Entity affiliated with a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date and any non-Debtor Affiliates thereof; or (iii) Affiliates of JPMorgan Chase & Co. other than the JPM Parties.

**IF YOU VOTE TO ACCEPT THE AMENDED PLAN, YOU WILL BE DEEMED A RELEASING PARTY PROVIDING THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE AMENDED PLAN.**

[*Ballot continues on following page*]

**Item 4**.          **Certifications**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

    a.    as of the Voting Record Date, either:  (i) the undersigned is the Holder of the Claims being voted on this Ballot; or (ii) the undersigned is an authorized signatory for the Entity that is the Holder of the Claims being voted on this Ballot, and in each case, has the power and authority to vote to accept or reject the Amended Plan;

    b.    the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

    c.    the undersigned has cast the same vote with respect to all of its Class 3 First Lien Claims;

    d.    the undersigned has not relied on any statement made or other information received from any person with respect to the Amended Plan other than the information contained in the Solicitation Package or other publicly available materials;

    e.    no other Ballots with respect to the Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked; and

    f.    the undersigned understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

<u>**Via Paper Ballot.**</u>  Please complete, sign, and date the Ballot and return it promptly in the envelope provided or via first-class mail, overnight courier, or hand delivery to:

<div align="center">

**Diamond Sports Group, LLC Ballots Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 Third Avenue, Suite 412**
**Brooklyn, NY  11232**

</div>

To arrange hand delivery of your Ballot, please email DSGInfo@ra.kroll.com (with "DSG Ballot Submission" in the subject line) at least 24 hours in advance of your arrival at the address above with the expected date and time of such delivery.

<div align="center">

<u>**OR**</u>

</div>

<u>**Via E-Ballot Portal.**</u>  Submit a customized, electronic version of your Ballot via the Claims Agent's online portal by visiting https://cases.ra.kroll.com/DSG.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized, electronic Ballot:**

**Unique E-Ballot ID#**: _____

The Claims Agent's online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each Unique E-Ballot ID# is to be used solely in relation to those Claims described in <u>Item 1</u> of your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as applicable.  If you choose to submit your Ballot via the Claims Agent's online balloting portal, you **<u>SHOULD NOT</u>** also return a hard copy of your Ballot.

Ballots submitted via the Claims Agent's online balloting portal will be deemed to contain an immediately legally binding signature.

The Ballot does not constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

---

> **If the Claims Agent does not _actually receive_ your Ballot on or before the Voting Deadline, which is November 5, 2024, at 4:00 p.m., prevailing Central Time, and if the Voting Deadline is not extended, your vote may be counted only in the discretion of the Debtors.**

---

## INSTRUCTIONS FOR COMPLETING THE BALLOT

1.   The Debtors are soliciting the votes of Holders of Claims with respect to the Amended Plan attached as Exhibit A to the Disclosure Statement Supplement.  Capitalized terms used in the Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Amended Plan, a copy of which also accompanies the Ballot. **PLEASE READ THE AMENDED PLAN, DISCLOSURE STATEMENT, AND DISCLOSURE STATEMENT SUPPLEMENT CAREFULLY BEFORE COMPLETING THE BALLOT.** You may wish to seek legal advice concerning the Amended Plan and the treatment of your Claims under the Amended Plan.

2.   The Amended Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class that votes on the Amended Plan and if the Amended Plan otherwise satisfies the requirements for confirmation provided by section 1129 of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.   To ensure that your vote is counted, you must: (a) complete the Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Amended Plan in Item 2 of the Ballot; and (c) **clearly sign and submit the Ballot as instructed herein.  Ballots will not be accepted by email, facsimile or other electronic means (other than through the Claims Agent's online portal)**.

4.   The Ballot must be returned to the Claims Agent so as to be **actually received** on or before the Voting Deadline.  **The Voting Deadline is November 5, 2024, at 4:00 p.m., prevailing Central Time**.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order.  No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors. A Ballot will not be counted unless received by the Claims Agent.

5.   The method of delivery of a Ballot to the Claims Agent is at the election and risk of each Holder.  Except as otherwise provided herein, such delivery will be deemed made only when the Claims Agent actually receives the executed Ballot.  In all cases, Holders should allow sufficient time to assure timely delivery.

6.   Regardless of whether you have already voted on the Original Plan, you may, but are not required to, cast a new vote on the Amended Plan with this Ballot.  If the Claims Agent receives multiple Ballots from the same Holder with respect to the same Claims, the latest received valid Ballot timely received by the Claims Agent prior to the Voting Deadline will supersede and revoke any other Ballots with respect to the same Claims; *provided* that if a Holder timely submits both a paper Ballot and an electronic Ballot on account of the same Claims, the electronic Ballot shall supersede the paper Ballot regardless of the order that the Ballots are received.

7.   The Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or Interest or (b) an assertion or admission of a Claim or Interest.  The Ballot may not be used

13

for any purpose other than to vote to accept or reject the Amended Plan, to opt out of the Third-Party Release, and to make certain certifications with respect to the Amended Plan.

8.  **Please be sure to sign and date the Ballot**.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

9.  For your vote to be counted, you must vote all of your Class 3 First Lien Claims either to accept or reject the Amended Plan and may not split your vote.

10.  The following Ballots will not be counted in determining the acceptance or rejection of the Amended Plan: (a) any Ballot that partially rejects and partially accepts the Amended Plan; (b) any Ballot not marked to accept or reject the Amended Plan, or marked both to accept and reject the Amended Plan; (c) any Ballot sent to the Debtors, the Debtors' agents (other than the Claims Agent), any agent of any creditor, any indenture trustee, or the Debtors' financial or legal advisors; (d) any Ballot sent by email or facsimile; (e) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Amended Plan; (f) any Ballot submitted by a party not entitled to cast a vote with respect to the Amended Plan; (g) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; and/or (h) any unsigned Ballot.

11.  If you hold Claims in more than one Class under the Amended Plan, you may receive more than one Ballot.  Each Ballot votes **only** your Claims as indicated on that Ballot.  Please complete and return each Ballot you receive.

## PLEASE SUBMIT YOUR BALLOT PROMPTLY

**If you have any questions regarding the Ballot, these voting instructions, or the procedures for voting, please call the restructuring hotline at:**

**U.S./Canada (toll-free):  (877) 720-6635**
**International (toll):  +1 (646) 440-4763**

**Or email DSGInfo@ra.kroll.com**
**(with "DSG Solicitation Inquiry" in the subject line)**

---

**If the Claims Agent does not _actually receive_ your Ballot on or before the Voting Deadline, which is November 5, 2024, at 4:00 p.m., prevailing Central Time, and if the Voting Deadline is not extended, your vote may be counted only in the discretion of the Debtors.**

---

**Exhibit B-2**

**Class 4 Junior Funded Debt Claims (Loans) Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) | Case No. 23-90116 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BALLOT FOR (I) VOTING TO ACCEPT OR REJECT
THE DEBTORS' FIRST AMENDED JOINT CHAPTER 11  PLAN OF
REORGANIZATION AND (II) OPTING OUT OF THIRD-PARTY RELEASE**

**BALLOT FOR HOLDERS OF CLASS 4 JUNIOR FUNDED DEBT CLAIMS
(SECOND LIEN REVOLVING LOAN CLAIMS,
SECOND LIEN TERM LOAN CLAIMS, AND THIRD LIEN TERM LOAN CLAIMS)**

---

**Please read and follow the enclosed instructions for
completing Ballots carefully before completing this Ballot.**

**If you are a Holder of a Class 4 Junior Funded Debt Claim and you previously submitted a Ballot indicating your vote to accept or reject the Original Plan (as defined below), and you _DO NOT_ wish to change that vote, no action with respect to a vote on the Amended Plan (as defined below), using this Ballot is required.**

**If you are a Holder of a Class 4 Junior Funded Debt Claim and you previously submitted a Ballot indicating your vote to accept or reject the Original Plan, and you _DO_ wish to change that vote, you must modify your vote with respect to the Amended Plan by submitting this Ballot in accordance with instructions provided below.**

**For the vote on this Ballot to be counted, this Ballot must be completed, executed, and returned so as to be *actually received* by the Claims Agent (as defined below) by November 5, 2024, at 4:00 p.m., prevailing Central Time (the "Voting Deadline") in accordance with the following:**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting votes with respect to the *Debtors' First Amended Joint Chapter 11 Plan of Reorganization* (as may be amended, modified, or supplemented from time to time, the "Amended Plan") as set forth in the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement") and the *Disclosure Statement Supplement for the Debtors' First Amended Joint Chapter 11 Plan of Reorganization* (the "Disclosure Statement Supplement").  The United States Bankruptcy Court

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG.  The Debtors' service address for purposes of these chapter 11 cases is:  c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

for the Southern District of Texas (the "<u>Bankruptcy Court</u> has approved the Disclosure Statement and, on a conditional basis, the Disclosure Statement Supplement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), by entry of orders on April 17, 2024 [Docket No. 1977], and October [●], 2024 [Docket No. [●]] (the "<u>DS Supplement Order</u>").  The Bankruptcy Court's approval of the Disclosure Statement or the Disclosure Statement Supplement does not indicate approval of the Amended Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Amended Plan.

You are receiving this ballot (the "<u>Ballot</u>") because the Debtors' records indicate that you are a Holder of one or more Second Lien Revolving Loan Claims, Second Lien Term Loan Claims, or Third Lien Term Loan Claims as of **April 15, 2024** (the "<u>Voting Record Date</u>"). You previously received a Ballot and a solicitation package from the Debtors with respect to the *Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 1982] (the "<u>Original Plan</u>").

**Regardless of whether you have already voted on the Original Plan, you may, but are not required to, cast a new vote on the Amended Plan with this Ballot.  The latest received valid Ballot timely received by the Claims Agent prior to the Voting Deadline will supersede and revoke any other Ballots with respect to the same Claims.**

**As such, if you do not wish to change your prior vote to accept or reject the Original Plan, you do not need to take any action with respect to a vote on the Amended Plan using this Ballot.  If you do not take any action with respect to a vote on the Amended Plan using this Ballot, your prior vote on the Original Plan (including any deemed consent to granting the Third-Party Release under the Original Plan) will be counted in the Claims Agent's tabulation of votes cast on the Amended Plan.**

The rights and treatment for each Class are described in the Disclosure Statement Supplement, which is included in the package (the "<u>Solicitation Package</u>") you are receiving with this Ballot. The Solicitation Package also contains copies of the Amended Plan, DS Supplement Order, and certain other materials. If you received any documents comprising the Solicitation Package in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov or (b) at no charge from Kroll Restructuring Administration LLC (the "<u>Claims Agent</u>") by:  (i) accessing the Debtors' restructuring website at https://cases.ra.kroll.com/DSG; (ii) writing to Diamond Sports Group, LLC Ballots Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232; or (iii) calling or emailing the Claims Agent at:

<div align="center">

U.S./Canada (toll-free):  (877) 720-6635
International (toll):  +1 (646) 440-4763

Email:  DSGInfo@ra.kroll.com (with "DSG Solicitation Inquiry" in the subject line)

</div>

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Amended Plan, opting out of the Third-Party Release (as defined and described in more detail below), and making certain certifications with respect to the Amended Plan.  If you believe you

<div align="center">2</div>

have received this Ballot in error, please contact the Claims Agent ***immediately*** at the address, telephone number, email address, or via the Debtors' restructuring website set forth above.

You should review the Disclosure Statement, the Disclosure Statement Supplement, the Amended Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Amended Plan and the Amended Plan's classification and treatment of your Claims.

**The Bankruptcy Court may confirm the Amended Plan and thereby bind all Holders of Claims and Interests to the terms of the Amended Plan.  To have your vote count as either an acceptance or rejection of the Amended Plan, you must complete and return this Ballot so that the Claims Agent *actually receives* it on or before the Voting Deadline.**

**The Voting Deadline is on <u>November 5, 2024, at 4:00 p.m.</u>, prevailing Central Time.**

[*Remainder of page intentionally left blank*]

3

**IMPORTANT NOTICE**
**REGARDING TREATMENT FOR CLASS 4**

Class 4 consists of any Junior Funded Debt Claims.

As described in more detail in the Disclosure Statement Supplement, and Amended Plan, if the Amended Plan is confirmed and the Effective Date occurs, each Holder of an Allowed Junior Funded Debt Claim (or its designee(s) as designated pursuant to and in accordance with the Distribution Designation Procedures) shall receive its *pro rata* share of:

    (i)      if the Wind-Down Toggle has not occurred, the Junior Creditor Equity; and

    (ii)    if the Wind-Down Toggle has occurred, the net proceeds of the Wind Down and the Sinclair-Related Litigation Proceeds remaining after (w) payment of the First Lien Claims in Cash in an amount equal to the Wind Down Claim Cap, (x) the repayment of the DIP Claims in full in Cash, (y) payment of the Unsecured Claim Cash Distribution, and (z) payment of all Administrative Expense Claims, Other Secured Claims, and Other Priority Claims.

**Your vote to accept or reject the Amended Plan will be applied to all Second Lien Revolving Loan Claims, Second Lien Term Loan Claims, or Third Lien Term Loan Claims of which you are a Holder.**

**Your vote to accept or reject the Amended Plan will be applied to each Debtor against which you hold a Second Lien Revolving Loan Claims, Second Lien Term Loan Claims, and Third Lien Term Loan Claim.**

**PLEASE READ ARTICLE II.B OF THE DISCLOSURE STATEMENT SUPPLEMENT, AND ARTICLE III OF THE AMENDED PLAN FOR MORE DETAILS.**

[*Remainder of page intentionally left blank*]

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

**Item 1**.　　　**Amount of Claim(s)**

The undersigned certifies that, as of the Voting Record Date, the undersigned was, or is an authorized signatory for the Entity that was, a Holder of one or more Second Lien Revolving Loan Claims, Second Lien Term Loan Claims, or Third Lien Term Loan Claims in the aggregate principal amount set forth in the box below:

| | |
|---|---|
| Second Lien Revolving Loan Claims: | $ _____ |
| Second Lien Term Loan Claims: | $ _____ |
| Third Lien Term Loan Claims: | $ _____ |

**Item 2**.　　　**Vote on Amended Plan**

Please vote either to accept or to reject the Amended Plan with respect to your Claims set forth in <u>Item 1</u>.  Any Ballot that indicates both an acceptance and a rejection of the Amended Plan or does not indicate either an acceptance or rejection of the Amended Plan will not be counted.

**<u>The Holder of the Claims identified in Item 1 votes to (check one box):</u>**

☐ **<u>ACCEPT</u>** (vote FOR) the Amended Plan　　　☐ **<u>REJECT</u>** (vote AGAINST) the Amended Plan

**Your vote to accept or reject the Amended Plan will be applied to all Second Lien Revolving Loan Claims, Second Lien Term Loan Claims, or Third Lien Term Loan Claims of which you are a Holder.**

**Your vote to accept or reject the Amended Plan will be applied to each Debtor against which you hold a Second Lien Revolving Loan Claim, a Second Lien Term Loan Claim, or a Third Lien Term Loan Claim in the same manner and in the same amount as indicated in <u>Item 1</u> and <u>Item 2</u> above.**

*[Ballot continues on following page]*

**Item 3.**      **Important Information Regarding the Third-Party Release**

If you vote to accept the Amended Plan, you will be deemed to have consented to the release given by each of the Releasing Parties to the Released Parties as set forth in Article VIII.D of the Amended Plan (the "<u>Third-Party Release</u>"), which is copied below for reference.

If you vote to reject the Amended Plan in Item 2 above or abstain from voting to accept or reject the Amended Plan, you have the option to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan by checking the opt out election box below.

If you validly submit your Ballot and vote to reject the Amended Plan in Item 2 above or abstain from voting to accept or reject the Amended Plan, and, in each case, check the box below, then you will be deemed not to consent to the Third-Party Release set forth in Article VIII.D of the Amended Plan.

If you do not (i) validly submit your Ballot with the below box checked or (ii) file an objection with the Bankruptcy Court in the Chapter 11 Cases that expressly objects to your inclusion as a Releasing Party under the Third-Party Release set forth in Article VIII.D of the Amended Plan, then you will be deemed to have consented to the Third-Party Release; *provided* that if you (x) previously abstained from voting on the Original Plan or voted to reject the Original Plan and, in each case, opted out of granting the Third-Party Release set forth in the Original Plan and (y) do not vote to accept or reject the Amended Plan, you shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan.

If you elect to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a "Released Party" in connection therewith.

<u>The Holder of the Claims identified in Item 1 elects to</u>:

> ☐  **OPT OUT of the Third-Party Release**
> **contained in Article VIII.D of the Amended Plan**

> **All Holders of Claims that do not file an objection with the Bankruptcy Court in the Chapter 11 Cases that expressly objects to the inclusion of such Holder as a Releasing Party under the Third-Party Release contained in Article VIII.D of the Amended Plan or do not elect to opt out of the Third-Party Release as provided in this Ballot will be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties; *provided* that any Holder of a Claim that (i) previously abstained from voting on the Original Plan or voted to reject the Original Plan and, in each case, opted out of granting the Third-Party Release set forth in the Original Plan and (ii) does not vote to accept or reject the Amended Plan shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan.  By objecting to or electing to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the**

benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a Released Party in connection therewith.

