IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) ) ) | Case No. 23-90116 (CML) |
| Debtors. | ) ) ) | (Jointly Administered) (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING ENTRY INTO AND PERFORMANCE UNDER THE FANDUEL TERM SHEET AND (II) GRANTING RELATED RELIEF**

> Emergency relief has been requested.  Relief is requested not later than 5:00 p.m. (prevailing Central Time) on October 18, 2024.
>
> If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto, (a) authorizing the Debtors to enter into and perform under a term sheet with FanDuel Group, Inc. ("FanDuel") attached hereto as **Exhibit A** (the "FanDuel Term Sheet") and (b) granting related relief.  In support of this motion, the Debtors submit the declaration of Eric Ratchman (the "Ratchman Declaration"), attached hereto as **Exhibit B**.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG.  The Debtors' service address for purposes of these chapter 11 cases is:  c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

**Preliminary Statement**

2.  The Debtors seek authority to enter into and perform under the FanDuel Term Sheet, pursuant to which the Debtors will rebrand their regional sports networks (the "RSNs") with the FanDuel name. This rebranding will associate the Debtors' RSNs with one of the premier and most recognizable names in online sports betting and daily fantasy sports in the United States. The Debtors view FanDuel as the optimal naming rights partner because the Debtors believe there are significant synergistic opportunities between the Debtors' and FanDuel's respective businesses, including with respect to live sports programming, sports betting, subscriber acquisition, and advertising. The Debtors' entry into the FanDuel Term Sheet at this time will lock in a new naming rights partnership for the 2024-25 National Hockey League ("NHL") and National Basketball Association ("NBA") seasons while also providing the Debtors with a long-term naming rights partner if the Debtors are ultimately able to emerge as a going concern.

3.  The FanDuel Term Sheet provides the Debtors both a near-term and long-term naming rights solution. In the near term, in exchange for a significant rights fee payment and certain media and advertising spending commitments, the Debtors will rebrand their RSNs, direct-to-consumer streaming service, and related consumer-facing products with the FanDuel name while the Debtors continue to operate in chapter 11. Assuming the Debtors emerge from chapter 11 as a going concern, and subject to the terms and conditions set forth in the FanDuel Term Sheet, FanDuel will provide multi-year commitments to the Debtors for, among other things, annual rights payments, minimum media and advertising spending, and content produced by FanDuel that can be aired on the Debtors' RSNs. In exchange, as part of a multi-year partnership between the parties and pursuant to a chapter 11 plan, the Debtors will provide FanDuel with a

series of purchase options and performance-based warrants for post-emergence equity interests in the reorganized Debtors.

4. The Debtors believe that approval of the FanDuel Term Sheet is justified by the facts and circumstances of these chapter 11 cases and is in the best interest of their estates. The FanDuel Term Sheet is the result of an extensive search for a new naming rights partner and good faith, arm's-length negotiations with FanDuel that have taken place over several months. Due to their settlement with Sinclair and related rejection of their naming rights agreement with Bally's Corporation ("Bally's"), the Debtors will not have a name for their RSNs after the current Major League Baseball ("MLB") season. Rebranding the RSNs now—at the beginning of the 2024-2025 NBA and NHL seasons—is therefore an important near-term business need and also a critical component of the Debtors' overall reorganization efforts. The Debtors believe that the agreements with FanDuel incorporated in the FanDuel Term Sheet will provide the Debtors with incremental revenue and advantageously position the Debtors' reorganized business for future growth in a rapidly changing industry on a post-emergence basis. Moreover, the Debtors have kept their key stakeholders apprised of their discussions with potential naming rights partners, and the members of the ad hoc crossholder group—which represents the "Required Lenders" under the Debtors' debtor-in-possession financing facility and the expected majority owners of the reorganized business—support the Debtors' entry into the FanDuel Term Sheet. For these reasons and as more fully set forth herein, the Debtors respectfully request that the Court approve the Debtors' entry into the FanDuel Term Sheet.

**Jurisdiction and Venue**

5. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of*

*Texas*, dated May 24, 2012 (the "Amended Standing Order"). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 2002 and 6004, Rules 2002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas*.

