## Exhibit B

**Ratchman Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) ) | Case No. 23-90116 (CML) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DECLARATION OF ERIC RATCHMAN IN SUPPORT OF THE DEBTORS'
EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING ENTRY
INTO AND PERFORMANCE UNDER THE FANDUEL TERM SHEET
AND (II) GRANTING RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Eric Ratchman, hereby declare, under penalty of perjury, the following to the best of my information, knowledge, and belief:

1. I am President of Distribution and Business Development, of Debtor Diamond Sports Group, LLC. I have held this position since February 2023 and I am currently responsible for leading and overseeing the Debtors' content distribution and strategic partnership activities. I have over 20 years of experience in the telecommunication and media industries, including prior roles at The Walt Disney Company, Univision, and Amazon. I hold a Bachelor of Science from the University of Wisconsin.

2. I submit this declaration in support of the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing Entry into and Performance Under the FanDuel Term Sheet and (II) Granting Related Relief* (the "FanDuel Motion"), to which this declaration is attached.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

3. I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records, as well as the Debtors' restructuring efforts. Except as otherwise noted herein, the facts set forth in this declaration are based upon my personal knowledge, review of relevant documents, my experience and knowledge concerning the Debtors' operations and financial affairs, and information provided to me by the Debtors' employees and professional advisors.

4. I am authorized to submit this declaration in support of the FanDuel Motion. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

### The FanDuel Term Sheet[2]

5. The Debtors and their advisors have worked tirelessly over the last several months exploring potential naming rights partnerships due to the upcoming expiration of their ability to continue use of the Bally's trade name. The Debtors' management team, with the assistance of the Debtors' financial advisors and investment bankers, commenced this search process in February 2024 and held meetings with, and provided diligence to, six potential naming rights partners. Due to the bespoke nature of naming rights arrangements, the success of which relies on the close alignment of business lines of the participating partners, the pool of potentially suitable naming rights partners for the Debtors' RSNs is limited.

6. FanDuel, a premier, market-leading online gaming operator in North America, emerged as the strongest candidate during the Debtors' search process. The Debtors considered FanDuel to be an attractive potential partner due to the high degree of alignment between the

---

[2] Capitalized terms used but not otherwise defined in this section have the meanings ascribed to them in the FanDuel Motion.

2

Debtors' RSN business and FanDuel's online gaming business and target customers, and the potential for future integrations of the Debtors' and FanDuel's respective products and offerings. After an initial meeting with the Debtors' management team in February 2024, FanDuel submitted an initial term sheet in March 2024. In the following months, the Debtors and FanDuel engaged in extensive, good-faith negotiations on the terms of a potential go-forward partnership. Those negotiations were also informed by ongoing developments in the Debtors' go-forward business plan and arrangements with their sports team and league partners. In August 2024, after the Debtors finalized and obtained Court approval of go-forward agreements with each of the NBA and NHL and certain of their teams, the Debtors re-engaged with FanDuel to negotiate and finalize the terms of the FanDuel Term Sheet.

7. I believe that the Debtors' entry into and performance under the FanDuel Term Sheet reflects a sound exercise of their business judgment in connection with the Debtors' overall reorganization efforts. Specifically, I understand that the FanDuel Term Sheet will be immediately accretive to the Debtors' go-forward business plan. I also believe that the partnership will advantageously position the Debtors for future growth on a post-emergence basis due to synergistic opportunities between the Debtors' and FanDuel's respective businesses, including with respect to live sports programming, sports betting, subscriber acquisition, and advertising.

8. Furthermore, the Debtors have a need to rebrand their RSNs in the very near term due to the upcoming expiration of their ability to continue use of the Bally's trade name. I believe that rebranding the RSNs now—after the end of the MLB regular season and at the beginning of the 2024-2025 NBA and NHL seasons—is therefore not only an important component of the Debtors' efforts to consummate a value-maximizing reorganization, but also a critical near-term

business need for smoothly transitioning branding partners and minimizing disruption to sports fans.

9. Finally, I believe that the FanDuel Term Sheet is the product of extensive, arm's-length negotiations. As described above, the Debtors thoroughly explored naming rights partnership opportunities before determining that FanDuel was the most attractive potential naming rights partner. The Debtors then engaged in months-long negotiations with FanDuel regarding the terms that were ultimately memorialized in the FanDuel Term Sheet.

10. In short, I believe that the FanDuel Term Sheet provides material benefits to the Debtors' near-term and long-term reorganization efforts and that the terms of the FanDuel Term Sheet are therefore reasonable under the circumstances. Accordingly, I believe that entry into the FanDuel Term Sheet is in the best interests of the Debtors, the estates, and their stakeholders.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 15, 2024
       New York, NY

                                               /s/ Eric Ratchman
                                               Eric Ratchman
                                               President, Distribution and Business Development
                                               Diamond Sports Group, LLC