**Article VIII.D of the Amended Plan contains the following Third-Party Release:**

Except as otherwise expressly set forth in the Amended Plan (including pursuant to Article IV.X) or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party (other than the Debtors, the Post-Effective Date Debtors, and their Estates), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Post-Effective Date Debtor, its Estate, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtors, any investment in any Debtor by any Released Party, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Amended Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any other benefit provided by any Debtor to any Released Party, cash management arrangements, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the Prepetition Credit Agreements, the Prepetition Notes Indentures, the formulation, preparation, dissemination, negotiation, or Filing of the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Amended Plan or the reliance by any Released Party on the Amended Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Prior Restructuring Support Agreement, the Cooperation Agreement, the

Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Plan Transaction before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the solicitation of votes on the Amended Plan, the pursuit of Confirmation of the Amended Plan, the pursuit of Consummation, the administration and implementation of the Amended Plan, including the issuance or distribution of debt and/or securities pursuant to the Amended Plan, or the distribution of property under the Amended Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities primarily arising out of any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Amended Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Amended Plan, including the New A/R Facility Credit Agreement, the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, any Plan Supplement document, or any claim, obligation, or right arising under or preserved pursuant to the Amended Plan or the Confirmation Order, including those rights which are expressly preserved pursuant to <u>Article IV.X</u>, or (2) any Sinclair Party from any claim or Cause of Action asserted or assertable by any JPM Party or any of its Affiliates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Amended Plan, and, further, shall constitute the Bankruptcy Court's finding that this Third-Party Release is:   (1) consensual; (2) essential to the Confirmation of the Amended Plan; (3) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Plan Transactions and implementing the Amended Plan; (4) a good faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

<div align="center">*     *     *     *     *</div>

Under the Amended Plan, "Released Parties" means, collectively, and in each case in its capacity as such: (a) each Debtor and Post-Effective Date Debtor; (b) the Consenting Parties; (c) the Prepetition Notes Trustees; (d) the Prepetition Agents; (e) the UCC and each UCC Member; (f) the Sinclair-Related Litigations Defendants; (g) the Plan Administrator; and (h) with respect to each Person or Entity listed or described in any of the foregoing clauses (a) through (g), each such Person's or Entity's current and former Affiliates, and each such Person's or Entity's and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, participants, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, employees, agents, advisory board members, investment fund advisors or managers, investment managers, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that the following Persons and Entities shall not be Released Parties: (i) a Person or Entity that either (A) elects to opt out of the releases contained in the Amended Plan or (B) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Amended Plan that is not resolved before entry of the Confirmation Order; or (ii) other than (A) non-Debtor Diamond Sports Finance SPV, LLC and the New A/R Facility Borrower, (B) any Debtor that is a member or equity holder (regardless of whether such interests are held directly or indirectly) in a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, and (C) any members, directors, managers, officers, employees, or agents appointed by any Debtor at a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, any other Person or Entity affiliated with a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date and any non-Debtor Affiliates thereof.

Under the Amended Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) each Debtor and Post-Effective Date Debtor; (b) the Consenting Parties; (c) all Holders of Claims (except as set forth in the proviso herein); (d) the Prepetition Notes Trustees; (e) the Prepetition Agents; (f) the UCC and each UCC Member; (g) the Sinclair-Related Litigations Defendants; (h) the Plan Administrator; and (i) with respect to each Person or Entity listed or described in any of the foregoing clauses (a) through (h), each such Person's or Entity's current and former Affiliates, and each such Person's or Entity's and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, participants, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, employees, agents, advisory board members, investment fund advisors or managers, investment managers, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that the following Persons and Entities shall not be Releasing Parties: (i) a Person or Entity that either (A) elects to opt out of the releases contained in the Amended Plan or (B) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Amended Plan that is not resolved before entry of the Confirmation Order; (ii) other than (A) non-Debtor Diamond Sports Finance SPV, LLC and the New A/R Facility Borrower, (B) any Debtor that is a member or equity holder (regardless of whether such interests are held directly or indirectly) in a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, and (C) any members, directors, managers, officers, employees, or agents appointed by any Debtor at

9

a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, any other Person or Entity affiliated with a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date and any non-Debtor Affiliates thereof; or (iii) Affiliates of JPMorgan Chase & Co. other than the JPM Parties.

**IF YOU VOTE TO ACCEPT THE AMENDED PLAN, YOU WILL BE DEEMED A RELEASING PARTY PROVIDING THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE AMENDED PLAN.**

[*Ballot continues on following page*]

**Item 4**.        **Certifications**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.    as of the Voting Record Date, either: (i) the undersigned is the Holder of the Claims being voted on this Ballot; or (ii) the undersigned is an authorized signatory for the Entity that is the Holder of the Claims being voted on this Ballot, and in each case, has the power and authority to vote to accept or reject the Amended Plan;

b.    the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.    the undersigned has cast the same vote with respect to all of its Class 4 Junior Funded Debt Claims;

d.    the undersigned has not relied on any statement made or other information received from any person with respect to the Amended Plan other than the information contained in the Solicitation Package or other publicly available materials;

e.    no other Ballots with respect to the Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked; and

f.    the undersigned understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

<u>**Via Paper Ballot.**</u>  Please complete, sign, and date the Ballot and return it promptly in the envelope provided or via first-class mail, overnight courier, or hand delivery to:

**Diamond Sports Group, LLC Ballots Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 Third Avenue, Suite 412**
**Brooklyn, NY  11232**

To arrange hand delivery of your Ballot, please email DSGInfo@ra.kroll.com (with "DSG Ballot Submission" in the subject line) at least 24 hours in advance of your arrival at the address above with the expected date and time of such delivery.

<u>**OR**</u>

<u>**Via E-Ballot Portal**</u>**.**  Submit a customized, electronic version of your Ballot via the Claims Agent's online portal by visiting https://cases.ra.kroll.com/DSG.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized, electronic Ballot:**

**Unique E-Ballot ID#**: _____

The Claims Agent's online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each Unique E-Ballot ID# is to be used solely in relation to those Claims described in <u>Item 1</u> of your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as applicable.  If you choose to submit your Ballot via the Claims Agent's online balloting portal, you <u>**SHOULD NOT**</u> also return a hard copy of your Ballot.

Ballots submitted via the Claims Agent's online balloting portal will be deemed to contain an immediately legally binding signature.

The Ballot does not constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

| |
|---|
| **If the Claims Agent does not *actually receive* your Ballot on or before the Voting Deadline, which is November 5, 2024, at 4:00 p.m., prevailing Central Time, and if the Voting Deadline is not extended, your vote may be counted only in the discretion of the Debtors.** |

12

## <u>INSTRUCTIONS FOR COMPLETING THE BALLOT</u>

1.    The Debtors are soliciting the votes of Holders of Claims with respect to the Amended Plan attached as <u>Exhibit A</u> to the Disclosure Statement Supplement.  Capitalized terms used in the Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Amended Plan, a copy of which also accompanies the Ballot. **PLEASE READ THE AMENDED PLAN, DISCLOSURE STATEMENT, AND DISCLOSURE STATEMENT SUPPLEMENT CAREFULLY BEFORE COMPLETING THE BALLOT.**  You may wish to seek legal advice concerning the Amended Plan and the treatment of your Claims under the Amended Plan.

2.    The Amended Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class that votes on the Amended Plan and if the Amended Plan otherwise satisfies the requirements for confirmation provided by section 1129 of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.    To ensure that your vote is counted, you must: (a) complete the Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Amended Plan in <u>Item 2</u> of the Ballot; and (c) **<u>clearly sign and submit the Ballot</u> as instructed herein.  Ballots will not be accepted by email, facsimile or other electronic means (other than through the Claims Agent's online portal).**

4.    The Ballot must be returned to the Claims Agent so as to be **<u>actually received</u>** on or before the Voting Deadline.  **The Voting Deadline is November 5, 2024, at 4:00 p.m., prevailing Central Time**.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order.  No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors. A Ballot will not be counted unless received by the Claims Agent.

5.    The method of delivery of a Ballot to the Claims Agent is at the election and risk of each Holder.  Except as otherwise provided herein, such delivery will be deemed made only when the Claims Agent actually receives the executed Ballot.  In all cases, Holders should allow sufficient time to assure timely delivery.

6.    Regardless of whether you have already voted on the Original Plan, you may, but are not required to, cast a new vote on the Amended Plan with this Ballot.  If the Claims Agent receives multiple Ballots from the same Holder with respect to the same Claims, the latest received valid Ballot timely received by the Claims Agent prior to the Voting Deadline will supersede and revoke any other Ballots with respect to the same Claims *provided* that if a Holder timely submits both a paper Ballot and an electronic Ballot on account of the same Claims, the electronic Ballot shall supersede the paper Ballot regardless of the order that the Ballots are received.

7.    The Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or Interest or (b) an assertion or admission of a Claim or Interest.  The Ballot may not be used

for any purpose other than to vote to accept or reject the Amended Plan, to opt out of the Third-Party Release, and to make certain certifications with respect to the Amended Plan.

8.  **<u>Please be sure to sign and date the Ballot</u>**.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

9.  For your vote to be counted, you must vote all of your Class 4 Junior Funded Debt Claims either to accept or reject the Amended Plan and may not split your vote.

10. The following Ballots will not be counted in determining the acceptance or rejection of the Amended Plan: (a) any Ballot that partially rejects and partially accepts the Amended Plan; (b) any Ballot not marked to accept or reject the Amended Plan, or marked both to accept and reject the Amended Plan; (c) any Ballot sent to the Debtors, the Debtors' agents (other than the Claims Agent), any agent of any creditor, any indenture trustee, or the Debtors' financial or legal advisors; (d) any Ballot sent by email or facsimile; (e) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Amended Plan; (f) any Ballot submitted by a party not entitled to cast a vote with respect to the Amended Plan; (g) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; and/or (h) any unsigned Ballot.

11. If you hold Claims in more than one Class under the Amended Plan, you may receive more than one Ballot.  Each Ballot votes **<u>only</u>** your Claims as indicated on that Ballot.  Please complete and return each Ballot you receive.

<div align="center">

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY</u>**

**If you have any questions regarding the Ballot, these voting instructions, or the procedures for voting, please call the restructuring hotline at:**

**U.S./Canada (toll-free):  (877) 720-6635**
**International (toll):  +1 (646) 440-4763**

**Or email DSGInfo@ra.kroll.com**
**(with "DSG Solicitation Inquiry" in the subject line)**

</div>

---

**If the Claims Agent does not _actually receive_ your Ballot on or before the Voting Deadline, which is November 5, 2024, at 4:00 p.m., prevailing Central Time, and if the Voting Deadline is not extended, your vote may be counted only in the discretion of the Debtors.**

---

**Exhibit B-3**

**Class 4 Junior Funded Debt Claims (Notes) Master Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) | Case No. 23-90116 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MASTER BALLOT FOR (I) VOTING TO ACCEPT OR REJECT
THE DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION AND (II) OPTING OUT OF THIRD-PARTY RELEASE**

**MASTER BALLOT FOR HOLDERS OF CLASS 4 JUNIOR FUNDED DEBT CLAIMS
(SECOND LIEN NOTES CLAIMS, THIRD LIEN NOTES CLAIMS,
AND UNSECURED NOTES CLAIMS)**

> **Please read and follow the enclosed instructions for
> completing Ballots carefully before completing this Master Ballot.**
>
> **Beneficial Holders of a Class 4 Junior Funded Debt Claims that previously submitted a
> vote to accept or reject the Original Plan (as defined below), and _DO NOT_ wish to change
> such vote, need take no action with respect to a vote on the Amended Plan (as defined
> below).**
>
> **Beneficial Holders of a Class 4 Junior Funded Debt Claims that previously submitted a
> vote to accept or reject the Original Plan, and _DO_ wish to change such vote, must submit a
> vote to accept or reject the Amended Plan in accordance with instructions provided below.**
>
> **For the vote(s) on this Master Ballot to be counted, this Master Ballot must be completed,
> executed, and returned so as to be _actually received_ by the Claims Agent (as defined below)
> by November 5, 2024, at 4:00 p.m., prevailing Central Time (the "Voting Deadline")
> in accordance with the following:**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting votes with respect to the *Debtors' First Amended Joint Chapter 11 Plan of Reorganization* (as may be amended, modified, or supplemented from time to time, the "Amended Plan") as set forth in the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement") and the *Disclosure Statement Supplement for the Debtors' First Amended Joint Chapter 11 Plan of*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG.  The Debtors' service address for purposes of these chapter 11 cases is:  c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

[CUSIP/ISIN indicated on Exhibit A hereto]

*Reorganization* (the "Disclosure Statement Supplement"). The United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement and, on a conditional basis, the Disclosure Statement Supplement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), by entry of orders on April 17, 2024 [Docket No. 1977], and October [●], 2024 [Docket No. [●]] (the "DS Supplement Order"). The Bankruptcy Court's approval of the Disclosure Statement or the Disclosure Statement Supplement does not indicate approval of the Amended Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Amended Plan.

You are receiving this master ballot (this "Master Ballot") because the Debtors' records indicate that you are the Nominee (as defined below) of a Beneficial Holder[2] of one or more Claims on account of the Second Lien Notes, Third Lien Notes, or Unsecured Notes indicated on **Exhibit A** hereto as of April 15, 2024 (the "Voting Record Date").

**Regardless of whether you have already submitted a Master Ballot with respect to the *Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 1982] (the "Original Plan"), you may, as necessary, submit a new Master Ballot with respect to the Amended Plan.**

**A superseding Master Ballot submitted by a Nominee (as defined below) in respect of the votes of its Beneficial Holder client(s) on the Amended Plan must be accompanied by the Master Ballot form number assigned by the Claims Agent to such Nominee's Master Ballot previously submitted with respect to votes on the Original Plan.**

**Similarly, a superseding pre-validated Beneficial Holder Ballot (as defined below) submitted by a Beneficial Holder directly to the Claims Agent must be accompanied by the pre-validated Beneficial Holder Ballot form number assigned by the Claims Agent to the pre-validated Beneficial Holder Ballot previously submitted by such Beneficial Holder with respect to its vote on the Original Plan.**

**Please note that all Beneficial Holders that are eligible to vote on the Amended Plan may do so, regardless of whether they voted on the Original Plan. As such, Beneficial Holders that voted on the Original Plan may, but are not required to, vote on the Amended Plan. Beneficial Holders that do not wish to change votes previously submitted with respect to the Original Plan, need take no action with respect to the solicitation of Amended Plan votes.[3] However, Beneficial Holders that wish to change their Original Plan vote must submit a modified vote on the Amended Plan in accordance with instructions provided below and as instructed by their Nominees.**

---

[2]   A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose Claims or Interests have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees.

[3]   In the absence of a vote on the Amended Plan, the votes of such Beneficial Holders on the Original Plan (including any deemed consent to granting the Third-Party Release under the Original Plan) will be counted in the Claims Agent's tabulation of votes cast on the Amended Plan.

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee for certain Beneficial Holders of Claims indicated on Exhibit A hereto, to transmit to the Claims Agent (as defined below) the votes of such Beneficial Holders in respect of their Claims to accept or reject the Amended Plan and/or opt out of the Third-Party Release (as defined in the Amended Plan).**

**This Master Ballot pertains only to the Second Lien Notes, Third Lien Notes, or Unsecured Notes for which a box is checked on Exhibit A hereto.**

The rights and treatment for each Class are described in the Disclosure Statement Supplement, which is included in the package (the "Solicitation Package") you are receiving with this Master Ballot. The Solicitation Package also contains copies of the Amended Plan, DS Supplement Order, and certain other materials. If you received any documents comprising the Solicitation Package in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov or (b) at no charge from Kroll Restructuring Administration LLC (the "Claims Agent") by: (i) accessing the Debtors' restructuring website at https://cases.ra.kroll.com/DSG; (ii) writing to Diamond Sports Group, LLC Ballots Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232; or (iii) calling or emailing the Claims Agent at:

<div align="center">

U.S./Canada (toll-free): (877) 720-6635
International (toll): +1 (646) 440-4763

Email: DSGInfo@ra.kroll.com (with "DSG Solicitation Inquiry" in the subject line)

</div>

This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Amended Plan, opting out of the Third-Party Release (as defined and described in more detail below), and making certain certifications with respect to the Amended Plan. If you believe you have received this Master Ballot in error, please contact the Claims Agent *immediately* at the address, telephone number, email address, or via the Debtors' restructuring website set forth above.

You are authorized to distribute solicitation documents and information to, and collect votes to accept or to reject the Amended Plan from, Beneficial Holders in accordance with your customary practices, including the use of an electronic link to solicitation materials and information, a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot (as defined below), and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

You should review the Disclosure Statement, the Disclosure Statement Supplement, the Amended Plan, and the instructions contained herein before you vote. You or the Beneficial Holders of the Claims for whom you are the Nominee may wish to seek legal advice concerning the Amended Plan and the Amended Plan's classification and treatment of such Claims.

**The Bankruptcy Court may confirm the Amended Plan and thereby bind all Holders of Claims and Interests to the terms of the Amended Plan. To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Amended Plan, you must complete**

<div align="center">3     [CUSIP/ISIN indicated on Exhibit A hereto]</div>

**and return this Master Ballot so that the Claims Agent *actually receives* it on or before the Voting Deadline.**

**The Voting Deadline is on <u>November 5, 2024, at 4:00 p.m.</u>, prevailing Central Time.**

[*Remainder of page intentionally left blank*]

[CUSIP/ISIN indicated on Exhibit A hereto]

**IMPORTANT NOTICE**
**<u>REGARDING TREATMENT FOR CLASS 4</u>**

Class 4 consists of any Junior Funded Debt Claims.