**Background**

8. Currently, the Debtors operate their RSNs under the "Bally Sports" trade name pursuant to the Debtors' existing naming rights arrangement with Bally's. As part of the settlement approved pursuant to an order entered by the Court on March 1, 2024 [Docket No. 1849], that naming rights agreement was rejected and Bally's agreed to allow the Debtors to continue using the Bally's trade name through the end of the 2024 MLB season. As a result, the Debtors faced a need to rebrand their RSNs, direct-to-consumer streaming service, and related consumer-facing platforms (the "RSN Services") with a new naming rights partner by no later than the end of that season (i.e., late October or early November 2024). Due to the bespoke nature of naming rights arrangements, the success of which relies on the close alignment of business lines of the participating partners, the pool of potentially suitable naming rights partners for the Debtors' RSNs is limited.

9. The Debtors commenced the search process for a new naming rights partner in February 2024. The Debtors' management team, with the assistance of the Debtors' financial advisors and investment bankers, held management meetings with, and provided diligence to, six potential naming rights partners.

10. FanDuel, a premier, market-leading online gaming operator in North America, emerged as the strongest candidate during the Debtors' search process. The Debtors considered FanDuel to be an attractive potential partner from the outset of the process due to the high degree of alignment between the Debtors' RSN business and FanDuel's online gaming business and target customers, and the potential for future integrations of the Debtors' and FanDuel's respective products and offerings. After an initial meeting with the Debtors' management in February 2024, FanDuel submitted an initial term sheet to the Debtors in March 2024. In the following months, the Debtors and FanDuel engaged in extensive, good-faith negotiations on the terms of a potential go-forward partnership, including with respect to naming rights. Those negotiations were also informed by ongoing developments in the Debtors' go-forward business plan during the same period.

11. In August 2024, the Debtors finalized go-forward agreements with each of the NBA and NHL and certain of their teams, which were subsequently approved by the Court in September [Docket Nos. 2389 and 2390]. The Debtors then immediately re-engaged with FanDuel to negotiate final terms regarding a go-forward naming rights partnership. On October 15, 2024, the Debtors and FanDuel executed the FanDuel Term Sheet, which provides for an initial term through April 30, 2025, followed by a multi-year partnership (subject to certain annual renewal requirements and extension rights as set forth in the FanDuel Term Sheet).

12. In addition, as discussed below, the FanDuel Term Sheet contains provisions that would allow FanDuel to purchase up to 5% of the equity in the reorganized Debtors and earn performance warrants exercisable for up to 5% of the equity in the reorganized Debtors, which incentivizes FanDuel to use its best efforts to broaden the Debtors' subscriber base and provides FanDuel with an opportunity to co-invest in the Debtors' reorganized business.  For the avoidance of doubt, the Debtors are not seeking authority to issue any purchase option, equity, or performance warrants pursuant to this motion.  Instead, the Debtors included key terms in the Debtors' chapter 11 plan of reorganization [Docket No. 2521-1] (as may be amended, supplemented, or otherwise modified from time to time, the "Amended Plan") and the Debtors will seek approval of those components of the parties' agreement through the plan confirmation process.  The Debtors will update the Amended Plan, if necessary, to further reflect the terms of the FanDuel Term Sheet in connection with the plan confirmation process.

### The FanDuel Term Sheet

13. The following chart summarizes the principal terms of the FanDuel Term Sheet:[2]

| Term | Description |
|---|---|
| **Term** | The initial term of the FanDuel Term Sheet will commence on the date on which the Court enters an order approving this motion and continue in force and effect through April 30, 2025, subject to the parties' respective termination rights.<br><br>Unless earlier terminated, the initial term will be automatically extended for a multi-year period beginning May 1, 2025, subject to the parties' respective renewal, extension, and termination rights as set forth in the FanDuel Term Sheet. |
| **Naming Rights & Fee; Minimum Annual Media Spend** | The Debtors will grant FanDuel the exclusive right as the sole naming rights sponsor to rebrand the RSN Services for the duration of the agreement term.  In exchange for the naming rights, FanDuel will, among other things:<br><ul><li>Pay the Debtors a fixed naming rights fee for each year of the agreement term; and</li></ul> |

---

[2] The following summary is qualified in its entirety by reference to the FanDuel Term Sheet.  In the event of any inconsistency between this summary and the FanDuel Term Sheet, the FanDuel Term Sheet shall control in all respects.  Capitalized terms used in this section but not otherwise defined herein have the meanings given to them in the FanDuel Term Sheet.