As described in more detail in the Disclosure Statement Supplement and Amended Plan, if the Amended Plan is confirmed and the Effective Date occurs, each Holder of an Allowed Junior Funded Debt Claim (or its designee(s) as designated pursuant to and in accordance with the Distribution Designation Procedures) shall receive its *pro rata* share of:

    (i)      if the Wind Down Toggle has not occurred, the Junior Creditor Equity; and

    (ii)    if the Wind Down Toggle has occurred, the net proceeds of the Wind Down and the Sinclair-Related Litigation Proceeds remaining after (w) payment of the First Lien Claims in Cash in an amount equal to the Wind Down Claim Cap, (x) the repayment of the DIP Claims in full in Cash, (y) payment of the Unsecured Claim Cash Distribution, and (z) payment of all Administrative Expense Claims, Other Secured Claims, and Other Priority Claims.

**This Master Ballot pertains only to the Second Lien Notes, Third Lien Notes, or Unsecured Notes for which a box is checked on <u>Exhibit A</u> hereto.**

**The votes on this Master Ballot will be applied to each Debtor against which the applicable Beneficial Holders have a Claim on account of the Second Lien Notes, Third Lien Notes, or Unsecured Notes for which a box is checked on <u>Exhibit A</u> hereto.**

**PLEASE READ ARTICLE II.B OF THE DISCLOSURE STATEMENT SUPPLEMENT, AND ARTICLE III OF THE AMENDED PLAN FOR MORE DETAILS.**

*[Remainder of page intentionally left blank]*

    [CUSIP/ISIN indicated on Exhibit A hereto]

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

<u>**Item 1**</u>.        **Certification of Authority to Vote**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐        is a broker, bank, or other nominee for the Beneficial Holders of the aggregate principal amount of the Claims listed in <u>Item 2</u> below, or

☐        is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee for the Beneficial Holders of the aggregate principal amount of Claims listed in <u>Item 2</u> below, or

☐        has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner of the aggregate principal amount of Claims listed in <u>Item 2</u> below,

and accordingly, has full power and authority to vote to accept or reject the Amended Plan and consent to or opt out of the Third-Party Release on behalf of the Beneficial Holders of the Claims described in <u>Item 2</u>.

*[Ballot continues on following page]*

6    [CUSIP/ISIN indicated on Exhibit A hereto]

**Item 2.**          **Vote on Amended Plan**

The undersigned transmits the following votes of Beneficial Holders of Claims arising on account of the Second Lien Notes, Third Lien Notes, or Unsecured Notes indicated on **Exhibit A** hereto and certifies that the following Beneficial Holders of such Claims, as identified by their respective customer account numbers set forth below, are the Beneficial Holders of such Claims as of the Voting Record Date and have delivered to the undersigned, as Nominee, properly executed ballots (the "Beneficial Holder Ballots") casting such votes as indicated and containing instructions for the casting of those votes on their behalf.  For purposes of this Master Ballot, accrued or unmatured interest should not be included.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Holder must vote all such Beneficial Holder's Claims to accept or reject the Amended Plan and may not split such vote.  Any Beneficial Holder Ballot that does not indicate an acceptance or rejection of the Amended Plan or that indicates both an acceptance and a rejection of the Amended Plan will not be counted.  **If the Beneficial Holder has checked the box on Item 3 of the Beneficial Holder Ballot pertaining to releases by Holders of Claims, as detailed in Article VIII.D of the Amended Plan, please place an X in the Item 3 column below for each Beneficial Holder that checked the box, unless the Beneficial Holder has voted to accept the Amended Plan.**

| Your Customer Account Number for Each Beneficial Holder of Claims | Principal Amount Held as of Voting Record Date | Item 2 Indicate the vote cast on the Beneficial Holder Ballot by checking the appropriate box below. | | | Item 3 If the box in Item 3 of the Beneficial Holder Ballot was completed, check the box in the column below |
|---|---|---|---|---|---|
| | | Accept the Amended Plan | or | Reject the Amended Plan | OPT OUT of the Third-Party Release |
| 1 | $ | | | | |
| 2 | $ | | | | |
| 3 | $ | | | | |
| 4 | $ | | | | |
| 5 | $ | | | | |
| 6 | $ | | | | |
| **TOTALS** | $ | | | | |

7    [CUSIP/ISIN indicated on Exhibit A hereto]

**<u>Item 3</u>.          Other Ballots Submitted by Beneficial Holders in the Same Class**

The undersigned certifies that it has transcribed in the following table the information, if any, provided by the Beneficial Holders in Item 4 of the Beneficial Holder Ballot:

| Your customer account number and/or Customer Name for each Beneficial Holder who completed Item 4 of the Beneficial Holder Ballot. | Transcribe from Items 2-4 of the Beneficial Holder Ballot | | | | | |
|---|---|---|---|---|---|---|
| | **Beneficial Holder Account Number at Other Nominee** | **Name and DTC Participant Number of Other Registered Holder or Nominee** | **Principal Amount of Other Claims Voted** | **CUSIP of Other Claims Voted** | **Amended Plan Vote (Accept or Reject) of Other Claims Voted** | **OPT OUT of the Third-Party Release** |
| 1. | | | $ | | | |
| 2. | | | $ | | | |
| 3. | | | $ | | | |
| 4. | | | $ | | | |
| 5. | | | $ | | | |

[*Ballot continues on following page*]

**Item 4**.          **Certifications**

By signing this Master Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.  it has received a copy of the Disclosure Statement, the Disclosure Statement Supplement, the Amended Plan, the Master Ballots, the Beneficial Holder Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Holders of the Claims listed in Item 2 above;

b.  it has received a completed and signed Beneficial Holder Ballot (or other accepted and customary method of communicating a vote) from each Beneficial Holder listed in Item 2 of this Master Ballot;

c.  it is the registered Holder of all the Claims listed in Item 2 above being voted, or it has been authorized by each Beneficial Holder of the Claims listed in Item 2 above to vote on the Amended Plan;

d.  no other Master Ballots with respect to the Claims identified in Item 2 have been cast or, if any other Master Ballots have been cast with respect to such Claims, then any such earlier received Master Ballots are hereby revoked;

e.  it has properly disclosed: (i) the number of Beneficial Holders of Claims who completed the Beneficial Holder Ballots; (ii) the respective principal amounts of the Claims owned, as the case may be, by each Beneficial Holder of the Claims who completed a Beneficial Holder Ballot; (iii) each such Beneficial Holder of Claims' respective vote concerning the Amended Plan; (iv) each such Beneficial Holder of Claims' certification as to other Claims voted in the same Class; and (v) the customer account or other identification number for each such Beneficial Holder of Claims; and

f.  it will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders of Claims (whether properly completed or defective) for at least one year after the Effective Date of the Amended Plan and disclose all such information to the Bankruptcy Court or the Debtors, if so ordered.

*[Ballot continues on following page]*

Name of Nominee: _____
                            (Print or Type)

Participant Number: _____

Name of Proxy Holder or Agent for Nominee (if applicable):

_____
                            (Print or Type)

Signature: _____

Name of
Signatory: _____

Title: _____

Address: _____
_____
_____

Telephone Number: _____

Email Address: _____

Date Completed: _____

[*Remainder of page intentionally left blank*]

10   [CUSIP/ISIN indicated on Exhibit A hereto]

**PLEASE SUBMIT YOUR MASTER BALLOT BY**
**ONE OF THE FOLLOWING TWO METHODS:**

<u>**Via Paper Master Ballot.**</u>  Please complete, sign, and date this Master Ballot and return it (with a signature), promptly in the envelope provided or via first-class mail, overnight courier, or hand delivery to:

**Diamond Sports Group, LLC Ballots Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 Third Avenue, Suite 412**
**Brooklyn, NY  11232**

To arrange hand delivery of your Master Ballot, please email DSGInfo@ra.kroll.com (with "DSG Ballot Submission" in the subject line) at least 24 hours in advance of your arrival at the address above with the expected date and time of such delivery.

<u>**OR**</u>

<u>**Via Electronic Mail.**</u>  Submit a pdf of your Master Ballot to the Claims Agent at DSGBallots@ra.kroll.com (with "DSG Amended Plan Master Ballot Submission" in the subject line).  If you choose to submit your Master Ballot via electronic mail, you <u>**SHOULD NOT**</u> also return a hard copy of your Master Ballot.

The Master Ballot does not constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

> **If the Claims Agent does not *actually receive* this Master Ballot on or before the Voting Deadline, which is November 5, 2024, at 4:00 p.m., prevailing Central Time, and if the Voting Deadline is not extended, the votes transmitted hereby may be counted only in the discretion of the Debtors.**

*[Remainder of page intentionally left blank]*

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

1. The Debtors are soliciting the votes of Holders of Claims with respect to the Amended Plan attached as Exhibit A to the Disclosure Statement Supplement.  Capitalized terms used in the Master Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Amended Plan, a copy of which also accompanies the Master Ballot.  **PLEASE READ THE AMENDED PLAN, DISCLOSURE STATEMENT, AND DISCLOSURE STATEMENT SUPPLEMENT CAREFULLY BEFORE COMPLETING THE MASTER BALLOT.**

2. The Amended Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class that votes on the Amended Plan and if the Amended Plan otherwise satisfies the requirements for confirmation provided by section 1129 of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3. You should immediately distribute the Beneficial Holder Ballots and the Solicitation Package to all Beneficial Holders of Claims and take any action required to enable each such Beneficial Holder to vote timely the Claims that it holds.  You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices.  You are authorized to collect votes to accept or to reject the Amended Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.  Any Beneficial Holder Ballot returned to you by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Amended Plan until you properly complete and deliver, to the Claims Agent, a Master Ballot that reflects the vote of such Beneficial Holders by November 5, 2024, at 4:00 p.m., prevailing Central Time or otherwise validate the Master Ballot in a manner acceptable to the Claims Agent.

4. If you are transmitting the votes of any Beneficial Holder of Claims other than yourself, you may either:

    a. "pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Claim for voting within five Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Claims Agent in the return envelope to be provided in the Solicitation Package.  A Nominee "pre-validates" a Beneficial Holder's Ballot by (i) signing the Beneficial Holder Ballot and including their DTC participant number; (ii) applying a medallion guarantee stamp to the Ballot (or including a list of the Nominee's authorized signatories in lieu thereof); (iii) indicating the account number of the Beneficial Holder and the principal amount of Claims held by the Nominee for such Beneficial Holder; and then (iv) forwarding the Beneficial Holder Ballot together with the Solicitation Package to the Beneficial Holder.  The Beneficial Holder then completes the remaining information requested on the Beneficial Holder Ballot and returns the

Beneficial Holder Ballot directly to the Claims Agent. A list of the Beneficial Holders to whom "pre-validated" Beneficial Holder Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date; or

b. within five Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Claim for voting along with a return envelope provided by and addressed to the Nominee, with the Beneficial Holder then returning the individual Beneficial Holder Ballot to the Nominee. The Nominee will tabulate the votes of its respective owners on a Master Ballot that will be provided to the Nominee separately by the Claims Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Claims Agent. The Nominee should advise the Beneficial Holder to return their individual Beneficial Holder Ballots (or otherwise transmit their vote) to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Claims Agent so that the Master Ballot is actually received by the Claims Agent on or before the Voting Deadline.

5.   With regard to any Beneficial Holder Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Claims Agent by the Voting Deadline; and (d) retain such Beneficial Holder Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date of the Amended Plan. You may be ordered to produce the Beneficial Holder Ballots (or evidence of the vote transmitted to you) to the Debtors or the Bankruptcy Court.

a.   The Master Ballot **must** be returned to the Claims Agent so as to be **actually received** by the Claims Agent on or before the Voting Deadline. **The Voting Deadline is November 5, 2024, at 4:00 p.m., prevailing Central Time.** If a Master Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order. No Master Ballot should be sent to the Debtors or the Debtors' financial or legal advisors. A Master Ballot will not be counted unless received by the Claims Agent.

b.   If a Master Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the discretion of the Debtors. Additionally, **the following Master Ballots will not be counted:** (a) any Master Ballot that partially rejects and partially accepts the Amended Plan; (b) any Master Ballot not marked to accept or reject the Amended Plan, or marked both to accept and reject the Amended Plan; (c) any Master Ballot sent to the Debtors, the Debtors' agents (other than the Claims Agent), any agent of any creditor, any indenture trustee, or the Debtors' financial or legal advisors; (d) any Master Ballot sent by facsimile or any means of electronic submission other than electronic mail; (e) any Master Ballot cast by (or on behalf of) a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Amended Plan; (f) any Master Ballot submitted by (or on behalf of) a party not entitled to cast a vote with respect

13   [CUSIP/ISIN indicated on Exhibit A hereto]

to the Amended Plan; (g) any Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder; and/or (h) any unsigned Master Ballot.

6.   The method of delivery of Master Ballots to the Claims Agent is at the election and risk of each Nominee. Except as otherwise provided herein, such delivery will be deemed made only when the Claims Agent **actually receives** the executed Master Ballot. In all cases, Beneficial Holders and Nominees should allow sufficient time to assure timely delivery.

7.   If the Claims Agent receives multiple Master Ballots from the same Nominee with respect to the same Claims, the latest received valid Master Ballot timely received by the Claims Agent prior to the Voting Deadline will supersede and revoke any other Master Ballots with respect to the same Claims.

8.   The Master Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or Interest or (b) an assertion or admission of a Claim or Interest. The Master Ballot may not be used for any purpose other than to vote to accept or reject the Amended Plan, to opt out of the Third-Party Release, and to make certain certifications with respect to the Amended Plan.

9.   **Please be sure to sign and date the Master Ballot**. If you are completing the Master Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

10.  If you are both the Nominee and the Beneficial Holder of any of the Claims indicated on **Exhibit A** of the Master Ballot or Beneficial Holder Ballot, as applicable, and you wish to vote such Claims, you may vote such Claims where indicated on the Master Ballot for such Claims and you must vote all of your Claims in the same Class to either accept or reject the Amended Plan and may not split your vote.

11.  The following additional rules shall apply to Master Ballots:

   a.   votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Claims as of the Voting Record Date, as evidenced by the record and depository listings;

   b.   votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record principal amount of the Claims held by such Nominee;

   c.   to the extent that conflicting votes or "over-votes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Claims Agent will attempt to reconcile discrepancies with the Nominee;

   d.   to the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Claims Agent will apply the votes to accept and reject the Amended Plan in the same proportion as the votes to accept and reject the Amended Plan submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the over-vote, but only to the extent of the Nominee's position in the Claims; and

   e.   for purposes of tabulating votes, each Holder holding through a particular account will be deemed to have voted the principal amount relating to its holdings in that

14   [CUSIP/ISIN indicated on Exhibit A hereto]

particular account, although the Claims Agent may be asked to adjust such principal amount to reflect the Claim amount.

12. **Each Master Ballot pertains only to the Second Lien Notes, Third Lien Notes, or Unsecured Notes for which a box is checked on <u>Exhibit A</u> thereto.** Each Ballot votes only the Claims as indicated on that Ballot.  Please complete and return each Ballot you receive.