| Term | Description |
|---|---|
|  | • Commit to pre-agreed minimum annual spending thresholds for media on the RSN Services for each year of the agreement term, subject to specified advertising and media "Preferred Sponsor" elements.<br><br>The naming rights fees and minimum annual spending thresholds are subject to certain adjustments, including based on losses in the Debtors' sports rights portfolio, as applicable, on the terms and conditions set forth in the FanDuel Term Sheet. |
| **Branding Placements** | During the term, the Debtors will provide FanDuel with certain agreed in-venue branding, activations/giveaways, social/digital, and traditional media placements. |
| **Integrations** | The Debtors will designate FanDuel as its exclusive integration partner in specified sports betting and related online wagering / gaming categories across the RSN Services and will provide substantial and prominent integrations to FanDuel across the RSN Services, in each case subject to the terms and conditions set forth in the FanDuel Term Sheet. |
| **FanDuel Content** | Following the initial term, FanDuel will deliver and license to the Debtors certain content from FanDuel TV and the Debtors will have the right and obligation to distribute such content on their services in accordance with the terms and conditions set forth in the FanDuel Term Sheet. |
| **Direct-to-Consumer** | The Debtors will grant FanDuel the right to resell the Debtors' streaming product on the terms and conditions set forth in the FanDuel Term Sheet. |
| **Bankruptcy-Related Matters** | The Debtors will amend their chapter 11 plan to be consistent with the terms of the FanDuel Term Sheet and to provide for the issuance of the equity purchase option and performance warrants described below.<br><br>FanDuel may terminate the FanDuel Term Sheet upon the occurrence of specified termination events, including if the Court does not enter an order approving the FanDuel Term Sheet by October 21, 2024, or such order is reversed, dismissed, or vacated without the prior written consent of FanDuel.<br><br>FanDuel shall be entitled to seek and obtain specific performance and injunctive relief as a remedy if the Debtors pursue an alternative to the FanDuel Term Sheet before the later of the Effective Date or the end of the initial term, provided certain conditions are met.<br><br>The Debtors agree not to solicit or entertain any alternative offers to the FanDuel Term Sheet before the later of the Effective Date or the end of the initial term so long as FanDuel does not terminate the agreement and there is no material breach by FanDuel. |
| **Long-Form Agreement** | Following the execution of the FanDuel Term Sheet, the parties will enter into good faith negotiations with respect to a long form agreement to reflect the terms set forth in the FanDuel Term Sheet and address such other terms as would customarily be included under current market conditions in a similar agreement. |
| **Equity Purchase Option** | Subject in all respects to approval by the Court of a chapter 11 plan and consummation thereof, the Debtors will grant to FanDuel the right to purchase up to an aggregate number of common shares of the reorganized Debtors' ultimate parent equal to 5% of the amount of such issued and outstanding common shares as of the effective date of the Debtors' chapter 11 plan. |
| **Performance Warrants** | Subject in all respects to approval by the Court of a chapter 11 plan and consummation thereof, the Debtors will grant to FanDuel performance penny warrants that are exercisable for up to an aggregate number of shares of the reorganized Debtors' ultimate parent equal to 5% of the amount of such issued and outstanding shares as of the effective date of the Debtors' chapter |

| Term | Description |
|---|---|
| | 11 plan. The performance warrants will vest based on the achievement of certain performance metrics in accordance with a pre-agreed schedule. |

**Basis for Relief**

14.  The Bankruptcy Code authorizes the use and disposition of property outside the ordinary course of business with court approval.  11 U.S.C. § 363(b)(1).  Such transactions should be approved when they are supported by a sound business purpose, with deference given to the debtor's business judgment.  *See ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.C.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." (quoting *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986))); *In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484, 520 (N.D. Tex. 2019) ("Great judicial deference is given to the Trustee's exercise of business judgment." (quoting *GBL Holding Co. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005))), *aff'd*, 850 F. App'x 302 (5th Cir. 2021).