### PLEASE SUBMIT YOUR MASTER BALLOT PROMPTLY

**If you have any questions regarding the Master Ballot, these voting instructions, or the procedures for voting, please call the restructuring hotline at:**

**U.S./Canada (toll-free):  (877) 720-6635**
**International (toll):  +1 (646) 440-4763**

**Or email DSGInfo@ra.kroll.com**
**(with "DSG Solicitation Inquiry" in the subject line)**

---

**If the Claims Agent does not _actually receive_ the Master Ballot on or before the Voting Deadline, which is November 5, 2024, at 4:00 p.m., prevailing Central Time, and if the Voting Deadline is not extended, the votes transmitted hereby may be counted only in the discretion of the Debtors.**

---

[*Remainder of page intentionally left blank*]

15   [CUSIP/ISIN indicated on Exhibit A hereto]

**Exhibit A**

**Please check <u>ONE (AND ONLY ONE)</u> box below to indicate the CUSIP/ISIN to which this Master Ballot pertains.  If you check more than one box, you risk having all votes submitted through this Master Ballot invalidated.**

| | Second Lien Notes | |
|---|---|---|
| ☐ | 5.375% Second Lien Notes due 2026 (REGS) | CUSIP U2527JAD7<br>ISIN USU2527JAD73 |
| ☐ | 5.375% Second Lien Notes due 2026 (144A) | CUSIP 25277LAF3<br>ISIN US25277LAF31 |
| ☐ | 5.375% Second Lien Notes due 2026 (AI) | CUSIP 25277LAG1<br>ISIN US25277LAG14 |
| | **Third Lien Notes** | |
| ☐ | 5.375% Senior Secured Notes due 2026 (REGS) | CUSIP U2527JAA3<br>ISIN USU2527JAA35 |
| ☐ | 5.375% Senior Secured Notes due 2026 (144A) | CUSIP 25277LAA4<br>ISIN US25277LAA44 |
| ☐ | 5.375% Senior Secured Notes due 2026 (AI) | CUSIP 25277LAB2<br>ISIN US25277LAB27 |
| | **Unsecured Notes** | |
| ☐ | 6.625% Senior Unsecured Notes due 2027 (REGS) | CUSIP U2527JAB1<br>ISIN USU2527JAB18 |
| ☐ | 6.625% Senior Unsecured Notes due 2027 (144A) | CUSIP 25277LAC0<br>ISIN US25277LAC00 |
| ☐ | 6.625% Senior Unsecured Notes due 2027 (AI) | CUSIP 25277LAD8<br>ISIN US25277LAD82 |

## Exhibit B-4

**Class 4 Junior Funded Debt Claims (Notes) Beneficial Holder Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) | Case No. 23-90116 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BENEFICIAL HOLDER BALLOT FOR (I) VOTING TO ACCEPT OR REJECT
THE DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION AND (II) OPTING OUT OF THIRD-PARTY RELEASE**

**BENEFICIAL HOLDER BALLOT FOR HOLDERS OF CLASS 4 JUNIOR FUNDED
DEBT CLAIMS (SECOND LIEN NOTES CLAIMS, THIRD LIEN NOTES CLAIMS,
AND UNSECURED NOTES CLAIMS)**

> **Please read and follow the enclosed instructions for
> completing Ballots carefully before completing this Beneficial Holder Ballot.**
>
> **Beneficial Holders of a Class 4 Junior Funded Debt Claims that previously submitted a
> vote to accept or reject the Original Plan (as defined below), and _DO NOT_ wish to change
> such vote, need take no action with respect to a vote on the Amended Plan (as defined
> below).**
>
> **Beneficial Holders of a Class 4 Junior Funded Debt Claims that previously submitted a
> vote to accept or reject the Original Plan, and _DO_ wish to change such vote, must submit a
> vote to accept or reject the Amended Plan in accordance with instructions provided below.**
>
> **A superseding pre-validated Beneficial Holder Ballot (as defined below) submitted directly
> to the Claims Agent by a Beneficial Holder with respect to a vote on the Amended Plan
> must be accompanied by the pre-validated Beneficial Holder Ballot form number assigned
> by the Claims Agent to the pre-validated Beneficial Holder Ballot previously submitted by
> such Beneficial Holder with respect to its vote on the Original Plan.**
>
> **If you received a return envelope addressed to your Nominee, for the vote on this Beneficial
> Holder Ballot to be counted, you must follow the directions of your Nominee and allow
> sufficient time for your Nominee to receive your vote and transmit such vote on a Master
> Ballot, which Master Ballot must be *actually received* by the Claims Agent (as defined**

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
        claims and noticing agent at https://cases.ra.kroll.com/DSG.  The Debtors' service address for purposes of these
        chapter 11 cases is:  c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

[CUSIP/ISIN indicated on Exhibit A hereto]

**below) by November 5, 2024, at 4:00 p.m., prevailing Central Time (the "<u>Voting Deadline</u>").**

**If, however, you received a "pre-validated" Beneficial Holder Ballot from your Nominee with instructions to submit such Ballot directly to the Claims Agent, in order for your vote to be counted, you must complete, execute, and return the "pre-validated" Ballot, so as to be *actually received* by the Claims Agent by the Voting Deadline.  Pre-validated Beneficial Holder Ballots may be submitted directly to the Claims Agent by either of two submission methods set forth below.**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") are soliciting votes with respect to the *Debtors' First Amended Joint Chapter 11 Plan of Reorganization* (as may be amended, modified, or supplemented from time to time, the "<u>Amended Plan</u>") as set forth in the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (as may be amended, modified, or supplemented from time to time, the "<u>Disclosure Statement</u>") and the *Disclosure Statement Supplement for the Debtors' First Amended Joint Chapter 11 Plan of Reorganization* (the "<u>Disclosure Statement Supplement</u>").  The United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") has approved the Disclosure Statement and, on a conditional basis, the Disclosure Statement Supplement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), by entry of orders on April 17, 2024 [Docket No. 1977], and October [●], 2024 [Docket No. [●]] (the "<u>DS Supplement Order</u>").  The Bankruptcy Court's approval of the Disclosure Statement or the Disclosure Statement Supplement does not indicate approval of the Amended Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Amended Plan.

You are receiving this ballot for Beneficial Holders[2] (the "<u>Beneficial Holder Ballot</u>") because the Debtors' records indicate that you are a Beneficial Holder of one or more Claims on account of the Second Lien Notes, Third Lien Notes, or Unsecured Notes indicated on **Exhibit A** hereto as of April 15, 2024 (the "<u>Voting Record Date</u>").  Accordingly, you have a right to vote to (a) accept or reject the Amended Plan and (b) subject to the limitations set forth herein, opt out of the Third-Party Release (as defined and described in more detail below).  You can cast your vote through this Beneficial Holder Ballot and return it to your broker, bank, or other nominee, or the agent of a broker, bank, or other nominee (each of the foregoing, a "<u>Nominee</u>"), in accordance with the instructions provided by your Nominee, who will then submit a master ballot (the "<u>Master Ballot</u>") on behalf of the Beneficial Holders of Claims on account of the Second Lien Notes, Third Lien Notes, or Unsecured Notes indicated on **Exhibit A** hereto.  You previously received a Beneficial Holder Ballot and a solicitation package from the Debtors with respect to the *Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 1982] (the "<u>Original Plan</u>").

**Regardless of whether you have already voted on the Original Plan, you may cast a new vote on the Amended Plan with this Beneficial Holder Ballot.  The latest received valid Ballot**

---

[2]   A "<u>Beneficial Holder</u>" means a beneficial owner of publicly-traded securities whose Claims or Interests have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees.

**timely received by the Claims Agent prior to the Voting Deadline will supersede and revoke any other Beneficial Holder Ballots with respect to the same Claims.**

Your Nominee is authorized to distribute solicitation documents and information to, and collect votes to accept or to reject the Amended Plan from, Beneficial Holders in accordance with its customary practices, including the use of an electronic link to solicitation materials and information, a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

**This Beneficial Holder Ballot pertains only to the Second Lien Notes, Third Lien Notes, or Unsecured Notes for which a box is checked on Exhibit A hereto.**

The rights and treatment for each Class are described in the Disclosure Statement Supplement, which is included in the package (the "Solicitation Package") you are receiving with this Beneficial Holder Ballot. The Solicitation Package also contains copies of the Amended Plan, DS Supplement Order, and certain other materials. If you received any documents comprising the Solicitation Package in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov or (b) at no charge from Kroll Restructuring Administration LLC (the "Claims Agent") by: (i) accessing the Debtors' restructuring website at https://cases.ra.kroll.com/DSG; (ii) writing to Diamond Sports Group, LLC Ballots Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232; or (iii) calling or emailing the Claims Agent at:

<div align="center">

U.S./Canada (toll-free): (877) 720-6635
International (toll): +1 (646) 440-4763

Email: DSGInfo@ra.kroll.com (with "DSG Solicitation Inquiry" in the subject line)

</div>

This Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Amended Plan, opting out of the Third-Party Release, and making certain certifications with respect to the Amended Plan. If you believe you have received this Beneficial Holder Ballot in error, please contact your Nominee immediately.

You should review the Disclosure Statement, the Disclosure Statement Supplement, the Amended Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Amended Plan and the Amended Plan's classification and treatment of your Claims.

**The Bankruptcy Court may confirm the Amended Plan and thereby bind all Holders of Claims and Interests to the terms of the Amended Plan. To have your vote count as either an acceptance or rejection of the Amended Plan, you must complete and return this Beneficial Holder Ballot to your Nominee in sufficient time for your Nominee to include your vote on a Master Ballot that must be *actually received* by the Claims Agent on or before the Voting Deadline.**

**The Voting Deadline is on November 5, 2024, at 4:00 p.m., prevailing Central Time.**

[CUSIP/ISIN indicated on Exhibit A hereto]

**IMPORTANT NOTICE**
**<u>REGARDING TREATMENT FOR CLASS 4</u>**

Class 4 consists of any Junior Funded Debt Claims.

As described in more detail in the Disclosure Statement Supplement and Amended Plan, if the Amended Plan is confirmed and the Effective Date occurs, each Holder of an Allowed Junior Funded Debt Claim (or its designee(s) as designated pursuant to and in accordance with the Distribution Designation Procedures) shall receive its *pro rata* share of:

    (i)  if the Wind-Down Toggle has not occurred, the Junior Creditor Equity; and

    (ii)  if the Wind-Down Toggle has occurred, the net proceeds of the Wind Down and the Sinclair-Related Litigation Proceeds remaining after (w) payment of the First Lien Claims in Cash in an amount equal to the Wind Down Claim Cap, (x) the repayment of the DIP Claims in full in Cash, (y) payment of the Unsecured Claim Cash Distribution, and (z) payment of all Administrative Expense Claims, Other Secured Claims, and Other Priority Claims.

**Your vote to accept or reject the Amended Plan will be applied to each Debtor against which you hold a Second Lien Notes Claim, a Third Lien Notes Claim, or an Unsecured Notes Claim.**

**PLEASE READ ARTICLE II.B OF THE DISCLOSURE STATEMENT SUPPLEMENT, AND ARTICLE III OF THE AMENDED PLAN FOR MORE DETAILS.**

[*Remainder of page intentionally left blank*]

4     [CUSIP/ISIN indicated on Exhibit A hereto]

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

**<u>Item 1</u>.**      **Amount of Claim(s)**

The undersigned certifies that, as of the Voting Record Date, the undersigned was, or is an authorized signatory for the Entity that was, the Beneficial Holder of one or more Claims on account of the Second Lien Notes, Third Lien Notes, or Unsecured Notes for which a box is checked on **<u>Exhibit A</u>** hereto in the following aggregate principal amount (insert amount in box below, unless otherwise completed by your Nominee; if the box below is blank and you do not know the amount of your Second Lien Notes Claim, Third Lien Notes Claim, or Unsecured Notes Claim as of the Voting Record Date, please contact your Nominee for this information):

$$\boxed{\qquad \$\rule{7cm}{0.4pt} \qquad}$$

**<u>Item 2</u>.**      **Vote on Amended Plan**

Please vote either to accept or to reject the Amended Plan with respect to your Claims set forth in Item 1.  Any Beneficial Holder Ballot that indicates both an acceptance and a rejection of the Amended Plan or does not indicate either an acceptance or rejection of the Amended Plan will not be counted.

**<u>The Beneficial Holder of the Claims identified in Item 1 votes to (check one box)</u>:**

| □ **<u>ACCEPT</u>** (vote FOR) the Amended Plan      □ **<u>REJECT</u>** (vote AGAINST) the Amended Plan |
| --- |

**Your vote to accept or reject the Amended Plan will be applied to each Debtor against which you hold a Second Lien Notes Claim, Third Lien Notes Claim, or an Unsecured Notes Claim in the same manner and in the same amount as indicated in <u>Item 1</u> and <u>Item 2</u> above**.

*[Ballot continues on following page]*

**Item 3.**        **Important Information Regarding the Third-Party Release**

If you vote to accept the Amended Plan, you will be deemed to have consented to the release given by each of the Releasing Parties to the Released Parties as set forth in Article VIII.D of the Amended Plan (the "<u>Third-Party Release</u>"), which is copied below for reference.

If you vote to reject the Amended Plan in Item 2 above or abstain from voting to accept or reject the Amended Plan, you have the option to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan by checking the opt out election box below.

If you validly submit your Ballot and vote to reject the Amended Plan in Item 2 above or abstain from voting to accept or reject the Amended Plan, and, in each case, check the box below, then you will be deemed not to consent to the Third-Party Release set forth in Article VIII.D of the Amended Plan.

If you do not (i) validly submit your Ballot with the below box checked or (ii) file an objection with the Bankruptcy Court in the Chapter 11 Cases that expressly objects to your inclusion as a Releasing Party under the Third-Party Release set forth in Article VIII.D of the Amended Plan, then you will be deemed to have consented to the Third-Party Release; *provided* that if you (x) previously abstained from voting on the Original Plan or voted to reject the Original Plan and, in each case, opted out of granting the Third-Party Release set forth in the Original Plan and (y) do not vote to accept or reject the Amended Plan, you shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan.

If you elect to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a "Released Party" in connection therewith.

<u>The Beneficial Holder of the Claims identified in Item 1 elects to</u>:

☐  **OPT OUT of the Third-Party Release**
**contained in Article VIII.D of the Amended Plan**

All Holders of Claims that do not file an objection with the Bankruptcy Court in the Chapter 11 Cases that expressly objects to the inclusion of such Holder as a Releasing Party under the Third-Party Release contained in Article VIII.D of the Amended Plan or do not elect to opt out of the Third-Party Release as provided in this Ballot will be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties; *provided* that any Holder of a Claim that (i) previously abstained from voting on the Original Plan or voted to reject the Original Plan and, in each case, opted out of granting the Third-Party Release set forth in the Original Plan and (ii) does not vote to accept or reject the Amended Plan shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan.  By objecting to or electing to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the

**benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a Released Party in connection therewith.**

**<u>Article VIII.D of the Amended Plan contains the following Third-Party Release</u>:**

**Except as otherwise expressly set forth in the Amended Plan (including pursuant to <u>Article IV.X</u>) or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party (other than the Debtors, the Post-Effective Date Debtors, and their Estates), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Post-Effective Date Debtor, its Estate, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtors, any investment in any Debtor by any Released Party, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Amended Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any other benefit provided by any Debtor to any Released Party, cash management arrangements, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the Prepetition Credit Agreements, the Prepetition Notes Indentures, the formulation, preparation, dissemination, negotiation, or Filing of the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Amended Plan or the reliance by any Released Party on the Amended Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Prior Restructuring Support Agreement, the Cooperation Agreement, the**

Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Plan Transaction before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the solicitation of votes on the Amended Plan, the pursuit of Confirmation of the Amended Plan, the pursuit of Consummation, the administration and implementation of the Amended Plan, including the issuance or distribution of debt and/or securities pursuant to the Amended Plan, or the distribution of property under the Amended Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities primarily arising out of any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Amended Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Amended Plan, including the New A/R Facility Credit Agreement, the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, any Plan Supplement document, or any claim, obligation, or right arising under or preserved pursuant to the Amended Plan or the Confirmation Order, including those rights which are expressly preserved pursuant to <u>Article IV.X</u>, or (2) any Sinclair Party from any claim or Cause of Action asserted or assertable by any JPM Party or any of its Affiliates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Amended Plan, and, further, shall constitute the Bankruptcy Court's finding that this Third-Party Release is:  (1) consensual; (2) essential to the Confirmation of the Amended Plan; (3) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Plan Transactions and implementing the Amended Plan; (4) a good faith settlement and compromise of the claims and Causes of Action released by the Confirmation of the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

<p style="text-align:center">*     *     *     *     *</p>

<p style="text-align:center">8     [CUSIP/ISIN indicated on Exhibit A hereto]</p>

Under the Amended Plan, "<u>Released Parties</u>" means, collectively, and in each case in its capacity as such:  (a) each Debtor and Post-Effective Date Debtor; (b) the Consenting Parties; (c) the Prepetition Notes Trustees; (d) the Prepetition Agents; (e) the UCC and each UCC Member; (f) the Sinclair-Related Litigations Defendants; (g) the Plan Administrator; and (h) with respect to each Person or Entity listed or described in any of the foregoing clauses (a) through (g), each such Person's or Entity's current and former Affiliates, and each such Person's or Entity's and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, participants, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, employees, agents, advisory board members, investment fund advisors or managers, investment managers, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that the following Persons and Entities shall not be Released Parties: (i) a Person or Entity that either (A) elects to opt out of the releases contained in the Amended Plan or (B) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Amended Plan that is not resolved before entry of the Confirmation Order; or (ii) other than (A) non-Debtor Diamond Sports Finance SPV, LLC and the New A/R Facility Borrower, (B) any Debtor that is a member or equity holder (regardless of whether such interests are held directly or indirectly) in a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, and (C) any members, directors, managers, officers, employees, or agents appointed by any Debtor at a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, any other Person or Entity affiliated with a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date and any non-Debtor Affiliates thereof.

Under the Amended Plan, "<u>Releasing Parties</u>" means, collectively, and in each case in its capacity as such: (a) each Debtor and Post-Effective Date Debtor; (b) the Consenting Parties; (c) all Holders of Claims (except as set forth in the proviso herein); (d) the Prepetition Notes Trustees; (e) the Prepetition Agents; (f) the UCC and each UCC Member; (g) the Sinclair-Related Litigations Defendants; (h) the Plan Administrator; and (i) with respect to each Person or Entity listed or described in any of the foregoing clauses (a) through (h), each such Person's or Entity's current and former Affiliates, and each such Person's or Entity's and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, participants, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, employees, agents, advisory board members, investment fund advisors or managers, investment managers, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that the following Persons and Entities shall not be Releasing Parties: (i) a Person or Entity that either (A) elects to opt out of the releases contained in the Amended Plan or (B) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Amended Plan that is not resolved before entry of the Confirmation Order; (ii) other than (A) non-Debtor Diamond Sports Finance SPV, LLC and the New A/R Facility Borrower, (B) any Debtor that is a member or equity holder (regardless of whether such interests are held directly or indirectly) in a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, and (C) any members, directors, managers, officers, employees, or agents appointed by any Debtor at

a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, any other Person or Entity affiliated with a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date and any non-Debtor Affiliates thereof; or (iii) Affiliates of JPMorgan Chase & Co. other than the JPM Parties.