15.  Section 105(a) of the Bankruptcy Code further permits the Court to exercise its broad grant of equitable powers to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  "From this section emanate the general equitable powers of bankruptcy courts." *In re Smith*, 21 F.3d 660, 665 (5th Cir. 1994); *see also Pepper* v. *Litton*, 308 U.S. 295, 304 (1939) ("[C]ourts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity.").

16.  The Debtors have ample business justification to enter into and perform under the FanDuel Term Sheet, which represents a long-term strategic partnership that will anchor the Debtors' go-forward business.  The Debtors believe that entry into the FanDuel Term Sheet will

8

be immediately accretive to the Debtors' go-forward business plan and advantageously position the Debtors for future growth on a post-emergence basis due to synergistic integration opportunities. In addition, the Debtors have a need to rebrand their RSNs in the very near term due to the upcoming expiration of their ability to continue use of the Bally's trade name. The Debtors believe that rebranding the RSNs now—after the end of the MLB regular season and at the beginning of the 2024-2025 NBA and NHL seasons—will be critical to smoothly transitioning from the Bally's trade name to the FanDuel rebrand, minimizing disruption to sports fans, and maximizing value for the Debtors' estates.

17. The FanDuel Term Sheet is the product of extensive, arm's-length negotiations and is an important step towards the implementation of the Debtors' going-concern reorganization and confirmation of the Amended Plan. As described above, the Debtors thoroughly explored potential naming rights partnership opportunities before determining that FanDuel was the most attractive potential partner. The Debtors then engaged in months-long negotiations with FanDuel regarding the terms that were ultimately memorialized in the FanDuel Term Sheet. Importantly, the Debtors consulted with key stakeholders, including the parties to the Debtors' restructuring support agreement throughout this negotiation process, and the final terms are supported by, among others, a majority of the Debtors' debtor-in-possession financing lenders, who are anticipated to hold a majority of the reorganized Debtors' equity upon consummation of the Amended Plan.

18. For all of the foregoing reasons, the Debtors believe that entry into and performance under the FanDuel Term Sheet will maximize value for their estates and creditors, and also best serve sports fans who watch the Debtors' sports programming and the Debtors' league and team partners. The Debtors therefore respectfully request that the Court authorize their entry into and

performance under the FanDuel Term Sheet as a reasonable exercise of their business judgment and as necessary and appropriate in light of the circumstances of these chapter 11 cases.

## Emergency Consideration

19. Pursuant to Local Rule 9013-1, the Debtors respectfully request emergency consideration of this motion, as the Debtors believe that any delay in granting the relief requested would cause irreparable harm. The 2024-2025 NHL season has begun while the 2024-2025 NBA season is set to begin imminently, and the Debtors will lose use of the Bally's trade name in the near term. The Debtors believe a quick and orderly transition of branding partners at this time will maximize the value of their estates and best serve sports fans across the nation, as well as the Debtors' team and league partners. Any delay in entry of an order approving the FanDuel Term Sheet may damage the Debtors' brand value with sports fans and disrupt their reorganization efforts at a critical juncture. In light of these timing considerations, FanDuel negotiated a provision that requires entry of an order approving the FanDuel Term Sheet by no later than October 21, 2024. If the proposed order is not entered by that time, FanDuel may terminate the FanDuel Term Sheet immediately upon written notice to the Debtors. For all of the foregoing reasons, the Debtors therefore respectfully request that the Court grant the relief requested in this motion on an emergency basis.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

20. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Notice

21. The Debtors will provide notice of this motion to (a) the parties on the Master Service List available on the website of the Debtors' claims and noticing agent at

10

https://cases.ra.kroll.com/DSG, (b) FanDuel, and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the proposed order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

October 15, 2024

Respectfully submitted,

*/s/ John F. Higgins*

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
Bryan L. Rochelle (TX Bar No. 24107979)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
brochelle@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Brian S. Hermann (admitted *pro hac vice*)
Andrew M. Parlen (admitted *pro hac vice*)
Joseph M. Graham (admitted *pro hac vice*)
Alice Nofzinger (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
bhermann@paulweiss.com
aparlen@paulweiss.com
jgraham@paulweiss.com
anofzinger@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

**Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief. This statement is made pursuant to Local Rule 9013-1(i).

/s/ *John F. Higgins*
John F. Higgins

**Certificate of Service**

I certify that on October 15, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *John F. Higgins*
John F. Higgins