**IF YOU VOTE TO ACCEPT THE AMENDED PLAN, YOU WILL BE DEEMED A RELEASING PARTY PROVIDING THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE AMENDED PLAN.**

[*Ballot continues on following page*]

**Item 4.**          **Other Beneficial Holder Ballots Submitted**

By returning this Beneficial Holder Ballot, the Holder of the Claims identified in Item 1 certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for Claims identified in Item 1, and (b) all Beneficial Holder Ballots submitted by the Beneficial Holder in the same Class indicate the same vote to accept or reject the Amended Plan that the Beneficial Holder has indicated in Item 2 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary):

**ONLY COMPLETE THIS TABLE IF YOU HAVE VOTED OTHER
CLAIMS IN THE SAME CLASS ON OTHER BENEFICIAL HOLDER BALLOTS**

| Beneficial Holder Account Number at Other Nominee | Name and DTC Participant Number of Other Registered Holder or Nominee | Principal Amount of Other Claims Voted | CUSIP of Other Claims Voted | Amended Plan Vote of Other Claims Voted (Accept or Reject) | OPT OUT of the Third-Party Release |
|---|---|---|---|---|---|
|  |  | $ |  |  |  |
|  |  | $ |  |  |  |
|  |  | $ |  |  |  |
|  |  | $ |  |  |  |

**Item 5.**          **Certifications**

By signing this Beneficial Holder Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.     as of the Voting Record Date, either:  (i) the undersigned is the Beneficial Holder of the Claims being voted on this Beneficial Holder Ballot; or (ii) the undersigned is an authorized signatory for the Entity that is the Beneficial Holder of the Claims being voted on this Beneficial Holder Ballot, and in each case, has the power and authority to vote to accept or reject the Amended Plan;

b.     the undersigned (or in the case of an authorized signatory, the Beneficial Holder) has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.     the undersigned has cast the same vote with respect to all of its Class 4 Junior Funded Debt Claims;

d.     the undersigned has not relied on any statement made or other information received from any person with respect to the Amended Plan other than the information contained in the Solicitation Package or other publicly available materials;

e. no other Beneficial Holder Ballots with respect to the Claims identified in Item 1 have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such earlier received Beneficial Holder Ballots are hereby revoked; and

f. the undersigned understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Beneficial Holder Ballot, and every obligation of the Beneficial Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Beneficial Holder and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

| | |
|---|---|
| Name of Beneficial Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email Address: | |
| Date Completed: | |

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT *PROMPTLY* IN THE ENVELOPE PROVIDED
OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS
PROVIDED BY YOUR NOMINEE.**

**If the Claims Agent does not *actually receive* the Master Ballot which reflects your vote on or before the Voting Deadline, which is November 5, 2024, at 4:00 p.m., prevailing Central Time, and if the Voting Deadline is not extended, the votes transmitted hereby may be counted only in the discretion of the Debtors.**

[CUSIP/ISIN indicated on Exhibit A hereto]

## INSTRUCTIONS FOR COMPLETING THE BENEFICIAL HOLDER BALLOT

1.   The Debtors are soliciting the votes of Holders of Claims with respect to the Amended Plan attached as Exhibit A to the Disclosure Statement Supplement.  Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Amended Plan, a copy of which also accompanies the Beneficial Holder Ballot.  **PLEASE READ THE AMENDED PLAN, DISCLOSURE STATEMENT, AND DISCLOSURE STATEMENT SUPPLEMENT CAREFULLY BEFORE COMPLETING THE BENEFICIAL HOLDER BALLOT.** You may wish to seek legal advice concerning the Amended Plan and the treatment of your Claims under the Amended Plan.

2.   The Amended Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class that votes on the Amended Plan and if the Amended Plan otherwise satisfies the requirements for confirmation provided by section 1129 of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.   Unless otherwise instructed by your Nominee, to ensure that your vote is counted, you must: (a) complete the Beneficial Holder Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Amended Plan in Item 2 of the Beneficial Holder Ballot; and (c) **clearly sign and return the Beneficial Holder Ballot to your Nominee** in accordance with the instructions provided by your Nominee.  Your completed Beneficial Holder Ballot must be received by your Nominee in sufficient time to permit your Nominee to deliver your votes to the Claims Agent so as to be **actually received** on or before the Voting Deadline.  **The Voting Deadline is November 5, 2024, at 4:00 p.m., prevailing Central Time**.

4.   If your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order.  In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot to your Nominee.  No Beneficial Holder Ballot should be sent to the Debtors or the Debtors' financial or legal advisors, and if so sent will not be counted.

5.   Regardless of whether you have already voted on the Original Plan, you may cast a new vote on the Amended Plan with this Ballot.  If the Nominee receives multiple Beneficial Holder Ballots from the same Beneficial Holder with respect to the same Claims, the latest received valid Beneficial Holder Ballot timely received by the Nominee prior to the Voting Deadline will supersede and revoke any other Beneficial Holder Ballots with respect to the same Claims; *provided* that if a Holder timely submits both a paper Ballot and an electronic Ballot on account of the same Claims, the electronic Ballot shall supersede the paper Ballot regardless of the order that the Ballots are received.

6.   The Beneficial Holder Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or Interest or (b) an assertion or admission of a Claim or Interest.  The Beneficial

Holder Ballot may not be used for any purpose other than to vote to accept or reject the Amended Plan, to opt out of the Third-Party Release, and to make certain certifications with respect to the Amended Plan.

7.   **Please be sure to sign and date the Beneficial Holder Ballot**.  If you are completing the Beneficial Holder Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

8.   For your vote to be counted, you must vote all of your Class 4 Junior Funded Debt Claims either to accept or reject the Amended Plan and may not split your vote.

9.   The following Beneficial Holder Ballots will not be counted in determining the acceptance or rejection of the Amended Plan: (a) any Beneficial Holder Ballot that partially rejects and partially accepts the Amended Plan; (b) any Beneficial Holder Ballot not marked to accept or reject the Amended Plan, or marked both to accept and reject the Amended Plan; (c) any Beneficial Holder Ballot sent to the Debtors, the Debtors' agents (other than the Claims Agent and only with respect to a pre-validated Beneficial Holder Ballot), any agent of any creditor, any indenture trustee, or the Debtors' financial or legal advisors; (d) any Beneficial Holder Ballot returned to a Nominee not in accordance with the Nominee's instructions; (e) any Beneficial Holder Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Amended Plan; (f) any Beneficial Holder Ballot submitted by a party not entitled to cast a vote with respect to the Amended Plan; (g) any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder; and/or (h) any unsigned Beneficial Holder Ballot (except in accordance with the Nominee's instructions).

10.  A Nominee "pre-validates" a Beneficial Holder's Ballot by signing the Beneficial Holder Ballot and including the Nominee's DTC participant number; applying a medallion guarantee stamp to the Beneficial Holder Ballot (or including a list of the Nominee's authorized signatories in lieu thereof); indicating the account number of the Beneficial Holder and the principal amount of Claims held by the Nominee for such Beneficial Holder; and then forwarding the Beneficial Holder Ballot together with the Solicitation Package to the Beneficial Holder.

11.  **Each Beneficial Holder Ballot pertains only to the Second Lien Notes, Third Lien Notes, or Unsecured Notes for which a box is checked on __Exhibit A__ thereto.**  Each Ballot votes **only** your Claims as indicated on that Ballot.  Please complete and return each Ballot you receive.

**PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

*[Instructions continue on following page]*

14    [CUSIP/ISIN indicated on Exhibit A hereto]

**PRE-VALIDATED BENEFICIAL HOLDER BALLOTS
MAY BE RETURNED DIRECTLY TO THE CLAIMS AGENT
BY EITHER OF TWO SUBMISSION METHODS, AS FOLLOWS:**

1. **By regular mail, overnight courier, or hand delivery (or in the return envelope provided by your Nominee) to:**

**Diamond Sports Group, LLC Ballots Processing Center
c/o Kroll Restructuring Administration LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232**

**To arrange hand delivery of your Ballot, please email DSGInfo@ra.kroll.com (with "DSG Ballot Submission" in the subject line) at least 24 hours in advance of your arrival at the address above with the expected date and time of such delivery.**

2. **As a PDF by electronic mail to: DSGBallots@ra.kroll.com (with "DSG Ballot Submission" in the subject line).**

**If you have any questions regarding completion of the beneficial holder ballot, the voting instructions provided by your nominee, or the procedures for voting, please contact your nominee.**

**If you require additional or replacement solicitation materials or have general questions about the solicitation process, please call the restructuring hotline at:**

**U.S./Canada (toll-free): (877) 720-6635
International (toll): +1 (646) 440-4763**

**Or email DSGInfo@ra.kroll.com
(with "DSG Solicitation Inquiry" in the subject line)**

---

**If the Claims Agent does not _actually receive_ the Master Ballot which reflects your vote on or before the Voting Deadline, which is November 5, 2024, at 4:00 p.m., prevailing Central Time, and if the Voting Deadline is not extended, the votes transmitted hereby may be counted only in the discretion of the Debtors.**

---

*[Remainder of page intentionally left blank]*

15      [CUSIP/ISIN indicated on Exhibit A hereto]

**Exhibit A**

**Please check <u>ONE (AND ONLY ONE)</u> box below to indicate the CUSIP/ISIN to which this Beneficial Holder Ballot pertains.  If you check more than one box, you risk having all votes submitted through this Beneficial Holder Ballot invalidated.**

| Second Lien Notes | | |
|---|---|---|
| ☐ | 5.375% Second Lien Notes due 2026 (REGS) | CUSIP U2527JAD7<br>ISIN USU2527JAD73 |
| ☐ | 5.375% Second Lien Notes due 2026 (144A) | CUSIP 25277LAF3<br>ISIN US25277LAF31 |
| ☐ | 5.375% Second Lien Notes due 2026 (AI) | CUSIP 25277LAG1<br>ISIN US25277LAG14 |
| **Third Lien Notes** | | |
| ☐ | 5.375% Senior Secured Notes due 2026 (REGS) | CUSIP U2527JAA3<br>ISIN USU2527JAA35 |
| ☐ | 5.375% Senior Secured Notes due 2026 (144A) | CUSIP 25277LAA4<br>ISIN US25277LAA44 |
| ☐ | 5.375% Senior Secured Notes due 2026 (AI) | CUSIP 25277LAB2<br>ISIN US25277LAB27 |
| **Unsecured Notes** | | |
| ☐ | 6.625% Senior Unsecured Notes due 2027 (REGS) | CUSIP U2527JAB1<br>ISIN USU2527JAB18 |
| ☐ | 6.625% Senior Unsecured Notes due 2027 (144A) | CUSIP 25277LAC0<br>ISIN US25277LAC00 |
| ☐ | 6.625% Senior Unsecured Notes due 2027 (AI) | CUSIP 25277LAD8<br>ISIN US25277LAD82 |

**<u>Exhibit B-5</u>**

**Class 5 Go-Forward Trade Claims Opt-Out Form and Provisional Ballot**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) Case No. 23-90116 (CML) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### OPT-OUT FORM AND PROVISIONAL BALLOT FOR
### VOTING TO ACCEPT OR REJECT THE DEBTORS'
### FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

### OPT-OUT FORM AND PROVISIONAL BALLOT FOR HOLDERS OF
### CLASS 5 GO-FORWARD TRADE CLAIMS

---

**Please read and follow the enclosed instructions for
completing Ballots carefully before completing this Ballot.**

**Class 5 Claims are provisionally entitled to vote to accept or reject the Amended Plan.
Votes cast on account of Class 5 Go-Forward Trade Claims will only be counted if the
Wind-Down Toggle occurs and Class 5 Go-Forward Trade Claims are therefore Impaired.**

**For the vote on this Ballot to be counted, this Ballot must be completed, executed, and
returned so as to be *actually received* by the Claims Agent (as defined below) by
November 5, 2024, at 4:00 p.m., prevailing Central Time (the "Voting Deadline")
in accordance with the following:**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting votes with respect to the *Debtors' First Amended Joint Chapter 11 Plan of Reorganization* (as may be amended, modified, or supplemented from time to time, the "Amended Plan") as set forth in the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement") and the *Disclosure Statement Supplement for the Debtors' First Amended Joint Chapter 11 Plan of Reorganization* (the "Disclosure Statement Supplement"). The United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement and, on a conditional basis, the Disclosure Statement Supplement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), by entry of orders on April 17, 2024 [Docket No. 1977], and October [●], 2024 [Docket No. [●]] (the "DS Supplement Order"). The Bankruptcy Court's approval of the Disclosure Statement or the Disclosure Statement Supplement does not indicate approval of the Amended

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Amended Plan.

You are receiving this opt-out form and provisional ballot (the "Ballot") because the Debtors' records indicate that you are a Holder of one or more Go-Forward Trade Claims in Class 5 as of **April 15, 2024** (the "Voting Record Date").

As described in more detail in the Disclosure Statement Supplement, because the treatment of Go-Forward Trade Claims is dependent on the Debtors' determination to pursue an orderly winddown in lieu of a going-concern reorganization, Class 5 Claims are provisionally entitled to vote to accept or reject the Amended Plan pending such determination.  **Votes cast on account of Class 5 Go-Forward Trade Claims will only be counted if the Wind-Down Toggle occurs and Class 5 Go-Forward Trade Claims are therefore Impaired.**

The rights and treatment for each Class are described in the Disclosure Statement Supplement, which is included in the package (the "Solicitation Package") you are receiving with this Ballot. The Solicitation Package also contains copies of the Amended Plan, DS Supplement Order, and certain other materials.  If you received any documents comprising the Solicitation Package in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov or (b) at no charge from Kroll Restructuring Administration LLC (the "Claims Agent") by:  (i) accessing the Debtors' restructuring website at https://cases.ra.kroll.com/DSG; (ii) writing to Diamond Sports Group, LLC Ballots Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232; or (iii) calling or emailing the Claims Agent at:

<div align="center">

U.S./Canada (toll-free):  (877) 720-6635
International (toll):  +1 (646) 440-4763

Email:  DSGInfo@ra.kroll.com (with "DSG Solicitation Inquiry" in the subject line)

</div>

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Amended Plan, opting out of the Third-Party Release (as defined and described in more detail below), and making certain certifications with respect to the Amended Plan.  If you believe you have received this Ballot in error, please contact the Claims Agent *immediately* at the address, telephone number, email address, or via the Debtors' restructuring website set forth above.

You should review the Disclosure Statement, the Disclosure Statement Supplement, the Amended Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Amended Plan and the Amended Plan's classification and treatment of your Claims.

**The Bankruptcy Court may confirm the Amended Plan and thereby bind all Holders of Claims and Interests to the terms of the Amended Plan.  To have your vote count as either an acceptance or rejection of the Amended Plan, you must complete and return this Ballot so that the Claims Agent *actually receives* it on or before the Voting Deadline.**

**The Voting Deadline is on November 5, 2024, at 4:00 p.m., prevailing Central Time.**

<div align="center">2</div>

**IMPORTANT NOTICE**
**<u>REGARDING TREATMENT FOR CLASS 5</u>**

Class 5 consists of any Go-Forward Trade Claims.

As described in more detail in the Disclosure Statement Supplement and Amended Plan, if the Amended Plan is confirmed and the Effective Date occurs, each Holder of an Allowed Go-Forward Trade Claim shall receive:

(i) if the Wind-Down Toggle has not occurred, at the option of the applicable Debtor(s), with the reasonable consent of the Required DIP Commitment Parties, either:

    A. Reinstatement of such Allowed Go-Forward Trade Claim on the Effective Date;

    B. payment in full in Cash on (i) the Effective Date, or (ii) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Go-Forward Trade Claim, unless otherwise agreed to by such Holder; or

    C. such other treatment rendering its Allowed Go-Forward Trade Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(ii) if the Wind-Down Toggle has occurred, its *pro rata* share (based on the aggregate amount of Allowed Claims in Class 5 and Class 6) of the Unsecured Claim Cash Distribution in accordance with the GUC Allocation (or the balance thereof if there are insufficient funds remaining after payment of the First Lien Claims in Cash in an amount equal to the Wind Down Claim Cap and payment in full in Cash of the DIP Claims (other than Excluded DIP Amounts)).

**PLEASE READ ARTICLE II.B OF THE DISCLOSURE STATEMENT SUPPLEMENT, AND ARTICLE III OF THE AMENDED PLAN FOR MORE DETAILS.**

*[Remainder of page intentionally left blank]*

3

<u>Item 1</u>.        **Important Information Regarding the Third-Party Release**

**If you vote to accept the Amended Plan, you will be deemed to have consented to the release given by each of the Releasing Parties to the Released Parties as set forth in Article VIII.D of the Amended Plan (the "<u>Third-Party Release</u>"), which is copied below for reference.**

**If you vote to reject the Amended Plan in Item 2 above or abstain from voting to accept or reject the Amended Plan, you have the option to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan by checking the opt out election box below.**

**If you validly submit your Ballot and vote to reject the Amended Plan in Item 2 above or abstain from voting to accept or reject the Amended Plan, and, in each case, check the box below, then you will be deemed not to consent to the Third-Party Release set forth in Article VIII.D of the Amended Plan.**

**If you do not (i) validly submit your Ballot with the below box checked or (ii) file an objection with the Bankruptcy Court in the Chapter 11 Cases that expressly objects to your inclusion as a Releasing Party under the Third-Party Release set forth in Article VIII.D of the Amended Plan, then you will be deemed to have consented to the Third-Party Release;** *provided* **that if you (x) previously abstained from voting on the Original Plan or voted to reject the Original Plan and, in each case, opted out of granting the Third-Party Release set forth in the Original Plan and (y) do not vote to accept or reject the Amended Plan, you shall not be deemed to have consented to the Third-Party Release contained in article VIII.D of the Amended Plan.**

**If you elect to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a "Released Party" in connection therewith.**

<u>The Holder of the Claims identified in Item 2 elects to</u>:

> ☐  **OPT OUT of the Third-Party Release contained in Article VIII.D of the Amended Plan**

**All Holders of Claims that do not file an objection with the Bankruptcy Court in the Chapter 11 Cases that expressly objects to the inclusion of such Holder as a Releasing Party under the Third-Party Release contained in Article VIII.D of the Amended Plan or do not elect to opt out of the Third-Party Release as provided in this Ballot will be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties;** *provided* **that any Holder of a Claim that (i) previously abstained from voting on the Original Plan or voted to reject the Original Plan and, in each case, opted out of granting the Third-Party Release set forth in the Original Plan and (ii) does not vote to accept or reject the Amended Plan shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan.  By objecting to or electing to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the**

**benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a Released Party in connection therewith.**

<u>**Article VIII.D of the Amended Plan contains the following Third-Party Release:**</u>

**Except as otherwise expressly set forth in the Amended Plan (including pursuant to <u>Article IV.X</u>) or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party (other than the Debtors, the Post-Effective Date Debtors, and their Estates), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Post-Effective Date Debtor, its Estate, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtors, any investment in any Debtor by any Released Party, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Amended Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any other benefit provided by any Debtor to any Released Party, cash management arrangements, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the Prepetition Credit Agreements, the Prepetition Notes Indentures, the formulation, preparation, dissemination, negotiation, or Filing of the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Amended Plan or the reliance by any Released Party on the Amended Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Prior Restructuring Support Agreement, the Cooperation Agreement, the**

Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Plan Transaction before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the solicitation of votes on the Amended Plan, the pursuit of Confirmation of the Amended Plan, the pursuit of Consummation, the administration and implementation of the Amended Plan, including the issuance or distribution of debt and/or securities pursuant to the Amended Plan, or the distribution of property under the Amended Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities primarily arising out of any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Amended Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Amended Plan, including the New A/R Facility Credit Agreement, the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, any Plan Supplement document, or any claim, obligation, or right arising under or preserved pursuant to the Amended Plan or the Confirmation Order, including those rights which are expressly preserved pursuant to <u>Article IV.X</u>, or (2) any Sinclair Party from any claim or Cause of Action asserted or assertable by any JPM Party or any of its Affiliates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Amended Plan, and, further, shall constitute the Bankruptcy Court's finding that this Third-Party Release is:   (1) consensual; (2) essential to the Confirmation of the Amended Plan; (3) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Plan Transactions and implementing the Amended Plan; (4) a good faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

<p style="text-align:center">*     *     *     *     *</p>

Under the Amended Plan, "Released Parties" means, collectively, and in each case in its capacity as such:  (a) each Debtor and Post-Effective Date Debtor; (b) the Consenting Parties; (c) the Prepetition Notes Trustees; (d) the Prepetition Agents; (e) the UCC and each UCC Member; (f) the Sinclair-Related Litigations Defendants; (g) the Plan Administrator; and (h) with respect to each Person or Entity listed or described in any of the foregoing clauses (a) through (g), each such Person's or Entity's current and former Affiliates, and each such Person's or Entity's and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, participants, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, employees, agents, advisory board members, investment fund advisors or managers, investment managers, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that the following Persons and Entities shall not be Released Parties: (i) a Person or Entity that either (A) elects to opt out of the releases contained in the Amended Plan or (B) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Amended Plan that is not resolved before entry of the Confirmation Order; or (ii) other than (A) non-Debtor Diamond Sports Finance SPV, LLC and the New A/R Facility Borrower, (B) any Debtor that is a member or equity holder (regardless of whether such interests are held directly or indirectly) in a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, and (C) any members, directors, managers, officers, employees, or agents appointed by any Debtor at a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, any other Person or Entity affiliated with a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date and any non-Debtor Affiliates thereof.

Under the Amended Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) each Debtor and Post-Effective Date Debtor; (b) the Consenting Parties; (c) all Holders of Claims (except as set forth in the proviso herein); (d) the Prepetition Notes Trustees; (e) the Prepetition Agents; (f) the UCC and each UCC Member; (g) the Sinclair-Related Litigations Defendants; (h) the Plan Administrator; and (i) with respect to each Person or Entity listed or described in any of the foregoing clauses (a) through (h), each such Person's or Entity's current and former Affiliates, and each such Person's or Entity's and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, participants, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, employees, agents, advisory board members, investment fund advisors or managers, investment managers, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that the following Persons and Entities shall not be Releasing Parties: (i) a Person or Entity that either (A) elects to opt out of the releases contained in the Amended Plan or (B) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Amended Plan that is not resolved before entry of the Confirmation Order; (ii) other than (A) non-Debtor Diamond Sports Finance SPV, LLC and the New A/R Facility Borrower, (B) any Debtor that is a member or equity holder (regardless of whether such interests are held directly or indirectly) in a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, and (C) any members, directors, managers, officers, employees, or agents appointed by any Debtor at

a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, any other Person or Entity affiliated with a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date and any non-Debtor Affiliates thereof; or (iii) Affiliates of JPMorgan Chase & Co. other than the JPM Parties.

**IF YOU VOTE TO ACCEPT THE AMENDED PLAN, YOU WILL BE DEEMED A RELEASING PARTY PROVIDING THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE AMENDED PLAN.**

[*Ballot continues on following page*]

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

<u>Item 2</u>.        **Amount of Claim(s)**

The undersigned certifies that, as of the Voting Record Date, the undersigned was, or is an authorized signatory for the Entity that was, a Holder of one or more Go-Forward Trade Claims in Class 5 in the aggregate amount and against the Debtor set forth in the box below:

> $ _____
>
> Debtor: _____

<u>Item 3</u>.        **Vote on Amended Plan**

Please vote either to accept or to reject the Amended Plan with respect to your Claims set forth in <u>Item 2</u>.  Any Ballot that indicates both an acceptance and a rejection of the Amended Plan or does not indicate either an acceptance or rejection of the Amended Plan will not be counted.

**<u>The Holder of the Claims identified in Item 2 votes to (check one box)</u>:**

☐ **<u>ACCEPT</u>** (vote FOR) the Amended Plan        ☐ **<u>REJECT</u>** (vote AGAINST) the Amended Plan

*[Ballot continues on following page]*

**Item 4**.        **Certifications**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.    as of the Voting Record Date, either:  (i) the undersigned is the Holder of the Claims being voted on this Ballot; or (ii) the undersigned is an authorized signatory for the Entity that is the Holder of the Claims being voted on this Ballot, and in each case, has the power and authority to vote to accept or reject the Amended Plan;

b.    the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.    the undersigned has cast the same vote with respect to all of its Class 5 Go-Forward Trade Claims;

d.    the undersigned has not relied on any statement made or other information received from any person with respect to the Amended Plan other than the information contained in the Solicitation Package or other publicly available materials;

e.    no other Ballots with respect to the Claims identified in Item 2 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked; and

f.    the undersigned understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

<u>**Via Paper Ballot.**</u>  Please complete, sign, and date the Ballot and return it promptly in the envelope provided or via first-class mail, overnight courier, or hand delivery to:

<div align="center">

**Diamond Sports Group, LLC Ballots Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 Third Avenue, Suite 412**
**Brooklyn, NY  11232**

</div>

To arrange hand delivery of your Ballot, please email DSGInfo@ra.kroll.com (with "DSG Ballot Submission" in the subject line) at least 24 hours in advance of your arrival at the address above with the expected date and time of such delivery.

<div align="center">

**<u>OR</u>**

</div>

<u>**Via E-Ballot Portal**</u>**.**  Submit a customized, electronic version of your Ballot via the Claims Agent's online portal by visiting https://cases.ra.kroll.com/DSG.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized, electronic Ballot:**

**Unique E-Ballot ID#**: _____

The Claims Agent's online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each Unique E-Ballot ID# is to be used solely in relation to those Claims described in <u>Item 2</u> of your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as applicable.  If you choose to submit your Ballot via the Claims Agent's online balloting portal, you **<u>SHOULD NOT</u>** also return a hard copy of your Ballot.

Ballots submitted via the Claims Agent's online balloting portal will be deemed to contain an immediately legally binding signature.

The Ballot does not constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

<div style="border:1px solid black; text-align:center">

**If the Claims Agent does not *<u>actually receive</u>* your Ballot on or before the Voting Deadline, which is November 5, 2024, at 4:00 p.m., prevailing Central Time, and if the Voting Deadline is not extended, your vote may be counted only in the discretion of the Debtors.**

</div>

## <u>INSTRUCTIONS FOR COMPLETING THE BALLOT</u>

1. The Debtors are soliciting the votes of Holders of Claims with respect to the Amended Plan attached as <u>Exhibit A</u> to the Disclosure Statement Supplement.  Capitalized terms used in the Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Amended Plan, a copy of which also accompanies the Ballot. **PLEASE READ THE AMENDED PLAN, DISCLOSURE STATEMENT, AND DISCLOSURE STATEMENT SUPPLEMENT CAREFULLY BEFORE COMPLETING THE BALLOT.**  You may wish to seek legal advice concerning the Amended Plan and the treatment of your Claims under the Amended Plan.

2. The Amended Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class that votes on the Amended Plan and if the Amended Plan otherwise satisfies the requirements for confirmation provided by section 1129 of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3. To ensure that your vote is counted, you must: (a) complete the Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Amended Plan in <u>Item 2</u> of the Ballot; and (c) **clearly sign and submit the Ballot as instructed herein.  Ballots will not be accepted by email, facsimile or other electronic means (other than through the Claims Agent's online portal)**.

4. The Ballot must be returned to the Claims Agent so as to be **actually received** on or before the Voting Deadline.  **The Voting Deadline is November 5, 2024, at 4:00 p.m., prevailing Central Time**.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order.  No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors.  A Ballot will not be counted unless received by the Claims Agent.

5. The method of delivery of a Ballot to the Claims Agent is at the election and risk of each Holder.  Except as otherwise provided herein, such delivery will be deemed made only when the Claims Agent actually receives the executed Ballot.  In all cases, Holders should allow sufficient time to assure timely delivery.

6. If the Claims Agent receives multiple Ballots from the same Holder with respect to the same Claims, the latest received valid Ballot timely received by the Claims Agent prior to the Voting Deadline will supersede and revoke any other Ballots with respect to the same Claims; *provided* that if a Holder timely submits both a paper Ballot and an electronic Ballot on account of the same Claims, the electronic Ballot shall supersede the paper Ballot regardless of the order that the Ballots are received.

7. The Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or Interest or (b) an assertion or admission of a Claim or Interest.  The Ballot may not be used for any purpose other than to vote to accept or reject the Amended Plan, to opt out of the Third-Party Release, and to make certain certifications with respect to the Amended Plan.

8.    **Please be sure to sign and date the Ballot**.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

9.    For your vote to be counted, you must vote all of your Class 5 Go-Forward Trade Claims either to accept or reject the Amended Plan and may not split your vote.

10.   The following Ballots will not be counted in determining the acceptance or rejection of the Amended Plan: (a) any Ballot that partially rejects and partially accepts the Amended Plan; (b) any Ballot not marked to accept or reject the Amended Plan, or marked both to accept and reject the Amended Plan; (c) any Ballot sent to the Debtors, the Debtors' agents (other than the Claims Agent), any agent of any creditor, any indenture trustee, or the Debtors' financial or legal advisors; (d) any Ballot sent by email or facsimile; (e) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Amended Plan; (f) any Ballot submitted by a party not entitled to cast a vote with respect to the Amended Plan; (g) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; and/or (h) any unsigned Ballot.

11.   If you hold Claims in more than one Class or against more than one Debtor under the Amended Plan, you may receive more than one Ballot.  Each Ballot votes **only** your Claims as indicated on that Ballot.  Please complete and return each Ballot you receive.

<div align="center">

### PLEASE SUBMIT YOUR BALLOT PROMPTLY

**If you have any questions regarding the Ballot, these voting instructions,
or the procedures for voting, please call the restructuring hotline at:**

**U.S./Canada (toll-free):  (877) 720-6635
International (toll):  +1 (646) 440-4763**

**Or email DSGInfo@ra.kroll.com
(with "DSG Solicitation Inquiry" in the subject line)**

</div>

> **If the Claims Agent does not _actually receive_ your Ballot on or before the Voting Deadline, which is November 5, 2024, at 4:00 p.m., prevailing Central Time, and if the Voting Deadline is not extended, your vote may be counted only in the discretion of the Debtors.**

<div align="center">

13

</div>

**<u>Exhibit B-6</u>**

**Class 6 General Unsecured Claims Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) Case No. 23-90116 (CML) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**BALLOT FOR (I) VOTING TO ACCEPT OR REJECT
THE DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION AND (II) OPTING OUT OF THIRD-PARTY RELEASE**

**BALLOT FOR HOLDERS OF CLASS 6 GENERAL UNSECURED CLAIMS**

---

**Please read and follow the enclosed instructions for
completing Ballots carefully before completing this Ballot.**

**If you are a Holder of a Class 6 General Unsecured Claim and you previously submitted a
Ballot indicating your vote to accept or reject the Original Plan (as defined below), and you
_DO NOT_ wish to change that vote, no action with respect to a vote on the Amended Plan (as
defined below), using this Ballot is required.**

**If you are a Holder of a Class 6 General Unsecured Claim and you previously submitted a
Ballot indicating your vote to accept or reject the Original Plan, and you _DO_ wish to
change that vote, you must modify your vote with respect to the Amended Plan by
submitting this Ballot in accordance with instructions provided below.**

**For the vote on this Ballot to be counted, this Ballot must be completed, executed, and
returned so as to be _actually received_ by the Claims Agent (as defined below) by
November 5, 2024, at 4:00 p.m., prevailing Central Time (the "Voting Deadline")
in accordance with the following:**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting
votes with respect to the *Debtors' First Amended Joint Chapter 11 Plan of Reorganization* (as
may be amended, modified, or supplemented from time to time, the "Amended Plan") as set forth
in the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (as may be
amended, modified, or supplemented from time to time, the "Disclosure Statement") and the
*Disclosure Statement Supplement for the Debtors' First Amended Joint Chapter 11 Plan of
Reorganization* (the "Disclosure Statement Supplement").  The United States Bankruptcy Court
for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
claims and noticing agent at https://cases.ra.kroll.com/DSG.  The Debtors' service address for purposes of these
chapter 11 cases is:  c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

and, on a conditional basis, the Disclosure Statement Supplement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), by entry of orders on April 17, 2024 [Docket No. 1977], and October [●], 2024 [Docket No. [●]] (the "DS Supplement Order"). The Bankruptcy Court's approval of the Disclosure Statement or the Disclosure Statement Supplement does not indicate approval of the Amended Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Amended Plan.

You are receiving this ballot (the "Ballot") because the Debtors' records indicate that you are a Holder of one or more General Unsecured Claims in Class 6 as of **April 15, 2024** (the "Voting Record Date"). You previously received a Ballot and a solicitation package from the Debtors with respect to the *Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 1982] (the "Original Plan").

**Regardless of whether you have already voted on the Original Plan, you may, but are not required to, cast a new vote on the Amended Plan with this Ballot. The latest received valid Ballot timely received by the Claims Agent prior to the Voting Deadline will supersede and revoke any other Ballots with respect to the same Claims.**

**As such, if you do not wish to change your prior vote to accept or reject the Original Plan, you do not need to take any action with respect to a vote on the Amended Plan using this Ballot. If you do not take any action with respect to a vote on the Amended Plan using this Ballot, your prior vote on the Original Plan (including any deemed consent to granting the Third-Party Release under the Original Plan) will be counted in the Claims Agent's tabulation of votes cast on the Amended Plan.**

The rights and treatment for each Class are described in the Disclosure Statement Supplement, which is included in the package (the "Solicitation Package") you are receiving with this Ballot. The Solicitation Package also contains copies of the Amended Plan, DS Supplement Order, and certain other materials. If you received any documents comprising the Solicitation Package in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov or (b) at no charge from Kroll Restructuring Administration LLC (the "Claims Agent") by: (i) accessing the Debtors' restructuring website at https://cases.ra.kroll.com/DSG; (ii) writing to Diamond Sports Group, LLC Ballots Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232; or (iii) calling or emailing the Claims Agent at:

<div align="center">

U.S./Canada (toll-free): (877) 720-6635
International (toll): +1 (646) 440-4763

Email: DSGInfo@ra.kroll.com (with "DSG Solicitation Inquiry" in the subject line)

</div>

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Amended Plan, opting out of the Third-Party Release (as defined and described in more detail below), and making certain certifications with respect to the Amended Plan. If you believe you have received this Ballot in error, please contact the Claims Agent *immediately* at the address, telephone number, email address, or via the Debtors' restructuring website set forth above.

<div align="center">2</div>

You should review the Disclosure Statement, the Disclosure Statement Supplement, the Amended Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Amended Plan and the Amended Plan's classification and treatment of your Claims.

**The Bankruptcy Court may confirm the Amended Plan and thereby bind all Holders of Claims and Interests to the terms of the Amended Plan.  To have your vote count as either an acceptance or rejection of the Amended Plan, you must complete and return this Ballot so that the Claims Agent *actually receives* it on or before the Voting Deadline.**

**The Voting Deadline is on <u>November 5, 2024, at 4:00 p.m.</u>, prevailing Central Time.**

[*Remainder of page intentionally left blank*]

**IMPORTANT NOTICE**
**REGARDING TREATMENT FOR CLASS 6**

Class 6 consists of any General Unsecured Claims.

As described in more detail in the Disclosure Statement Supplement and Amended Plan, if the Amended Plan is confirmed and the Effective Date occurs, each Holder of an Allowed General Unsecured Claim shall receive:

(i)     if the Wind-Down Toggle has not occurred, its *pro rata* share of the Unsecured Claim Cash Distribution in accordance with the GUC Allocation, if applicable; and

(ii)    if the Wind-Down Toggle has occurred, its *pro rata* share (based on the aggregate amount of Allowed Claims in Class 5 and Class 6) of the Unsecured Claim Cash Distribution in accordance with the GUC Allocation, if applicable (or the balance thereof if there are insufficient funds remaining after payment of the First Lien Claims in Cash in an amount equal to the Wind Down Claim Cap and repayment in full in Cash of the DIP Claims (other than Excluded DIP Amounts)).

**PLEASE READ ARTICLE II.B OF THE DISCLOSURE STATEMENT SUPPLEMENT AND ARTICLE III OF THE AMENDED PLAN FOR MORE DETAILS.**

[*Remainder of page intentionally left blank*]

4

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

<u>**Item 1**</u>.        **Amount of Claim(s)**

The undersigned certifies that, as of the Voting Record Date, the undersigned was, or is an authorized signatory for the Entity that was, a Holder of one or more General Unsecured Claims in the aggregate amount and against the Debtor set forth in the box below:

> $ _____
>
>
> Debtor: _____

<u>**Item 2**</u>.        **Vote on Amended Plan**

Please vote either to accept or to reject the Amended Plan with respect to your Claims set forth in <u>Item 1</u>.  Any Ballot that indicates both an acceptance and a rejection of the Amended Plan or does not indicate either an acceptance or rejection of the Amended Plan will not be counted.

<u>**The Holder of the Claims identified in Item 1 votes to (check one box)**</u>:

☐ **<u>ACCEPT</u>** (vote FOR) the Amended Plan        ☐ **<u>REJECT</u>** (vote AGAINST) the Amended Plan

*[Ballot continues on following page]*

**Item 3.**          **Important Information Regarding the Third-Party Release**

If you vote to accept the Amended Plan, you will be deemed to have consented to the release given by each of the Releasing Parties to the Released Parties as set forth in Article VIII.D of the Amended Plan (the "<u>Third-Party Release</u>"), which is copied below for reference.

If you vote to reject the Amended Plan in Item 2 above or abstain from voting to accept or reject the Amended Plan, you have the option to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan by checking the opt out election box below.

If you validly submit your Ballot and vote to reject the Amended Plan in Item 2 above or abstain from voting to accept or reject the Amended Plan, and, in each case, check the box below, then you will be deemed not to consent to the Third-Party Release set forth in Article VIII.D of the Amended Plan.

If you do not (i) validly submit your Ballot with the below box checked or (ii) file an objection with the Bankruptcy Court in the Chapter 11 Cases that expressly objects to your inclusion as a Releasing Party under the Third-Party Release set forth in Article VIII.D of the Amended Plan, then you will be deemed to have consented to the Third-Party Release; *provided* that if you (x) previously abstained from voting on the Original Plan or voted to reject the Original Plan and, in each case, opted out of granting the Third-Party Release set forth in the Original Plan and (y) do not vote to accept or reject the Amended Plan, you shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan.

If you elect to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a "Released Party" in connection therewith.

<u>The Holder of the Claims identified in Item 1 elects to</u>:

> ☐  **OPT OUT of the Third-Party Release**
> **contained in Article VIII.D of the Amended Plan**

**All Holders of Claims that do not file an objection with the Bankruptcy Court in the Chapter 11 Cases that expressly objects to the inclusion of such Holder as a Releasing Party under the Third-Party Release contained in Article VIII.D of the Amended Plan or do not elect to opt out of the Third-Party Release as provided in this Ballot will be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties; *provided* that any Holder of a Claim that (i) previously abstained from voting on the Original Plan or voted to reject the Original Plan and, in each case, opted out of granting the Third-Party Release set forth in the Original Plan and (ii) does not vote to accept or reject the Amended Plan shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan.  By objecting to or electing to opt out of the Third-Party Release set forth in Article VIII.D of the Amended Plan, you will forgo the**

6

Case 23-90116   Document 2527   Filed in TXSB on 10/09/24   Page 142 of 163

**benefit of obtaining the releases set forth in Article VIII of the Amended Plan if you are a Released Party in connection therewith.**

**Article VIII.D of the Amended Plan contains the following Third-Party Release:**

Except as otherwise expressly set forth in the Amended Plan (including pursuant to Article IV.X) or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party (other than the Debtors, the Post-Effective Date Debtors, and their Estates), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Post-Effective Date Debtor, its Estate, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtors, any investment in any Debtor by any Released Party, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Amended Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any other benefit provided by any Debtor to any Released Party, cash management arrangements, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the Prepetition Credit Agreements, the Prepetition Notes Indentures, the formulation, preparation, dissemination, negotiation, or Filing of the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Amended Plan or the reliance by any Released Party on the Amended Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Prior Restructuring Support Agreement, the Cooperation Agreement, the

Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Plan Transaction before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the solicitation of votes on the Amended Plan, the pursuit of Confirmation of the Amended Plan, the pursuit of Consummation, the administration and implementation of the Amended Plan, including the issuance or distribution of debt and/or securities pursuant to the Amended Plan, or the distribution of property under the Amended Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities primarily arising out of any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Amended Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Amended Plan, including the New A/R Facility Credit Agreement, the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, any Plan Supplement document, or any claim, obligation, or right arising under or preserved pursuant to the Amended Plan or the Confirmation Order, including those rights which are expressly preserved pursuant to <u>Article IV.X</u>, or (2) any Sinclair Party from any claim or Cause of Action asserted or assertable by any JPM Party or any of its Affiliates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Amended Plan, and, further, shall constitute the Bankruptcy Court's finding that this Third-Party Release is:  (1) consensual; (2) essential to the Confirmation of the Amended Plan; (3) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Plan Transactions and implementing the Amended Plan; (4) a good faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

*      *      *      *      *

8

Under the Amended Plan, "Released Parties" means, collectively, and in each case in its capacity as such: (a) each Debtor and Post-Effective Date Debtor; (b) the Consenting Parties; (c) the Prepetition Notes Trustees; (d) the Prepetition Agents; (e) the UCC and each UCC Member; (f) the Sinclair-Related Litigations Defendants; (g) the Plan Administrator; and (h) with respect to each Person or Entity listed or described in any of the foregoing clauses (a) through (g), each such Person's or Entity's current and former Affiliates, and each such Person's or Entity's and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, participants, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, employees, agents, advisory board members, investment fund advisors or managers, investment managers, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that the following Persons and Entities shall not be Released Parties: (i) a Person or Entity that either (A) elects to opt out of the releases contained in the Amended Plan or (B) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Amended Plan that is not resolved before entry of the Confirmation Order; or (ii) other than (A) non-Debtor Diamond Sports Finance SPV, LLC and the New A/R Facility Borrower, (B) any Debtor that is a member or equity holder (regardless of whether such interests are held directly or indirectly) in a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, and (C) any members, directors, managers, officers, employees, or agents appointed by any Debtor at a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, any other Person or Entity affiliated with a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date and any non-Debtor Affiliates thereof.

Under the Amended Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) each Debtor and Post-Effective Date Debtor; (b) the Consenting Parties; (c) all Holders of Claims (except as set forth in the proviso herein); (d) the Prepetition Notes Trustees; (e) the Prepetition Agents; (f) the UCC and each UCC Member; (g) the Sinclair-Related Litigations Defendants; (h) the Plan Administrator; and (i) with respect to each Person or Entity listed or described in any of the foregoing clauses (a) through (h), each such Person's or Entity's current and former Affiliates, and each such Person's or Entity's and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, participants, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, employees, agents, advisory board members, investment fund advisors or managers, investment managers, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that the following Persons and Entities shall not be Releasing Parties: (i) a Person or Entity that either (A) elects to opt out of the releases contained in the Amended Plan or (B) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Amended Plan that is not resolved before entry of the Confirmation Order; (ii) other than (A) non-Debtor Diamond Sports Finance SPV, LLC and the New A/R Facility Borrower, (B) any Debtor that is a member or equity holder (regardless of whether such interests are held directly or indirectly) in a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, and (C) any members, directors, managers, officers, employees, or agents appointed by any Debtor at

9

a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, any other Person or Entity affiliated with a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date and any non-Debtor Affiliates thereof; or (iii) Affiliates of JPMorgan Chase & Co. other than the JPM Parties.

**IF YOU VOTE TO ACCEPT THE AMENDED PLAN, YOU WILL BE DEEMED A RELEASING PARTY PROVIDING THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE AMENDED PLAN.**

[*Ballot continues on following page*]

**Item 4**.          **Certifications**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.  as of the Voting Record Date, either: (i) the undersigned is the Holder of the Claims being voted on this Ballot; or (ii) the undersigned is an authorized signatory for the Entity that is the Holder of the Claims being voted on this Ballot, and in each case, has the power and authority to vote to accept or reject the Amended Plan;

b.  the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.  the undersigned has cast the same vote with respect to all of its Class 6 General Unsecured Claims;

d.  the undersigned has not relied on any statement made or other information received from any person with respect to the Amended Plan other than the information contained in the Solicitation Package or other publicly available materials;

e.  no other Ballots with respect to the Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked; and

f.  the undersigned understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

<u>**Via Paper Ballot.**</u>  Please complete, sign, and date the Ballot and return it promptly in the envelope provided or via first-class mail, overnight courier, or hand delivery to:

<div align="center">

**Diamond Sports Group, LLC Ballots Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 Third Avenue, Suite 412**
**Brooklyn, NY  11232**

</div>

To arrange hand delivery of your Ballot, please email DSGInfo@ra.kroll.com (with "DSG Ballot Submission" in the subject line) at least 24 hours in advance of your arrival at the address above with the expected date and time of such delivery.

<div align="center">

<u>**OR**</u>

</div>

<u>**Via E-Ballot Portal.**</u>  Submit a customized, electronic version of your Ballot via the Claims Agent's online portal by visiting https://cases.ra.kroll.com/DSG.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized, electronic Ballot:**

**Unique E-Ballot ID#**: _____

The Claims Agent's online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each Unique E-Ballot ID# is to be used solely in relation to those Claims described in <u>Item 1</u> of your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as applicable.  If you choose to submit your Ballot via the Claims Agent's online balloting portal, you <u>**SHOULD NOT**</u> also return a hard copy of your Ballot.

Ballots submitted via the Claims Agent's online balloting portal will be deemed to contain an immediately legally binding signature.

The Ballot does not constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

<div style="border: 1px solid black; padding: 10px;" align="center">

**If the Claims Agent does not *actually receive* your Ballot on or before the Voting Deadline, which is November 5, 2024, at 4:00 p.m., prevailing Central Time, and if the Voting Deadline is not extended, your vote may be counted only in the discretion of the Debtors.**

</div>

## <u>INSTRUCTIONS FOR COMPLETING THE BALLOT</u>

1. The Debtors are soliciting the votes of Holders of Claims with respect to the Amended Plan attached as <u>Exhibit A</u> to the Disclosure Statement Supplement.  Capitalized terms used in the Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Amended Plan, a copy of which also accompanies the Ballot. **PLEASE READ THE AMENDED PLAN, DISCLOSURE STATEMENT, AND DISCLOSURE STATEMENT SUPPLEMENT CAREFULLY BEFORE COMPLETING THE BALLOT.**  You may wish to seek legal advice concerning the Amended Plan and the treatment of your Claims under the Amended Plan.

2. The Amended Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class that votes on the Amended Plan and if the Amended Plan otherwise satisfies the requirements for confirmation provided by section 1129 of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3. To ensure that your vote is counted, you must: (a) complete the Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Amended Plan in <u>Item 2</u> of the Ballot; and (c) **clearly sign and submit the Ballot as instructed herein.  Ballots will not be accepted by email, facsimile or other electronic means (other than through the Claims Agent's online portal)**.

4. The Ballot must be returned to the Claims Agent so as to be **actually received** on or before the Voting Deadline.  **The Voting Deadline is November 5, 2024, at 4:00 p.m., prevailing Central Time**.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order.  No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors. A Ballot will not be counted unless received by the Claims Agent.

5. The method of delivery of a Ballot to the Claims Agent is at the election and risk of each Holder.  Except as otherwise provided herein, such delivery will be deemed made only when the Claims Agent actually receives the executed Ballot.  In all cases, Holders should allow sufficient time to assure timely delivery.

6. Regardless of whether you have already voted on the Original Plan, you may, but are not required to, cast a new vote on the Amended Plan with this Ballot.  If the Claims Agent receives multiple Ballots from the same Holder with respect to the same Claims, the latest received valid Ballot timely received by the Claims Agent prior to the Voting Deadline will supersede and revoke any other Ballots with respect to the same Claims; *provided* that if a Holder timely submits both a paper Ballot and an electronic Ballot on account of the same Claims, the electronic Ballot shall supersede the paper Ballot regardless of the order that the Ballots are received.

7. The Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or Interest or (b) an assertion or admission of a Claim or Interest.  The Ballot may not be used

for any purpose other than to vote to accept or reject the Amended Plan, to opt out of the Third-Party Release, and to make certain certifications with respect to the Amended Plan.

8. **<u>Please be sure to sign and date the Ballot</u>**.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

9. For your vote to be counted, you must vote all of your Class 6 General Unsecured Claims either to accept or reject the Amended Plan and may not split your vote.

10. The following Ballots will not be counted in determining the acceptance or rejection of the Amended Plan: (a) any Ballot that partially rejects and partially accepts the Amended Plan; (b) any Ballot not marked to accept or reject the Amended Plan, or marked both to accept and reject the Amended Plan; (c) any Ballot sent to the Debtors, the Debtors' agents (other than the Claims Agent), any agent of any creditor, any indenture trustee, or the Debtors' financial or legal advisors; (d) any Ballot sent by email or facsimile; (e) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Amended Plan; (f) any Ballot submitted by a party not entitled to cast a vote with respect to the Amended Plan; (g) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; and/or (h) any unsigned Ballot.

11. If you hold Claims in more than one Class or against more than one Debtor under the Amended Plan, you may receive more than one Ballot.  Each Ballot votes **<u>only</u>** your Claims as indicated on that Ballot.  Please complete and return each Ballot you receive.

<div align="center">

### <u>PLEASE SUBMIT YOUR BALLOT PROMPTLY</u>

**If you have any questions regarding the Ballot, these voting instructions,
or the procedures for voting, please call the restructuring hotline at:**

**U.S./Canada (toll-free):  (877) 720-6635
International (toll):  +1 (646) 440-4763**

**Or email DSGInfo@ra.kroll.com
(with "DSG Solicitation Inquiry" in the subject line)**

</div>

> **If the Claims Agent does not *<u>actually receive</u>* your Ballot on or before the Voting Deadline, which is November 5, 2024, at 4:00 p.m., prevailing Central Time, and if the Voting Deadline is not extended, your vote may be counted only in the discretion of the Debtors.**

**Exhibit C**

**Confirmation Hearing Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) Case No. 23-90116 (CML) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## NOTICE OF (I) HEARING TO CONSIDER FINAL APPROVAL OF THE DISCLOSURE STATEMENT SUPPLEMENT AND CONFIRMATION OF THE DEBTORS' FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION AND (II) RELATED VOTING AND OBJECTION DEADLINES

**PLEASE TAKE NOTICE THAT:**

1.      On March 14 and 15, 2023 (the "Petition Date"), the above captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

2.      On February 29, 2024, the Debtors filed the *Debtors' Joint Chapter 11 Plan of Reorganization* (the "Original Plan"), and a disclosure statement for the Original Plan (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement"), pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.

3.      On October 2, 2024, the Debtors filed the *Debtors' First Amended Joint Chapter 11 Plan of Reorganization* (the "Amended Plan")[2] and a disclosure statement supplement for the Amended Plan (the "Disclosure Statement Supplement").

4.      The Court has approved the Disclosure Statement and, on a conditional basis, the Disclosure Statement Supplement as containing adequate information pursuant to section 1125 of the Bankruptcy Code by entry of orders on April 17, 2024 [Docket No. 1977], and October [●], 2024 [Docket No. [●]] (the "DS Supplement Order").

5.      Copies of the Amended Plan,[3] the Disclosure Statement, and the Disclosure Statement Supplement (and all exhibits thereto), and all other documents filed in these chapter 11

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG.  The Debtors' service address for purposes of these chapter 11 cases is:  c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Amended Plan.

[3]     When filed, copies of the Plan Supplement (which may occur in multiple installments) will also be available through the Claims Agent free of charge and via PACER for a fee.

cases may be obtained free of charge by:  (a) visiting the website maintained by the claims and solicitation agent, Kroll Restructuring Administration LLC (the "Claims Agent"), at https://cases.ra.kroll.com/DSG;  (b) calling  (877) 720-6635  (U.S./Canada Toll-Free)  or +1 (646) 440-4763  (International);  or  (c) emailing  DSGinfo@ra.kroll.com  (with  "DSG Solicitation Inquiry" in the subject line).  Copies may also be obtained for a fee via PACER at http://www.txs.uscourts.gov.

## Information Regarding Amended Plan

6.      Holders of Claims in Class 3, Class 4, and Class 6 are entitled to vote to accept or reject the Amended Plan.  Holders of Claims in Class 5 are entitled to vote to accept or reject the Amended Plan on a provisional basis, and such Holders' votes will be counted solely to the extent the Wind-Down Toggle occurs.  In the event the Wind-Down Toggle does not occur, Holders of Claims in Class 5 will be rendered unimpaired by and deemed to accept the Amended Plan.  All other classes of Claims and Interests are deemed either to accept or reject the Amended Plan and, therefore, are not entitled to vote.  The deadline for the submission of votes to accept or reject the Amended Plan is November 5, 2024, at 4:00 p.m. (prevailing Central Time).

7.      A hearing to consider final approval of the Disclosure Statement Supplement and confirmation of the Amended Plan and any objections thereto will be held before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, in Courtroom 401 of the United States Bankruptcy Court, 4th Floor, 515 Rusk Street, Houston, Texas 77002, or via remote video, on **November 14, 2024, at 9:00 a.m. (prevailing Central Time)** or as soon thereafter as counsel may be heard (the "Confirmation Hearing").  The Confirmation Hearing may be adjourned from time to time without further notice other than by filing a notice on the Court's docket indicating such adjournment and/or an announcement of the adjourned date or dates at the Confirmation Hearing.

8.      The deadline for filing objections to final approval of the Disclosure Statement Supplement and confirmation of the Amended Plan is **November 5, 2024, at 4:00 p.m. (prevailing Central Time)** (the "Objection Deadline").  Any objections to the Amended Plan must:  (a) be in writing; (b) conform to the applicable Bankruptcy Rules and the Local Rules; (c) state the name of the objecting party and the amount and nature of the Claim or Interest of such party; (d) state the legal and factual basis for and the nature of any objection; and (e) be filed with the Court, together with proof of service.

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS NOTICE (THIS "CONFIRMATION HEARING NOTICE"), IT MAY NOT BE CONSIDERED BY THE COURT.**

| **Binding Nature of the Amended Plan** |
| --- |
| **If confirmed, the Amended Plan shall bind all Holders of Claims and Interests to the maximum extent permitted by applicable law, whether or not such Holder will receive or retain any property or interest in property under the Amended Plan, has filed a Proof of Claim in the Debtors' chapter 11 cases, or failed to vote to accept or reject the Amended Plan or voted to reject the Amended Plan.** |

2

If you have questions about this Confirmation Hearing Notice, please contact
Kroll Restructuring Administration LLC
**Telephone**:  (877) 720-6635 (U.S./Canada Toll-Free) or +1 (646) 440-4763 (International)
**Email**:  DSGinfo@ra.kroll.com (with "DSG Solicitation Inquiry" in the subject line)
**Website**:  https://cases.ra.kroll.com/DSG

The following chart summarizes the treatment provided by the Amended Plan to each class
of Claims against and Interests in the Debtors, and indicates the voting status of each class:

| Class | Claim or Interest | Amended Plan Treatment | Entitlement to Vote | Estimated Allowed Claims | Approx. Percentage Recovery Under Amended Plan: Reorganization | Approx. Percentage Recovery Under Amended Plan: Orderly Runoff | Approx. Percentage Recovery in a Chapter 7 Liquidation |
|---|---|---|---|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) | $0 | 100% | 100% | 0% |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) | $650,000 | 100% | 100% | 100% |
| 3 | First Lien Claims | Impaired | Entitled to Vote | $647,000,000[4] | 100% | 100% | 100% |
| 4 | Junior Funded Debt Claims | Impaired | Entitled to Vote | $8,425,611,996 | <1%–1% | 0% | 0% |
| 5 | Go-Forward Trade Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Entitled to Vote[5] | $5,280,000 | 100% | 6% | 0%[6] |

---

[4]   Estimate assumes an Orderly Runoff is not pursued.  The Debtors used $350 million of the proceeds of the DIP Facility to repay a like principal amount of the First Lien Claims at the closing of the DIP Facility on February 28, 2024.

[5]   In the event the Debtors pursue a reorganization pursuant to the Amended Plan, Holders of Go-Forward Trade Claims will be Unimpaired and will be presumed to accept the Amended Plan.  In the event the Debtors pursue an Orderly Runoff, however, Holders of Go-Forward Trade Claims will be Impaired and receive the same treatment as Holders of Allowed General Unsecured Claims.  Accordingly, Holders of Go-Forward Trade Claims will be provided provisional ballots to cast votes on the Amended Plan, which votes will only be counted in the event the Debtors pursue an Orderly Runoff.

[6]   Go-Forward Trade Claims are treated as General Unsecured Claims for purposes of this analysis.

| Class | Claim or Interest | Amended Plan Treatment | Entitlement to Vote | Estimated Allowed Claims | Approx. Percentage Recovery Under Amended Plan: Reorganization | Approx. Percentage Recovery Under Amended Plan: Orderly Runoff | Approx. Percentage Recovery in a Chapter 7 Liquidation |
|---|---|---|---|---|---|---|---|
| 6 | General Unsecured Claims | Impaired | Entitled to Vote | $170,020,000[7] | 6% | 6% | 0% |
| 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) | N/A | N/A | N/A | 0% |
| 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) | N/A | N/A | N/A | N/A |
| 9 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) | N/A | 0% | 0% | 0% |

### Non-Voting Status of Holders of Certain Claims and Interests

As set forth above, certain Holders of Claims and Interests are **not** entitled to vote on the Amended Plan.  As a result, such parties will not receive any Ballots or other related solicitation materials to vote on the Amended Plan.  Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and, so long as the Wind-Down Toggle has not occurred, Class 5 (Go-Forward Trade Claims) are unimpaired under the Amended Plan and, therefore, are presumed to have accepted the Amended Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Class 5 Go-Forward Trade Claims will receive a provisional Ballot and their votes on the Amended Plan will be counted solely to the extent the Wind-Down Toggle occurs.  Holders of Interests in Class 9 (Existing Equity Interests) are impaired and will receive no distributions under the Amended Plan and, therefore, are presumed to have rejected the Amended Plan pursuant to section 1126(g) of the Bankruptcy Code.  Upon request, the Claims Agent will provide such Holders, free of charge, with copies of the Amended Plan, the Disclosure Statement, the Disclosure Statement Supplement, and this Confirmation Hearing Notice.

### Important Information Regarding the Discharges, Injunctions, Exculpations, and Releases

If you are a Holder of a Claim or Interest and (a) vote to accept the Amended Plan, (b) do not vote either to accept or to reject the Amended Plan but do not opt out of granting

---

[7]   Estimate assumes an Orderly Runoff is not pursued.

the Third-Party Release set forth in the Amended Plan, or (c) vote to reject the Amended Plan but do not opt out of granting the Third-Party Release set forth in the Amended Plan, you shall be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan; *provided* that any Holder of a Claim that (i) previously abstained from voting on the Plan or voted to reject the Plan and, in each case, opted out of granting the Third-Party Release set forth in the Plan and (ii) does not vote to accept or reject the Amended Plan shall not be deemed to have consented to the Third-Party Release contained in Article VIII.D of the Amended Plan.

Article VIII.C          **Debtor Release**

Notwithstanding anything contained in the Amended Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, the Post-Effective Date Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Post-Effective Date Debtors, or their Estates would have been entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Post-Effective Date Debtor, its Estate, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtors, any investment in any Debtor by any Released Party, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Amended Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any other benefit provided by any Debtor to any Released Party, cash management arrangements, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the Prepetition Credit Agreements, the Prepetition Notes Indentures, the formulation, preparation, dissemination, negotiation, or Filing of the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), the DIP Facility, the New A/R Facility, any other Definitive Document, or any Plan Transaction, contract, instrument, release, or other

5

agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Amended Plan or the reliance by any Released Party on the Amended Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the solicitation of votes on the Amended Plan, the pursuit of Confirmation of the Amended Plan, the pursuit of Consummation, the administration and implementation of the Amended Plan, including the issuance or distribution of debt and/or securities pursuant to the Amended Plan, or the distribution of property under the Amended Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities primarily arising out of any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  For the avoidance of doubt, any and all claims or Causes of Action against the Released Parties relating to the First Lien Claims or the Junior Funded Debt Claims is subject to the Debtor Release.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Amended Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Amended Plan, including the New A/R Facility Credit Agreement, or any Claim, obligation, or right arising under or preserved pursuant to the Amended Plan or the Confirmation Order, including those rights which are expressly preserved pursuant to **Article IV.X**.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Amended Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Plan Transactions and implementing the Amended Plan; (2) a good faith settlement and compromise of the claims and Causes of Action released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Post-Effective Date Debtors, or the Debtors' Estates asserting any claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D                  <u>**Third-Party Release**</u>

**Except as otherwise expressly set forth in the Amended Plan (including pursuant to <u>Article IV.X</u>) or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party (other than the Debtors, the Post-Effective Date Debtors, and their Estates), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Post-Effective Date Debtor, its Estate, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtors, any investment in any Debtor by any Released Party, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Amended Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any other benefit provided by any Debtor to any Released Party, cash management arrangements, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the Prepetition Credit Agreements, the Prepetition Notes Indentures, the formulation, preparation, dissemination, negotiation, or Filing of the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Amended Plan or the reliance by any Released Party on the Amended Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement,**

the Disclosure Statement, the New A/R Facility, the DIP Facility, the Amended Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Plan Transaction before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the solicitation of votes on the Amended Plan, the pursuit of Confirmation of the Amended Plan, the pursuit of Consummation, the administration and implementation of the Amended Plan, including the issuance or distribution of debt and/or securities pursuant to the Amended Plan, or the distribution of property under the Amended Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities primarily arising out of any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Amended Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Amended Plan, including the New A/R Facility Credit Agreement, the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, any Plan Supplement document, or any claim, obligation, or right arising under or preserved pursuant to the Amended Plan or the Confirmation Order, including those rights which are expressly preserved pursuant to <u>Article IV.X</u>, or (2) any Sinclair Party from any claim or Cause of Action asserted or assertable by any JPM Party or any of its Affiliates.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Amended Plan, and, further, shall constitute the Bankruptcy Court's finding that this Third-Party Release is: (1) consensual; (2) essential to the Confirmation of the Amended Plan; (3) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Plan Transactions and implementing the Amended Plan; (4) a good faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

## Article VIII.E          Exculpation

Except as otherwise specifically provided in the Amended Plan, to the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any claim or Cause of Action arising from the Petition Date to the Effective Date in connection with or arising out of the administration of

the Chapter 11 Cases, the negotiation and pursuit of the Plan Transactions, the Prior Restructuring Support Agreement, the Cooperation Agreement, the Restructuring Support Agreement, the NBA Term Sheet, the NHL Term Sheet, the Cash Collateral Order, the DIP Order, the Sinclair Settlement Order, the UCC Settlement, the Exit Note Commitment Letter, the Commercial Agreement, the Naming Rights Agreement, the Disclosure Statement, the Plan Supplement, the Amended Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Amended Plan, the solicitation of votes for, or confirmation of, the Amended Plan, the funding of the Amended Plan, the occurrence of the Effective Date, the administration of the Amended Plan or the property to be distributed under the Amended Plan, the issuance of securities under or in connection with the Amended Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtors in connection with the Amended Plan and the Plan Transactions, or the transactions in furtherance of any of the foregoing, other than claims or Causes of Action, in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Amended Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Amended Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Amended Plan or such distributions made pursuant to the Amended Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**Article VIII.F**          **Injunction**

Except as otherwise expressly provided in the Amended Plan or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to the Amended Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, Interests, or Causes of Action that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, Interests, or Causes of Actions; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims, Interests, or Causes of Action; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such claims, Interests, or Causes of Action; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims, Interests, or Causes of Action unless such Holder has Filed a motion requesting the right to perform such setoff on or before the

Effective Date, and notwithstanding an indication of a claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, Interests, or Causes of Actions released, settled, or exculpated pursuant to the Amended Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Amended Plan. Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Amended Plan, shall be deemed to have consented to the injunction provisions set forth in **Article VIII.F** of the Amended Plan.

No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a claim or Cause of Action of any kind against any of the Debtors or the Released Parties that is subject to the Debtor Release or the Third-Party Release, or arose or arises from or is related to any Covered Claim without first (i) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such claim or Cause of Action represents a colorable claim against a Debtor or a Released Party, as applicable, and is not a claim that the Debtors released under the Amended Plan, which request must attach the complaint or petition proposed to be filed by the requesting party and (ii) obtaining from the Bankruptcy Court specific authorization for such party to bring such claim or Cause of Action against a Debtor or a Released Party, as applicable. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court *before* filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable claim or Cause of Action.

Certain Relevant Definitions Related to Release, Exculpation, and Injunction Provisions

"**Exculpated Party**" means (a) each Debtor and (b) the UCC and each UCC Member.

"**Released Parties**" means, collectively, and in each case in its capacity as such: (a) each Debtor and Post-Effective Date Debtor; (b) the Consenting Parties; (c) the Prepetition Notes Trustees; (d) the Prepetition Agents; (e) the UCC and each UCC Member; (f) the Sinclair-Related Litigations Defendants; (g) the Plan Administrator; and (h) with respect to each Person or Entity listed or described in any of the foregoing clauses (a) through (g), each such Person's or Entity's current and former Affiliates, and each such Person's or Entity's and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns,

subsidiaries, participants, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, employees, agents, advisory board members, investment fund advisors or managers, investment managers, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that the following Persons and Entities shall not be Released Parties: (i) a Person or Entity that either (A) elects to opt out of the releases contained in the Amended Plan or (B) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Amended Plan that is not resolved before entry of the Confirmation Order; or (ii) other than (A) non-Debtor Diamond Sports Finance SPV, LLC and the New A/R Facility Borrower, (B) any Debtor that is a member or equity holder (regardless of whether such interests are held directly or indirectly) in a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, and (C) any members, directors, managers, officers, employees, or agents appointed by any Debtor at a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, any other Person or Entity affiliated with a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date and any non-Debtor Affiliates thereof.

"***Releasing Parties***" means, collectively, and in each case in its capacity as such: (a) each Debtor and Post-Effective Date Debtor; (b) the Consenting Parties; (c) all Holders of Claims (except as set forth in the proviso herein); (d) the Prepetition Notes Trustees; (e) the Prepetition Agents; (f) the UCC and each UCC Member; (g) the Sinclair-Related Litigations Defendants; (h) the Plan Administrator; and (i) with respect to each Person or Entity listed or described in any of the foregoing clauses (a) through (h), each such Person's or Entity's current and former Affiliates, and each such Person's or Entity's and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, participants, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, employees, agents, advisory board members, investment fund advisors or managers, investment managers, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that the following Persons and Entities shall not be Releasing Parties: (i) a Person or Entity that either (A) elects to opt out of the releases contained in the Amended Plan or (B) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Amended Plan that is not resolved before entry of the Confirmation Order; (ii) other than (A) non-Debtor Diamond Sports Finance SPV, LLC and the New A/R Facility Borrower, (B) any Debtor that is a member or equity holder (regardless of whether such interests are held directly or indirectly) in a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, and (C) any members, directors, managers, officers, employees, or agents appointed by any Debtor at a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date, any other Person or Entity affiliated with a non-Debtor Entity in which any Debtor held an Interest as of the Petition Date and any non-Debtor Affiliates thereof; or (iii) Affiliates of JPMorgan Chase & Co. other than the JPM Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE AMENDED PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS CONFIRMATION HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

[*Remainder of page intentionally left blank*]

Dated [●], 2024

|  | /s/ |
|---|---|

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
Bryan L. Rochelle (TX Bar No. 24107979)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
brochelle@porterhedges.com

- and -

| **WILMER CUTLER PICKERING HALE AND DORR LLP** | **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |
|---|---|
| Andrew N. Goldman (admitted *pro hac vice*) | Brian S. Hermann (admitted *pro hac vice*) |
| Benjamin W. Loveland (admitted *pro hac vice*) | Andrew M. Parlen (admitted *pro hac vice*) |
| Lauren R. Lifland (admitted *pro hac vice*) | Joseph M. Graham (admitted *pro hac vice*) |
| 250 Greenwich Street | Alice Nofzinger (admitted *pro hac vice*) |
| New York, New York 10007 | 1285 Avenue of the Americas |
| Telephone: (212) 230-8800 | New York, New York 10019 |
| Facsimile: (212) 230-8888 | Telephone: (212) 373-3000 |
| andrew.goldman@wilmerhale.com | Facsimile: (212) 757-3990 |
| benjamin.loveland@wilmerhale.com | bhermann@paulweiss.com |
| lauren.lifland@wilmerhale.com | aparlen@paulweiss.com |
|  | jgraham@paulweiss.com |
|  | anofzinger@paulweiss.com |
| *Section 327(e) Counsel to the Debtors and Debtors in Possession* | *Counsel to the Debtors and Debtors in Possession* |